1  Richard M. Pachulski (CA Bar No. 90073)
   James I. Stang (CA Bar No. 94435)
2  Dean A. Ziehl (CA Bar No. 84529)
   Linda F. Cantor (CA Bar No. 153762)
3  Debra I. Grassgreen (CA Bar No. 169978)
   PACHULSKI STANG ZIEHL & JONES LLP
4  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California  90067-4100
5  Telephone: 310/277-6910 / Facsimile: 310/201-0760
   Email:    rpachulski@pszjlaw.com
6             jstang@pszjlaw.com
              dziehl@pszjlaw.com
7             lcantor@pszjlaw.com
              dgrassgreen@pszjlaw.com
8
   Proposed Attorneys for Debtor and Debtor in Possession
9
                  UNITED STATES BANKRUPTCY COURT
10                 CENTRAL DISTRICT OF CALIFORNIA
                        SANTA ANA DIVISION
11  In re:                              Case No.: 12-_____ (___)

12  American Suzuki Motor Corporation,[1]   Chapter 11

13                           Debtor.       **NOTICE OF MOTION AND MOTION OF
                                           DEBTOR FOR ORDER (A) APPROVING
14                                         SALE OF SUBSTANTIALLY ALL ASSETS
                                           RELATING TO THE ACQUIRED BUSINESS,
15                                         FREE AND CLEAR OF ALL LIENS, CLAIMS,
                                           ENCUMBRANCES AND INTERESTS;
16                                         (B) APPROVING BID PROCEDURES FOR
                                           THE SALE AND AUCTION OF ASSETS; (C)
17                                         SCHEDULING AN AUCTION AND HEARING
                                           TO CONSIDER THE SALE AND APPROVE
18                                         THE FORM AND MANNER OF NOTICES
                                           RELATED THERETO; (D) ESTABLISHING
19                                         PROCEDURES RELATING TO THE
                                           ASSUMPTION, ASSIGNMENT AND SALE OF
20                                         CERTAIN CONTRACTS AND LEASES; (E)
                                           APPROVING BID PROTECTIONS; AND (F)
21                                         GRANTING RELATED RELIEF;
                                           MEMORANDUM OF POINTS AND
22                                         AUTHORITIES IN SUPPORT THEREOF**

23                                         Hearing on Bid Procedures:
                                           Date:     TBD
24                                         Time:     TBD
                                           Location: Courtroom ___
25                                                   411 West Fourth St.
                                                     Santa Ana, CA
26
                                           [Declaration of M. Freddie Reiss in Support of
27                                         Relief Filed Concurrently Herewith]

28  ────────────────
    [1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East
    Imperial Highway, Brea, California 92821.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR'S PREPETITION AND POSTPETITION LENDER, THE CREDITORS APPEARING ON THE LIST FILED IN ACCORDANCE WITH RULE 1007(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, ALL ENTITIES KNOWN TO HAVE ASSERTED ANY INTERESTS IN OR UPON THE PURCHASED ASSETS, AND PARTIES REQUESTING SPECIAL NOTICE:**

**PLEASE TAKE NOTICE THAT** American Suzuki Motor Corporation, the above-captioned debtor and debtor in possession (the "Debtor"), hereby moves this Court (the "Motion") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 6004-1, for approval of certain procedures to conduct a sale of substantially all of the Debtor's assets relating to the Acquired Business (as defined below) and for approval, at a subsequent hearing, of the sale of the applicable assets (referred to herein as the "Purchased Assets") to the highest bidder that complies with the applicable procedures. Specifically, the Debtor seeks an order:

      (a)      approving the proposed sale procedures, including the overbid provisions (the "Bid Procedures"), set forth in the proposed order attached hereto as **Exhibit A** (the "Bid Procedures Order"), in connection with the proposed sale at auction (the "Auction") of the Purchased Assets, pursuant to the terms of the *Asset Purchase Agreement* (the "APA")[2] (substantially in the form attached hereto as **Exhibit B**), free and clear of all liens, claims, interests and encumbrances, to NounCo, Inc. (the "Stalking Horse Bidder" or "Purchaser") (a transaction vehicle formed by the Suzuki Motor Corporation ("SMC")), or such other party making a higher and better bid at the Auction, pursuant to sections 105 and 363(b), (f), and (m) of the Bankruptcy Code;

      (b)      authorizing the sale of the Purchased Assets to Purchaser pursuant to the APA, as set forth in the proposed order attached hereto as **Exhibit C** (the "Sale Order"), or, alternatively, to the other successful bidder(s) pursuant to the applicable agreement(s) with such other successful bidder(s) entered into in accordance with the Bid Procedures, free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f) and (m) and 365 of the Bankruptcy Code, with such liens, claims, encumbrances or other interests to attach to the Sale proceeds of the Purchased Assets with the same validity (or invalidity), priority and perfection as existed immediately prior to such Sale;

      (c)      approving the assumption, assignment and sale of the Designated Contracts (as defined herein) under section 365 of the Bankruptcy Code section, subject to the terms of the APA;

      (d)      approving an expense reimbursement in an amount not to exceed $750,000 (the "Expense Reimbursement") to compensate the Stalking Horse Bidder for the fees and expenses

---

[2]  Capitalized terms not defined herein shall have the meanings set forth in the Bid Procedures or APA, as applicable.

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

incurred in connection with negotiating and executing the APA and payable in accordance with its terms;

(e)    scheduling the Auction and hearing for the sale of the Purchased Assets (the "<u>Sale</u>");

(f)    approving the proposed form of the notices of the Auction, the hearing to consider approval of the Sale (the "<u>Sale Hearing</u>"), and related matters, substantially in the forms attached to the Bid Procedures Order, and the manner of service of same, and setting applicable deadlines; and

(g)    granting such other related relief as provided in the Bid Procedures Order.

The Stalking Horse Bidder is an affiliate of SMC, which is an insider of the Debtor.  SMC holds 100% of the equity interests in the Debtor and sells the product necessary for the Debtor to operate its business.

The Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed plan of reorganization (the "<u>Plan</u>") by which a sale of substantially all of the Debtor's assets, with certain exceptions as described in the Plan, to Purchaser will be implemented. In the event that the Debtor ultimately determines not to proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under sections 363 and 365 of the Bankruptcy Code on a stand-alone-basis outside of any proposed plan.  Accordingly, the Debtor has filed the Motion to facilitate a parallel track sale transaction in this case.

**PLEASE TAKE FURTHER NOTICE** that the proposed Bid Procedures are summarized as follows:[3]

(1)    To participate in the bidding process, a person interested in the Purchased Assets (a "<u>Potential Bidder</u>") must first deliver (unless previously delivered) to the Debtor and its counsel, among other documents, an executed confidentiality agreement, proof of ability to perform, and other documentation as the Debtor may reasonably request.

(2)    The Debtor will provide Potential Bidders with reasonable access to its books, records, facilities, key personnel, officers, accountants and legal counsel for the purpose of conducting due diligence.  The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to

---

[3]  The following is a brief summary only and is subject to the Bid Procedures Order and Bid Procedures attached thereto, and in the event of any inconsistency between the summary above and the Bid Procedures Order and Bid Procedures attached thereto, the latter shall control.  Capitalized terms used in this summary that are not otherwise defined shall have the meanings ascribed to them in the Bid Procedures Order and Bid Procedures, as applicable.

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the interests of the Debtor.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.

(3)      The Debtor (in consultation with the Committee) shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Purchased Assets.

(4)      The Debtor proposes the Bid Deadline to be fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time), or such other date as determined by the Debtor (in consultation with the Committee).

(5)      To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following, among other, conditions: (i) the Bidder must provide a Good Faith Deposit equal to $2,500,000 in cash; (ii) the aggregate consideration must equal or exceed the sum of the Purchase Price proposed by the Stalking Horse Bidder (including, without limitation, the assumption of Assumed Liabilities), plus a success fee payable to the Debtor's proposed investment banker in the amount of $2,000,000, plus the Expense Reimbursement of $750,000, plus an initial overbid of at least $500,000; (iii) the Bid must be irrevocable until the earlier of (a) closing of the transaction with the Successful Bidder, or (b) the date that the Sale Order has become final and non-appealable; (iv) the Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the APA with the Stalking Horse Bidder; (v) the Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction, together with a copy of the APA marked to show all changes requested by the Bidder; (vi) the Bidder must commit to close as soon as practicable after the date on which the Sale Order becomes final and non-appealable but no later than the Closing Date as set forth in Section 3.1 of the APA; and (vii) the Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the APA, unless the Debtor in its discretion otherwise agrees;

(6)      The Debtor will conduct the Auction to determine the highest and best bid with respect to the Purchased Assets in the event that there is a Qualified Bidder in addition to the Purchaser.  The Auction shall commence prior to the Sale Hearing at the Los Angeles office of the Debtor's proposed counsel, or other location as determined by the Debtor.  If no higher and better offer is obtained at the Auction, then the Purchaser will be deemed the Successful Bidder, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtor will seek approval of and authority to consummate the Sale contemplated by the APA.  Notwithstanding the foregoing, the Debtor reserves the right to cancel the Auction and seek to move forward with a private sale.

(7)      The Auction, if any, shall be conducted according to certain procedures including the following: (a) only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction, and only the authorized representative of each of the Qualified Bidders (including the Purchaser), the Debtor, SMC, the Committee, and any Affected Counterparty shall be permitted to attend.  During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee).  Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest and best offer for the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

Purchased Assets. The Debtor may adopt additional rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction.

(8)    Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee) shall identify the highest and best offer for the Purchased Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtor. The Debtor shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this Notice and Motion, the attached *Memorandum of Points and Authorities*, the *Declaration of M. Freddie Reiss, Proposed Chief Restructuring Officer, in Support of Emergency First Day Motions* (the "Reiss Declaration") filed concurrently herewith, the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing(s) on this Motion. In addition, the Debtor requests that the Court take judicial notice of all documents filed with the Court in this case.

**PLEASE TAKE FURTHER NOTICE** that the Debtor requests a hearing to be held on the proposed Bid Procedures and other relief set forth in the Bid Procedures Order (the "Procedures Related Relief") on or before **December 5, 2012**. Notice of the hearing, and any deadlines for responses and objections to the Bid Procedures, will be provided at a later date.

**PLEASE TAKE FURTHER NOTICE** that the Debtor will serve this Notice and Motion and the attached *Memorandum of Points and Authorities* on: (a) the Office of the United States Trustee; (b the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (c) the Debtor's prepetition and postpetition lender; (d) the parties that file with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002; (e) all entities known to the Debtor to have asserted any liens or other interest in the Purchased Assets; and (f) all federal, state, and local regulatory or taxing authorities which have a reasonably known interest in the relief requested by this Motion. The Debtor submits that such notice is sufficient and that no other or further notice be given.

**WHEREFORE** the Debtor respectfully requests that this Court enter an order: (i) granting this Motion; (ii) approving the Bid Procedures including the Expense Reimbursement and other proposed protections for Purchaser as set forth in the Bid Procedures Order; (iii) approving the APA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5

and the Sale of the Purchased Assets to Purchaser (or other Successful Bidder), free and clear of all

liens, claims, encumbrances and other interests, subject to the bidding/auction process proposed by

the Debtor; (iv) authorizing the assumption, assignment and sale of the Designated Contracts; and

(v) granting such other and further relief as is just and proper under the circumstances.

Dated:    November 5, 2012                    PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ Debra I. Grassgreen*
    Richard M. Pachulski
    James I. Stang
    Dean A. Ziehl
    Linda F. Cantor
    Debra I. Grassgreen

    Proposed Attorneys for Debtor
    and Debtor in Possession

**EXHIBITS:**

**A – Bid Procedures Order**

    **A-1 – Bid Procedures**

    **A-2 – Notice of Bid Procedures, Auction and Sale**

        **A-2.1 – Copy of Bid Procedures (Included at Exhibit A-1)**

    **A-3 – Auction and Sale Notice**

    **A-4 – Cure Notice**

        **A-4.1 – Cure Exhibit (Not Included)**

        **A-4.2 – Purchaser's Adequate Assurance (Not Included)**

**B – Asset Purchase Agreement**

**C – Sale Order**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

Richard M. Pachulski (CA Bar No. 90073)
James I. Stang (CA Bar No. 94435)
Dean A. Ziehl (CA Bar No. 84529)
Linda F. Cantor (CA Bar No. 153762)
Debra I. Grassgreen (CA Bar No. 169978)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067-4114
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   rpachulski@pszjlaw.com
          jstang@pszjlaw.com
          dziehl@pszjlaw.com
          lcantor@pszjlaw.com
          dgrassgreen@pszjlaw.com

[Proposed] Attorneys for Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 12-_____ (___) |
| American Suzuki Motor Corporation,[1] | Chapter 11 |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER  (A) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS RELATING TO THE ACQUIRED BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING BID PROCEDURES FOR THE SALE AND AUCTION OF ASSETS; (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED THERETO; (D) ESTABLISHING PROCEDURES RELATING TO THE ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN CONTRACTS AND LEASES; (E) APPROVING BID PROTECTIONS; AND (F) GRANTING RELATED RELIEF** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East Imperial Highway, Brea, California 92821.

# Table of Contents

I. INTRODUCTION ............................................................................................. 1

II. BACKGROUND ............................................................................................ 2

    A.   Jurisdiction and Venue .......................................................................... 2

    B.   General Background ............................................................................... 2

III. THE PROPOSED SALE ............................................................................... 5

    A.   Material Terms of the APA ................................................................... 5

    B.   Proposed Bid Procedures ...................................................................... 7

IV. ARGUMENT ................................................................................................ 13

    A.   The Proposed Sale of the Purchased Assets Should Be Approved  Under Section 363(b) of the Bankruptcy Code ................................... 13

    B.   The Proposed Bid Procedures, Expense Reimbursement and  Other Protections Are Reasonable and Appropriate and Will  Facilitate Maximizing the Value of the Purchased Assets ................. 14

    C.   The Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(f) Should Be Approved ................. 17

    D.   The Debtor Should Be Authorized to Assume, Assign and Sell  the Designated Contracts to the Purchaser ......................................... 18

    E.   Purchaser Acted in Good Faith in Connection With the Proposed Sale and  is Therefore Entitled to the Protections of 11 U.S.C. § 363(m) ......... 21

    F.   Notice of the Proposed Sale and Related Matters Is Reasonable  Under the Circumstances . 22

    G.   Request for Waivers of Stay Under Bankruptcy Rules 6004(h) and Rule 6006(d) ................ 23

V. CONCLUSION .............................................................................................. 23

BID PROCEDURES .......................................................................................... 1

    (a)   *Minimum Overbid Increment* ............................................................ 8

    (b)   *Remaining Terms Are the Same as for Qualified Bids* ..................... 8

    (c)   *Announcing Overbids* ........................................................................ 9

    (d)   *Consideration of Overbids* ................................................................ 9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Table of Authorities**

**Cases**

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989)
........................................................................................................................................................... 20

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ........... 17

*Doehring v. Crown Corp. (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) ........................ 15

*Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th
Cir. 1974) ..................................................................................................................................... 13

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992) ........................................... 21

*Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S.
523, 550 (1953) ............................................................................................................................. 20

*In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) ............................... 16

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) .......................... 21

*In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del. Sept. 27, 2000) ........................... 16

*In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D.Cal. Sept. 4, 2008)............... 15

*In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983) ............................................... 22

*In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) .................... 20

*In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985) ............................................... 13

*In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990)................... 18

*In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ....................................... 13

*In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) ................................. 13

*In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) .................................. 23

*In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986) ..................................................... 20

*In re Global Home Products*, Case No. 06-10340 (KG) (Bankr. D. Del. July 14, 2006)................. 16

*In re Global Motorsport Group, Inc., et al.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 14,
2008) ............................................................................................................................................. 16

*In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ......................................................... 13

*In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990) ............................................................... 13

*In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985)......................................... 20

*In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986)................................................ 22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978) ........................................ 22

2  *In re Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977) ..................................................... 20

3  *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D.Cal. Oct. 7, 2010) ... 15, 16

4  *Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) 21

5  *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ..................................................... 13

6  *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 657-58 (S.D.N.Y. 1992) ..................................................... 16

7
8  *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570 (9th Cir. 1998) ............................................................................................... 21

9  *Sassoon Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) ..................................................... 21

10  *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) .......................... 13

11  **Statutes**

12  11 U.S.C. § 363(b)(1) ............................................................................................... 13

13  11 U.S.C. § 363(f) ............................................................................................... 17

14  11 U.S.C. § 363(f)(2) ............................................................................................... 18

15  11 U.S.C. § 363(m) ............................................................................................... 21

16  11 U.S.C. § 365(a) ............................................................................................... 19

17  11 U.S.C. § 365(b)(1) ............................................................................................... 20

18  11 U.S.C. § 365(f)(2) ............................................................................................... 19

19  **Other Authorities**

20  Kelly K. Frazier, *A Comparison Shopping Guide for 363 Sales* ........................................ 16

21  **Rules**

22  Fed. R. Bankr. P. 1007(d) ............................................................................................... 22

23  Fed. R. Bankr. P. 2002 ............................................................................................... 23

24  Fed. R. Bankr. P. 6004(f)(1) ............................................................................................... 14

25  Fed. R. Bankr. P. 6004(h) ............................................................................................... 23

26  Fed. R. Bankr. P. 6006(d) ............................................................................................... 23

27
28

DOCS_SF:81623.8 12832/001

American Suzuki Motor Corporation, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this Memorandum of Points and Authorities in support of its *Motion for Order (A) Approving Sale of Substantially All Assets Relating to the Acquired Business, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Approving Bid Procedures for the Sale and Auction of Assets; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption, Assignment and Sale of Certain Contracts and Leases; (E) Approving Bid Protections; and (F) Granting Related Relief* (the "Motion"),[1] and represents as follows:

## I.

## INTRODUCTION

The Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed plan of reorganization (the "Plan") by which a sale of substantially all of the Debtor's assets, with certain exceptions as described in the Plan, to Purchaser will be implemented. In the event that the Debtor ultimately determines not to proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under sections 363 and 365 of the Bankruptcy Code outside of any proposed plan.  Accordingly, the Debtor has filed the Motion to facilitate a parallel track sale transaction in this case.

Specifically, the Debtor seeks authorization, pursuant to the terms of the APA attached hereto as **Exhibit B**, to sell substantially all of the Debtor's assets related to the Debtor's business of distributing, selling and servicing Suzuki brand motorcycles, all-terrain vehicles, marine outboard motors and related parts and products, and the servicing of Suzuki automobiles, including any warranty work and the sale of parts in connection with such servicing business (together, the "Acquired Business").  The Purchased Assets exclude certain assets comprising or relating to the Debtor's business of distributing and selling Suzuki automobiles, cash and cash equivalents held by the Debtor upon closing, contracts that are not Designated Contracts, the estate's avoidance actions unrelated to the Acquired Business, and certain other excluded assets.  The proposed Purchaser is a newly formed company, NounCo, Inc. ("Purchaser"), an affiliate of Suzuki Motor Corporation

---

[1]  Capitalized terms not defined herein shall have the meanings set forth in the Motion or the APA, as applicable.

("SMC").  The proposed Sale is subject to overbid by a Qualified Bidder.  SMC is the Debtor's sole equity holder and primary secured creditor.

Through the proposed Sale, the Debtor's estate (the "Estate") will receive as consideration approximately $95,000,000 in cash and the assumption of applicable cure claims, warranty obligations, and certain other liabilities.  The Debtor has determined that Purchaser, an affiliate of SMC, is the party likely to provide the greatest consideration for the Purchased Assets, subject to a further marketing effort and higher and better bids.  The Debtor has retained Imperial Capital, LLC as investment banker and will proceed with a thorough marketing process for the Purchased Assets over the next 60-90 days.  The proposed Sale will be subject to overbid in the event another party wishes to provide higher or otherwise better value than that offered by Purchaser.  The Debtor believes that that proposed Sale will maximize the value of the Acquired Business and preserve the Acquired Business as a going concern outside of a plan.

## II.

## BACKGROUND

### A.    Jurisdiction and Venue

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334.  This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2).  Venue of this case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408.  The statutory predicates for the relief sought herein are sections 363(b), (f) and (m) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

### B.    General Background

On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or committee has been appointed in this chapter 11 case.

The Debtor was established in 1986 as the sole distributor in the continental United States of Suzuki automobiles, motorcycles, all-terrain vehicles, and marine outboard engines (the "Suzuki Products").  SMC, the 100% interest holder in the Debtor, manufacturers substantially all of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Suzuki Products[2] and is not a debtor in this or any other insolvency proceeding. As of the Petition Date, the Debtor has approximately 295 employees across three divisions: automotive (the "Automotive Division"), motorcycles and all-terrain vehicles (the "Motorcycle/ATV Division"), and outboard marine motors and related products (the "Marine Division").

In the operation of its business, the Debtor purchases Suzuki Products from SMC and certain other non-debtor affiliates. In turn, the Debtor wholesales virtually all of its inventory through a network of independently owned and unaffiliated dealerships located throughout the continental United States. The dealers then market and sell the Suzuki Products to retail customers. As of the Petition Date, there are approximately 220 automotive dealerships, over 900 motorcycle/ATV dealerships, and over 780 outboard marine dealerships.

Through dealers, the Debtor also sells a portion of its automotive inventory (less than 10%) to car rental companies and others (less than 2%) that lease the vehicles to retail customers. The Debtor also purchases the majority of its automotive parts from SMC and certain unaffiliated companies and resells them to the automotive dealers and authorized warranty service providers.

The Debtor determined that its Automotive Division is facing and will continue to face a number of serious challenges in the highly regulated and competitive automotive industry in the continental U.S. market. The challenges include unfavorable foreign exchange rates, disproportionally high and increasing costs associated with meeting more stringent state and federal automotive regulatory requirements unique to the continental U.S. market, low sales volumes, a limited number of models in its line-up, and existing and potential litigation costs. The Debtor has exhausted all available means to reduce the cost of operating the Automotive Division for it to operate profitably. Accordingly, the Debtor determined that the best way to preserve and enhance the value of its overall business is to wind down new sales of the Automotive Division in the continental U.S. and realign its business focus on the long-term growth of its Motorcycle/ATV and Marine Divisions.

---

[2] The ATVs are manufactured by an 80% owned affiliate of the Debtor. An overview of the Suzuki Products manufactured by SMC, its affiliates, and certain unaffiliated entities is included in the Reiss Declaration.

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Contemporaneous with the filing of this case, the Debtor filed the Plan. Under the proposed Plan, the Motorcycle/ATV and Marine Divisions will remain largely unaffected including the warranties associated with such products. As part of its restructuring, NounCo, Inc., a wholly owned subsidiary of SMC, will purchase the Motorcycle/ATV and Marine Divisions and the parts and service components of the Automotive Division. The restructured Automotive Division intends to honor automotive warranties and authorize the sale of genuine Suzuki automotive parts and services to retail customers through a network of parts and service only dealerships that will provide warranty services.

The Debtor's Motorcycle/ATV Division is strong and competitively positioned in its market, allowing for long-term growth as economic conditions improve. Similarly, the Marine Division has remained competitive during the recent challenging economic times and the Debtor is working to further build its market share in the marine industry through continued investment in new product development and resuming large-scale marketing events focused on attracting new marine customers. The strategy embodied in the proposed Plan returns the Debtor to its roots in the U.S. market, which began with motorcycles, and is intended to position the Debtor for the success of its overall business in the continental U.S. for the benefit of all parties in interest.

The Suzuki name is recognized around the world as a brand of quality products that offer reliability and originality. SMC has informed the Debtor that it continues to invest in its operations, improve its overall performance worldwide, and remains committed to manufacturing Suzuki Products for customers around the world. SMC's manufacturing and world-wide distribution of Suzuki automobiles will continue despite the Debtor's wind down of the continental U.S. Automotive Division.

Additional factual background regarding the Debtor, including its current and historical business operations and the events precipitating its chapter 11 filing, is set forth in detail in the Reiss Declaration filed contemporaneously with this Motion and incorporated herein by reference.

# III.

## THE PROPOSED SALE

### A.    Material Terms of the APA

The Debtor is proposing to sell substantially all of its assets comprising or relating to the Acquired Business to Purchaser, with the following exceptions: (a) the Estate's "avoidance" rights under chapter 5 of the Bankruptcy Code arising out of or related to the Excluded Assets; (b) the Debtor's cash on hand at closing; (c) certain books and records; and (d) any contracts, leases, licenses and other agreements not expressly assumed as part of the Designated Contracts.  The Purchased Assets will be sold free and clear of all liens, claims, rights, interests and encumbrances whatsoever, other than liabilities for future performance under Designated Contracts, in accordance with section 363(b) and (f) of the Bankruptcy Code, with all then-existing liens, claims, rights, interests and encumbrances to attach to the net proceeds of the proposed Sale with the same validity, enforceability, and priority, if any, as existed with respect to the Purchased Assets as of the date of the commencement of this chapter 11 case.  Outside of a plan, the Debtor believes that the consummation of the Sale to the Purchaser or to a successful overbidder will provide the Debtor and its creditors and other stakeholders with the best opportunity possible for maximizing value by realizing upon the Purchased Assets through a Sale as a going concern, subject to further marketing effort and higher and better bids consistent with the Bid Procedures.

The following are the material terms of the proposed Sale to Purchaser under the APA:[3]

(i)    **Purchase Price:**  The Purchase Price shall consist of (i) the payment by Purchaser of $95,000,000 U.S. Dollars in cash and (ii) the assumption by Purchaser of the Assumed Liabilities.

(ii)    **Purchased Assets:** Substantially all assets relating to the Acquired Business.

(iii)    **Excluded Assets:**  Substantially all assets relating to the distribution and sale of Suzuki brand automobiles in the United States, any cash or cash equivalents or accounts of the Debtor, any Avoidance Actions relating to the Excluded Assets, any books and records of

---

[3]  The description below only summarizes certain provisions of the APA, and the terms of the APA control in the event of any inconsistency.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Debtor relating to the pre-Closing period that the Debtor is legally required to retain, certain rights under applicable insurance policies, and such other Excluded Assets as are set forth in Section 1.2 of the APA.

    **(iv)   Assumed Liabilities:** (i) All Liabilities relating to the ownership or operation of the Purchased Assets or the Acquired Business after the Closing Date; (ii) all Liabilities under express factory or implied warranties of Suzuki automotive, motorcycle, all-terrain vehicle and marine products and otherwise arising out of the Acquired Business, regardless of when arising; (iii) any Liability of the Debtor for indebtedness under the debtor-in-possession credit facility incurred for the purchase of inventory, to the extent such inventory is purchased by Purchaser, provided that such indebtedness shall not include any indebtedness of the Debtor that is outside of the required fifteen-day credit terms; (iv) all Liabilities under any of the Purchased Contracts, to the extent such Liabilities first arise after the Closing Date; (v) all Liabilities for Cure Costs; (vi) Liability for Transfer Taxes relating to the sale transaction; (vii) all Liabilities under the collective bargaining agreement for the Represented Employees, to the extent such Liabilities first arise after the Closing Date; (viii) all Liability for Transferred Employee Compensation and Benefits; and (ix) all Liabilities under Service and Parts Agreements assigned to, or entered into with, Purchaser to the extent that such Liabilities first arise after the Closing Date.

    **(v)   Excluded Liabilities:** Any liability of the Debtor that is not an Assumed Liability.

    **(vi)   Contracts to be Assumed and Assigned**: Purchaser shall have the right, in Purchaser's sole and absolute discretion, to designate any executory contract or unexpired lease of the Debtor as a Purchased Contract or an Excluded Contract.

    **(vii)   Expense Reimbursement**: $750,000, payable in the event of a successful closing of the Purchased Assets with a buyer other than the Purchaser or in the event of a material breach of the APA by the Debtor.

    **(viii)   Closing:** Must occur by March 29, 2013.

6

DOCS_SF:81623.8 12832/001

1        **(ix)**    **Representations and Warranties**: Customary for a transaction of this kind.

2  Except as specifically set forth in the APA, Purchaser will accept the Purchased Assets at the

3  Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."

4        **(x)**    **Termination Rights:** Customary for a transaction of this kind.

5  **B.**    **Proposed Bid Procedures**

6      **1.**    **General Description**

7      The Debtor will commence a thorough marketing process for the Purchased Assets following

8  entry of the Bid Procedures Order.  The Bid Procedures are attached as Exhibit 1 to the Bid

9  Procedures Order, and are summarized as follows:[4]

10        (a)    Participation Requirements

11      In order to participate in the bidding process and to otherwise be considered for any purpose

12  hereunder, a person interested in the Purchased Assets (a "Potential Bidder") must first deliver

13  (unless previously delivered) to the Debtor and its counsel an executed confidentiality agreement in

14  form and substance acceptable to the Debtor and its counsel and proof of ability to perform, which

15  should include, *inter alia*, the Potential Bidder's current financial statements (audited if they exist),

16  contact names and numbers for verification of financing sources, evidence of the Potential Bidder's

17  internal resources and proof of any debt or equity funding commitments that is needed to close the

18  contemplated transaction, any such other form of financial disclosure or credit-quality support

19  information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential

20  Bidder has the ability to close the contemplated transaction, other such documentation as the Debtor

21  may reasonably request.

22        (b)    Designation as Qualified Bidder

23      A "Qualified Bidder" is a Potential Bidder that delivers the documents described above, and

24  that the Debtor (in consultation with the Committee) determines is reasonably likely to submit a

25  *bona fide* offer that would result in greater cash value being received for the benefit of the Debtor's

26  creditors than under the APA and to be able to consummate a sale if selected as a Successful Bidder.

27
28

---

[4]  The following is a brief summary only and is subject to the Bid Procedures Order and Bid Procedures attached thereto, and in the event of any inconsistency between the summary above and the Bid Procedures Order and Bid Procedures attached thereto, the latter shall control.

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Upon the receipt from a Potential Bidder of the information required, the Debtor (in consultation with the Committee) shall determine in its sole discretion and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.  The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to satisfy all Bid Requirements (hereinafter defined).

(c)     Access to Due Diligence Materials

The Debtor will provide Potential Bidders with reasonable access to its books, records, facilities, key personnel, officers, accountants and legal counsel for the purpose of conducting due diligence.  The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor.  Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information.  If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.

(d)     Due Diligence From Bidders

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction ("Bidder Related Information").  Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder.  Unless the applicable Bidder consents to the Bidder Related Information being provided to other parties in interest, only the Debtor and its counsel and advisors will be provided with the Bidder Related Information.

(e)     Bidding Process

The Debtor and its advisors (in consultation with the Committee) shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due

8

diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Purchased Assets (collectively, the "Bidding Process"). The Debtor shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process.

(f)     Bid Deadline

The Debtor proposes that the deadline for submitting bids by a Qualified Bidder be fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time) (the "Bid Deadline"), or such other date as determined by the Debtor (in consultation with the Committee).

(g)     Bid Requirements

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following conditions (the "Bid Requirements"): (i) each Bid, other than a Bid submitted by the Purchaser, must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $2,500,000; (ii) the consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor; (iii) the aggregate consideration must equal or exceed the sum of the Purchase Price (including, without limitation, the assumption of Assumed Liabilities), plus a success fee payable to the Debtor's proposed investment banker in the amount of $2,000,000, plus the Expense Reimbursement of $750,000, plus at least $500,000 (the "Initial Minimum Overbid Increment"); (iv) a Bid must be irrevocable until the earlier of (a) closing of the transaction with the Successful Bidder, or (b) the date that the Sale Order has become final and non-appealable (the "Termination Date"); (v) the Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the APA, and must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"), together with a copy of the APA marked to show all changes requested by the Bidder; (vi) the Contemplated Transaction Documents must include a commitment to close as soon as practicable after the date on which the Sale Order becomes final and non-appealable but no

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

later than the Closing Date as set forth in Section 3.1 of the APA; (vii) a Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the APA, unless the Debtor in its discretion otherwise agrees, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the APA; (viii) a Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact information for such financing sources; and (ix) a Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment, and by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtor (in consultation with the Committee) believes that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Debtor (in consultation with the Committee) not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit on or before the date that is seven (7) days after the entry of the Sale Order.

The Debtor shall have the right to reject any and all bids that it believes do not comply with the Bid Procedures.  For purposes hereof, the APA shall constitute a Qualified Bid and the Purchaser (together with any assigns) shall be deemed to be a Qualified Bidder that has satisfied all Bid Requirements.

(h)    Auction

The Debtor will conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets in the event that there is a Qualified Bidder in addition to the

10

Purchaser.  Notwithstanding the foregoing and any other provision herein, the Debtor reserves the right to cancel the Auction and seek to move forward with a private sale.

The Debtor proposes the Auction, if any, to commence prior to the Sale Hearing at the offices of Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, or other location as determined by the Debtor.

No later than the day prior to the commencement of the Auction, the Debtor will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (excluding any Bidder Confidential Information).  If no higher and better offer is obtained at the Auction, then the Purchaser will be deemed the Successful Bidder, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtor will seek approval of and authority to consummate the Sale contemplated by the APA.

If there is an Auction, it shall be conducted according to certain procedures as set forth in the Bid Procedures.  During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee).  Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest and best offer for the Purchased Assets.

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee) shall identify the highest and best offer for the Purchased Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest and best offer will provide the greatest amount of net value to the Debtor, and the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination.  Upon seven (7) days' prior notice by the Debtor, the Back-up Bidder selected by the Debtor must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason. If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, the

11

1   Purchaser will be the Successful Bidder, and such bid, the Successful Bid.  The Debtor shall sell the

2   Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the

3   Bankruptcy Court after the Sale Hearing.

4              (i)     Sale Hearing

5   The Sale Hearing shall be conducted by the Bankruptcy Court by no later than February 28,

6   2013.

7   **2.    Bid Protections**

8   Recognizing the Purchaser's expenditure of time, energy and resources, and that the

9   Purchaser has provided a floor bid with respect to the Purchased Assets, the Debtor has agreed to

10  provide certain bid protections to the Purchaser.

11             (a)     Expense Reimbursement

12  The Debtor has agreed to reimburse the Stalking Horse Bidder for all Transaction Expenses

13  (as defined in the APA) in an amount not to exceed $750,000 (the "Expense Reimbursement") in the

14  event that: (i) the Stalking Horse Bidder is not approved by the Bankruptcy Court as the purchaser of

15  the Purchased Assets, (ii) the Stalking Horse Bidder is not in default of its obligations under the

16  APA, and (iii) the Purchased Assets are thereafter sold to a Successful Bidder at the Auction for

17  consideration in excess of the purchase price provided for in the APA notwithstanding the Stalking

18  Horse Bidder's willingness and ability to consummate the transactions contemplated by the APA,

19  which payment shall be made to the Stalking Horse Bidder promptly following closing with the

20  Successful Bidder.

21             (b)     Overbid Protection

22  As noted above, any initial bid submitted by a party or parties other than the Stalking Horse

23  Bidder (the "Initial Overbid") must be in an amount that is sufficient to pay a success fee to the

24  Debtor's proposed investment banker in the amount of $2,000,000, plus the Expense Reimbursement

25  of $750,000 and result in additional consideration to the Estate (as compared to the purchase price

26  offered by the Stalking Horse Bidder), after payment of the success fee and Expense

27  Reimbursement, of at least $500,000.  Each subsequent overbid, whether by the Stalking Horse

28  Bidder or another bidder, must be in an amount that is sufficient to result in additional consideration

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

to the Estate (as compared to the immediately preceding bid) of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee), except that the Stalking Horse Bidder shall not be required to include the amount of the Expense Reimbursement as part of its bid.

**IV.**

**ARGUMENT**

**A.    The Proposed Sale of the Purchased Assets Should Be Approved
Under Section 363(b) of the Bankruptcy Code**

A debtor, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose exists).  Among other factors, courts should consider the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession.  *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light

2  of impending deterioration of market value of debtor's assets).

3  It is the Debtor's business judgment that, after considering potential alternatives and as a

4  parallel track transaction to the proposed Plan, the proposed Sale of the Purchased Assets is in the

5  best interest of the Debtor, the Estate and its creditors and stakeholders.  The proposed Sale will

6  preserve a substantial portion of the Debtor's business as a going concern.  Additionally, the Debtor

7  believes that the consideration to be paid by Purchaser represents a fair and reasonable offer in light

8  of all the terms of the proposed Sale, and as a result of the Debtor's postpetition marketing efforts,

9  such offer (or any higher and better offer obtained through the proposed Bid Procedures and

10  Auction) will provide maximum value to the Debtor under the current circumstances.

11  Overall, the proposed Sale's benefits greatly exceed those of any piecemeal liquidation.  The

12  proposed Sale is supported by sound business reasons and is in the best interests of the Debtor and

13  its Estate.

14  **B.  The Proposed Bid Procedures, Expense Reimbursement and**
       **Other Protections Are Reasonable and Appropriate and Will**
15     **Facilitate Maximizing the Value of the Purchased Assets**

16

17  In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course

18  of business may be by private sale or by auction.  The Debtor has obtained a "stalking horse" bid

19  from the Purchaser for the Purchased Assets, and seeks authority to conduct the Auction (if

20  applicable) at which the Purchaser's bid will be subjected to higher and better offers.  The Expense

21  Reimbursement and the Bid Procedures described herein are reasonably calculated to encourage a

22  buyer to submit a final bid within the range of reasonably anticipated values and to maximize the

23  value of the Purchased Assets for the Estate's benefit.  Aside from the Expense Reimbursement,

24  there is no "break-up" compensation payable to the Purchaser under the APA.

25  The Stalking Horse Purchaser will be the stalking horse for competitive bids, potentially

26  leading to further competition and the establishment of a baseline against which higher or otherwise

27  better offers can be measured.  The Debtor, with the assistance of its professionals, will further

28  solicit proposals for the purchase of the Purchased Assets prior to the proposed bid deadline, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

DOCS_SF:81623.8 12832/001

based on the Debtor's efforts, the Debtor will have more than sufficiently marketed the Purchased Assets prior to the Sale Hearing.  The Debtor has proposed Bid Procedures designed to maximize the purchase price that should be realized from the sale of the Purchased Assets.  In short, the Debtor submits that good cause exists to approve such procedures and provisions because they are fair and reasonable under the circumstances and will encourage competitive bidding and the highest and best price for the Purchased Assets.  Indeed, courts frequently approve competitive bidding procedures like the proposed Bid Procedures as a means of ensuring that such sales will maximize value for the estate.  *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders); *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D.Cal. Oct. 7, 2010) (J. Bauer) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D.Cal. Sept. 4, 2008) (J. Tighe) (similar).

In particular respect to the Expense Reimbursement, to reimburse the Stalking Horse Bidder for the costs incurred in serving as the stalking horse whose bid will be subject to higher and better offers, the Debtor seeks approval of the Expense Reimbursement in accordance with the terms of the APA.  The Debtor believes that the Expense Reimbursement is justified, given the benefits to the Debtor's estate of having a stalking horse bidder by virtue of a definitive asset purchase agreement and the risk to the Stalking Horse Bidder that a third-party offer may ultimately be accepted, and that approval of the Expense Reimbursement under the terms of the APA is necessary to preserve and enhance the value of the Debtor's estate.

Bidding incentives encourage a potential purchaser to invest the requisite time, money and effort to negotiate with the Debtor and perform the necessary due diligence attendant to the acquisition of the Debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.  Here, the bidding incentive of the Expense Reimbursement in an amount not to exceed $750,000 is the minimal protection necessary to ensure the Purchaser's participation in the sale process.  Historically, bankruptcy courts have approved bidding incentives under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

directors taken in good faith and in the exercise of honest judgment.  *See, e.g.*, *In re 995 Fifth Ave.
Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately
necessary to convince a white knight to enter the bidding by providing some form of compensation
for the risks it is undertaking") (internal quotation marks and citation omitted).

The APA and the Debtor's agreement to pay the Expense Reimbursement are the product of
good faith, arm's length negotiations between the Debtor and Stalking Horse Bidder.  The Expense
Reimbursement is fair and reasonable in amount, and is limited to reimbursement of actual costs
incurred by the Stalking Horse Bidder in connection with the pending Sale up to a cap of only
$750,000.  The Expense Reimbursement has already encouraged competitive bidding in that the
Stalking Horse Bidder would not have entered into the APA without this provision, and it will likely
promote more competitive bidding and enhance the ultimate purchase price.

Further, the Expense Reimbursement of up to $750,000, which represents less than 1% of the
purchase price under the APA (prior to any adjustments thereto) is well within the spectrum of
break-up compensation approved by bankruptcy courts in chapter 11 cases.  *See, e.g., In re Victor
Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) (approving
approximately 2.3% break-up fee); *In re Global Motorsport Group, Inc., et al.*, Case No. 08-10192
(KJC) (Bankr. D. Del. Feb. 14, 2008) (approving break-up fee of approximately 4% in connection
with sale);  *In re Global Home Products*, Case No. 06-10340 (KG) (Bankr. D. Del. July 14, 2006)
(approving break-up fee of 3.3%); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del. Sept.
27, 2000) (approving 3.64% break-up fee); Kelly K. Frazier, *A Comparison Shopping Guide for 363
Sales*, p. 139 (break-up and topping fees range from 1.5 to 5 percent "with the average being
approximately 2.7 percent"); *see also Official Committee of Subordinated Bondholders v. Integrated
Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 657-58 (S.D.N.Y. 1992)
(establishing three basic factors for determining whether to permit break-up fees in bankruptcy:
whether "the relationship of the parties who negotiated the break-up fee [is] tainted by self-dealing
or manipulation," whether the "fee hamper[s], rather than encourage[s], bidding," and whether "the
amount of the fee [is] unreasonable relative to purchase price"), *appeal dismissed*, 3 F.3d 49 (2d Cir.
1993).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

1  For the reasons set forth above, the Debtor respectfully requests approval of: (a) the proposed

2  overbid protections including the Expense Reimbursement; (b) the Bid Procedures for the conduct of

3  overbidding, the Auction and selection of the Successful Bidder(s); (c) the procedures set forth

4  herein for notice to counterparties under contracts and leases proposed to be assumed, assigned and

5  sold in connection with the proposed Sale, and the determination and payment of applicable Cure

6  Costs; (d) the scheduling of the Sale Hearing and other matters for which scheduling is requested;

7  and (e) the related relief sought hereby.

8  **C.    The Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances
9  and Interests Pursuant to 11 U.S.C. § 363(f) Should Be Approved**

10  The Debtor requests that the Court approve the sale of the Purchased Assets free and clear of

11  all liens, claims, encumbrances and interests (collectively, "Interests"), with any such Interests to

12  attach to the sale proceeds with the same validity, enforceability, and priority, if any, as existed with

13  respect to the Purchased Assets as of the date of the commencement of this chapter 11 case.

14  Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside

15  the ordinary course of business "free and clear of any interest in such property of an entity" if any

16  one of the five following conditions is met:

17  1.    applicable non-bankruptcy law permits sale of such property free and clear of
18  such interest;

19  2.    such entity consents;

20  3.    such interest is a lien and the price at which such property is to be sold is
21  greater than the aggregate value of all liens on such property; and

22  4.    such interest is in bona fide dispute; or

23  5.    such entity could be compelled, in a legal or equitable proceeding, to accept a
24  money satisfaction of such interest.

25  11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any

26  one of these five conditions provides authority to sell the Purchased Assets free and clear of liens.

27  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

17

DOCS_SF:81623.8 12832/001

1    Under section 363(f)(2) of the Bankruptcy Code, a debtor may sell estate property free and

2    clear of liens, claims, interests, and encumbrances if the entity asserting the interest consents.  SMC,

3    the Debtor's equity holder, an affiliate of Purchaser and a secured creditor, consents to the proposed

4    Sale to Purchaser, with SMC's liens against any Purchased Assets to attach to the Sale proceeds.

5    Further, to the extent that any other party asserting an Interest receives notice of the Motion

6    and does not file a written objection hereto, such party should be deemed to have consented to the

7    proposed Sale of the Purchased Assets free and clear of its asserted Interest(s).  *See In re Channel*

8    *One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

9    In all events, the Debtor submits that every other Interest that is not a liability assumed by

10    Purchaser will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code,

11    and that any such Interest will be adequately protected by either being paid in full at the time of

12    closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the

13    Debtor may possess with respect thereto.  The Debtor has conducted a UCC search of purported

14    holders of liens against the Purchased Assets in conjunction with the proposed Sale.  The Debtor has

15    served or will serve such purported lienholders with notice of the Motion, and will serve notice of

16    any Sale order approving the relief requested by the Motion.

17    In sum, this Court should approve the Sale of the Purchased Assets to the Purchaser or the

18    Successful Bidder free and clear of Interests under Bankruptcy Code section 363(f), and any

19    potential claimants should be compelled to look exclusively to the proceeds of the Sale for

20    satisfaction of their claims.

21    **D.    The Debtor Should Be Authorized to Assume, Assign and Sell**
**the Designated Contracts to the Purchaser**

22

23    Pursuant to the APA, the Purchaser shall designate certain contracts and leases of the Debtor

24    ("Designated Contracts"), to be selected for assumption by the Debtor and assignment and sale to the

25    Purchaser as part of the Sale.  The Debtor will file and serve on the affected nondebtor

26    counterparties ("Counterparties") a schedule of Designated Contracts and proposed cure amounts, if

27    any (the "Cure Notice"), no later than twenty-one (21) days prior to the Sale Hearing, and

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

1    Counterparties will have an opportunity to object to such proposed assumption and/or cure amounts

2    as provided in the Bid Procedures Order.

3    The Debtor requests, pursuant to sections 363 and 365 of the Bankruptcy Code, authority to

4    assume, assign and sell the Estate's interests in the Designated Contracts to the Purchaser (or

5    successful bidder), subject to payment of the cure amount designated for each such Designated

6    Contract on the Cure Notice and any adequate assurance of future performance which the Court may

7    order Purchaser to provide upon the request of a party in interest.  The Debtor further requests that

8    the order approving the proposed Sale provides that the Designated Contracts will be assigned and

9    sold to, and remain in full force and effect for the benefit of, Purchaser, notwithstanding any

10    provisions therein, including those described in sections 365(b)(2) and (f)(1) and (3) of the

11    Bankruptcy Code, that prohibit such assignment.

12    The Bankruptcy Code provides, in pertinent part, that:

13    
> The trustee may assign an executory contract or unexpired
> lease of the debtor only if –

14    

15    
> (A)    the trustee assumes such contract or lease in accordance
> with the provisions of this section; and

16    
> (B)    adequate assurance of future performance by the
> assignee of such contract or lease is provided, whether or not
> there has been a default in such contract or lease.

17    

18    11 U.S.C. § 365(f)(2).  A debtor "subject to the court's approval, may assume or reject any

19    executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).

20    Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an

21    unexpired lease or executory contract of a debtor, providing in relevant part that:

22    
> (b)(1)  If there has been a default in an executory contract or
> unexpired lease of the debtor, the trustee may not assume such contract
> or lease unless, at the time of assumption of such contract or lease, the
> trustee –

23    

24    

25    
> (A)    cures, or provides adequate assurance that the trustee
> will promptly cure, such default ....;

26    
> (B)    compensates, or provides adequate assurance that the
> trustee will promptly compensate, a party other than the debtor to such
> contract or lease, for any actual pecuniary loss to such party resulting
> from such default; and

27    

28    

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

1

(C)    provides adequate assurance of future performance under such contract or lease.

2

3   11 U.S.C. § 365(b)(1).  Although section 365 of the Bankruptcy Code does not set forth standards

4   for courts to apply in determining whether to approve a decision to assume an executory contract,

5   courts have consistently applied a "business judgment" test when reviewing such a decision.  *See,*

6   *e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318

7   U.S. 523, 550 (1953); *In re Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977).  A trustee satisfies the

8   "business judgment" test when he or she determines, in good faith, that assumption of an executory

9   contract will benefit the estate.  *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986).  The

10   assumption and assignment of the Designated Contracts will benefit the Estate as that will be part of

11   a Sale yielding substantial proceeds for the Estate, as well as minimizing unsecured claims based on

12   rejection of contracts.

13          Assignees must, under appropriate circumstances, "cure" defaults under contracts to be

14   assigned and provide "adequate assurance of future performance," the meaning of which depends on

15   the facts and circumstances of each case, but should be given "practical, pragmatic construction."

16   *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J.

17   1989*).  See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985); *In re Bon Ton*

18   *Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).  Here, Purchaser will promptly

19   pay any valid cure amounts for contracts it selects.  Further, information regarding Purchaser's

20   adequate assurance of future performance will be available upon request by parties to potential

21   Designated Contracts (and will also be included as an exhibit to the Cure Notice (as defined in the

22   Bid Procedures Order)) that will be sent to Counterparties, and the Court may hold a hearing thereon

23   in the event of an objection to the assignment and sale to Purchaser of a Designated Contract.  If

24   necessary, the Purchaser or other Successful Bidder shall provide further evidence of adequate

25   assurance of future performance to Counterparties at or before the Sale Hearing.

26          With these safeguards in place, assumption, assignment and sale of the Designated Contracts

27   is appropriate and should be approved.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.    Purchaser Acted in Good Faith in Connection With the Proposed Sale and is Therefore Entitled to the Protections of 11 U.S.C. § 363(m)**

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.  11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good faith," one court has held:

> [t]he requirement that a Buyer act in good faith . .  speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted).

While Purchaser is an affiliate of SMC, an insider of the Debtor, the proposed Sale to Purchaser was negotiated in good faith, at arms' length and without collusion or fraud of any kind. A special committee of the Debtor's board of directors, consisting entirely of independent directors, approved the proposed Sale.  Both the Consideration and the terms and conditions of the proposed Sale were the subject of extensive negotiations between the Debtor and representatives of Purchaser. Accordingly, this Court should find that Purchaser acted in good faith within the meaning of section 363(m) of the Bankruptcy Code.[5]  *See generally Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570 (9th Cir. 1998); *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sassoon Jeans, In*c., 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd*., 706 F.2d 301, 305 (10th Cir.

[5]  If a party other than Purchaser is the Successful Bidder, the Debtor intends to make an appropriate showing at the Sale Hearing that the purchase agreement with the other Successful Bidder is a negotiated, arm's length transaction, in which the Successful Bidder at all times has acted in good faith under and otherwise in accordance with the standards set forth above.

21

1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)). Notwithstanding the foregoing, the Debtor shall present evidence, as necessary, prior to or at the Sale Hearing relating to Purchaser's good faith.

**F.    Notice of the Proposed Sale and Related Matters Is Reasonable
<u>Under the Circumstances</u>**

By no later than fourteen (14) days following entry of the Bid Procedures Order, the Debtor will serve notice by U.S. or international mail of the Bid Procedures, Auction and Sale Hearing (the "<u>Sale and Bid Procedures Notice</u>"), substantially in the form attached to the Bid Procedures Order, upon (a) the U.S. Trustee; (b) counsel for the official committee of unsecured creditors, if appointed (the "<u>Committee</u>"); (c) if a Committee has not been appointed by the date of this Order, the creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d); (d) the Debtor's prepetition and postpetition lender; (e) counsel for the Purchaser; (f) parties that have filed with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002; (g) all entities known to the Debtor to have asserted any liens or other interests in any Purchased Assets; and (h) all federal, state, and local regulatory, taxing and other authorities which have a reasonably known interest in the relief requested by the Motion, including the United States Attorney's office, all state attorneys general in states in which the Debtor and/or its network of dealers does business, and the Internal Revenue Service (collectively, the "<u>Notice Parties</u>").

Further, by no later than fourteen (14) days following entry of the Bid Procedures Order, the Debtor will serve by U.S. or international mail notice of the Auction and Sale Hearing (the "<u>Creditor Notice</u>"), substantially in the form attached to the Bid Procedures Order, on all of the Debtor's known creditors and all other known dealers, vendors, suppliers, lenders, contract/license/lease counterparties; provided further that, at any time, in addition to the foregoing service, the Debtor may publish a comparable notice in *AutoNews , USA Today*, *The Los Angeles Times* and/or comparable national edition publication(s). Finally, as provided in the Bid Procedures Order and by no later than twenty-one (21) days prior to the Sale Hearing, the Debtor will serve by U.S. or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  international mail a notice ("Cure Notice"), substantially in the form attached to the Bid Procedures

2  Order, on the nondebtor counterparties to Designated Contracts that may be assumed, assigned and

3  sold as part of the Sale transaction.

4       Under Bankruptcy Rule 2002(a) and (c), the Debtor is required to notify its creditors of the

5  proposed Sale, disclosure of the time and place of the Auction, the terms and conditions of the Sale,

6  and the deadline for filing any objections thereto.  The notices prepared by the Debtor contain the

7  type of information required under Bankruptcy Rule 2002, and other relevant information.  This

8  information will enable interested parties to participate in the Sale process, the Auction and the Sale

9  Hearing if they so choose.  Thus, the Debtor submits that adequate notice of the Motion and the Sale

10  Hearing has been and will be provided.  *See, e.g., In re Delaware & Hudson Ry.*, 124 B.R. 169, 180

11  (Bankr. D. Del. 1991) (the disclosures necessary in a sale notice need only include the terms of the

12  sale and the reasons why such a sale is in the best interests of the estate and do not need to include

13  the functional equivalent of a disclosure statement).

14  **G.**     **Request for Waivers of Stay Under Bankruptcy Rules 6004(h) and Rule 6006(d)**

15       In order to allow the immediate realization of value from the proposed Sale, the Debtor

16  respectfully requests that any orders on the Motion be effective immediately, notwithstanding the

17  fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

18       As the Debtor expressed above, its goal is to efficiently and expeditiously administer the

19  estate's financial and business affairs.  An expedient conclusion to the Sale process will inure to the

20  benefit of the estate and its creditors.  Waiver of any stay will permit the proposed Sale to take place

21  as early as possible under the circumstances.

22  **V.**

23  **CONCLUSION**

24       For all the foregoing reasons, the Debtor respectfully requests that this Court enter an order:

25  (i) granting the Motion; (ii) approving the Bid Procedures including the Expense Reimbursement

26  and other proposed protections for Purchaser as set forth in the Bid Procedures Order; (iii) approving

27  the APA and the Sale of the Purchased Assets to Purchaser (or a Successful Bidder), free and clear

28  of all liens, claims, encumbrances and interests, subject to the bidding/auction process proposed by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

23

1  the Debtor; (iv) authorizing the assumption, assignment and sale of the Designated Contracts; and

2  (v) granting such other and further relief as is just and proper under the circumstances.

3  Dated:    November __, 2012              PACHULSKI STANG ZIEHL & JONES LLP

4

5                                          By: _____
                                               Richard M. Pachulski
6                                              James I. Stang
                                               Dean A. Ziehl
7                                              Linda F. Cantor
                                               Debra I. Grassgreen
8
                                               [Proposed] Attorneys for Debtor
9                                              and Debtor in Possession

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**(Bid Procedures Order)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

1  Richard M. Pachulski (CA Bar No. 90073)
   James I. Stang (CA Bar No. 94435)
2  Dean A. Ziehl (CA Bar No. 84529)
   Linda F. Cantor (CA Bar No. 153762)
3  Debra I. Grassgreen (CA Bar No. 169978)
   PACHULSKI STANG ZIEHL & JONES LLP
4  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California  90067-4100
5  Telephone: 310/277-6910 / Facsimile: 310/201-0760
   Email:   rpachulski@pszjlaw.com
6            jstang@pszjlaw.com
             dziehl@pszjlaw.com
7            lcantor@pszjlaw.com
             dgrassgreen@pszjlaw.com
8
   [Proposed] Attorneys for Debtor
9  and Debtor in Possession

10              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
11                   SANTA ANA DIVISION

12  In re:                              Case No.: 12-_____ (___)

13  American Suzuki Motor Corporation,[1]   Chapter 11

14                    Debtor.

15                                       ORDER (A) APPROVING BID
                                         PROCEDURES FOR THE SALE OF
16                                       DEBTOR'S ASSETS RELATED TO
                                         ACQUIRED BUSINESS AND AUCTION
17                                       OF ASSETS; (B) SCHEDULING AN
                                         AUCTION AND HEARING TO
18                                       CONSIDER THE SALE AND APPROVE
                                         THE FORM AND MANNER OF NOTICE
19                                       RELATED THERETO; (C)
                                         ESTABLISHING PROCEDURES
20                                       RELATING TO THE ASSUMPTION,
                                         ASSIGNMENT AND SALE OF CERTAIN
21                                       CONTRACTS AND LEASES;
                                         (D) APPROVING BID PROTECTIONS;
22                                       AND (E) GRANTING RELATED RELIEF

23        Upon the motion (the "Motion")[2] of American Suzuki Motor Corporation, the above-

24  captioned debtor and debtor in possession (the "Debtor") for entry of an order, pursuant to sections

25  105, 363 and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended (the

26  "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy

27  _____
28  [1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East
    Imperial Highway, Brea, California 92821.
    [2]  Capitalized terms not defined herein shall have the meanings set forth in the Motion or Bid Procedures, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Procedure (the "Bankruptcy Rules"), *inter alia*, approving the Bid Procedures including the

Expense Reimbursement and other proposed protections for Purchaser (or other Successful Bidder),

approving the APA and the Sale of the Purchased Assets to Purchaser, free and clear of all liens,

claims, encumbrances and interests, subject to the bidding/auction process proposed by the Debtor,

and authorizing the assumption, assignment and sale of the Designated Contracts; and the Court

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§

157 and 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§

1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the

Debtor's estate, its creditors, and all other parties in interest; and the Debtor having provided

appropriate notice of the Motion and the opportunity for a hearing on the Motion under the

circumstances and no other or further notice with respect to the approval of the Bid Procedures need

be provided; and the Court having reviewed the Motion and having heard the statements in support

of the relief requested therein at a hearing before the Court; and the Court having considered the

Motion, all pleadings and papers filed in connection with the Motion, including the *Declaration of*

*M. Freddie Reiss, Proposed Chief Restructuring Officer, in Support of Emergency First Day*

*Motions* and the Memorandum of Points and Authorities filed in support thereof, and the arguments

of counsel and evidence proffered at the hearing on the Motion; after due deliberation and good and

sufficient cause appearing therefor,

     THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

     a.    The bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") are

reasonable and appropriate under the circumstances of this chapter 11 case and serve to maximize

value for the benefit of the Debtor and its estate.  The Bid Procedures carefully balance the Debtor's

interests in (i) inducing a buyer to commit to purchase the Purchased Assets, (ii) preserving the

opportunity to attract higher and better offers, and (iii) expediting and facilitating the sale process.

     b.    The Purchaser has expended, and likely will continue to expend, considerable time,

money and energy pursuing the Sale transaction and has engaged in extensive arm's length and good

faith negotiations.  The Debtor has demonstrated a sound business justification for authorizing the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A:2

payment of the Expense Reimbursement to the Purchaser in accordance with the APA.  The Expense

Reimbursement is fair and reasonable, provides a material benefit to the Debtor's estate and

creditors, will likely promote more competitive bidding and enhance the ultimate purchase price, and

was negotiated by the Debtor and the Purchaser in good faith and at arm's length.

c.    The Notice of Bid Procedures, Auction and Sale Hearing, substantially in the form

attached hereto as **Exhibit 2** (the "Sale and Bid Procedures Notice"), the Auction and Sale Notice,

substantially in the form attached hereto as **Exhibit 3** (the "Creditor Notice"), and the notice

substantially in the form of **Exhibit 4** hereto to be served on counterparties to Designated Contracts

("Cure Notice"), each provide adequate notice concerning the proposed Sale and the proposed

assumption, assignment and sale of Designated Contracts, and is intended to provide due and

adequate notice of the relief sought in the Motion.

IT IS HEREBY ORDERED THAT:

1.    The relief requested in the Motion is granted as set forth in this Bid Procedures Order.

2.    The Bid Procedures as set forth on the attached **Exhibit 1** are approved in their

entirety, and are incorporated herein by reference.

3.    The proposed Sale, the proposed assumption, assignment and sale of the Designated

Contracts, and the Sale Hearing (as defined below) shall be conducted in accordance with the

provisions of this Bid Procedures Order and the Bid Procedures.

4.    By no later than fourteen (14) days following entry of this Bid Procedures Order, the

Debtor shall serve by first class U.S. or international mail the Sale and Bid Procedures Notice on (a)

the U.S. Trustee; (b) counsel for the official committee of unsecured creditors, if appointed (the

"Committee"); (c) if a Committee has not been appointed by the date of this Order, the creditors

appearing on the list filed in accordance with Bankruptcy Rule 1007(d); (d) the Debtor's prepetition

and postpetition lender; (e) counsel for the Purchaser; (f) parties that have filed with the Court

requests for notice of all matters in accordance with Bankruptcy Rule 2002; (g) all entities known to

the Debtor to have asserted any liens or other interests in any Purchased Assets; and (h) all federal,

state, and local regulatory, taxing and other authorities which have a reasonably known interest in

the relief requested by the Motion, including the United States Attorney's office, all state attorneys

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

general in states in which the Debtor and/or its network of dealers does business, and the Internal

Revenue Service (collectively, the "Notice Parties").

5.    By no later than fourteen (14) days following entry of this Bid Procedures Order, the

Debtor shall serve by first class U.S. or international mail the Creditor Notice on all of its known

creditors and all other known dealers, vendors, suppliers, lenders, contract/license/lease

counterparties.  At the Debtor's election, at any time, the Debtor may publish a comparable notice in

*AutoNews*, *USA Today*, *The Los Angeles Times* and/or comparable national edition publication(s).

6.    On or before twenty-one (21) days prior to the Sale Hearing, the Debtor shall file and

serve the Cure Notice by first class U.S. or international mail upon each counterparty (a

"Counterparty") to any contract or lease designated by the Purchaser to be assumed, assigned and

sold to the Purchaser pursuant to the APA (a "Designated Contract").  In accordance with the APA,

the Purchaser shall identify each Designated Contract by no later than twenty-eight (28) days prior to

the Sale Hearing (the "Contract Designation Deadline").   Each Counterparty to a Designated

Contract[3] must file and serve any objection (a "Cure Amount Objection") to the cure amount set

forth in the Cure Notice (the "Cure Amount") and to the assumption, assignment and sale of the

applicable Designated Contract (including based on an assertion that the Purchaser has not provided

adequate assurance of future performance ("Purchaser Adequate Assurance")) by no later than

fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time).  Each Cure Amount

Objection must set forth (i) the basis for the objection, (ii) the amount the party asserts as the correct

Cure Amount, and (iii) appropriate documentation in support of said amount, and such objection

must be served on (a) counsel for the Debtor, (b) counsel for the Committee, (c) the United States

Trustee, and (d) counsel for the Purchaser.  Any Counterparty failing to timely file and serve an

objection as set forth herein and in the Cure Notice shall be forever barred from objecting to the

Cure Amount and from asserting any additional cure or other amounts against the Debtor, its estate,

the Purchaser and/or other Successful Bidder (as applicable) with respect to the Designated Contract

---

[3]  The inclusion of any agreement as a Designated Contract, and any reference herein or in the Cure Notice to a
Designated Contract or any other agreement as an executory contract or unexpired lease does not constitute an admission
by the Debtor that such agreement actually constitutes an executory contract or unexpired lease under section 365 of the
Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement included as a
Designated Contract.

A:4

to which it is a Counterparty, and will be deemed to consent to the Cure Amount and the assumption, assignment and sale of its Designated Contract as set forth in the Cure Notice. Notwithstanding anything to the contrary, no executory contract or unexpired lease will be assumed unless and until the occurrence of the Closing Date, subject to the terms of the APA or the asset purchase agreement of the Successful Bidder.

7.      If any Counterparty objects for any other reason to the assumption, assignment and sale of a Designated Contract to the Purchaser (i.e., such Counterparty objects other than with respect to the Cure Amount or Purchaser Adequate Assurance, as set forth in paragraph 6, above) or for any other reason to the approval of the Sale, the Counterparty must file any such objection with the Court on or before fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time), and serve such objection in accordance with the Cure Notice so as to be received by such date and time by (a) counsel for the Debtor; (b) counsel for the Committee; (c) the United States Trustee; and (d) counsel for the Purchaser, failing which the Counterparty will deemed to consent to the proposed assumption and assignment to the Purchaser of such Designated Contract to which it is a Counterparty. Notwithstanding the foregoing and any other provision herein, any objection of the Counterparty (an "Alternative Purchaser Adequate Assurance Objection") to the assumption and assignment of a Designated Contract to a third party other than the Purchaser ("Alternative Purchaser") on the basis of that Alternative Purchaser's lack of adequate assurance of future performance under the applicable lease or contract must be filed with the Court and served by e-mail and/or facsimile on (i) Debtor's counsel, (ii) counsel for the Committee, (iii) counsel for the applicable third party buyer, and (iv) the U.S. Trustee, by no later than 12:00 p.m. Noon (Pacific time) on the second business day after the conclusion of the Auction.

8.      Any other objections to the Sale or any other relief requested by the Motion shall be in writing, shall state the basis of such objection with specificity, and shall be filed with the Court no later than fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time), and served in accordance with the Creditor Notice so as to be timely received by (a) counsel for the Debtor, (b) counsel for the Committee, (c) the United States Trustee, and (d) counsel for the Purchaser. The Debtor's reply and any other response to the objections shall be filed and served on (i) the objecting

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

party, (ii) counsel for the Committee, (iii) the United States Trustee, and (iv) counsel for the Purchaser no later than two (2) business days prior to the Sale Hearing.

9.      Compliance with all of the foregoing notice provisions shall constitute sufficient and reasonable notice of the Debtor's Sale of the Purchased Assets, the assumption, assignment and sale of each Designated Contract, and the proposed Cure Amount with respect to each such Designated Contract, and no additional notice of the Sale, the contemplated transactions and other matters set forth in the Motion need be given under the Bankruptcy Rules, the Local Bankruptcy Rules or otherwise.

10.      If the Debtor receives more than one Qualified Bid (as defined in the Bid Procedures), an auction (the "Auction") will be held on _____, 2013 at __:__ at the offices of Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, or other location as determined by the Debtor.

11.      Counsel for the Debtor is authorized to hold and conduct the Auction in accordance with the Bid Procedures.

12.      In consideration for the Purchaser having expended considerable time and expense in connection with the APA and the negotiation thereof, the Court approves the Expense Reimbursement to be paid in accordance with and subject to the conditions provided for in the APA. The Debtor is authorized to pay the Expense Reimbursement to the extent payable to the Purchaser pursuant to the terms of the APA.

13.      The hearing regarding the acceptance of the Successful Bid(s) and Backup Bid(s) and approval of the Sale (the "Sale Hearing") shall be held on _____, 2013, before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Courtroom ____, Santa Ana, California.  The Sale Hearing may be adjourned from time to time, without further notice.

14.      Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006 and 7062 or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

A:6

DOCS_SF:81623.8 12832/001

1    15.    The Debtor is authorized to take any and all actions necessary or appropriate to

2    implement the Bid Procedures and other provisions of this Bid Procedures Order.

3    16.    This Court shall retain jurisdiction to hear and determine all matters arising from or

4    related to the implementation of this Bid Procedures Order.

5                                        # # #

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS_SF:81623.8 12832/001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

**(Bid Procedures)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**BID PROCEDURES**

American Suzuki Motor Corporation, as debtor and debtor in possession (the "Debtor"), has filed a chapter 11 case pending in the United States Bankruptcy Court for the Central District of California and administered under Case No. 12-_____.  By motion dated November 6, 2012 (the "Motion"),[1] the Debtor sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which it will determine (in consultation with the Committee) the highest and best offer for substantially all of the Debtor's assets relating to the Acquired Business (such assets are referred to herein as the "Purchased Assets" and are further described in Section 1.1 of the APA).[2]  On _____, 2012, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

On _____, 2013, or another continued date, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtor shall seek entry of the Sale Order authorizing and approving the sale of the Purchased Assets (the "Sale") to the Purchaser or to one or more other Qualified Bidders, which offer (or offers) that the Debtor (in consultation with the Committee) determines to constitute the highest and best offer.

**APA**

On November 6, 2012, the Debtor entered into an asset purchase agreement (the "APA") with NounCo, Inc. (the "Purchaser"), pursuant to which the Purchaser proposes to acquire the Purchased Assets.  Pursuant to the APA, the Purchaser will provide consideration for the Purchased Assets as provided in the APA (the "Purchase Price").  The transaction contemplated by the APA is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 105, 363 and 365 of the Bankruptcy Code.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and the APA, as applicable.

[2] As discussed in the Motion, the Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed plan of reorganization (the "Plan") by which a sale of substantially all of the Debtor's assets, with certain exceptions as described in the Plan, to Purchaser will be implemented.  In the event that the Debtor ultimately determines not to proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under sections 363 and 365 of the Bankruptcy Code outside of any proposed plan.  Accordingly, the Debtor has filed the Motion to facilitate a parallel track sale transaction in this case.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Assets for Sale or Disposition**

The Debtor is offering for sale the Purchased Assets of the Debtor as set forth in Section 1.1 of the APA.  The assets for sale do not include the Excluded Assets as defined and described in Section 1.2 of the APA.

**Participation Requirements**

In order to participate in the bidding process and to otherwise be considered for any purpose hereunder, a person interested in the Purchased Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel the following (the "Participation Requirements"):

1.    Confidentiality Agreement.  An executed confidentiality agreement in form and substance acceptable to the Debtor and its counsel (a "Confidentiality Agreement"); and

2.    Proof of Ability to Perform.  Prior to or at the time of presentation of a Bid, written evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts and leases to be assumed in such contemplated transaction.  Such information should include, *inter alia*, the following:

    (a)    the Potential Bidder's current financial statements (audited if they exist);

    (b)    contact names and numbers for verification of financing sources;

    (c)    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that is needed to close the contemplated transaction;

    (d)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction; and

    (e)    other such documentation as the Debtor may reasonably request.

The Debtor may provide by e-mail to nondebtor counterparties to contracts and leases that may be assumed, assigned and sold ("Affected Counterparties"), a copy of the documents and information provided by the Bidder pursuant to Participation Requirement 2 above ("Alternative Buyer Adequate Assurance Information").  The Affected Counterparties and their respective counsel and agents may be required to agree to hold such Alternative Buyer Adequate Assurance Information in confidence and for use solely in the determination as to whether the Bidder can offer

A-1: 2

adequate assurance of future performance in the event of assignment of the applicable contract or lease to that Bidder.

### Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs 1 and 2 above, and that the Debtor (in consultation with the Committee) determines is reasonably likely (i) to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtor's creditors than under the APA and (ii) to be able to consummate a sale if selected as a Successful Bidder.

Upon the receipt from a Potential Bidder of the information required under subparagraphs 1 and 2 above, the Debtor (in consultation with the Committee) shall determine in its sole discretion and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to satisfy all Bid Requirements (hereinafter defined).

### Access to Due Diligence Materials

The Debtor will provide Potential Bidders with reasonable access to its books, records, facilities, key personnel, officers, accountants and legal counsel for the purpose of conducting due diligence. The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor.

Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information. If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtor is not responsible for, and will bear no

A-1: 3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Purchased Assets.

### Due Diligence From Bidders

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated transaction ("Bidder Related Information").  Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder.  Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.  Unless the applicable Bidder consents to the Bidder Related Information being provided to other parties in interest, only the Debtor and its counsel and advisors will be provided with the Bidder Related Information.

### Bidding Process

The Debtor and its advisors (in consultation with the Committee) shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting its due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Purchased Assets (collectively, the "Bidding Process").  The Debtor (in consultation with the Committee) shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process, including modifications to bidding requirements and applicable dates and deadlines.

### Bid Deadline

**The deadline for submitting bids by a Qualified Bidder shall be _____, 2013 at 4:00 p.m. (Pacific time) (the "Bid Deadline"), or such other date as determined by the Debtor (in consultation with the Committee).**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to: (i) the Debtor,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

American Suzuki Motor Corporation, c/o FTI Consulting, 633 West Fifth Street, Los Angeles, California 90071, Attn: M. Freddie Reiss, freddie.reiss@fticonsulting.com; (ii) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4100, Attn: Richard Pachulski and Linda F. Cantor, rpachulski@pszjlaw.com, lcantor@pszjlaw.com; (iii) investment banker to the Debtor, Imperial Capital, 2000 Avenue of the Stars, 9th Floor, Los Angeles, California, Attn: Marc Bilbao, mbilbao@imperialcapital.com; (iv) counsel for the Committee, _____; and (v) counsel for the Purchaser, Klee, Tuchin, Bogdanoff & Stern LLP, Attn: Michael Tuchin, Lee Bogdanoff, Martin Barash, and David Fidler, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Facsimile: 310-407-9090, email: mtuchin@ktbslaw.com; lbogdanoff@ktbslaw.com; mbarash@ktbslaw.com, and dfidler@ktbslaw.com by the Bid Deadline, provided, however, that any confidential financial information may be delivered to the Debtor and its counsel and investment banker only ("Bidder Confidential Information").

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### Bid Requirements

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following conditions (the "Bid Requirements"):

Good Faith Deposit.  Each Bid, other than a Bid submitted by the Purchaser, must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $2,500,000.

Minimum Overbid.  The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor.  The aggregate consideration must equal or exceed the sum of the Purchase Price (including, without limitation, the assumption of Assumed Liabilities), plus a success fee payable to the Debtor's proposed investment banker in the amount of $2,000,000, plus the Expense Reimbursement of $750,000, plus $500,000 (the "Initial Minimum Overbid Increment").

Irrevocable.  A Bid must be irrevocable until the earlier of (a) closing of the transaction with the Successful Bidder, or (b) the date that the Sale Order has become final and non-appealable (the "Termination Date").

The Same or Better Terms.  The Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the APA.  A Bid must

A-1: 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the APA marked to show all changes requested by the Bidder (including those related to the Purchase Price) (the "Marked-Up APA"). The Contemplated Transaction Documents must include a commitment to close as soon as practicable after entry of the Sale Order but no later than the Closing Date as set forth in Section 3.1 of the APA. A Bid should propose a contemplated transaction involving all or substantially of the Purchased Assets, provided that multiple Bids on particular assets may be considered if the Bids together include all or substantially all of the Purchased Assets. The Bid must expressly identify, as part of the marked-up APA or the schedule(s) thereto, the leases and/or contracts proposed to be assigned to the Bidder as of the Closing.

Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the APA, unless the Debtor in its discretion otherwise agrees, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the APA.

Financing Sources. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact information for such financing sources.

No Fees Payable to Qualified Bidder. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtor (in consultation with the Committee) believes that such Bid would be consummated if selected as the Successful Bid.

In the event that any Potential Bidder is determined by the Debtor (in consultation with the Committee) not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit on or before the date that is seven (7) days after entry of the Sale Order.

The Debtor shall have the right to reject any and all bids that it believes do not comply with the Bid Procedures. For purposes hereof, the APA shall constitute a Qualified Bid.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A-1: 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Auction**

The Debtor will conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets in the event that there is a Qualified Bidder in addition to the Purchaser.  Notwithstanding the foregoing and any other provision herein, the Debtor reserves the right to cancel the Auction and seek to move forward with a private sale.

The Debtor shall provide the Purchaser and all Qualified Bidders with copies of all Qualified Bids by the day prior to the Auction, which may exclude any confidential financial information, as determined by the Debtor in its reasonable discretion or which has been so designated by the Qualified Bidder.  The Auction shall commence on _____, 2013 at __:__ at the offices of Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, or other location as determined by the Debtor.

No later than the day prior to the commencement of the Auction, the Debtor (in consultation with the Committee) will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders (excluding any Bidder Confidential Information).

If no higher and better offer is obtained at the Auction, then the Purchaser will be deemed the Successful Bidder, the APA will be the Successful Bid, and at the Sale Hearing, the Debtor will seek approval of and authority to consummate the Sale contemplated by the APA.

If there is an Auction, it shall be conducted according to the following procedures:

***Participation at the Auction***

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction.  Only the authorized representative of each of the Qualified Bidders (including Purchaser), the Debtor, Suzuki Motor Corporation, the Committee, and any Affected Counterparty shall be permitted to attend.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee), except that the Stalking Horse Bidder shall not be

required to include the amount of the Expense Reimbursement as part of its bid.  Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest and best offer for the Purchased Assets.

### *__The Debtor Shall Conduct the Auction__*

The Debtor and its professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid.  The determination of which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the estate (the "Bid Assessment Criteria").  All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Debtor shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.  The Debtor reserves the right to conduct the auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received.

### *__Terms of Overbids__*

An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Baseline Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

(a)    *__Minimum Overbid Increment__*

Any Overbid after the Baseline Bid shall be made in increments of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee).  Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash and/or other consideration acceptable to the Debtor.

(b)    *__Remaining Terms Are the Same as for Qualified Bids__*

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply.  Any Overbid made from time to time by a Qualified Bidder must remain

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

open and binding on the Qualified Bidder until and unless (i) the Debtor accepts a higher Qualified

Bid as an Overbid and (ii) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtor), a Qualified

Bidder submitting an Overbid must submit at the Debtor's request, as part of its Overbid, written

evidence (in the form of financial disclosure or credit-quality support information or enhancement

reasonably acceptable to the Debtor) demonstrating such Qualified Bidder's ability to close the

transaction proposed by such Overbid.

(c)    *Announcing Overbids*

The Debtor shall announce at the Auction the material terms of each Overbid.

(d)    *Consideration of Overbids*

The Debtor reserves the right to make one or more adjournments in the Auction to, among

other things: facilitate discussions with individual Qualified Bidders; allow individual Qualified

Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide

the Debtor with such additional evidence as the Debtor may require, that the Qualified Bidder (other

than the Purchaser) has sufficient internal resources, or has received sufficient non-contingent debt

and/or equity funding commitments, to consummate the proposed transaction at the prevailing

Overbid amount.

**Additional Procedures and Modifications**

The Debtor may adopt additional rules for the Auction at or prior to the Auction that, in its

reasonable discretion, will better promote the goals of the Auction.  All such additional rules will be

provided to each of the Qualified Bidders at the Auction.  Further, at or before the Sale Hearing, the

Debtor may impose such other terms and conditions to the Sale and the Bid Procedures as the Debtor

(in consultation with the Committee) may reasonably determine to be in the best interests of the

Debtor's estate, its creditors and other parties in interest.

All Bids shall be made and received in one room, on an open basis, and all other Qualified

Bidders shall be entitled to be present for all bidding with the understanding that the true identity of

each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other

DOCS_SF:81623.8 12832/001

Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtor (in consultation with the Committee) may (a) determine, which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interest of the Debtor, its estate and creditors.

### Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee) shall (i) identify the highest and best offer for the Purchased Assets (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), (ii) identify the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder"), and (iii) advise the Qualified Bidders of such determination.  Upon seven (7) days' prior notice by the Debtor, the Back-up Bidder selected by the Debtor must immediately proceed with the closing of the transaction contemplated by the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.   If the Purchaser's final bid is deemed to be highest and best at the conclusion of the Auction, the Purchaser will be the Successful Bidder, and such bid, the Successful Bid.

### Acceptance of Successful Bid

The Debtor shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.  The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor will be deemed to have accepted a Qualified Bid only

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.  All

2    interested parties reserve their right to object to the Debtor's selection of the Successful Bidder

3    (including the assignment of any of such objector's Designated Contracts proposed to be assumed by

4    the Debtor and assigned to the Successful Bidder, and the Debtor reserves the right to contest any

5    such objection, including on the ground that the objector lacks standing, provided, however, that any

6    objection to such assignment on the basis of amounts necessary, pursuant to section 365 of the

7    Bankruptcy Code, to cure all defaults under such objector's Designated Contract proposed to be

8    assumed by the Debtor and assigned and sold to the Successful Bidder must be made and/or reserved

9    in accordance with the procedures set forth in the order approving these Bid Procedures).

10    **"As Is, Where Is"**

11         The sale of the Purchased Assets shall be on an "as is, where is" basis and without

12    representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate

13    except to the extent set forth in the APA or the purchase agreement of another Successful Bidder.

14    The Purchaser and each Qualified Bidder shall be deemed to acknowledge and represent that it has

15    had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to

16    making its offer, that it has relied solely upon its own independent review, investigation and/or

17    inspection of any documents and/or the Purchased Assets in making its bid, and that it did not rely

18    upon any written or oral statements, representations, promises, warranties or guaranties whatsoever,

19    whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the

20    completeness of any information provided in connection therewith or the Auction, except as

21    expressly stated in these Bid Procedures or, (i) as to the Purchaser, the terms of the sale of the

22    Purchased Assets shall be set forth in the APA, or (ii) as to another Successful Bidder, the terms of

23    the sale of the Purchased Assets shall be set forth in the applicable purchase agreement.

24    **Free of Any and All Interests**

25         Except as otherwise provided in the APA or another Successful Bidder's purchase agreement

26    and subject to the approval of the Bankruptcy Court, all of Debtor's right, title and interest in and to

27    the Purchased Assets subject thereto shall be sold free and clear of all pledges, liens, security

28    interests, encumbrances, claims, charges, options and interests thereon and thereagainst (collectively,

*(left margin, vertical)* PACHULSKI STANG ZIEHL & JONES LLP — ATTORNEYS AT LAW — LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

the "Interests"), in accordance with section 363(f) of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Purchased Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2013, before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Courtroom _____, Santa Ana, California.  The Sale Hearing may be adjourned from time to time, without further notice.

If the Successful Bidder fails to consummate an approved sale by March 29, 2013 (the "Termination Date"), the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing.  Good Faith Deposits of Qualified Bidders other than the Successful Bidder and Back-up Bidder shall not held in a non-interest-bearing escrow or trust account until seven (7) days after entry of the Sale Order, and thereafter returned to the respective bidders.  If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages resulting from such Successful Bidder's breach or failure to perform.

DOCS_SF:81623.8 12832/001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

**(Sale and Bid Procedures Notice)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Richard M. Pachulski (CA Bar No. 90073)
    James I. Stang (CA Bar No. 94435)
2   Dean A. Ziehl (CA Bar No. 84529)
    Linda F. Cantor (CA Bar No. 153762)
3   Debra I. Grassgreen (CA Bar No. 169978)
    PACHULSKI STANG ZIEHL & JONES LLP
4   10100 Santa Monica Blvd., 13th Floor
    Los Angeles, California  90067-4100
5   Telephone: 310/277-6910 / Facsimile: 310/201-0760
    Email:    rpachulski@pszjlaw.com
6             jstang@pszjlaw.com
              dziehl@pszjlaw.com
7             lcantor@pszjlaw.com
              dgrassgreen@pszjlaw.com
8
    [Proposed] Attorneys for Debtor
9   and Debtor in Possession

10              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
11                      SANTA ANA DIVISION

12  In re:                                    Case No.: 12-_____ (___)

13  American Suzuki Motor Corporation,[1]     Chapter 11

14              Debtor.                        NOTICE OF BIDDING PROCEDURES,
                                               AUCTION AND SALE HEARING RE:
15                                             DEBTOR'S PROPOSED SALE OF
                                               ASSETS RELATED TO ACQUIRED
16                                             BUSINESS

17          PLEASE TAKE NOTICE that on November 6, 2012, American Suzuki Motor Corporation,

18  the above-captioned debtor and debtor in possession (the "Debtor") filed its *Motion for Order (A)*

19  *Approving Sale of Substantially All Assets Relating to the Acquired Business, Free and Clear of All*

20  *Liens, Claims, Encumbrances and Interests; (B) Approving Bid Procedures for the Sale and Auction*

21  *of Assets; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and*

22  *Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption,*

23  *Assignment and Sale of Certain Contracts and Leases; (E) Approving Bid Protections; and (F)*

24  *Granting Related Relief* (the "Motion"),[2] and on _____, 2012, the Bankruptcy Court entered its

25  _____
    [1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East
26  Imperial Highway, Brea, California 92821.
    [2]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.  As discussed in the
27  Motion, the Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed
    plan of reorganization (the "Plan") by which a sale of substantially all of the Debtor's assets, with certain exceptions as
28  described in the Plan, to Purchaser will be implemented.  In the event that the Debtor ultimately determines not to
    proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under

DOCS_SF:81623.8 12832/001

*Vertical left margin text:* PACHULSKI STANG ZIEHL & JONES LLP  ATTORNEYS AT LAW  LOS ANGELES, CALIFORNIA

*Order (A) Approving Bid Procedures for the Sale of Debtor's Assets Related to the Acquired*

*Business and Auction of Assets; (B) Scheduling an Auction and Hearing to Consider the Sale and*

*Approve the Form and Manner of Notice Related Thereto; (C) Establishing Procedures Relating to*

*the Assumption, Assignment and Sale of Certain Contracts and Leases; (D) Approving Bid*

*Protections; and (E) Granting Related Relief* (the "<u>Bid Procedures Order</u>").  Pursuant to the Motion,

the Debtor seeks, *inter alia*, the Bankruptcy Court's approval of the sale of certain of its assets (the

"<u>Purchased Assets</u>"), including the assumption, assignment and sale of certain executory contracts

and unexpired leases (the "<u>Designated Contracts</u>"), to either the proposed buyer, NounCo, Inc. (the

"<u>Purchaser</u>"), or to the successful purchaser of the Purchased Assets at an auction (the "<u>Auction</u>"),

free and clear of liens, claims, encumbrances and other interests.

The Purchaser is a transaction vehicle formed by Suzuki Motor Corporation ("<u>SMC</u>").  SMC

is an insider of the Debtor that holds 100% of the equity interests in the Debtor and provides the

product necessary for the Debtor to operate its business.

This Notice provides the following summary of the Bid Procedures approved by the Bid

Procedures Order.  A copy of the Bid Procedures is attached hereto as **Exhibit 1.**  In the event of any

inconsistency or conflict between this Notice and the Bid Procedures Order, the Bid Procedures

Order shall control.

### Brief Summary of Bid Procedures

(i)    In order to participate in the bidding process, a person interested the Purchased Assets (a "<u>Potential Bidder</u>") must first deliver (unless previously delivered) to the Debtor and its counsel, among other documents, an executed confidentiality agreement, proof of ability to perform, and other documentation as the Debtor may reasonably request.

(ii)    The Debtor will provide Potential Bidders with reasonable access to its books, records, facilities, key personnel, officers, accountants and legal counsel for the purpose of conducting due diligence.  The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.

sections 363 and 365 of the Bankruptcy Code outside of any proposed plan.  Accordingly, the Debtor has filed the Motion to facilitate a parallel track sale transaction in this case.

A-2:2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(iii)    The Debtor (in consultation with the Committee) shall: (a) determine whether a Potential Bidder is a Qualified Bidder; (b) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (c) receive offers from Qualified Bidders; and (d) negotiate any offers made to purchase the Purchased Assets.

(iv)    The Bid Deadline is _____, 201__, at 4:00 p.m. (Pacific Time), or such other date as determined by the Debtor (in consultation with the Committee).

(v)    To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor (in consultation with the Committee) to satisfy each of the following, among other, conditions: (a) the Bidder must provide a Good Faith Deposit equal to $2,500,000; (b) the aggregate consideration must equal or exceed the sum of the Purchase Price proposed by the Stalking Horse Bidder (including, without limitation, the assumption of Assumed Liabilities), plus a success fee payable to the Debtor's proposed investment banker in the amount of $2,000,000, plus the Expense Reimbursement of $750,000, plus $500,000; (c) the Bid must be irrevocable until the earlier of (1) closing of the transaction with the Successful Bidder, or (2) the date that the Sale Order has become final and non-appealable; (d) the Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the APA with the Stalking Horse Bidder; (e) the Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction, together with a copy of the APA marked to show all changes requested by the Bidder; (f) the Bidder must commit to close as soon as practicable after the date on which the Sale Order becomes final and non-appealable but no later than the Closing Date as set forth in Section 3.1 of the APA; and (g) the Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the APA, unless the Debtor in its discretion otherwise agrees.

(vi)    The Debtor will conduct an auction (the "Auction") to determine the highest and best bid with respect to the Purchased Assets in the event that there is a Qualified Bidder in addition to the Purchaser.  The Auction shall commence on _____, 2013 at __:__ at the Los Angeles office of the Debtor's proposed counsel, or other location as determined by the Debtor.  If no higher and better offer is obtained at the Auction, then the Purchaser will be deemed the Successful Bidder, the APA will be the Successful Bid, and, at the Sale Hearing, the Debtor will seek approval of and authority to consummate the Sale contemplated by the APA.  Notwithstanding the foregoing, the Debtor reserves the right to cancel the Auction and seek to move forward with a private sale.

(vii)    The Auction, if any, shall be conducted according to certain procedures including the following: (a) only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction, and only the authorized representative of each of the Qualified Bidders (including Purchaser), the Debtor, Suzuki Motor Corporation, the Committee, and any Affected Counterparty shall be permitted to attend.  During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of $500,000, or such other amount as determined by the Debtor (in consultation with the Committee).  Except as otherwise set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest and best offer for the Purchased Assets.  The Debtor may adopt additional rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction.

(viii)    Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in consultation with the Committee) shall identify the highest and best offer for the Purchased Assets

(the "<u>Successful Bid</u>") and the entity submitting such Successful Bid (the "<u>Successful Bidder</u>"), and identify the next highest or otherwise best offer after the Successful Bid (the "<u>Back-up Bid</u>") and the entity submitting the Back-up Bid (the "<u>Back-up Bidder</u>").  The Debtor shall sell the Purchased Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.

### The APA with the Stalking Horse Bidder

The following are the material terms of the proposed Sale to Purchaser under the APA:[3]

    **(i)**    **Purchase Price:**  The Purchase Price shall consist of (i) the payment by Purchaser of $95,000,000 U.S. Dollars in cash and (ii) the assumption by Purchaser of the Assumed Liabilities.

    **(ii)**    **Purchased Assets:**  Substantially all of the Debtor's assets related to the Debtor's business of distributing, selling and servicing Suzuki brand motorcycles, all-terrain vehicles, marine outboard motors and related parts and products, and the servicing of Suzuki automobiles, including any warranty work and the sale of parts in connection with such servicing business (together, the "<u>Acquired Business</u>").

    **(iii)**    **Excluded Assets:**  Substantially all assets relating to the distribution and sale of Suzuki brand automobiles in the United States, any cash or cash equivalents or accounts of the Debtor, any Avoidance Actions relating to the Excluded Assets, any books and records of the Debtor relating to the pre-Closing period that the Debtor is legally required to retain, certain rights under applicable insurance policies, and such other Excluded Assets as are set forth in Section 1.2 of the APA.

    **(iv)**    **Assumed Liabilities:**  (i) All Liabilities relating to the ownership or operation of the Purchased Assets or the Acquired Business after the Closing Date; (ii) all Liabilities under express factory or implied warranties of Suzuki automotive,  motorcycle, all-terrain vehicle and marine products and otherwise arising out of the Acquired Business, regardless of when arising; (iii) any Liability of the Debtor for indebtedness under the debtor-in-possession credit facility incurred for the purchase of inventory, to the extent such inventory is purchased by Purchaser, provided that such indebtedness shall not include any

---

[3]  The description below only summarizes certain provisions of the APA, and the terms of the APA control in the event of any inconsistency.  Parties in interest should read the APA in its entirety.

A-2:4

DOCS_SF:81623.8 12832/001

indebtedness of the Debtor that is outside of the required fifteen-day credit terms; (iv) all Liabilities under any of the Purchased Contracts, to the extent such Liabilities first arise after the Closing Date; (v) all Liabilities for Cure Costs; (vi) Liability for Transfer Taxes relating to the sale transaction; (vii) all Liabilities under the collective bargaining agreement for the Represented Employees, to the extent such Liabilities first arise after the Closing Date;  (viii) all Liability for Transferred Employee Compensation and Benefits; and (vii) all Liabilities under Service and Parts Agreements assigned to, or entered into with, Purchaser to the extent that such Liabilities first arise after the Closing Date.

(v)    **Excluded Liabilities:**  Any liability of the Debtor that is not an Assumed Liability.

(vi)    **Contracts to be Assumed and Assigned**:  Purchaser shall have the right, in Purchaser's sole and absolute discretion, to designate any executory contract or unexpired lease of the Debtor as a Purchased Contract or an Excluded Contract.

(vii)    **Expense Reimbursement**:  $750,000, payable in the event of a successful closing of the Purchased Assets with a buyer other than the Purchaser or in the event of a material breach of the APA by the Debtor.

(viii)    **Closing:**  Must occur by March 29, 2013.

(ix)    **Representations and Warranties**:  Customary for a transaction of this kind. Except as specifically set forth in the APA, Purchaser will accept the Purchased Assets at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."

(x)    **Termination Rights:**  Customary for a transaction of this kind.

## The Sale Hearing

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sale of the Purchased Assets to the Purchaser or other Successful Bidder, as set forth in the Motion, to be held on _____, 2013, before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Courtroom ____, Santa Ana, California.  The Sale Hearing may be adjourned from time to time, without further notice.

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   PLEASE TAKE FURTHER NOTICE that the Bid Procedures annexed hereto shall govern

2   the bidding process and the Auction of the Purchased Assets.  Any person who wishes to receive a

3   copy of the Motion or the Bid Procedures Order shall make such request in writing to Pachulski

4   Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, Attn:

5   Richard M. Pachulski and Linda F. Cantor, tel: 310-277-6910, facsimile: 310-201-0760,

6   rpachulski@pszjlaw.com, lcantor@pszjlaw.com.

7                                              **Objections**

8   Objections to the relief requested by the Motion (other than in respect to the Bid Procedures

9   and other relief previously granted by the Court in the Bid Procedures Order) shall be set forth in

10  writing and shall specify with particularity the grounds for such objections or other statements of

11  position, and shall be filed with the Court by 4:00 p.m. (Pacific time) on _____, 2013, and

12  shall be served so as to be received by that same date and time on: (i) counsel for the Debtor,

13  Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California

14  90067-4100, Attn: Richard Pachulski and Linda F. Cantor, rpachulski@pszjlaw.com,

15  lcantor@pszjlaw.com; (ii) counsel for the Purchaser, Klee, Tuchin, Bogdanoff & Stern LLP, Attn:

16  Michael Tuchin, Lee Bogdanoff, Martin Barash, and David Fidler, 1999 Avenue of the Stars, 39th

17  Floor, Los Angeles, CA 90067, email: mtuchin@ktbslaw.com; lbogdanoff@ktbslaw.com;

18  mbarash@ktbslaw.com, and dfidler@ktbslaw.com; (iii) counsel for the Committee,

19  _____; and (iv) the Office of the U.S. Trustee.

20                                               **Closing**

21  The closing of the Sale and the other transactions contemplated under the APA shall occur in

22  accordance with the terms and conditions of the APA.

23

24

25

26

27

28

1       PLEASE TAKE FURTHER NOTICE that all requests for information concerning the

2   Purchased Assets and all requests for information concerning the Bid Procedures, should be directed

3   in writing to Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los

4   Angeles, California 90067-4100, Attn: Richard M Pachulski and Linda F. Cantor, tel: 310-277-6910,

5   facsimile: 310-201-0760, rpachulski@pszjlaw.com, lcantor@pszjlaw.com.

6   Dated: _____, 2012

7

8                         PACHULSKI STANG ZIEHL & JONES LLP

9                         By: _____

10                                 Richard M. Pachulski

11                                 James I. Stang
                               Dean A. Ziehl

12                                 Linda F. Cantor
                               Debra I. Grassgreen

13                                 [Proposed] Attorneys for Debtor
                               and Debtor in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2

### Exhibit 1
### to Notice of Bidding Procedures, Auction and Sale Hearing

3

[Copy of Bid Procedures Attached to Procedures Order]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 3**

**(Auction and Sale Hearing Notice to be Served on All Creditors)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:81623.8 12832/001

Richard M. Pachulski (CA Bar No. 90073)
James I. Stang (CA Bar No. 94435)
Dean A. Ziehl (CA Bar No. 84529)
Linda F. Cantor (CA Bar No. 153762)
Debra I. Grassgreen (CA Bar No. 169978)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910 / Facsimile: 310/201-0760
Email:    rpachulski@pszjlaw.com
          jstang@pszjlaw.com
          dziehl@pszjlaw.com
          lcantor@pszjlaw.com
          dgrassgreen@pszjlaw.com

[Proposed] Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 12-_____ (___) |
| American Suzuki Motor Corporation,[1] | Chapter 11 |
| Debtor. | **NOTICE OF DEBTOR'S PROPOSED SALE OF ASSETS RELATED TO ACQUIRED BUSINESS** |

PLEASE TAKE NOTICE that on November 6, 2012, American Suzuki Motor Corporation, the above-captioned debtor and debtor in possession (the "Debtor") filed its *Motion for Order (A) Approving Sale of Substantially All Assets Relating to the Acquired Business, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Approving Bid Procedures for the Sale and Auction of Assets; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption, Assignment and Sale of Certain Contracts and Leases; (E) Approving Bid Protections; and (F) Granting Related Relief* (the "Motion"),[2] pursuant to which the Debtor requests authority to sell

---

[1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East Imperial Highway, Brea, California 92821.

[2]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.  As discussed in the Motion, the Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed plan of reorganization (the "Plan") by which a sale of substantially all of the Debtor's assets, with certain exceptions as described in the Plan, to Purchaser will be implemented.  In the event that the Debtor ultimately determines not to proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

certain of its assets (the "Purchased Assets") pursuant to and on the terms and conditions set forth in an Asset Purchase Agreement dated November 6, 2012 (the "APA") by and between the Debtor and NounCo, Inc. (the "Purchaser").

The Purchaser is a transaction vehicle formed by Suzuki Motor Corporation ("SMC"). SMC is an insider of the Debtor that holds 100% of the equity interests in the Debtor and provides the product necessary for the Debtor to operate its business.

The following are the material terms of the proposed Sale to Purchaser under the APA:[3]

(i)    **Purchase Price:**  The Purchase Price shall consist of (i) the payment by Purchaser of $95,000,000 U.S. Dollars in cash and (ii) the assumption by Purchaser of the Assumed Liabilities.

(ii)    **Purchased Assets:**  Substantially all of the Debtor's assets related to the Debtor's business of distributing, selling and servicing Suzuki brand motorcycles, all-terrain vehicles, marine outboard motors and related parts and products, and the servicing of Suzuki automobiles, including any warranty work and the sale of parts in connection with such servicing business (together, the "Acquired Business").

(iii)    **Excluded Assets:**  Substantially all assets relating to the distribution and sale of Suzuki brand automobiles in the United States, any cash or cash equivalents or accounts of the Debtor, any Avoidance Actions relating to the Excluded Assets, any books and records of the Debtor relating to the pre-Closing period that the Debtor is legally required to retain, certain rights under applicable insurance policies, and such other Excluded Assets as are set forth in Section 1.2 of the APA.

(iv)    **Assumed Liabilities:**  (i) All Liabilities relating to the ownership or operation of the Purchased Assets or the Acquired Business after the Closing Date; (ii) all Liabilities under express factory or implied warranties of Suzuki automotive, motorcycle, all-terrain vehicle and marine products and otherwise arising out of the Acquired Business, regardless

___
sections 363 and 365 of the Bankruptcy Code outside of any proposed plan.  Accordingly, the Debtor has filed the Motion to facilitate a parallel track sale transaction in this case.
[3]  The description below only summarizes certain provisions of the APA, and the terms of the APA control in the event of any inconsistency.  Parties in interest should read the APA in its entirety.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of when arising; (iii) any Liability of the Debtor for indebtedness under the debtor-in-possession credit facility incurred for the purchase of inventory, to the extent such inventory is purchased by Purchaser, provided that such indebtedness shall not include any indebtedness of the Debtor that is outside of the required fifteen-day credit terms; (iv) all Liabilities under any of the Purchased Contracts, to the extent such Liabilities first arise after the Closing Date; (v) all Liabilities for Cure Costs; (vi) Liability for Transfer Taxes relating to the sale transaction; (vii) all Liabilities under the collective bargaining agreement for the Represented Employees, to the extent such Liabilities first arise after the Closing Date; (viii) all Liability for Transferred Employee Compensation and Benefits; and (ix) all Liabilities under Service and Parts Agreements assigned to, or entered into with, Purchaser to the extent that such Liabilities first arise after the Closing Date.

(v)     **Excluded Liabilities:**  Any liability of the Debtor that is not an Assumed Liability.

(vi)     **Contracts to be Assumed and Assigned**:  Purchaser shall have the right, in Purchaser's sole and absolute discretion, to designate any executory contract or unexpired lease of the Debtor as a Purchased Contract or an Excluded Contract.

(vii)     **Expense Reimbursement**:  $750,000, payable in the event of a successful closing of the Purchased Assets with a buyer other than the Purchaser or in the event of a material breach of the APA by the Debtor.

(viii)     **Closing:**  Must occur by March 29, 2013.

(ix)     **Representations and Warranties**:  Customary for a transaction of this kind. Except as specifically set forth in the APA, Purchaser will accept the Purchased Assets at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."

(x)     **Termination Rights:**  Customary for a transaction of this kind.

PLEASE TAKE FURTHER NOTICE that, on _____, 2012, the Bankruptcy Court entered an Order (the "Bid Procedures Order") approving certain bid and auction procedures (the "Bid Procedures"), which procedures are to be applied in connection with the proposed sale (the "Sale") of the Purchased Assets.  The Purchased Assets will be sold free and clear of all liens,

DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

claims, rights, encumbrances and other interests in accordance with 11 U.S.C. §§ 363(b) and (f) and 365(b).

PLEASE TAKE FURTHER NOTICE that, other than the bid of the Purchaser which has been and is deemed received, any and all bids must be in accordance with the Bid Procedures and must be **RECEIVED** by electronic mail, by the following parties **on or before _____, 2013, at 4:00 p.m. Pacific time:** (i) the Debtor, American Suzuki Motor Corporation, c/o FTI Consulting, 633 West Fifth Street, Los Angeles, California 90071, Attn: M. Freddie Reiss, freddie.reiss@fticonsulting.com; (ii) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4100, Attn: Richard Pachulski and Linda F. Cantor, rpachulski@pszjlaw.com, lcantor@pszjlaw.com; (iii) investment banker to the Debtor, Imperial Capital, 2000 Avenue of the Stars, 9th Floor, Los Angeles, California, Attn: Marc Bilbao, mbilbao@imperialcapital.com; (iv) counsel for the Committee, _____; and (v) counsel for the Purchaser, Klee, Tuchin, Bogdanoff & Stern LLP, Attn: Michael Tuchin, Lee Bogdanoff, Martin Barash, and David Fidler, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Facsimile: 310-407-9090, email: mtuchin@ktbslaw.com; lbogdanoff@ktbslaw.com; mbarash@ktbslaw.com, and dfidler@ktbslaw.com, provided, however, that any confidential financial information may be delivered to the Debtor and its counsel only.

PLEASE TAKE FURTHER NOTICE that the Debtor may hold an auction (the "Auction") for the sale of the Purchased Assets on _____, 2013 at __:__ at the offices of Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, or other location determined by the Debtor.  The Auction will be governed by the terms and conditions of the Bid Procedures, which have been authorized and approved by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sale of the Purchased Assets to the Purchaser or other Successful Bidder, as set forth in the Motion, to be held on _____, 2013, before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Courtroom ____, Santa Ana, California.  The Sale Hearing may be adjourned from time to time, without further notice.

A-3:4

1    PLEASE TAKE FURTHER NOTICE that objections or responses to any relief requested by

2    the Motion (other than in respect to the Bid Procedures and other relief previously granted by the

3    Court in the Bid Procedures Order) (an "Objection") shall set forth, in writing, with particularity, the

4    grounds for such objections or other statements of position and be filed with the Bankruptcy Court

5    and served on the Notice Parties (as defined below) in such a manner that it is actually **RECEIVED**

6    **on or before _____, 2013, at 4:00 p.m. Pacific time**.  Objections that do not conform to the

7    foregoing will not be considered by the Bankruptcy Court.  The "Notice Parties" are: (i) counsel for

8    the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los

9    Angeles, California 90067-4100, Attn: Richard Pachulski and Linda F. Cantor,

10    rpachulski@pszjlaw.com, lcantor@pszjlaw.com; (ii) counsel for the Purchaser, Klee, Tuchin,

11    Bogdanoff & Stern LLP, Attn: Michael Tuchin, Lee Bogdanoff, Martin Barash, and David Fidler,

12    1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Facsimile: 310-407-9090, email:

13    mtuchin@ktbslaw.com; lbogdanoff@ktbslaw.com; mbarash@ktbslaw.com,  and

14    dfidler@ktbslaw.com; (iii) counsel for the Committee, _____; and (v) the Office of

15    the U.S. Trustee.

16    PLEASE TAKE FURTHER NOTICE that all requests for information concerning the

17    Motion, the Bid Procedures Order, the APA, the Purchased Assets, or the Auction should be directed

18    in writing to the undersigned proposed counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP,

19    10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA 90067, Attn: Richard M. Pachulski and

20    Linda F. Cantor, tel: 310-277-6910, facsimile: 310-201-0760, rpachulski@pszjlaw.com,

21    lcantor@pszjlaw.com.

22    Dated:  November 5, 2012

23                    PACHULSKI STANG ZIEHL & JONES LLP

24                    By: */s/ Debra I. Grassgreen*
25                        Richard M. Pachulski
                          James I. Stang
26                        Dean A. Ziehl
                          Linda F. Cantor
27                        Debra I. Grassgreen

28                        [Proposed] Attorneys for Debtor
                          and Debtor in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A-3:5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 4**

**(Notice to be served on Counterparties)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Richard M. Pachulski (CA Bar No. 90073)
   James I. Stang (CA Bar No. 94435)
2  Dean A. Ziehl (CA Bar No. 84529)
   Linda F. Cantor (CA Bar No. 153762)
3  Debra I. Grassgreen (CA Bar No. 169978)
   PACHULSKI STANG ZIEHL & JONES LLP
4  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, California  90067-4100
5  Telephone: 310/277-6910 / Facsimile: 310/201-0760
   Email:    rpachulski@pszjlaw.com
6             jstang@pszjlaw.com
              dziehl@pszjlaw.com
7             lcantor@pszjlaw.com
              dgrassgreen@pszjlaw.com
8
   [Proposed] Attorneys for Debtor
9  and Debtor in Possession

10              **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
11                     **SANTA ANA DIVISION**

12  In re:                                    Case No.: 12-_____ (___)

13  American Suzuki Motor Corporation,[1]     Chapter 11

14                       Debtor.              **NOTICE TO COUNTERPARTIES TO**
                                              **EXECUTORY CONTRACTS AND**
15                                            **UNEXPIRED LEASES THAT MAY BE**
                                              **ASSUMED, ASSIGNED AND SOLD RE:**
16                                            **DEBTOR'S PROPOSED SALE OF**
                                              **ASSETS RELATED TO ACQUIRED**
17                                            **BUSINESS**

18

19          PLEASE TAKE NOTICE that on November 5, 2012 (the "Petition Date"), American Suzuki

20  Motor Corporation, the above- captioned debtor and debtor in possession (the "Debtor"), filed a

21  voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code").  On

22  November 6, 2012, the Debtor filed the *Motion for Order (A) Approving Sale of Substantially All*

23  *Assets Relating to the Acquired Business, Free and Clear of All Liens, Claims, Encumbrances and*

24  *Interests; (B) Approving Bid Procedures for the Sale and Auction of Assets; (C) Scheduling an*

25  *Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related*

26  *Thereto; (D) Establishing Procedures Relating to the Assumption, Assignment and Sale of Certain*

27

28  _____
    [1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East
    Imperial Highway, Brea, California 92821.

    DOCS_SF:81623.8 12832/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Contracts and Leases; (E) Approving Bid Protections; and (F) Granting Related Relief* (the
"Motion"),[2] and on _____, 2012, the Bankruptcy Court entered its *Order (A) Approving Bid
Procedures for the Sale of Debtor's Assets Related to the Acquired Business and Auction of Assets;
(B) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of
Notice Related Thereto; (C) Establishing Procedures Relating to the Assumption, Assignment and
Sale of Certain Contracts and Leases; (D) Approving Bid Protections; and (E) Granting Related
Relief* (the "Bid Procedures Order").  Pursuant to the Motion, the Debtor seeks, *inter alia*, the
Bankruptcy Court's approval of the sale of certain of its assets (the "Purchased Assets"), including
the assumption, assignment and sale of certain executory contracts and unexpired leases (the
"Designated Contracts"), to either the proposed buyer, NounCo, Inc. (the "Purchaser"), or to the
successful purchaser of the Purchased Assets at an auction (the "Auction"), free and clear of liens,
claims, encumbrances and other interests.  The Purchaser is a transaction vehicle formed by Suzuki
Motor Corporation ("SMC").  SMC is an insider of the Debtor that holds 100% of the equity
interests in the Debtor and provides the product necessary for the Debtor to operate its business

 PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court will conduct a hearing (the
"Sale Hearing") to consider the proposed sale of the Purchased Assets to the Purchaser or other
Successful Bidder, as set forth in the Motion, to be held on _____, 2013, before
the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court
for the Central District of California, 411 West Fourth Street, Courtroom _____, Santa Ana,
California.  The Sale Hearing may be adjourned from time to time, without further notice.

 PLEASE TAKE FURTHER NOTICE that the amount shown on **Exhibit 1** attached to this
Notice as the "Cure Cost" for the Designated Contract listed on **Exhibit 1** to which you are a party is
the amount, based upon the Debtor's books and records, that the Debtor asserts is owed to cure any

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.  As discussed in the
Motion, the Debtor has determined to pursue a reorganization strategy in its chapter 11 case that includes a proposed
plan of reorganization (the "Plan") by which a sale of substantially all of the Debtor's assets, with certain exceptions as
described in the Plan, to Purchaser will be implemented.  In the event that the Debtor ultimately determines not to
proceed with the proposed Plan, the Debtor expects to proceed with the Sale of the Purchased Assets to Purchaser under
sections 363 and 365 of the Bankruptcy Code outside of any proposed plan.  Accordingly, the Debtor has filed the
Motion to facilitate a parallel track sale transaction in this case.

defaults existing under the Designated Contract.[3]  Information regarding the Purchaser's adequate

assurance of future performance (the "Purchaser's Adequate Assurance") is attached hereto as

**Exhibit 2**.

PLEASE TAKE FURTHER NOTICE that the Debtor will deliver a copy of the Motion and

Bid Procedures Order to you by facsimile, email or overnight delivery if you make a written request

for such delivery to Richard M. Pachulski and Linda F. Cantor, at Pachulski Stang Ziehl & Jones

LLP, 10100 Santa Monica Blvd., Suite 1300, Los Angeles, CA, facsimile number 310-201-0760,

rpachulski@pszjlaw.com; lcantor@pszjlaw.com.  Such request must specify how the information is

to be transmitted.

PLEASE TAKE FURTHER NOTICE that if you disagree with the Cure Cost shown for the

Designated Contract on **Exhibit 1** or object to the Purchaser's Adequate Assurance, you must file an

objection in writing with the Bankruptcy Court, on or before _____, 2013 at 4:00 p.m.

(Pacific time).  In addition, any objection must set forth the specific default or defaults alleged, any

Cure Cost as alleged by you, and any other grounds for your objection, and include any

documentation in support of your objection.

PLEASE TAKE FURTHER NOTICE that any objection to the Cure Cost and/or Purchaser's

Adequate Assurance so filed must be served so as to be received on or before _____,

2013 at 4:00 p.m. (Pacific time) by: (i) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP,

10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067-4100, Attn: Richard

Pachulski and Linda F. Cantor, rpachulski@pszjlaw.com, lcantor@pszjlaw.com; (ii) counsel for the

Purchaser, Klee, Tuchin, Bogdanoff & Stern LLP, Attn: Michael Tuchin, Lee Bogdanoff, Martin

Barash, and David Fidler, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Facsimile:

310-407-9090, email: mtuchin@ktbslaw.com; lbogdanoff@ktbslaw.com; mbarash@ktbslaw.com,

and dfidler@ktbslaw.com; (iii) counsel for the Committee; and (iv) the Office of the U.S. Trustee.

The foregoing parties are referred to herein as the "Notice Parties."

---

[3]  Your receipt of this notice does not constitute an admission by the Debtor that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtor expressly reserves the right to challenge the status of any agreement.

DOCS_SF:81623.8 12832/001

1    If you fail to timely file and serve an objection to the Cure Cost set forth in **Exhibit 1**, you

2    shall be (i) forever barred from objecting to said amount and from asserting any additional cure or

3    other amounts with respect to the contract and/or lease to which you are a counterparty, and the

4    Debtor shall be entitled to rely solely upon the Cure Cost set forth on **Exhibit 1** and (ii) forever

5    barred and estopped from asserting any additional cure or other amounts against the Debtor, its

6    estate, and/or the Purchaser or other Successful Bidder with respect to the contract and/or lease that

7    may be assumed, assigned and sold.  Notwithstanding anything to the contrary, no executory

8    contract or unexpired lease will be assumed until the occurrence of the Closing Date, subject to the

9    terms of the APA or other applicable purchase agreement.

10    PLEASE TAKE FURTHER NOTICE that, pursuant to the Bid Procedures Order, you will

11    subsequently receive information demonstrating adequate assurance of future performance by any

12    bidder(s) for the Purchased Assets other than the Purchaser ("Alternative Buyer(s)"), and if you

13    object to the assumption, assignment and sale of your contract or lease, as applicable, on the basis of

14    lack of adequate assurance of future performance by the Alternative Buyer(s) ("Alternative Buyer

15    Adequate Assurance"), you must file an objection in writing with the Bankruptcy Court on or before

16    on _____, 2013 by 12:00 p.m. Noon (Pacific time).  Any such objection relating to Alternative

17    Buyer Adequate Assurance so filed must be served so as to be received via email by that same date

18    and time upon the Notice Parties (defined above) and the Alternative Buyer(s).

19    PLEASE TAKE FURTHER NOTICE that if you object to the assumption, assignment and

20    sale of your contract or lease, as applicable, on any basis other than with respect to the Cure Cost,

21    the Purchaser's Adequate Assurance or Alternative Buyer Adequate Assurance, you must file an

22    objection in writing with the Bankruptcy Court on or before _____, 2013 at 4:00 p.m. (Pacific

23    time).  Any such objection to the assignment and assumption of your contract or lease, as applicable,

24    so filed must be served so as to be received by that same date and time upon the Notice Parties

25    (defined above).

26    PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND

27    SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE COURT MAY GRANT

28    THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE.  ANY NON-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

A-4:4

DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A

TIMELY OBJECTION TO THE CURE COSTS FOR SUCH ASSUMED EXECUTORY

CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE COSTS, AND ANY NON-

DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A

TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO

SUCH ASSUMPTION, ASSIGNMENT AND SALE.

Dated: _____

                    PACHULSKI STANG ZIEHL & JONES LLP


                    By: _____
                         Richard M. Pachulski
                         James I. Stang
                         Dean A. Ziehl
                         Linda F. Cantor
                         Debra I. Grassgreen

                         [Proposed] Attorneys for Debtor
                         and Debtor in Possession

DOCS_SF:81623.8 12832/001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

**(Asset Purchase Agreement)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Execution Copy**

<u>**ASSET PURCHASE AGREEMENT**</u>

by and between

**NOUNCO, INC.,**

as Purchaser,

and

**AMERICAN SUZUKI MOTOR CORPORATION,**

as Seller

**Table of Contents**

**Page**

1.  Transfer of Assets. ................................................................................................. 2

    1.1  Purchase and Sale of Assets ......................................................................... 2

    1.2  Excluded Assets .......................................................................................... 4

    1.3  Contracts. .................................................................................................... 5

2.  Consideration. ......................................................................................................... 7

    2.1  Purchase Price ............................................................................................. 7

    2.2  Deposit. ....................................................................................................... 7

    2.3  [Reserved]. .................................................................................................. 8

    2.4  [Reserved]. .................................................................................................. 8

    2.5  Assumed Liabilities ..................................................................................... 8

    2.6  Excluded Liabilities .................................................................................... 8

    2.7  Payment of Cure Amounts .......................................................................... 9

    2.8  Pro-Rations ................................................................................................. 9

    2.9  Purchase Price Allocation ........................................................................... 9

3.  Closing Transactions. ........................................................................................... 10

    3.1  Closing ...................................................................................................... 10

    3.2  Seller's Deliveries to Purchaser at Closing ............................................... 10

    3.3  Purchaser's Deliveries to Seller at Closing ............................................... 11

    3.4  Sales, Use and Other Taxes ...................................................................... 12

    3.5  Possession and Risk of Loss ..................................................................... 12

    3.6  Closing Date .............................................................................................. 12

4.  Conditions Precedent to Closing. ......................................................................... 12

    4.1  Conditions to Seller's Obligations ............................................................ 12

    4.2  Conditions to Purchaser's Obligations ...................................................... 13

5.  Seller's Representations and Warranties. .............................................................. 14

    5.1  Organization .............................................................................................. 14

    5.2  Foreign Qualification ................................................................................ 14

    5.3  Due Authorization and Enforceability ....................................................... 14

    5.4  Approvals and Consents ............................................................................ 15

    5.5  No Conflict ................................................................................................ 15

    5.6  Financial Statements ................................................................................. 15

    5.7  Litigation ................................................................................................... 15

5.8      Compliance with Laws ................................................................................15

5.9      Environmental Matters ...............................................................................16

5.10     Business Permits ........................................................................................16

5.11     Title to and Use of Property .......................................................................16

5.12     Assets Necessary to Conduct Acquired Business .......................................16

5.13     Real Property. ............................................................................................16

5.14     Contracts ....................................................................................................17

5.15     Intellectual Property...................................................................................17

5.16     Other Personal Property .............................................................................17

5.17     Employees and Labor Relations. ................................................................17

5.18     Broker's or Finder's Fees ...........................................................................18

6.       Purchaser's Warranties and Representations. ...........................................................18

6.1      Organization...............................................................................................18

6.2      Due Authorization and Enforceability ........................................................18

6.3      No Conflict .................................................................................................18

6.4      Financial Resources ...................................................................................18

6.5      Broker's or Finder's Fees ...........................................................................19

7.       "AS IS" Transaction. ..............................................................................................19

8.       Bankruptcy Court and Other Approvals. .................................................................19

9.       Commercially Reasonable Efforts ...........................................................................21

10.      Conduct Pending Closing. .......................................................................................21

11.      Expense Reimbursement. .........................................................................................23

12.      Employee Matters. ...................................................................................................24

13.      Termination. ............................................................................................................25

13.1     Termination by Mutual Consent .................................................................25

13.2     Termination by Either Purchaser or Seller..................................................25

13.3     Termination by Seller .................................................................................25

13.4     Termination by Purchaser ...........................................................................25

13.5     Effect of Termination ..................................................................................26

13.6     Notification of Certain Events ....................................................................26

14.      Post-Closing Matters...............................................................................................26

14.1     Use of Marks...............................................................................................26

14.2     Further Conveyances and Assumptions.......................................................26

14.3     Reasonable Access to Records.....................................................................27

15.      Miscellaneous. .........................................................................................................27

15.1     Attorneys' Fees ................................................................................................27

15.2     Notices ...............................................................................................................27

15.3     Entire Agreement ...............................................................................................28

15.4     Modification .......................................................................................................28

15.5     Severability ........................................................................................................28

15.6     Captions ..............................................................................................................28

15.7     Waiver .................................................................................................................28

15.8     Payment of Fees, Costs and Expenses ...............................................................28

15.9     Survival ...............................................................................................................29

15.10    Assignments .......................................................................................................29

15.11    Binding Effect ....................................................................................................29

15.12    Applicable Law ..................................................................................................29

15.13    Construction ........................................................................................................29

15.14    CONSENT TO JURISDICTION .......................................................................29

15.15    Counterparts ........................................................................................................30

15.16    Non-Recourse .....................................................................................................30

15.17    Time is of the Essence ........................................................................................30

15.18    Interpretation and Rules of Construction ...........................................................30

15.19    Third Party Beneficiaries ...................................................................................31

15.20    Liquidated Damages as Sole Remedy of Seller .................................................31

15.21    Liquidated Damages as Sole Remedy of Purchaser...........................................31

15.22    Final Orders ........................................................................................................31

16.      Definitions ......................................................................................................................31

**EXHIBITS**

A       Assignment and Assumption of Real Property Lease
B       Assignment and Assumption of Contracts
C       Assignment of Intangible Property Assets
D       Bill of Sale and Assignment
E       [Reserved]
F       Assumption Agreement
G       Sale Motion and Order
H       Procedures Order

**SCHEDULES[1]**

Schedule 1.1(a)          Purchased Assets--Real Property
Schedule 1.2(a)          Retained Auto Business Assets
Schedule 1.2(b)          Retained Surplus Real Property
Schedule 1.3             Contracts under Seller Review
Schedule 5.4             Seller's Required Approvals
Schedule 5.7             Litigation
Schedule 5.10            Business Permits
Schedule 5.13(a)         Owned Real Property
Schedule 5.13(b)         Leased Real Property
Schedule 5.14(a)         Dealer Contracts
Schedule 5.14(b)         Other Contracts
Schedule 5.14(c)         Suzuki Automotive Product Warranty Programs
Schedule 5.15(a)         Marks
Schedule 5.15(d)         Domain Names
Schedule 5.16(a)         Equipment
Schedule 5.17(a)         Employee Matters
Schedule 5.17(b)         Seller Benefit Plans
Schedule 5.17(d)         COBRA Beneficiaries
Schedule 5.18            Cure Costs

---

[1] All Schedules (other than Schedule 1.3) to be delivered by Seller pursuant to Section 10.8 of this Agreement.

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "***Agreement***") is made and entered into as of November 6, 2012 (the "***Execution Date***") by and between American Suzuki Motor Corporation, a California corporation ("***Seller***"), and NounCo, Inc., a California corporation ("***Purchaser***"). In this Agreement, Seller and Purchaser are collectively referred to as the "***Parties***." Capitalized terms used in this Agreement are intended to have the meanings given to such terms in Section 16 hereof.

## RECITALS

The Parties hereby acknowledge that:

A.    Purchaser is a newly organized, wholly-owned subsidiary of Suzuki Motor Corporation, a Japanese corporation ("***SMC***"). SMC is engaged in the manufacture and sale of Suzuki Products worldwide.

B.    Seller, also a wholly-owned subsidiary of SMC, is engaged in three distinct business lines in the U.S. Territory: (i) the distribution and sale of Suzuki Automotive Products (such business line, the "***Auto Sales Business***"), (ii) the servicing of Suzuki Automobiles, including any warranty work, and the sale of parts in connection with such servicing (such business line, the "***Auto Servicing Business***"), (iii) the distribution, sale and servicing of Suzuki Motorcycle Products and Suzuki ATV Products (such businesses, collectively, the "***Motorcycle/ATV Business***"), and (iv) the distribution, sale and servicing of Suzuki Marine Products (such business, the "***Marine Business***"). In this Agreement, (a) the Auto Sales Business and the Auto Servicing Business is referred to as the "***Auto Business***," (b) the Auto Business, the Motorcycle/ATV Business and the Marine Business collectively are referred to as the "***Business***," and (c) the Auto Servicing Business, the Motorcycle/ATV Business and the Marine Business collectively are referred to as the "***Acquired Business***."

C.    On the Execution Date, Seller has filed a voluntary petition (the "***Petition***") for relief under Chapter 11 of Title 11 of the United States Code, 11, U.S.C. Sections 101 *et seq*. (the "***Bankruptcy Code***") in the United States Bankruptcy Court Central District of California (the "***Bankruptcy Court***"), commencing a federal bankruptcy case in respect of Seller (such case, the "***Chapter 11 Case***").

D.    Seller wishes to sell to Purchaser, and Purchaser wishes to purchase from Seller, certain of the assets and properties of Seller relating to the Acquired Business, and Seller wishes to assume and assign to Purchaser, and Purchaser wishes to accept from Seller, certain executory contracts and unexpired leases pursuant to the terms hereof, all in the manner and subject to the terms and conditions set forth herein (such transactions, the "***Contemplated Transactions***").

## AGREEMENT

In consideration of their respective covenants set forth herein, the Parties agree as follows:

1.    Transfer of Assets.

1.1    Purchase and Sale of Assets.    On the Closing Date and on the terms and conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase, acquire, accept and receive from Seller, free and clear of all Encumbrances (other than Permitted Encumbrances), all of Seller's right, title and interest as of the Closing Date in and to all of its assets and properties arising out of, relating to or used in connection with the Acquired Business, other than any Excluded Assets (such assets and properties other than Excluded Assets, the "***Purchased Assets***"), including:

(a)      all real property owned by Seller, whether or not used in connection with the Acquired Business, including the parcels identified on Schedule 1.1(a), but, for avoidance of doubt, excluding Retained Real Property;

(b)      all real property leased by Seller and related Leasehold Improvements, whether or not used in connection with the Acquired Business, subject, in the case of any Real Property Lease, to the rights of Purchaser under Section 1.3 to designate, in its sole and absolute discretion, any Real Property Lease as an Excluded Contract (in which case such Real Property Lease and all real property and Leasehold Improvements related thereto shall be deemed a Excluded Asset);

(c)      all Equipment of Seller relating to or used in connection with the Acquired Business;

(d)      all Inventory of Seller (for avoidance of doubt, other than Suzuki Automobiles) held for sale in, or for use in connection with any sale in, the Acquired Business, and all rights of Seller to take delivery of any such Inventory ordered by Seller before the Closing Date, which Inventory has not been delivered as of the Closing Date;

(e)      all Receivables, subject, in the case of any Receivable that arises out of a Seller's Contract, to the rights of Purchaser under Section 1.3 to designate, in its sole and absolute discretion, any such Seller's Contract as an Excluded Contract (in which case any such Receivable shall be deemed an Excluded Asset);

(f)      the collective bargaining agreement for the Represented Employees and all Service and Parts Agreements, including any prepaid expenses and any security or other deposit thereunder held by any third party thereto;

(g)      all Seller's Contracts (other than the Seller's Contracts identified in Section 1.1(f) hereof), including any prepaid expenses thereunder and any security or other deposit held by any third party pursuant thereto, provided that Purchaser under Section 1.3 has designated such Seller's Contract as a Purchased Contract (in which case such interest of Seller therein shall be deemed a Purchased Asset);

(h)      all prepaid expenses, refunds, rebates, credits or payments due, and all utilities or other deposits with third parties, arising out of or related to the Acquired Business, including refunds with respect to Taxes paid by or on behalf of Seller and refunds of Transfer Taxes included within the Assumed Liabilities;

(i)      all Intangible Property Assets, including the items identified on Schedule 5.17(b), Schedule 5.17(c), and Schedule 5.17(d);

(j)      to the extent transferable and assignable, all of the Seller's interest in all Business Permits relating to the Facilities, including those described on Schedule 5.10;

(k)      all securities and other ownership interests issued by SMAC;

(l)      all Avoidance Actions arising out of or related to the Purchased Assets or the Acquired Business, including, without limitation, any such Avoidance Actions with respect to vendors, employees, landlords, suppliers, customers and other counterparties (and their respective agents, representatives, advisors and counsel) of Seller arising out of or related to the Purchased Assets or the Acquired Business;

(m)      all Claims relating to any of the Purchased Assets, the Assumed Liabilities or the Acquired Business,

(n)      to the extent transferable and assignable, the Tax attributes of Seller;

141790.8                                      3

(o)    to the extent transferable and assignable, all of Seller's insurance policies and the proceeds thereof relating to the Acquired Business (other than any directors' and officers' liability insurance policies and the proceeds thereof);

(p)    to the extent transferable and assignable, all rights of Seller under non-disclosure or confidentiality, non-compete, non-solicitation or similar agreements with any employee or agent of Seller or with any third party, other than any such rights of Seller to the extent pertaining solely to an Excluded Asset;

(q)    to the extent transferable and assignable, all rights of Seller under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to any Equipment or Inventory (or components thereof) sold, or services provided, to Seller or to the extent affecting any Purchased Asset or the Acquired Business, other than any warranties, representations and guarantees to the extent pertaining solely to any Excluded Asset;

(r)    all rights to the telephone and facsimile numbers and e-mail addresses used by Seller, as well as rights to receive mail and other communications addressed to Seller (including mail and communications from customers, suppliers, distributors and agents); and

(s)    all other property and assets pertaining to or used or useful in the conduct of the Acquired Business or the ownership of the Purchased Assets.

1.2    Excluded Assets

The Purchased Assets shall exclude all right, title or interest of Seller as of the Closing Date in or to any of the following (collectively, the "**_Excluded Assets_**"):

(a)    for the avoidance of doubt, other than as specifically set forth in Section 1.2, any assets or properties, whether tangible or intangible, real or personal, and including real property, Leasehold Improvements, Inventory, Equipment, Intangible Property, or otherwise, arising out of, relating to, or used in connection with the operation of the Auto Business, including Suzuki Automobiles and any other items identified in Schedule 1.2(a) (all such assets and properties, the "**_Retained Auto Business Assets_**");

(b)    the real property identified in Schedule 1.2(b) (all such properties, the "**_Retained Real Property_**");

(c)    any cash, cash equivalents (including certificates of deposit and other time deposits) and marketable securities, wherever located, other than any rebate, credit, or payment due, or security, utilities or other deposits with third parties, relating to any of the Facilities or Purchased Contracts;

(d)    any depositary, checking or other accounts of Seller at any bank or financial institution;

(e)    all Equipment and other tangible personal property, wherever located, together with all manufacturers' warranties pertaining to the same, that are subject to personal property leases that are not Assumed Contracts;

(f)    the Purchase Price and Seller's rights under this Agreement;

(g)    any Excluded Contracts, including any security or other deposit, refund, rebate, credit or payment due to Seller thereunder;

(h)    any Inventory of Seller that is not included within Section 1.1(d);

(i)    any Avoidance Actions arising out of or related to Excluded Assets;

(j)      [Reserved];

(k)      any directors' and officers' liability insurance policies of the Seller and the proceeds thereof;

(l)      any Claims arising out of, relating to, or reasonably necessary to enforce or enjoy the benefits of any Excluded Contract or Excluded Asset;

(m)      any Business Permits either (i) relating to the licensing or other statutory obligations of Seller relating to the Auto Dealers (provided, that any such Business Permits that relate to Auto Dealers subject to a Service and Parts Agreement assigned to, or entered into with, Purchaser shall, to the extent transferable and assignable, be Purchased Assets) or (ii) under applicable law not transferable or assignable to Purchaser at the Closing;

(n)      any Books and Records relating to any pre-Closing Period that the Seller is under Legal Requirement to retain, including (i) Tax Returns, financial statements, and corporate or other Entity filings (*provided, however*, that Purchaser shall have the right to make copies of any portions of such retained Books and Records that relate to the Business or any of the Purchased Assets), (ii) minute books, stock ledgers, and stock certificates of any Subsidiaries of Seller, and (iii) documents relating to proposals to acquire the Business by Persons other than Purchaser;

(o)      (i) any materials containing information about employees (other than Transferred Employees), disclosure of which is prohibited under applicable law, (ii) any materials containing information subject to any attorney-client, attorney work product or other applicable privilege in favor of Seller, (iii) any materials containing information disclosure of which by Seller to Purchaser would breach any contractual obligation of confidentiality to which Seller is subject, and (iv) any software or other item of intangible property held by the Seller pursuant to a license or other Seller's Contract where Purchaser does not assume the underlying Seller's Contract relating to such intangible personal property at the Closing;

(p)      all securities, whether capital stock or debt, and other ownership interests issued by any Subsidiaries of Seller, other than SMAC;

(q)      all assets of any Section 401(k) plan for Seller's employees; and

(r)      any item expressly excluded pursuant to the provisions of <u>Section 1.1</u> above.

1.3      <u>Contracts.</u>

(a)      On or prior to the Contract Designation Deadline, Purchaser shall have the right, in Purchaser's sole and absolute discretion, to designate any Seller's Contract as a Purchased Contract or an Excluded Contract. Any Seller's Contract designated as a Purchased Contract shall (i) be assumed by Seller on or before the Closing (if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof), (ii) be assigned to Purchaser at the Closing, and (iii) be deemed a Purchased Asset. Any Seller's Contract designated as an Excluded Contract shall be deemed an Excluded Asset and may be assumed, rejected or terminated by Seller in Seller's sole discretion. Any such designation may be made by Purchaser by giving notice thereof in accordance with <u>Section 15.2</u> on or prior to the Contract Designation Deadline. Any such designation shall be subject to change by Purchaser from time to time in Purchaser's sole discretion by giving written notice thereof to Seller in accordance with <u>Section 15.2</u> on or prior to the Contract Designation Deadline. At 5:00 Pacific time on the Contract Designation Deadline, all such designations made by Purchaser shall be become final and binding upon Purchaser and, except as otherwise set forth below, all of Seller's Contracts as to which Purchaser has made no such designation shall be deemed Excluded Contracts.

(b)    Notwithstanding the foregoing,

(i)    so long as an Excluded Contract has not been rejected by Seller pursuant to Section 365 of the Bankruptcy Code, Seller shall, upon written request by Purchaser, assume and assign such Excluded Contract to Purchaser or its designee for no additional consideration (other than any obligation of Purchaser under this Agreement to pay for Cure Costs relating thereto); and

(ii)    if at any time Seller becomes aware, on or before the Closing Date, of any Seller's Contract that has not been included on Schedule 5.13(b), Schedule 5.14(a), and Schedule 5.14(b), Seller shall promptly thereafter advise Purchaser of the existence, and provide Purchaser with a copy, of such Seller's Contract and Purchaser thereupon shall have the right to request, by written notice to Seller within five (5) days, that Seller assume such Seller's Contract on or before the Closing if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and assign and sell such Seller's Contract to Purchaser, in which case Seller shall use commercially reasonable efforts to assume such Seller's Contract on or before the Closing if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and to assign and sell such Seller's Contract to Purchaser, as promptly as reasonably practicable, on the same terms and conditions as would be applicable under this Agreement to the Purchased Contracts.

(c)    As part of any (i) Sale Motion seeking Bankruptcy Court approval of the Sale Order Transaction or (ii) memorandum in support of Bankruptcy Court confirmation of the Plan Sale Transaction (the "*Plan Sale Transaction Pleadings*"), as applicable, Seller shall seek approval by the Bankruptcy Court of (i) the assumption on or before the Closing of all Seller's Contracts identified on Schedule 5.13(b), Schedule 5.14(a), and Schedule 5.14(b) if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and (ii) the transfer, assignment and sale by Seller to Purchaser of all Seller's Contracts identified on Schedule 5.13(b), Schedule 5.14(a), and Schedule 5.14(b). Seller shall serve any Sale Motion or Plan Sale Transaction Pleadings, as applicable, on all counterparties to all such Seller's Contracts along with a notice specifically stating that Seller is or may be seeking the assumption, transfer, assignment and sale of such Seller's Contracts and shall notify such parties of the deadline for objecting to any Cure Costs listed in such Schedules, which deadline shall be not less than three (3) Business Days prior to the Contract Designation Deadline. As part of any Sale Motion or Plan Sale Transaction Pleadings, as applicable, Seller shall seek authority to file with the Bankruptcy Court the list identifying such Seller's Contracts and the amounts necessary to cure defaults under each of such Contract as determined by Seller in accordance with Schedule 5.13(b), Schedule 5.14(a), and Schedule 5.14(b), so as to enable any such party to object to the proposed Cure Costs and the Bankruptcy Court to determine such Cure Costs as promptly as reasonably possible. In cases in which Seller is unable to establish that a default exists, the relevant Cure Cost shall be set at $0.00.

(d)    Additionally, and notwithstanding Section 1.3(a) to the contrary, Seller agrees that from the Contract Designation Deadline through the date that is one hundred and twenty (120) days after the Closing Date, or such other date as is mutually agreed to by Purchaser and Seller, Seller will provide Purchaser, at Purchaser's expense, with the rights and benefits under the Seller's Contracts (including, without limitation, Real Property Leases) set forth on Schedule 1.3 (which schedule may be amended or modified by Purchaser in its sole and absolute discretion at any time through the date that is the Contract Designation Deadline). Purchaser's rights and benefits under such Seller's Contracts, including access to and use of the real property

subject to the Real Property Leases set forth on <u>Schedule 1.3</u>, if any, will be subject to and consistent with Seller's obligations, if any, to third parties with respect to such Seller's Contracts, and Purchaser will perform such obligations as required.  In addition to the Purchase Price, Purchaser shall promptly pay the reasonable and actual incremental costs or administrative claims incurred by Seller as a result of providing such rights and benefits to Purchaser or due to the deferral of the decision to reject such unexpired Seller's Contracts in order to provide such rights and benefits, and shall name Seller as an additional insured on any insurance policy (including liability and casualty policies) covering any real property subject to a Real Property Lease set forth on <u>Schedule 1.3</u>.  Seller shall, upon the written request of Purchaser, promptly make a motion in the Chapter 11 Case to assume and assign to Purchaser any Seller's Contract listed on <u>Schedule 1.3</u> and any such Seller's Contract shall be deemed to be a Purchased Contract.  The Cure Costs, as determined by the Bankruptcy Court, if any, necessary to cure all defaults, if any, and to pay all actual or pecuniary losses that have resulted from any defaults under those Seller's Contracts set forth on <u>Schedule 1.3</u> to be assumed and assigned to Purchaser shall be paid by Purchaser, and Seller shall have no liability therefor.  Purchaser shall provide Seller with not less than fifteen (15) days' prior written notice specifying the date that it will no longer require such rights and benefits with respect to any Seller's Contract set forth on <u>Schedule 1.3</u> and Purchaser shall have no further obligation with respect to such incremental costs or administrative claims after the later of such termination date or the last day of the payment period in which such termination date occurs.

2.    <u>Consideration.</u>

2.1    <u>Purchase Price</u>

The purchase price for the Purchased Assets (the "***Purchase Price***") consists of (i) the assumption by Purchaser of the Assumed Liabilities and (ii) the payment by Purchaser of Ninety Five Million U.S. Dollars ($95,000,000.00) in cash (such cash payment, the "***Cash Purchase Price***").

2.2    <u>Deposit.</u>

(a)    Purchaser hereby pledges, for the benefit of Seller and in accordance with the Procedures Order, a portion of Purchaser's secured Claim evidenced by the SMC Loan Agreement in an amount equal to Two Million Five Hundred Thousand Dollars ($2,500,000.00) (as deposited pursuant to this provision, the "***Deposit***").

(i)    At Closing, the Deposit shall be deemed cancelled and the full Cash Purchase Price shall be paid.

(ii)    Except as set forth in Section 2.2(a)(iii), if this Agreement terminates without a Closing the Deposit shall be deemed cancelled.

(iii)    If this Agreement is terminated without a Closing by Seller pursuant to <u>Section 13.3(a)</u> or by Purchaser other than in accordance with this Agreement, the Deposit shall constitute a setoff against Purchaser's secured Claim evidenced by the SMC Loan Agreement.

(b)    Notwithstanding the foregoing, to the extent that an Overbidder has entered into an agreement to effectuate an Alternative Transaction with Seller,

(i)    Within one (1) Business Day after the execution and delivery of such Alternative Transaction agreement, Seller and Overbidder shall enter into the Escrow Agreement and Overbidder shall deposit Two Million Five Hundred Thousand Dollars ($2,500,000.00) with the Escrow Holder, as an earnest money deposit (as deposited pursuant to this provision, together with interest accrued

thereon, the "***Deposit***").  The Deposit shall be held by Escrow Holder in a segregated escrow account in accordance with the terms and conditions of the Escrow Agreement and the Alternative Transaction agreement.

(ii)      At Closing, the Deposit shall be credited and applied toward the Cash Purchase Price.

(iii)     Except as set forth in Section 2.2(b)(iv), if such Alternative Transaction agreement terminates without a Closing the Escrow Holder shall immediately disburse the Deposit to the Overbidder.

(iv)     If such Alternative Transaction agreement is terminated without a Closing by Seller pursuant to Section 13.3(a) or by Overbidder other than in accordance with such agreement, the Escrow Holder shall immediately disburse the Deposit to Seller.

2.3      [Reserved].

2.4      [Reserved].

2.5      Assumed Liabilities

Effective as of the Closing Date, Purchaser shall assume only the following Liabilities of Seller: (i) all Liabilities relating to the ownership or operation of the Purchased Assets or the Acquired Business after the Closing Date, including any such Liabilities for real property or ad valorem Taxes applicable to the Purchased Assets, to the extent that such Liabilities first arise after the Closing Date; (ii) all Liabilities under express factory or implied warranties of Suzuki Automotive Products, Suzuki Motorcycle Products, Suzuki ATV Products and Suzuki Marine Products and otherwise arising out of the Acquired Business, regardless of whether arising before or after the Petition Date; (iii) all Purchased Inventory Loan Obligations of Seller outstanding as of the Closing Date; (iv) all Liabilities under any of the Purchased Contracts, to the extent such Liabilities first arise after the Closing Date; (v) all Liabilities for Cure Costs; (vi) in accordance with the provisions of Section 3.4, all Liabilities for Transfer Taxes arising out of the Contemplated Transactions; (vii) all Liabilities under the collective bargaining agreement for the Represented Employees, to the extent that such Liabilities first arise after the Closing Date; (vii) all Liabilities for Transferred Employee Compensation and Benefits; and (viii) all Liabilities under Service and Parts Agreements assigned to, or entered into with, Purchaser to the extent that such Liabilities first arise after the Closing Date (collectively, the "***Assumed Liabilities***").

2.6      Excluded Liabilities

Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall not be obligated to assume or to perform or discharge any Liability of Seller other than the Assumed Liabilities (such Liabilities not assumed by Purchaser, the "***Excluded Liabilities***").  Without limiting the foregoing, Purchaser shall not be obligated to assume or to perform or discharge, and Purchaser does not assume or perform or discharge, any of the following Liabilities:  (i) any Liability of Seller that arises on or before the Closing Date and is not expressly assumed by Purchaser in writing; (ii) any Liability of Seller in respect of pre-Petition Claims against Seller, other than the Assumed Liabilities; (iii) any Liability of Seller relating to any Excluded Contracts or other Seller's Contracts not specifically assumed by Purchaser; (iv) any Liability of Seller relating to any of the Excluded Assets; (v) any Liability of Seller to SMC for any Indebtedness under the SMC Loan Agreement; (vi) any Liability of Seller for Indebtedness or obligations under the DIP Credit Facility other than Purchased Inventory Loan Obligations; (vii) any Liability of Seller relating to Seller's execution, delivery or performance of this Agreement or any document contemplated by this Agreement; (viii) any and all Liabilities of Seller of any sort whatsoever (whether now existing or hereafter arising) under Environmental Laws relating to or arising out of or in

connection with the Business (including administrative or civil fines or penalties for violations of Environmental Laws, or remediation or response costs for contamination); (ix) any Liability of Seller with respect to the WARN Act, or any similar federal, state or other law, rule or regulation; (x) any Liability of Seller to employees not expressly assumed by Purchaser hereunder; (xi) any Liabilities relating to the licensing and other statutory obligations of Seller relating to the Auto Dealers, to the extent such Liabilities arise on or before the Closing Date; (xii) any fees, commissions, bonuses, costs, or expenses payable by Seller to any of its investment bankers, brokers, legal counsel, financial advisors or other professionals, or (xiii) any costs or expenses of Seller arising out of the administration of the Chapter 11 Case.

2.7     Payment of Cure Amounts

All Cure Costs shall be the responsibility of Purchaser.  Cure Costs shall be paid promptly to the parties to whom and pursuant to the terms by which the Bankruptcy Court directs such payments to be made.

2.8     Pro-Rations

All expenses related to the Acquired Business, including, without limitation, to the extent not otherwise specifically provided for in this Agreement, Taxes, and other expenses incurred by Seller in the ordinary course of business with respect to the Acquired Business, such as prepaid insurance, prepaid advertising, maintenance, common area or like payments, rents, and Utilities (as defined below) under the Purchased Contracts, will be pro-rated as of the Closing Date, such that Purchaser is responsible for amounts incurred with respect to periods on or after the Closing Date and Seller is responsible for amounts incurred with respect to periods prior to the Closing Date.  All Liabilities due in respect of periods prior to or as of the Closing Date shall be paid in full or otherwise satisfied by Seller (provided that nothing herein shall require Seller to make payments on account of prepetition claims) and all Liabilities and obligations due in respect of periods after the Closing Date shall be paid in full or otherwise satisfied by Purchaser; provided, that Purchaser shall have no obligation to reimburse Seller for any payments made by Seller prior to Closing on account of the Liabilities described in this Section 2.8. Rent shall be prorated on the basis of actual days elapsed.  In furtherance hereof, before the Closing Date, Purchaser and Seller shall make mutually satisfactory arrangements with respect to, or take readings or other measurements of, gas, water, electricity and other utilities at the Facilities (the "*Utilities*").  On or about the Closing, Seller and Purchaser shall mutually determine all Utilities, rent, common area maintenance expense, and real estate Taxes arising out of or relating to the Facilities which (i) accrued but were not paid by Seller during or in respect of any period prior to Closing or (ii) were paid by Seller in respect of any period following the Closing (the "*Apportionable Operating Expenses*").  Responsibility for the Apportionable Operating Expenses is to be apportioned equitably as of the Closing Date.

2.9     Purchase Price Allocation

Solely for the purpose of filing the Tax Returns, and for no other purpose, Purchaser shall use its commercially reasonable efforts to deliver to Seller, no later than six (6) months after the Closing Date, a schedule (the "*Allocation Schedule*") allocating the Purchase Price among the various assets comprising the Purchased Assets in accordance with Treasury Regulation 1.1060-1 (or any comparable provisions of state or local Tax law) or any successor provision.  Purchaser will prepare the Allocation Schedule in good faith.  Purchaser and Seller shall report and file all Tax Returns (including any amended Tax Returns and claims for refund) consistent with the Allocation Schedule and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any taxing authority or any other proceedings).  Purchaser and Seller shall file or cause to be filed any and all forms (including U.S. Internal Revenue Service Form 8594), statements and schedules with respect to such allocation, including any required amendments to such forms.  Not later than thirty (30) days prior to the filing of their respective Forms 8594 (and analogous state law forms) relating to the Contemplated Transactions, each Party shall deliver to the other Party a copy of its Form 8594 (and such analogous state law forms).

3.      Closing Transactions.

3.1      Closing

The Closing of the Contemplated Transactions (the "**_Closing_**") shall take place at 10:00 a.m. (Pacific time) on or before the third Business Day following the satisfaction or waiver by the appropriate Party of all the conditions contained in Section 4, or on such other date (no later than the Outside Date) as may be agreed to by the Parties hereto; *subject, however*, to the provisions of Section 13 (the date on which the Closing occurs, hereinafter the "**_Closing Date_**").

3.2      Seller's Deliveries to Purchaser at Closing

On the Closing Date, Seller shall make the following deliveries to or for the benefit of Purchaser:

(a)      deliver the certificate contemplated by Section 4.2(a), duly executed by Seller;

(b)      deliver a deed containing the appropriate Legal Description, duly executed and acknowledged by Seller, with respect to each parcel of real property owned by Seller other than the Retained Real Property, together with any necessary transfer declarations or other filings as will permit such instrument to be recorded in the county in which such parcel is located (in recordable form if requested by Purchaser);

(c)      deliver an Assignment and Assumption of Real Property Lease substantially in the form attached as Exhibit "A" hereto, duly executed by Seller, for each Real Property Lease, pursuant to which Seller's interest in such Real Property Leases shall be assigned to Purchaser (each, an "**_Assignment of Real Property Lease_**");

(d)      deliver an Assignment and Assumption of Contracts substantially in the form attached as Exhibit "B" hereto, duly executed by Seller, pursuant to which Seller's interest in all Purchased Contracts, including any Service and Parts Agreements, shall be assigned to Purchaser (the "**_Assignment of Contracts_**");

(e)      deliver an Assignment of Intangible Property Assets, duly executed by Seller, substantially in the form attached as Exhibit "C" hereto, pursuant to which Seller's interest all the Intangible Property Assets shall be assigned to Purchaser (the "**_Assignment of Intangible Property Assets_**");

(f)      deliver certificates of title or other appropriate instrument of transfer, duly executed by Seller, required to convey ownership of any motor vehicles included within the Purchased Assets;

(g)      deliver a Bill of Sale and Assignment, substantially in the form attached as Exhibit "D" hereto, duly executed by Seller, pursuant to which Seller's interest in any Purchased Assets not otherwise assigned at the Closing shall be assigned to Purchaser (the "**_Bill of Sale_**");

(h)      deliver appropriate evidence of all necessary corporate action by Seller in connection with the Contemplated Transactions, including:  (i) certified copies of resolutions duly adopted by Seller's board of directors approving the Contemplated Transactions and authorizing the execution, delivery, and performance by Seller of this Agreement; and (ii) a certificate as to the incumbency of officers of Seller executing this Agreement and any instrument or other document delivered in connection with the Contemplated Transactions;

(i)      deliver certified copies of all Orders of the Bankruptcy Court pertaining to the Contemplated Transactions, including any Sale Order, Procedures Order or Proposed Plan Confirmation Order and evidence of the entry of all such Orders on the docket of the Chapter 11 Case;

(j)        deliver an affidavit of an officer of each of Seller, setting forth the name, address and federal tax identification number of Seller and stating that Seller is a "foreign person" within the meaning of Section 1445 of the Code.  If, on or before the Closing Date, Purchaser shall not have received such affidavit, Purchaser may withhold from the cash payments to Seller at Closing such sums as are required to be withheld therefrom under Section 1445 of the Code;

(k)        deliver an Administrative Services Agreement in mutually agreeable form, duly executed by Seller, providing for Seller's post-Closing access to Books and Records and use of Purchaser's employees and office space to complete and close the Chapter 11 Case, all at Seller's expense (the "*ASA*"); and

(l)        deliver any such other documents, funds or other things reasonably requested by Purchaser or contemplated by this Agreement to be delivered by Seller to Purchaser at the Closing.

3.3        <u>Purchaser's Deliveries to Seller at Closing</u>

On the Closing Date, Purchaser shall make the following deliveries to or for the benefit of Seller:

(a)        pay, by wire transfer of immediately available funds, all Cure Costs for which Seller is responsible hereunder to the parties to whom and pursuant to the terms by which the Bankruptcy Court directs such payments to be made under the Sale Order or the Proposed Plan Confirmation Order, as applicable;

(b)        pay, by wire transfer of immediately available funds into an account or accounts designated by Seller, an amount equal to the full Cash Purchase Price;

(c)        solely to the extent that an Overbidder has entered into an agreement to effectuate an Alternative Transaction with Seller, such Overbidder shall instruct the Escrow Agent in writing to release to Seller, by wire transfer of immediately available funds into an account or accounts designated by Seller, the Deposit as a credit against the Cash Purchase Price;

(d)        solely to the extent that an Overbidder has entered into an agreement to effectuate an Alternative Transaction with Seller, such Overbidder shall pay to Seller, by wire transfer of immediately available funds into an account or accounts designated by Seller, the full amount of the Cash Purchase Price less the Deposit to be credited pursuant to <u>Section 3.3(c)</u>;

(e)        deliver the certificate contemplated by <u>Section 4.1(a)</u>, duly executed by Purchaser;

(f)        deliver a counterpart Assignment of Real Property Lease for each Real Property Lease included in the Purchased Assets, duly executed by Purchaser;

(g)        deliver a counterpart of the Assignment of Contracts, duly executed by Purchaser;

(h)        deliver an Assumption of Liabilities with respect to the Assumed Liabilities, substantially in the form attached as <u>Exhibit "F"</u> hereto, duly executed by Purchaser (the "*Assumption of Liabilities*");

(i)        deliver any certificates of title or other appropriate instruments of transfer required to convey ownership of any motor vehicles included within the Purchased Assets, if acknowledgement or endorsement thereof is required by Purchaser;

(j)        deliver appropriate evidence of all necessary corporate action by Purchaser in connection with the Contemplated Transactions, including:  (i) certified copies of resolutions duly adopted by Purchaser's managing member(s) approving the Contemplated Transactions and authorizing the execution, delivery, and performance by Purchaser of this

Agreement; and (ii) a certificate as to the incumbency of those officers of Purchaser executing this Agreement and any instrument or other document delivered in connection with the Contemplated Transactions;

(k)    deliver a counterpart of the ASA, duly executed by Purchaser; and

(l)    deliver any such other documents, funds or other things reasonably requested by Seller or contemplated by this Agreement to be delivered by Purchaser to Seller at the Closing.

3.4    Sales, Use and Other Taxes

To the extent not exempt under the Bankruptcy Code, any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, or under any federal law or the laws or regulations of any federal agency or authority, which may be payable by reason of the sale or transfer of the Purchased Assets under this Agreement or the Contemplated Transactions (the "*Transfer Taxes*"), if any, shall be borne and paid by Purchaser.  Purchaser shall be solely responsible for the preparation and filing of all relevant Tax Returns required to be filed in respect of such Transfer Taxes and shall pay all such Transfer Taxes.

3.5    Possession and Risk of Loss

Right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date. Seller shall transfer and deliver to Purchaser on the Closing Date such keys, locks, safe combinations, computer passwords and other similar items as Purchaser may reasonably require to obtain occupation and control of the Purchased Assets, and shall also make available to Purchaser at their then-existing locations the originals of all documents in Seller's actual possession that are required to be transferred to Purchaser by this Agreement.

3.6    Closing Date

All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.  Unless provided otherwise herein or agreed otherwise in writing by the Parties, documents delivered at the Closing shall be dated as of the Closing Date.

4.    Conditions Precedent to Closing.

4.1    Conditions to Seller's Obligations

Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Seller):

(a)    All of the representations and warranties of Purchaser contained herein shall continue to be true and correct at the Closing in all material respects, and Purchaser shall have substantially performed or tendered performance of each material covenant on Purchaser's part to be performed which, by its terms, is required to be performed at or before the Closing, and Seller shall have received a certificate by an officer of Purchaser, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in Section 4.2 either has been satisfied or has been waived by Purchaser.

(b)    Purchaser shall have tendered delivery of all items required to be delivered by Purchaser under Section 3.3.

(c)　　No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a Claim, such that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

(d)　　Either (i) the Bankruptcy Court, in connection with a Sale Order Transaction, shall have entered the Sale Order in accordance with Section 8.1 and the Procedures Order in accordance with Section 8.2, and each of the Sale Order and Procedures Order shall have become a Final Order, or (ii) if pursuant to Section 8.4 Seller, in consultation with Purchaser, elects to withdraw its request for approval of the Sale Order Transaction and seeks approval instead of a Plan Sale Transaction, the Bankruptcy Court shall have entered the Confirmation Order and such Confirmation Order shall have become a Final Order.

(e)　　The waiting period under the Hart-Scott-Rodino Law, as modified by Section 363(b)(2) of the Bankruptcy Code, including any extensions thereof, shall have expired.

(f)　　All Consents by, reports, notices or statements to, or filings or submissions with Governmental Bodies (other than any such action described in Section 4.1(d) or Section 4.1(e)) required under applicable law to be made by Purchaser in connection with the Contemplated Transactions shall have been given, made, filed or submitted, as required.

4.2　　Conditions to Purchaser's Obligations

Purchaser's obligation to make the deliveries required of Purchaser at the Closing and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Purchaser):

(a)　　All of the representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects, and Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is required to be performed at or before the Closing (provided, however, that Seller shall have performed in all respects its covenants hereunder to sell, assign, transfer, convey and deliver to Purchaser all of Seller's right, title and interest in and to all Purchased Assets free and clear of all Encumbrances), and Purchaser shall have received a certificate by an officer of Seller, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in Section 4.1 either has been satisfied or has been waived by Seller.

(b)　　Seller shall have tendered delivery of all items required to be delivered by Seller under Section 3.2.

(c)　　No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a Claim such that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

(d)　　Either (i) the Bankruptcy Court shall have entered the Sale Order in accordance with Section 8.1 and the Procedures Order in accordance with Section 8.2, and each of the Sale Order and Procedures Order shall have become a Final Order, or (ii) if pursuant to Section 8.4 Seller elects to withdraw its request for approval of the Contemplated Transactions

under section 363 and section 365 of the Bankruptcy Code, the Bankruptcy Court shall have entered a Confirmation Order and such Confirmation Order shall have become a Final Order.

(e)    To the extent applicable, any Bankruptcy Court shall have entered one or more Orders approving Seller's rejection of all Auto Dealership Agreements with any Auto Dealer and such Orders shall have become Final Orders.

(f)    Seller shall have requested Bankruptcy Court approval of each Dealer Settlement Agreement, including the allowance of the Settling Auto Dealer Claim (as defined in the Proposed Plan), in accordance with the settlement approval protocol established in the Dealer Settlement Procedures.  The Orders of the Bankruptcy Court approving substantially all of such Dealer Settlement Agreements shall have been entered, and such Orders shall be Final Orders.

(g)    Seller's Required Approvals shall have been obtained by Seller.

(h)    All agreements relating to lines of credit extended to various authorized Dealers for the wholesale purchase of new Suzuki Motorcycle Products, Suzuki ATV Products and Suzuki Marine Products, including, without limitation, all related repurchase agreements, in effect as of thirty (30) days prior to the Closing Date shall be either (i) in full force and effect as of the Closing Date or (ii) amended or otherwise modified on terms and conditions satisfactory to Purchaser in its sole and absolute discretion, and all of such agreements, to the extent applicable, shall be assigned to Purchaser as of the Closing.

(i)    A sufficient number of Service and Parts Agreements shall have been assigned to Purchaser, or shall have been entered into directly between Auto Dealers and Purchaser, to permit Purchaser to fully operate the Auto Servicing Business and satisfy its assumed obligations with respect to warranties as required by this Agreement, as reasonably determined by Purchaser.

(j)    To the extent applicable, any waiting period under the Hart-Scott-Rodino Law, as modified by Section 363(b)(2) of the Bankruptcy Code, including any extensions thereof, shall have expired.

(k)    All Consents by, reports, notices or statements to, or filings or submissions with Governmental Bodies (other than any such action described in Section 4.1(d) or Section 4.1(e)) required under applicable law to be made by Seller in connection with the Contemplated Transactions shall have been given, made, filed or submitted, as required.

5.    Seller's Representations and Warranties.

Seller hereby makes the following representations and warranties to Purchaser:

5.1    Organization

Seller is a corporation duly formed, validly existing and in good standing under the laws of the State of California.  Seller has all requisite corporate power and authority to own, lease and, subject to the provisions of the Bankruptcy Code applicable to debtors in possession, to operate its properties, carry on the Acquired Business as now being conducted, and to enter into this Agreement and to consummate the Contemplated Transactions.  Seller does not have any Subsidiaries other than SMAC.

5.2    Foreign Qualification

Seller is duly qualified as a foreign corporation, and is in good standing, in each state and other jurisdiction in which the failure to be so qualified would have a material adverse effect on Seller, the Purchased Assets or the Acquired Business.

5.3    Due Authorization and Enforceability

The execution, delivery and performance of this Agreement by Seller and the consummation by Seller of the Contemplated Transactions has been duly authorized by all requisite corporate action. Subject to the entry and effectiveness of the Procedures Order and Sale Order, or any Confirmation Order, this Agreement will be duly and validly executed and delivered by Seller and (assuming this Agreement constitutes a valid and binding agreement of Purchaser) will constitute a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, except as to the effect, if any, of the Standard Exceptions to Enforceability.

5.4     Approvals and Consents

No Consent by, or declaration, filing or registration with, any Governmental Body or any other Person is required to be made or obtained by Seller in connection with the execution, delivery and performance of this Agreement by Seller and the consummation of the Contemplated Transactions, except for (a) Consents by, or declarations or filings with, the Bankruptcy Court and (b) Consents, declarations, filings, registrations or rulings identified in Schedule 5.4. The items referred to in clauses (a) and (b) of this Section 5.4 are hereinafter referred to as the "*Seller's Required Approvals*."

5.5     No Conflict

Subject to the entry of the Sale Order or any Confirmation Order, neither the execution, delivery or performance of this Agreement by Seller, nor the consummation by Seller of the Contemplated Transactions, nor compliance by Seller with any of the provisions hereof, (a) conflict with or result in any breach of the articles of incorporation or bylaws of Seller, (b) result in a violation or breach of, or constitute (with or without notice or lapse of time) a default (or give rise to any right of termination, cancellation, vesting, payment, exercise, acceleration, suspension or revocation) under, any of the terms, conditions or provisions of, any note, bond, mortgage, deed of trust, security interest, or Seller's Contract, (c) violate any Legal Requirement applicable to Seller or to the Acquired Business, (d) result in the creation or imposition of any Encumbrance on any asset of Seller, or (e) cause the suspension or revocation of any Business Permits.

5.6     Financial Statements

Seller has delivered or made available to Purchaser a true, correct and complete copy of an audited consolidated balance sheet of Seller as at March 31, 2012 and the related audited consolidated statements of income, changes in shareholders' equity and cash flows for the fiscal year then ended, together with the report thereon of PriceWaterhouseCoopers LLP, certified public accountants (the "*Seller's Financial Statements*"). The Seller's Financial Statements have been prepared in a consistent manner and fairly and accurately present the financial condition and the results of operations, changes in stockholders' equity, and cash flow as at the respective dates of and for periods referred to in the Seller's Financial Statements, all in accordance with GAAP, subject, in the case of interim financial statements, to normal recurring year-end adjustments and the absence of notes.

5.7     Litigation

Except for the Chapter 11 Case and except as set forth in Schedule 5.7, there is no material Legal Proceeding pending that, once the Sale Order or Confirmation Order is given effect, will result in any Liability on Purchaser or, to the Seller's Knowledge, threatened against or affecting Seller that could result in the imposition of any Liability on Purchaser or in respect of the Purchased Assets, nor is there any material judgment or Order of any Governmental Body (other than the Bankruptcy Court) outstanding against Seller.

5.8     Compliance with Laws

Except as set forth in Schedule 5.8, Seller has not been given notice or been charged with any material violation of any Law of any Governmental Body. Except as set forth in Schedule 5.8, Seller is not in violation of any Legal Requirement. Except as set forth in Schedule 5.8, no material investigation

or review by any Governmental Body is pending or, to the Knowledge of Seller, threatened, against Seller or any of its assets and properties, nor has any Governmental Body indicated to Seller an intention to conduct the same. Except as set forth in Schedule 5.8, Seller has complied in all material respects with all applicable Laws in the operation of the Acquired Business and ownership and use of the Purchased Assets. Except as set forth in Schedule 5.8, all of the Business Permits necessary for, or otherwise material to, the operation of the Acquired Business have been duly obtained and are in full force and effect and, to the extent permitted by law and subject to the provisions of the Bankruptcy Code applicable to debtors in possession, Seller has the power to assign such Business Permits.

5.9    Environmental Matters

Seller has provided Purchaser with copies of all material documents and reports in its possession or control describing or otherwise relating to past or present events, conditions, circumstances, activities, practices, incidents, agreements, actions or plans which have given rise to or would be reasonably likely to give rise to any material Liability of Seller under Environmental Laws and any material environmental Liability that would adversely affect the value of the Purchased Assets. Seller is in material compliance with all Environmental Laws, which compliance includes, without limitation, the possession by Seller of all Business Permits and other governmental authorizations required under applicable Environmental Laws for the operation of the Acquired Business, and compliance with the terms and conditions thereof. Seller has not received any written notice not subsequently resolved with respect to the Acquired Business of, or any property owned or leased by, Seller from any Governmental Body or third party alleging that the Seller is not in compliance with or subject to any Liability under any Environmental Laws. Except for releases not prohibited under Environmental Laws, or Business Permits issued thereunder, there has been no release of any Hazardous Substance in excess of a quantity for which a report is required under Environmental Laws, on any real property of Seller. Seller is not liable for any costs, obligations, penalties, fines or forfeitures for failure to comply with any Environmental Laws or necessary to achieve or maintain compliance with Environmental Laws, or with respect to any environmental conditions or any release or presence of any Hazardous Substance, nor is Seller required to remedy any such existing condition or remove any Hazardous Substance from any real property.

5.10    Business Permits

Seller has all Business Permits that are material to the conduct of the Acquired Business. Schedule 5.10 is an accurate and complete list of all Business Permits and all such Business Permits are in full force and effect. No material violations are or have been committed in respect of any Business Permit and no proceeding is pending or, to the Knowledge of Seller, threatened to revoke or limit any Business Permit. To the extent permitted by law and subject to the provisions of the Bankruptcy Code applicable to debtors in possession, Seller has the power to assign such Business Permits.

5.11    Title to and Use of Property

Seller has, and subject to the Sale Order or Confirmation Order shall convey to Purchaser at the Closing, good and marketable title to all of the Purchased Assets, in each case free and clear of all Encumbrances.

5.12    Assets Necessary to Conduct Acquired Business

The Purchased Assets constitute all of the assets, properties and rights (i) used in the Acquired Business as currently conducted (other than the Excluded Assets) and (ii) necessary to conduct the Acquired Business as it is currently conducted.

5.13    Real Property.

(a)    Schedule 5.13(a) is an accurate and complete list of all Facilities and other real property owned by Seller.

(b)    Schedule 5.13(b) is an accurate and complete (i) list of all Facilities and other real property leased by Seller and (ii) list of all Real Property Leases, which accurately sets forth the parties to each such Real Property Lease and the address of the location and the lessor.

5.14    Contracts

(a)    Schedule 5.14(a) is an accurate and complete list of all of Seller's Contracts with Dealers, organized by Business Line, and accurately sets forth the date of and the parties to each such Seller's Contract.

(b)    Schedule 5.14(b) is an accurate and complete list of all of Seller's Contracts other than those listed in Schedule 5.13(b), and Schedule 5.14(a), organized by Business Line, and accurately sets forth the date of and the parties to each such Seller's Contract and a brief description of the subject matter thereof.

(c)    Schedule 5.14(c) is an accurate and complete description of all existing Suzuki Automotive Product warranty programs under which Seller has any Liability.

(d)    Schedule 5.13(b), Schedule 5.14(a), and Schedule 5.14(b) together constitute an accurate and complete list of all of the Seller's Contracts.

5.15    Intellectual Property.

(a)    Marks.  Schedule 5.15(a) sets forth an accurate and complete list of all (i) Trademarks and Trademark Rights owned by Seller, (ii) Trademarks and Trademark Rights used by Seller in the Acquired Business, or (iii) registered or pending applications for registration of any Trademarks described in (i) or (ii) in any jurisdiction (collectively, the "*Seller's Marks*"), specifying as to each item, as applicable, the owner of the Seller's Mark, the jurisdiction(s) in which the Seller's Mark has been issued or registered or in which an application for registration has been filed, and the issuance, registration or application numbers and dates.

(b)    Patents.  Seller does not own or use any Patents in connection with the Acquired Business.

(c)    Copyrights.  Seller does not own or use any registered Copyrights in connection with the Acquired Business.

(d)    Domain Names.  Schedule 5.15(d) sets forth an accurate and complete list of all Domain Names of Seller.

5.16    Other Personal Property

(a)    Schedule 5.16(a) sets forth an accurate and complete list of all Equipment.

(b)    All items included in Inventory consist of finished goods saleable in the ordinary course of business of Seller except for obsolete or defective items and items of below-standard quality, all of which have been written off or written down to net realizable value on the accounting records of Seller as of the Closing Date.  All Inventory has been valued at the lower of cost or market value on a first in, first out basis.

5.17    Employees and Labor Relations.

(a)    Schedule 5.17(a) sets forth an accurate and complete list of the following information for each employee of Seller:  name; job title; salary; and vacation accrued.

(b)    Schedule 5.17(b) sets forth an accurate and complete list of all Seller Benefit Plans.

(c)    To the Knowledge of Seller, Seller has not incurred any liability or obligation under the WARN Act or any similar federal, state or other law, rule or regulation, with respect to any employee of Seller that remains unpaid or unsatisfied.  There are no labor disputes, material grievances, arbitration proceedings, or any material union organization activities, strikes or work stoppages pending, or to Seller's Knowledge, threatened between Seller and any of its employees.  Except for the Represented Employees, no employee of Seller is represented by a labor union and Seller is not a party to any collective bargaining agreement.  There are no representation proceedings pending and no labor organization or group of employees has made a demand for recognition which is currently pending.

(d)    Schedule 5.17(d) contains a true and correct list of all former employees of Seller who, in connection with the Contemplated Transactions, may become "M & A qualified beneficiaries" for whose COBRA benefits Purchaser may become responsible as a "successor employer" under Treasury Regulation 54.4980B-9.

5.18    Cure Costs

Schedule 5.18 is an accurate and complete list of all amounts, if any, that Seller reasonably believes are owing as Cure Costs under any Seller's Contracts.

5.19    Broker's or Finder's Fees

No investment banker, agent, broker, person or firm acting on behalf of Seller is, or will be, entitled to any commission or broker's or finder's fees from Purchaser in connection with the Contemplated Transactions.

6.    Purchaser's Warranties and Representations.

In addition to the representations and warranties contained elsewhere in this Agreement, Purchaser hereby makes the following representations and warranties to Seller:

6.1    Organization

Purchaser is a corporation duly formed, validly existing and in good standing under the laws of the State of California.  Purchaser has all requisite corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder and consummate the Contemplated Transactions.

6.2    Due Authorization and Enforceability

The execution, delivery and performance of this Agreement by Purchaser and the consummation by Purchaser of the Contemplated Transactions have been duly authorized by all necessary corporate action.  This Agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as may be limited by the Standard Exceptions to Enforceability.

6.3    No Conflict

The execution and delivery of this Agreement, the consummation of the Contemplated Transactions, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Purchaser do not and will not: (i) conflict with or result in a breach of the articles of incorporation or bylaws of Purchaser; (ii) violate any Legal Requirement applicable to Purchaser; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Purchaser is a party or by which Purchaser or its assets or properties may be bound.

6.4    Financial Resources

Purchaser has the financial resources necessary to consummate the Contemplated Transactions upon the terms and conditions set forth in this Agreement, and such financial resources are not subject to

any constraints, conditions or contingencies that could in any way materially affect the Purchaser's ability to consummate the Contemplated Transactions or perform hereunder.

### 6.5    SMC Secured Claim

Purchaser has obtained all Consents required of SMC for Purchaser to pledge, as the Deposit, Two Million Five Hundred Thousand Dollars ($2,500,000) of SMC's secured Claim evidenced by the SMC Loan Agreement.

### 6.6    Broker's or Finder's Fees

No investment banker, agent, broker, person or firm acting on behalf of Purchaser is, or will be, entitled to any commission or broker's or finder's fees from Seller in connection with the Contemplated Transactions.

### 7.    "AS IS" Transaction.

Purchaser hereby acknowledges and agrees that, except only as provided in Section 5 above, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets (including income to be derived or expenses to be incurred in connection with the Purchased Assets, the physical condition of any tangible Purchased Assets, the environmental condition or other matter relating to the physical condition of any real property or improvements, the zoning of any real property or improvements, the value of the Purchased Assets (or any portion thereof), the transferability of the Purchased Assets or any portion thereof, the terms, amount, validity, collectability or enforceability of the Receivables or any Assumed Liabilities or Seller's Contracts, the merchantability or fitness of the Equipment, the Inventory or any other portion of the Purchased Assets for any particular purpose, or any other matter or thing relating to the Purchased Assets or any portion thereof). Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Purchased Assets. Except only for the representations set forth in Section 5 above, Purchaser will accept the Purchased Assets at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."

### 8.    Bankruptcy Court and Other Approvals.

8.1    On or promptly after the Execution Date, Seller shall make a motion (the "*Sale Motion*") for an Order by the Bankruptcy Court, substantially in the form attached hereto as Exhibit "G," approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement free and clear of all Encumbrances other than Permitted Encumbrances, including rights or Claims based on any successor Liability Claim, and enjoining all Persons holding liens, Claims, Encumbrances, and other interests, including rights or Claims based on any successor or transferee Liability, from asserting them against Purchaser, the Purchased Assets or the Acquired Business (the "*Sale Order*"). Any changes to the form of the Sale Order must be approved by Purchaser and Seller in their reasonable discretion. If requested by Seller or the Bankruptcy Court, Purchaser shall provide adequate assurance of future performance (satisfactory to the Bankruptcy Court) to the counterparties to the Seller's Contracts. Following the filing of the Sale Motion, Seller shall use reasonable efforts to obtain the Sale Order.

8.2    The Sale Motion shall request, among other things, (i) the entry of an Order by the Bankruptcy Court (the "*Procedures Order*") approving bidding procedures (the "*Bidding Procedures*") in the form attached hereto as Exhibit "H", subject to any changes thereto as approved by Purchaser and Seller in their reasonable discretion, to occur on or prior to December 5, 2012 and (ii) the entry of the Sale Order to occur on or prior to February 28, 2013.

8.3    Subject to entry of the Procedures Order, Seller shall pay to Purchaser the Expense Reimbursement to the extent and as and when required by the terms and conditions set forth in Section 11 hereof.

8.4     Notwithstanding <u>Section 8.1</u>, <u>Section 8.2</u>, <u>Section 8.3</u> or <u>Section 8.4</u>, at or prior to February 1, 2013, Seller, in consultation with Purchaser, may elect in its discretion to withdraw the Sale Motion seeking approval of the Sale Order Transaction and instead file the Plan Sale Transaction Pleadings seeking approval of the Plan Sale Transaction.  To the extent that Seller, in consultation with Purchaser, elects to proceed with confirmation of the Plan Sale Transaction, the Plan Sale Transaction Pleadings, the Confirmation Order, the Proposed Plan, and all related motions and Orders in the Chapter 11 Case shall be reasonably satisfactory to Purchaser.

8.5     On or promptly after the Execution Date, Seller shall file a motion with the Bankruptcy Court requesting interim and final Bankruptcy Court approval of a protocol (the "***Dealer Settlement Procedures***") that authorizes (a) Seller and SMC to enter into settlements with existing Auto Dealers (each, a "***Dealer Settlement Agreement***"), (b) the purchase by Purchaser of participation interests in the Settling Auto Dealers' liquidated claims, and (c) Seller to pay to SMC directly all Proposed Plan distributions made on account of SMC's participation interests.  Provided that an Order by the Bankruptcy Court approving the Dealer Settlement Procedures is entered, Seller shall use its commercially reasonable best efforts to negotiate Dealer Settlement Agreements with the Auto Dealers on the terms and conditions set forth in the Proposed Plan.  Seller shall file a motion with the Bankruptcy Court requesting Bankruptcy Court approval of each such Dealer Settlement Agreement, including the allowance of the claim of the Settling Auto Dealer, in accordance with the Dealer Settlement Procedures.

8.6     If any Orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or re-argument shall be filed with respect to any such Order), Seller shall diligently defend against such appeal, petition or motion and shall use its reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion; <u>provided</u>, that Seller shall consult with Purchaser at Purchaser's reasonable request regarding the status of any such actions; <u>provided</u> <u>further</u>, however, that Seller shall have no obligation under this Section to take any action in connection with which it would be required or might reasonably be expected to incur any material Liability, cost or expense unless Purchaser agrees to pay such Liability, cost or expense.  To the extent that an "Order" becoming a "Final Order" is a requirement pursuant to any provision of this Agreement, and that such requirement is waived by Purchaser pursuant to <u>Section 15.22</u>, and that any such Order is appealed (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or re-argument shall be filed with respect to any such Order), the provisions of this <u>Section 8.6</u> shall nevertheless apply.

8.7     Seller shall consult with Purchaser and its representatives upon Purchaser's reasonable request concerning any Order of the Bankruptcy Court relating to this Agreement and the bankruptcy proceedings in connection therewith and provide Purchaser with copies of requested applications, pleadings, notices, proposed Orders and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.  Seller further covenants and agrees that, after the Closing, the terms of any reorganization plan it submits to the Bankruptcy Court or any other court for confirmation shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the Contemplated Transactions, including any transaction contemplated by or approved pursuant to the Procedures Order, Sale Order or Confirmation Order.

8.8     To the extent applicable, as promptly as practicable after the execution of this Agreement, Seller and Purchaser shall file or cause to be filed with the Federal Trade Commission and the United States Department of Justice any notifications required to be filed under the Hart-Scott-Rodino Law and the rules and regulations promulgated thereunder with respect to the Contemplated Transactions, and Purchaser shall pay any filing fee associated therewith.  The Parties shall consult as to the appropriate time of filing of such notifications and shall use their respective reasonable best efforts to make such filings at the agreed upon time, to respond promptly to any requests for additional information made by

such agencies, and to cause the waiting periods under the Hart-Scott-Rodino Law to terminate or expire at the earliest possible date after the date of filing.

9.    Commercially Reasonable Efforts

Subject to the terms and conditions of this Agreement, during the period prior to Closing, Seller and Purchaser shall (a) use their commercially reasonable efforts (i) to cause the conditions in Section 4 to be satisfied, (ii) to deliver or cause to be delivered at the Closing the items to be delivered by Seller and Purchaser pursuant to Section 3.2 and Section 3.3, and (iii) to take all other actions to consummate the Contemplated Transactions, and (b) not take any action that will have the effect of unreasonably delaying, impairing or impeding the receipt of any authorizations, Consents, or Orders to be sought pursuant to this Agreement.

10.    Conduct Pending Closing.

10.1    Seller shall be entitled, on and after the Execution Date, to take such steps as it deems reasonably necessary in its sole discretion to wind down and liquidate the Auto Sales Business and to dispose of any Excluded Assets, including (a) cessation of new orders of Suzuki Automobiles, (b) sale or distribution, through Dealers or otherwise, of Suzuki Automotive Products on hand or in transit to Seller, (c) sale or other disposition of Facilities included within the Retained Auto Business Assets and other Excluded Assets, and (d) termination or re-assignment of employees whose duties relate primarily to the Auto Business.

10.2    Except with the prior written consent of Purchaser, as otherwise contemplated or permitted by this Agreement (including Article 8 and Section 10.1 hereof) or as required by the Bankruptcy Code, from the Execution Date until the Closing Date, Seller shall operate the Acquired Business in the ordinary course of business (taking into account Seller's status as debtor-in-possession), comply with all Legal Requirements applicable to the operation of its business and preserve its present business organization intact.  Without limitation, from the Execution Date until the Closing Date, Seller shall use commercially reasonable efforts to:

(i)    (A) preserve the present business operations, organization and goodwill of the Acquired Business, and (B) preserve the present relationships with customers and suppliers of the Acquired Business;

(ii)    purchase and maintain adequate levels of Inventory for the Acquired Business consistent with past practice;

(iii)    timely pay all rent and related obligations with respect to the Facilities arising after the Petition Date;

(iv)    make capital expenditures arising out of or related to the Purchased Assets as contemplated by the DIP Credit Facility and related Orders;

(v)    maintain in full force and effect all Business Permits and insurance in all material respects;

(vi)    maintain all of the Purchased Assets in a manner consistent with past practices, reasonable wear and tear excepted, and maintain the types and levels of insurance currently in effect in respect of the Purchased Assets;

(vii)    upon any damage, destruction or loss to any Purchased Assets, apply any insurance proceeds received with respect thereto to the prompt repair, replacement and restoration thereof to the condition of such Purchased Assets before such event or, if required, to such other (better) condition as may be required by applicable Legal Requirements;

(viii)     take all such actions necessary to meet the Plan/Sale Milestones (as defined in the DIP Credit Agreement); and

(ix)      consult with Purchaser on all material aspects of the Acquired Business as may be reasonably requested from time to time by Purchaser, including, but not limited to, personnel, accounting and financial functions.

10.3    Except as otherwise contemplated or permitted by this Agreement (including Section 10.1 hereof), from the Execution Date until the Closing Date, Seller shall not, without the prior written consent of Purchaser:

(i)       defer the payment of its accounts payable and other amounts due to third parties to the extent the same are to be assumed by Purchaser except as contemplated by the DIP Credit Facility and related Orders;

(ii)      accelerate the collection of Receivables or other amounts due to Seller except as contemplated by the DIP Credit Facility and related Orders;

(iii)     increase the annual level of compensation of any director, officer or employee of Seller, accelerate the payment of any such compensation or grant any bonus to any director, officer or employee of Seller;

(iv)      make or rescind any material election relating to Taxes, settle or compromise any material claim, action, suit, litigation, proceeding, arbitration, investigation, audit or controversy relating to Taxes, or except as may be required by applicable law or GAAP, make any material change to any of its methods of accounting or methods of reporting income or deductions for Tax or accounting practice or policy from those employed in the preparation of its most recent Tax Returns;

(v)       acquire any material properties or assets that would be Purchased Assets;

(vi)      fail to immediately notify Purchaser of any notice of the commencement or threatened commencement of eminent domain or similar proceedings affecting any of the Purchased Assets;

(vii)     terminate or amend any of Seller's Contracts, other than the amendment or modification in the ordinary course of business of any dealership agreements with Dealers in Suzuki Motorcycle Products, Suzuki ATV Products, and Suzuki Marine Products;

(viii)    cancel, modify or waive any Claims held in respect of the Purchased Assets or waive any material rights of value, other than in connection with the modification or amendment in the ordinary course of business of any dealership agreements with Dealers in Suzuki Motorcycle Products, Suzuki ATV Products, and Suzuki Marine Products;

(ix)      sell, transfer or otherwise dispose of any of the Purchased Assets except in the ordinary course of business, consistent with past practices;

(x)       cease operations at any Facility other than any Facility included within the Excluded Assets;

(xi)      modify, rescind or terminate a material Business Permit or License, insurance policy, allowance, or credit (or application therefor) relating to the Acquired Business or the Purchased Assets;

(xii)     subject its assets to any material Encumbrances other than any Permitted Encumbrances, any Encumbrance securing Indebtedness owed to the DIP

Lender, and any Encumbrances securing indemnity obligations of Seller owed to its directors or officers;

(xiii)   fail to comply with the terms and conditions of (A) the DIP Credit Facility, (B) the Orders relating to the DIP Credit Facility and (C) Seller's use of cash collateral; or

(xiv)   authorize any of the foregoing, or commit or agree to take actions, whether in writing or otherwise, to do any of the foregoing.

10.4     Seller shall promptly inform Purchaser in writing of the occurrence or non-occurrence of any event actually known by Seller which would cause any condition set forth in Section 4.2 not to be satisfied or the breach of any covenant hereunder by Seller.

10.5     Purchaser and Purchaser's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives shall be authorized and entitled, in Purchaser's discretion and without the involvement or presence of Seller or its agents, to contact and to enter into discussions and negotiate with Seller's lenders, bankers, vendors, suppliers, Dealers, strategic business partners and other third parties, including Governmental Bodies, regarding the Contemplated Transactions and Purchaser's potential business relationships with such persons following the Closing, and Seller shall provide contact information and other reasonable cooperation to Purchaser in connection with such activities.  From the Execution Date through the Closing Date, Seller shall afford Purchaser and such persons reasonable access during ordinary business hours to Seller employees, consultants and independent contractors and to all the Books and Records and shall furnish to Purchaser and such persons, as promptly as practicable, all other information as Purchaser or any of such persons may reasonably request in furtherance of the Contemplated Transactions.

10.6     Each Party agrees that it will not make any public announcement or issue any press release or respond to any press inquiry with respect to this Agreement or the Contemplated Transactions without the prior approval of the other Party (which approval will not be unreasonably withheld), except as may be required (i) by any applicable Legal Requirement, or (ii) to administer the Chapter 11 Case.

10.7     Seller shall honor and observe any and all policies of Seller in effect on the Petition Date prohibiting the transfer of personally identifiable information about individuals and otherwise comply with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code.  Purchaser agrees to be bound by such policies on and after the Closing Date.

10.8     On or before the Schedule Delivery Deadline, Seller shall deliver to Purchaser all Schedules to this Agreement not theretofore delivered (other than Schedule 1.3, which shall be delivered by Purchaser in accordance with Section 1.3(d)).

11.     Expense Reimbursement.

11.1     Seller agrees and acknowledges that Purchaser's negotiation and execution of this Agreement has required a substantial investment of management time and a significant commitment of financial and other resources by Purchaser, and that the negotiation and execution of this Agreement have provided value to Seller.  Therefore, on the terms and conditions of this Section 11, Seller shall reimburse Purchaser for all Transaction Expenses in an amount not to exceed $750,000 (the "*Expense Reimbursement*").

11.2     Seller's payment obligation under Section 11.1 with respect to the Expense Reimbursement shall be subject to the entry of the Procedures Order and to the occurrence of an Expense Reimbursement Fee Event.  The Expense Reimbursement shall be paid within three (3) days of receipt of summary documentation for Transaction Expenses in respect of which reimbursement is sought, in the form of a summary invoice, redacted to preserve attorney-client privilege and attorney work product.  The

Expense Reimbursement shall be paid in immediately available cash funds and without need for Order of the Bankruptcy Court (other than the Procedures Order).

11.3    Seller's obligation to pay the Expense Reimbursement shall survive the termination of this Agreement.  Such obligation of Seller shall have administrative superpriority status against the Seller and its estate under Section 364(c)(1) of the Bankruptcy Code with priority over all expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code.  Funds necessary to pay the Expense Reimbursement shall be carved out of all Encumbrances in favor of any secured parties and have priority in right of payment over any Indebtedness of Seller held by any secured party.

12.    <u>Employee Matters.</u>

12.1    Purchaser may make offers of employment to such employees of Seller employed as of the Closing Date as Purchaser in its sole discretion shall select.  Such offers may provide for base salary or hourly wage rate, as applicable, and other compensation as Purchaser shall determine at its sole discretion.  Seller shall (i) cooperate with and use its commercially reasonable efforts to make reasonably accessible to Purchaser those employees of Seller to whom Purchaser anticipates making offers of employment and (ii) assist Purchaser in its efforts to secure satisfactory employment arrangements with those employees of Seller.  No later than five (5) days before the Closing Date, Purchaser shall notify Seller in writing of all employees to whom such offers shall be made.  Seller shall terminate the employment of all employees of Seller who agree to become Transferred Employees effective immediately prior to the Closing.  Purchaser, in its sole discretion, and without any obligation whatsoever, may elect to make retention payments and/or provide other consideration directly to certain employees of the Seller that Purchaser determines, in its judgment, to be necessary and critical to consummation of the Contemplated Transactions (including to the transition of the Purchased Assets to Purchaser).

12.2    Seller shall, until the Closing, comply with the WARN Act and any similar federal, state or other law, rule or regulation with respect to all employees of Seller.  Seller shall be solely liable for complying with the WARN Act and any similar federal, state or other law, rule or regulation (and for any failures to so comply), in any case, applicable to employees of Seller who do not become Transferred Employees for any reason (including, for the avoidance of doubt, any employees of Seller who are not offered employment with Purchaser and/or who do not accept and commence employment with Purchaser).  Purchaser shall be solely liable for complying with the WARN Act and any similar federal, state or other law, rule or regulation (and for any failures to so comply), that become applicable to any Transferred Employee with respect to events occurring after the Closing Date.  Purchaser shall be solely responsible for all Liabilities relating to or arising in connection with any actual, constructive or deemed termination of employment by Purchaser of any Transferred Employee after the Closing Date.

12.3    Any employment opportunity offered by Purchaser may be "at will" and may be terminated by Purchaser or any of its affiliates at any time for any reason.  Nothing in this Agreement shall: (i) be deemed to prevent or restrict in any way the right of Purchaser to terminate, reassign, promote or demote any of the Transferred Employees after the Closing or to change the title, powers, duties, responsibilities, functions, locations, salaries, other compensation or terms or conditions of employment of such Transferred Employees; (ii) create any third-party rights in any Transferred Employees or any current or former employees or other service providers of Seller (or any beneficiaries or dependents of the foregoing) whether hereunder or otherwise; or (iii) obligate Purchaser or its affiliates to adopt or maintain any employee benefit plan or other compensatory arrangement at any time.

12.4    Seller shall be solely liable for all wages, remuneration, Taxes and other obligations and Liabilities, whether actual or contingent: (i) associated with any employee or other service provider of Seller (or any dependent thereof) who does not become a Transferred Employee, including in connection with any termination of any such service relationship or (ii) that arises at any time with respect to any Seller Benefit Plan not assumed by Purchaser or included within the Purchased Assets.  Purchaser

shall be solely liable for any Liabilities associated with Seller's employees to the extent such Liabilities are included within the Assumed Liabilities.

     13.    Termination.

     13.1    Termination by Mutual Consent

This Agreement may be terminated at any time prior to the Closing Date by mutual written agreement of the Parties.

     13.2    Termination by Either Purchaser or Seller

This Agreement may be terminated at any time prior to the Closing Date by either Purchaser or Seller if any Governmental Body shall have issued an Order permanently restraining, enjoining or otherwise prohibiting the consummation of the Contemplated Transactions and either (i) thirty (30) days shall have elapsed from the issuance of such Order and such Order has not been removed or vacated, or (ii) such Order shall have become final and non-appealable.

     13.3    Termination by Seller

This Agreement may be terminated by Seller as follows:

     (a)    at any time prior to the Closing Date, if there has been a material breach by Purchaser, which breach Purchaser has failed to cure within five (5) Business Days following its receipt of written notice thereof from Seller;

     (b)    at any time prior to the Closing Date, if any condition precedent of Seller specified in Section 4.1 shall not have been satisfied or waived and shall have become impossible to satisfy, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Seller; or

     (c)    at any time prior to the Closing Date, if the Closing Date shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date, but only to the extent the Closing has not occurred as of the Outside Date for reasons other than Seller's failure to meet its obligations hereunder.

     13.4    Termination by Purchaser

This Agreement may be terminated by Purchaser, at any time prior to the Closing Date, as follows:

     (a)    if there has been a material breach of this Agreement by Seller, which breach Seller has failed to cure within five (5) Business Days following its receipt of written notice thereof from Purchaser;

     (b)    if any condition precedent of Purchaser specified in Section 4.2 shall not have been satisfied or waived or, in the reasonable judgment of Purchaser, shall have become reasonably unlikely to be satisfied, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Purchaser;

     (c)    if the Procedures Order shall not have been entered by 5:00 p.m. Pacific time on December 5, 2012;

     (d)    if the Bankruptcy Court enters any Order approving any Alternative Transaction or confirming any Chapter 11 Plan involving any Alternative Transaction, unless Purchaser is a "Backup Bidder" within the meaning of the Procedures Order and the Bidding Procedures attached thereto, in which case this Agreement may not be terminated by reason of such Order having been entered until the earlier of (A) the closing of the Alternative Transaction

or (B) the occurrence of the Outside Date at which time this Agreement shall automatically terminate;

(e)      if neither the Sale Order nor a Confirmation Order shall have been entered by 5:00 p.m. Pacific time on February 28, 2013;

(f)      if the Closing shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date;

(g)      if the Chapter 11 Case shall be dismissed or converted into a case under chapter 7 of the Bankruptcy Code, or if any trustee is appointed in the Chapter 11 Case; or

(h)      if Seller does not deliver all Schedules to this Agreement (other than Schedule 1.3, which is the responsibility of Purchaser to deliver) on or before the Schedule Delivery Deadline.

13.5    Effect of Termination

In the event of termination by either Party of this Agreement pursuant to this Section 13, written notice thereof shall as promptly as practicable be given to the other Party and thereupon this Agreement shall terminate and the Contemplated Transactions shall be abandoned without further action by the Parties hereto.  Upon termination pursuant to this Section 13, this Agreement shall cease to have any force or effect and the Parties shall cease to have any further Liabilities under this Agreement, except that (a) the provisions of this Agreement and the Liabilities of the Parties set forth in Sections 2.2, 11, 13.5, and 15 (other than Section 15.2), as such provisions and Liabilities are affected by any defined terms contained herein relating thereto, shall continue in full force and effect and (b) notwithstanding any termination of this Agreement, the Parties shall remain liable for any material breach of this Agreement to the extent provided herein and under applicable law.  Upon termination of this Agreement, all filings, applications and other submissions made pursuant to the Contemplated Transactions shall, to the extent practicable, be withdrawn from the Government Body to which made.

13.6    Notification of Certain Events

Seller shall give notice to Purchaser promptly upon becoming aware of any occurrence, or failure to occur, of any event, which occurrence or failure to occur has caused or could reasonably be expected to cause any condition to the obligations of Purchaser to effect the Contemplated Transactions not to be satisfied.

14.    Post-Closing Matters.

14.1    Use of Marks

Promptly after the Closing Date, Seller shall amend its Articles of Incorporation to change the Seller's corporate name to a name that does not include "Suzuki" or "ASMC."  Following the Closing Date, Seller shall not use any Mark containing "Suzuki" or any variation thereof or any mark confusingly similar thereto in connection with any business activity.

14.2    Further Conveyances and Assumptions.

(a)      From time to time following the Closing, Seller shall make available to Purchaser such data in personnel records of Transferred Employees as is reasonably necessary for Purchaser to transition such employees into Purchaser's records.

(b)      From time to time following the Closing, Seller and Purchaser shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests,

estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and to assure fully to Seller and its successors and assigns, the assumption of the Liabilities and obligations intended to be assumed by Purchaser under this Agreement, and to otherwise make effective the Contemplated Transactions.

14.3    Reasonable Access to Records

In order to facilitate Seller's efforts to administer and close the Chapter 11 Case, Purchaser shall, at Seller's expense, for a period of two (2) years following the Closing, maintain and permit Seller and its agents and other professionals employed in the Chapter 11 Case to have a reasonable number of copies of the Books and Records existing as of the Closing Date for the purposes of the continuing administration of the Chapter 11 Case (including the preparation of filings in the Chapter 11 Case, the allowance or disallowance of any claims, the pursuit of any Avoidance Actions, and the preparation of final Tax Returns), which copies Purchaser shall deliver to such Person upon reasonable advance notice.

15.    Miscellaneous.

15.1    Attorneys' Fees

In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, each Party in that action or proceeding shall bear its own attorneys' fees, costs and expenses (including all court costs and reasonable attorneys' fees).

15.2    Notices

All notices and other communications given or made in connection with this Agreement shall be in writing and shall be deemed to have been given or made when given or made if such notice or communication is in writing and delivered personally or transmitted by facsimile or electronic mail and one day following deposit if sent by commercial carrier or registered or certified mail (postage prepaid) to the Parties at the following addresses and numbers (or at such other addresses as shall be furnished by the Parties by like notice):

To Seller:

> American Suzuki Motor Corporation
> 3251 East Imperial Highway
> Brea, California  92821
> Attn:  Takashi Iwatsuki
> Facsimile:  (714) 579-1574
> E-mail:  takashiiwatsuki@gmail.com

With a copy to (which shall not constitute notice):

> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Boulevard
> Thirteenth Floor
> Los Angeles, CA  90067
> Attn:  Richard M. Pachulski, Esq.
> Facsimile:  (310) 201-0760
> E-mail:  rpachulski@pszjlaw.com

To Purchaser:

>   NounCo, Inc.
>   c/o Klee, Tuchin, Bogdanoff & Stern LLP
>   1999 Avenue of the Stars
>   Thirty-Ninth Floor
>   Los Angeles, CA  90067-6049
>   Attn:  Michael Tuchin, Esq.
>   Facsimile:  (310) 407-9090
>   E-mail:  MTuchin@ktbslaw.com

With a copy to (which shall not constitute notice):

>   Klee, Tuchin, Bogdanoff & Stern LLP
>   1999 Avenue of the Stars
>   Thirty-Ninth Floor
>   Los Angeles, CA  90067-6049
>   Attn:  Michael Tuchin, Esq.
>   Facsimile:  (310) 407-9090
>   E-mail:  MTuchin@ktbslaw.com

### 15.3    Entire Agreement

This Agreement and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the Contemplated Transactions and replace the Sale Term Sheet in its entirety.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

### 15.4    Modification

This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto which expressly indicates the intention to modify, amend or supplement this Agreement.

### 15.5    Severability

Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

### 15.6    Captions

All captions, Section titles and headings contained in this Agreement are for convenience of reference only and shall be without substantive meaning or context of any kind whatsoever and shall not be construed to limit or extend the terms or conditions of this Agreement.

### 15.7    Waiver

No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver; provided, however, that the Consent of a Party to the Closing shall constitute a waiver by such Party of any condition precedent to Closing not satisfied as of the Closing Date.

### 15.8    Payment of Fees, Costs and Expenses

Except as provided in <u>Sections 11</u> and <u>15.1</u> above, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees, costs and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the Contemplated Transactions.

### 15.9    Survival

The respective representations and warranties of Purchaser and Seller under this Agreement shall lapse and cease to be of any further force or effect effective upon the Closing.  Except as provided in the immediately preceding sentence, the covenants and agreements of Seller and Purchaser herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

### 15.10    Assignments

This Agreement shall not be assigned by Seller without the prior written consent of Purchaser, which consent Purchaser may grant or withhold in its sole and absolute discretion.  For avoidance of doubt, Purchaser shall be entitled, without the consent or approval of Seller, to assign this Agreement, and any or all of its rights or obligations hereunder, to any of its Affiliates or business or financial partners and may collaterally assign this Agreement, and any or all of its rights or obligations hereunder, to any of its lenders, and, upon any such assignment, Purchaser shall have no Liability or continuing obligations of any kind whatsoever hereunder or with respect hereto.

### 15.11    Binding Effect

This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

### 15.12    Applicable Law

This Agreement shall be governed by and construed in accordance with the law of the State of California (excluding conflict of laws rules and principles) applicable to contracts made and performed in such State.

### 15.13    Construction

In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

### 15.14    CONSENT TO JURISDICTION

THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED, THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE EXCLUSIVELY HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF SANTA ANA, CALIFORNIA, (B) IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY

REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED IN <u>SECTION 15.2</u> (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY CALIFORNIA LAW).

15.15    <u>Counterparts</u>

This Agreement may be executed in any number of counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original, and all of which counterparts taken together shall constitute but one and the same instrument.  Facsimile and electronic mail copies of signatures will be deemed originals for all purposes hereof and a Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.  This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by all the Parties.

15.16    <u>Non-Recourse</u>

No past, present or future stockholder, director, officer, employee, or incorporator of Seller or Purchaser shall have any Liability for any obligation or Liability of Seller or Purchaser, as the case may be, under this Agreement or for any Claim, counter-Claim, cause of action or demand based on, in respect of, or by reason of, the Contemplated Transactions except for any Claim against any individual based on the fraud or gross negligence of such individual in connection with any representations of Seller or Purchaser hereunder, as the case may be.

15.17    <u>Time is of the Essence</u>

Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

15.18    <u>Interpretation and Rules of Construction</u>

In this Agreement, except to the extent that the context otherwise requires:

(a)    when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

(b)    the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

(c)    whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

(d)    the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

(e)    all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

(f)    the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

(g)    any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

(h)    references to a person are also to its permitted successors and assigns; and

(i)      the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

15.19   Third Party Beneficiaries

This Agreement is intended to be solely for the benefit of the Parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any person or entity other than the Parties hereto, and their respective permitted assigns, including, without limitation, any former or current employer of Seller or any Transferred Employee.

15.20   Liquidated Damages as Sole Remedy of Seller

**THE PARTIES ACKNOWLEDGE THAT SELLER'S ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE DEPOSIT THAT IS THE SUBJECT OF SECTION 2.2 OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF SELLER'S DAMAGES, AND AS SELLER'S SOLE AND EXCLUSIVE REMEDY AGAINST PURCHASER (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD), WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE FAILURE OF PURCHASER TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO, WHICH DEPOSIT, TO THE EXTENT THAT PURCHASER HAS MADE SUCH DEPOSIT RATHER THAN AN OVERBIDDER, SHALL CONSTITUTE A SETOFF AGAINST PURCHASER'S SECURED CLAIM EVIDENCED BY THE SMC LOAN AGREEMENT.**

15.21   Liquidated Damages as Sole Remedy of Purchaser.

THE **PARTIES ACKNOWLEDGE THAT PURCHASER'S ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE EXPENSE REIMBURSEMENT THAT IS THE SUBJECT OF SECTION 11 OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF PURCHASER'S DAMAGES, AND AS PURCHASER'S SOLE AND EXCLUSIVE REMEDY (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD) AGAINST SELLER, WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE FAILURE OF SELLER TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO.**

15.22   Final Orders

To the extent that an "Order" becoming a "Final Order" is a requirement pursuant to any provision of this Agreement, such requirement may be waived by Purchaser in its sole and absolute discretion.

16.   Definitions

In addition to the other terms defined elsewhere in this Agreement, for the purposes of same, the following words and terms shall have the meaning set forth below (such meanings being equally applicable to both the singular and plural form of the terms defined).  The exhibits and schedules referenced in this Section 16 and throughout the Agreement are deemed to be part of the Agreement and are incorporated herein by reference.

"*Acquired Business*" shall have the meaning provided for under <u>Recital B</u>.

"*Affiliate*" of a Person means a Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the first-mentioned Person. For purposes of this definition, "control," when used with respect to any specified Person, means the power to direct or cause the direction of the management and policies of such Person, directly or indirectly, whether through ownership of voting securities or by contract or otherwise, and the terms "controlling" and "controlled by" have meanings correlative to the foregoing.

"*Agreement*" shall have the meaning provided for in the preamble.

"*Allocation Schedule*" shall have the meaning provided for under <u>Section 2.9</u>.

"*Alternative Transaction*" means any agreement or transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Purchased Assets, or the issuance or sale (in a single transaction or a series of transactions) of all or substantially all of the equity interests of Seller or any of its successors, to any Person other than Purchaser or a designee of Purchaser.

"*Apportionable Operating Expenses*" shall have the meaning provided for under <u>Section 2.8</u>.

"*ASA*" shall have the meaning providing in <u>Section 3.2(k)</u>.

"*Assignment of Contracts*" shall have the meaning provided for under <u>Section 3.2(d)</u>.

"*Assignment of Intangible Property Assets*" shall have the meaning provided for under <u>Section 3.2(e)</u>.

"*Assignment of Real Property Leases*" shall have the meaning provided for in <u>Section 3.2(c)</u>.

"*Assumed Liabilities*" shall have the meaning provided for under <u>Section 2.5</u>.

"*Assumption of Liabilities*" shall have the meaning provided for under <u>Section 3.3(h)</u>.

"*Auto Business*" shall have the meaning provided for under <u>Recital B</u>.

"*Auto Dealer*" means any Dealer in any Suzuki Automotive Products.

"*Auto Dealership Agreement*" means any automobile dealership agreement between Seller and an Auto Dealer providing, inter alia, for the sale by the Auto Dealer of new Suzuki Automobiles.

"*Auto Sales Business*" shall have the meaning provided for under <u>Recital B</u>.

"*Auto Servicing Business*" shall have the meaning provided for under <u>Recital B</u>.

"*Avoidance Action*" means all rights, objections, preference or avoidance claims and actions of the Seller, including any such claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code (whether or not asserted as of the Closing Date).

"*Bankruptcy Code*" shall have the meaning provided for under <u>Recital B</u>.

"*Bankruptcy Court*" shall have the meaning provided for under <u>Recital B</u>.

"*Bidding Procedures*" shall have the meaning provided for under <u>Section 8.2</u>.

"*Bill of Sale*" shall have the meaning provided for under <u>Section 3.2(f)</u>.

"*Books and Records*" means all financial, accounting, Tax and other books and records of Seller, whether written, on disk, film, tape or other media, and including all computerized data, in each case relating to the Purchased, the Assumed Liabilities or the Acquired Business.

"*Business*" shall have the meaning provided for under <u>Recital B</u>.

"***Business Day***" means any day other than a Saturday or Sunday or a legal holiday on which banks in Los Angeles, California or Tokyo, Japan are closed.

"***Business Line***" means the Suzuki Auto Business, the Suzuki ATV Business, the Suzuki Motorcycle Business, or the Suzuki Marine Business.

"***Business Permit***" means any business permit, license, certificate of occupancy, registration, certificate of public convenience and necessity, approval, easement, authorization or operating right issued or granted by any Governmental Body having jurisdiction over the Acquired Business.

"***Cash Purchase Price***" shall have the meaning provided for under <u>Section 2.1</u>.

"***Chapter 11 Case***" shall have the meaning provided for under <u>Recital B</u>.

"***Chapter 11 Plan***" means any Chapter 11 plan in the Chapter 11 Case.

"***Claim***" means any claim, cause of action, right of recovery, right of set-off, and right of recoupment of every kind and nature including prepayments, warranties, guarantees, refunds, reimbursements.

"***Closing***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Closing Date***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Code***" means the Internal Revenue Code of 1986, as amended.

"***Confirmation Order***" means an Order of the Bankruptcy Court confirming a Chapter 11 Plan in the Chapter 11 Case, which Chapter 11 Plan is on the terms and conditions, in all material respects, of the Proposed Plan.

"***Consent***" means any consent, approval, authorization, affirmative vote, waiver, agreement or license by, or report or notice to, any Person.

"***Contemplated Transactions***" shall have the meaning provided for under <u>Recital D</u>.

"***Contract***" means any contract or lease.

"***Contract Designation Deadline***" means twenty-eight (28) days prior to the Bankruptcy Court hearing in the Chapter 11 Case to approve (i) the Sale Order Transaction or (ii) the Plan Sale Transaction, as applicable.

"***Copyright***" means all copyrightable works, and all United States and foreign registered copyrights and applications, registrations and renewals therefor, and any past, present or future claims or causes of actions arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Cure Cost***" means the amount required to be paid as a cure amount under Section 365 of the Bankruptcy Code so that Seller may sell, assume and assign any Seller's Contract to Purchaser.

"***Dealer***" means any existing authorized U.S. dealer in any Suzuki Automotive Products, Suzuki Motorcycle Products, Suzuki ATV Products, or Suzuki Marine Products.

"***Dealer Settlement Agreement***" shall have the meaning provided for under <u>Section 8.5</u>.

"***Dealer Settlement Procedures***" shall have the meaning provided for under <u>Section 8.5</u>.

"***Deposit***" shall have the meaning provided for under <u>Section 2.2</u>, as applicable.

"***DIP Credit Facility***" means that certain Debtor-in-Possession Loan and Security Agreement, dated as of November 5, 2012, by and between Seller, as debtor and debtor-in-possession under the Bankruptcy Code, and SMC, as lender, as amended from time to time.

"***DIP Lender***" means SMC.

"*Domain Name*" means the internet domain names owned by Seller, and all registrations, applications and renewals related to the foregoing.

"*Encumbrance*" means any claim, lien, pledge, option, charge, easement, Tax assessment, security interest, deed of trust, mortgage, right-of-way, encroachment, building or use restriction, conditional sales agreement, encumbrance or other right of third parties of any sort whatsoever, whether voluntarily incurred or arising by operation of law, and includes any agreement to give any of the foregoing in the future, and any contingent sale or other title retention agreement or lease in the nature thereof.

"*Entity*" means any corporation (including any nonprofit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, cooperative, foundation, society, political party, union, company (including any limited liability company or joint stock company), firm or other enterprise, association, organization or entity.

"*Environmental Laws*" means all federal, state and local laws governing health and safety, pollution or the protection of the environment.

"*Equipment*" means all fixtures and other Leasehold Improvements, POS system, disposal systems, artwork, racks, stands, displays, counters, desks, chairs, tables, dispensers, and other furniture and furnishings, Hardware, vehicles, tools, smallware, and other equipment (copiers, fax machines, telephone lines and numbers, and other telecommunication equipment), and miscellaneous office and store supplies and other items of tangible personal property owned or used by the Seller in the conduct of the Acquired Business.  As used herein, Equipment does not include any tangible property held by the Seller pursuant to a Personal Property Lease where Purchaser does not assume at the Closing the Personal Property Lease relating to such property.

"*ERISA*" means the Employee Retirement Income Security Act of 1974.

"*Escrow Agreement*" means an escrow agreement between Escrow Holder, Purchaser and Seller consistent with the terms of this Agreement, in form reasonably satisfactory to such parties, regarding the Deposit (solely to the extent that an Overbidder has entered into an agreement to effectuate an Alternative Transaction with Seller).

"*Escrow Holder*" means such bank, trust company, escrow company or other financial institution offering escrow services as Seller and Purchaser may mutually agree.

"*Excluded Asset*" shall have the meaning provided for under Section 1.2.

"*Excluded Contract*" means any Seller's Contract that becomes an Excluded Contract by operation of Section 1.3.

"*Excluded Liability*" shall have the meaning provided for under Section 2.6.

"*Execution Date*" shall have the meaning provided for in the preamble.

"*Expense Reimbursement Event*" shall have the meaning provided for under Section 11.5.

"*Expense Reimbursement Fee Event*" means any of the following events:  (A) the entry by the Bankruptcy Court of any Order approving any Alternative Transaction, unless Purchaser is a "Backup Bidder" within the meaning of the Procedures Order and the Bidding Procedures attached thereto, in which case an Expense Reimbursement Fee Event shall be deemed to have occurred upon the earlier of (i) the closing of the Alternative Transaction or (ii) the occurrence of the Outside Date, (B) the entry by the Bankruptcy Court of any Order confirming any Chapter 11 Plan other than a Chapter 11 Plan on the terms and conditions in all material respects of the Proposed Plan, (C) any material breach by Seller of this Agreement, which Seller has failed to cure within five (5) days following its receipt of written notice thereof from Purchaser, or (D) any termination or purported termination by Seller of this Agreement other than in accordance with Section 13.1, 13.2 or 13.3.

"*Facility*" means any office building, warehouse, or other facility from which the Business or any financial, administrative, management, or executive functions of Seller are conducted.

"*Final Order*" means an Order of the Bankruptcy Court the operation or effect of which has not been stayed, reversed or amended, and as to which Order the time to appeal or to seek review or rehearing has expired and as to which (i) no appeal or request for review or rehearing was filed, or (ii) if an appeal or request for review or rehearing was filed, such appeal or request for review or rehearing is no longer pending.

"*GAAP*" means United States generally accepted accounting principles, applied on a consistent basis during the periods involved.

"*Governmental Body*" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body or Entity and any court or other tribunal); (d) multinational organization or body; or (e) individual, Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military or taxing authority or power of any nature.

"*Hardware*" means any and all computer and computer-related hardware, including, but not limited to, computers, modems, hard drives, cables, file servers, facsimile servers, scanners, color printers, laser printers and networks.

"*Hart-Scott-Rodino Law*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (codified in Section 18(a) of Title 15, U.S. Code) and any related Federal Trade Commission regulations.

"*Hazardous Substance*" means any hazardous waste, toxic substance, pollutant or contaminant as those terms are defined in Environmental Laws.

"*Indebtedness*" means (a) any obligation for borrowed money, including any obligation for accrued and unpaid interest thereon and any prepayment or other penalties or premiums, (b) any capitalized lease obligations, (c) any obligation evidenced by a note, deed, mortgage or secured by any property of Seller, (d) any reimbursement obligations in respect of letters of credit, and (e) all guarantees issued in respect of obligations of any other Person of the type described in clauses (a) through (d).

"*Intangible Property Assets*" means any Intellectual Property Assets or Other Intangible Property owned or held by the Seller.  As used in this Agreement, Intangible Property Assets shall in all events exclude:  (i) any materials containing information about employees (other than Transferred Employees), disclosure of which is prohibited under applicable law, (ii) any materials containing information subject to any attorney-client, attorney work product or other applicable privilege in favor of Seller, (ii) any materials containing information the delivery of which by Seller to Purchaser would breach any contractual obligation of confidentiality to which Seller is subject, and (iv) any software or other item of intangible property held by the Seller pursuant to a license or other Seller's Contract where Purchaser does not assume the underlying Contract relating to such intangible personal property at the Closing.

"*Intellectual Property Assets*" means intellectual property or other proprietary rights of Seller of every kind throughout the world, both domestic and foreign, which, in each case, are related to the Business, including all inventions and improvements thereon, Patents, Trademarks, Trademark Rights, Copyrights, Domain Names, Technology and trade secrets.

"*Inventory*" means all goods, products, parts, and supplies sold or used in the sale of any goods or products and all other inventory owned and held by Seller or used in connection with the Business, wherever located, and whether on hand, on order, in transit, or held by others on a consignment basis.

"***Knowledge***" of a Person means to such Person's actual knowledge, after due inquiry, and, with respect to a Person that is a corporation, the knowledge of such Person's executive officers, after due inquiry.

"***Leasehold Improvements***" means any leasehold improvements or appurtenances to such improvements (including buildings, structures, storage areas, driveways, walkways, planters, landscaping and parking areas).

"***Legal Description***" means, with respect to the description of a parcel of real property as set forth in a deed of transfer conveying such parcel or other Closing document, either (i) the metes and bounds description set forth for such parcel (if any) on appearing on Schedule 5.13(a) hereto, or (ii) the metes and bounds description of such parcel set forth in the deed vesting title to such parcel in Seller, as said metes and bounds descriptions in item (i) or (ii) may be modified by mutual agreement of the Parties acting in good faith with respect thereto.

"***Legal Requirement***" means any applicable federal, state, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, requirement, notice requirement, guideline, Order, specification, determination, decision, opinion or interpretation issued, enacted, adopted, passed, approved, promulgated, made, implemented or otherwise put into effect by or under the authority of any Governmental Body.

"***Liability***" means any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty or endorsement of any type whatsoever, whether accrued or unaccrued, absolute or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, asserted or unasserted, due or to become due.

"***Marine Business***" shall have the meaning provided for under Recital B.

"***Motorcycle/ATV Business***" shall have the meaning provided for under Recital B.

"***Order***" means any judgment, decision, consent decree, injunction, ruling or order of any Governmental Body that is binding on any Person or its property under applicable law.

"***Other Intangible Property Assets***" means all intangible personal property (other than the Intellectual Property Assets) owned or held by Seller, including (i) the Books and Records; (ii) proprietary information relating to the Acquired Business, including sales, marketing, advertising, packaging and promotional materials, files, data, software (whether written, on disk, film, tape or other media, and including all computerized data), and other technical information and data, catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, and telephone numbers identified with the Acquired Business; and (iii) all goodwill of the Acquired Business.

"***Outside Date***" means March 29, 2013.

"***Overbidder***" means a Person that purchases all or substantially all of the Purchased Assets, or all or substantially all of the equity interests, of Seller or any of its successors pursuant to an Alternative Transaction.

"***Parties***" shall have the meaning provided for in the preamble.

"***Patent***" means the United States patents and patent applications owned by the Seller, including, any continuations, divisionals, continuations in part, or reissues of patent applications and patents issuing thereon and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Permitted Encumbrances***" means (i) any interests of third party lessors or landlords under any leases of real or personal property under which Seller is a tenant or lessee and which are included within

the Purchased Contracts, (ii) any Encumbrances on real property for Taxes and similar assessments not yet payable, (iii) any rights of way, utilities easements, or other exceptions to title to real property that do not materially affect the use and enjoyment thereof, (iv) any Assumed Liabilities, (v) any Encumbrances expressly approved in writing by Purchaser, and (v) any Encumbrances not removed from the Purchased Assets by operation of the Sale Order.

"*Person*" means an individual, Entity or Governmental Body.

"*Personal Property Lease*" means any Seller's Contract for the lease or license of Equipment or other personal property, tangible or intangible.

"*Petition*" shall have the meaning provided for under Recital B hereof.

"*Petition Date*" means the date of the filing of the Petition with the Bankruptcy Court.

"*Plan*" means a chapter 11 plan of reorganization the Chapter 11 Case.

"*Plan Sale Transaction*" means a transaction whereby the Contemplated Transactions are effectuated in the Chapter 11 Case pursuant to the Proposed Plan under Section 363, Section 365 and other applicable provisions of the Bankruptcy Code.

"*Plan Sale Transaction Pleadings*" shall have the meaning provided for under Section 1.3(c).

"*Procedures Order*" shall have the meaning provided for under Section 8.2.

"*Proposed Plan*" means the Plan filed, or to be filed, by Seller on, or shortly following, the Petition Date.

"*Purchased Assets*" shall have the meaning provided for under Section 1.1.

"*Purchased Contract*" means any Seller's Contract that is designated by Purchaser as a Purchased Contract under Section 1.3.

"*Purchased Inventory Indebtedness*" means Indebtedness of Seller under the DIP Credit Facility incurred for the purpose of financing, on fifteen (15) day credit terms, the purchase of any Inventory included within the Purchased Assets; provided, however, that Purchased Inventory Indebtedness shall not include any Indebtedness of Seller that is outside of the required fifteen (15) day credit terms.

"*Purchased Inventory Loan Obligations*" means Purchased Inventory Indebtedness and any obligations of Seller under the DIP Credit Facility related to such Purchased Inventory Indebtedness.

"*Purchase Price*" shall have the meaning provided for under Section 2.1(a).

"*Purchaser*" shall have the meaning provided for in the preamble.

"*Real Property Lease*" means any Seller's Contract for the lease of real property.

"*Receivables*" means all accounts receivable and notes receivable, and all causes of action specifically pertaining to the collection of the foregoing.

"*Represented Employees*" means the approximately twenty (20) Seller employees who belong to Local Union No. 2295 of The International Brotherhood of Electrical Workers AFL-CIO.

"*Retained Auto Business Assets*" shall have the meaning provided for under Section 1.2(a).

"*Retained Real Property*" shall have the meaning provided for under Section 1.2(b).

"*Sale Hearing*" means the hearing conducted by the Bankruptcy Court to approve the Contemplated Transactions.

"*Sale Motion*" shall have the meaning provided for under Section 8.1.

"*Sale Order*" shall have the meaning provided for under Section 8.1.

"***Sale Order Transaction***" means a transaction whereby the Contemplated Transactions are effectuated in the Chapter 11 Case pursuant to a sale under Section 363, Section 365 and other provisions of the Bankruptcy Code.

"***Sale Term Sheet***" means the term sheet relating to the Contemplated Transactions between Purchaser and Seller.

"***Schedule Delivery Deadline***" means 11:59 p.m. Pacific time on the fourteenth (14th) day after the Petition Date.

"***Seller***" shall have the meaning provided for in the preamble.

"***Seller Benefit Plan***" means each "employee benefit plan" as defined in Section 3(3) of ERISA and each other plan, policy, program, agreement, understanding and arrangement (whether written or oral) providing compensation or other benefits to any current or former director, officer, employee or consultant (or to any dependent or beneficiary thereof) of Seller which is now or has been maintained, sponsored or contributed to by Seller or under the terms of which Seller has or is reasonably likely to have any obligation or liability, whether actual or contingent, including all employment, consulting, severance, termination, incentive, bonus, deferred compensation, retirement, pension, savings, profit sharing, retention, change in control, vacation, holiday, cafeteria, medical, disability, life, accident, fringe benefit, welfare and stock-based compensation plans, policies, programs, agreements, understandings or arrangements.

"***Seller's Contract***" means any Contract (a) to which Seller is a party or by which Seller is bound and (b) that is related to the Acquired Business.

"***Seller's Financial Statements***" shall have the meaning provided for under Section 5.6.

"***Seller's Marks***" shall have the meaning provided for under Section 5.15(a).

"***Seller's Required Approvals***" shall have the meaning provided for under Section 5.4.

"***Service and Parts Agreement***" means a written service and parts agreement between Seller and a Settling Auto Dealer, on the terms and conditions set forth in the Proposed Plan, under which the Settling Auto Dealer (A) agrees to remain an Auto Dealer for the purpose of selling its remaining inventory and (b) for a definite period of time continues providing authorized warranty and non-warranty service and sell genuine Suzuki Automotive Products (other than Suzuki Automobiles).

"***Settling Dealers***" means any Auto Dealer with whom Seller enters into a pre-confirmation settlement agreement in accordance with the Proposed Plan.

"***SMAC***" means Suzuki Manufacturing of America Corporation.

"***SMC***" shall have the meaning provided for under Recital A.

"***SMC Loan Agreement***" means that certain Loan and Security Agreement dated as of July 27, 2012 by and between Seller and SMC, as amended.

"***Standard Exceptions to Enforceability***" means any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

"***Subsidiary***" means, with respect to any Person, (a) any corporation of which at least 50% of the securities or interests having, by their terms, ordinary voting power to elect members of the board of directors, or other persons performing similar functions with respect to such corporation, is held, directly or indirectly by such Person and (b) any partnership or limited liability company of which (i) such Person is a general partner or managing member or (ii) such Person possesses a 50% or greater interest in the total capitalization or total income of such partnership or limited liability company.

"*Suzuki ATV Products*" means all-terrain vehicles manufactured by SMC and its Affiliates and any parts or other products related thereto.

"*Suzuki Automobiles*" means automobiles manufactured by SMC or its Affiliates.

"*Suzuki Automotive Products*" means Suzuki Automobiles and automotive parts and other related products manufactured by or for SMC and its Affiliates for use in connection with Suzuki Automobiles.

"*Suzuki Marine Products*" means outboard motors manufactured by SMC and its Affiliates and any parts or other products related thereto.

"*Suzuki Motorcycle Products*" means motorcycles manufactured by SMC and its Affiliates and any parts or other products related thereto.

"*Suzuki Products*" means any Suzuki Automotive Products, Suzuki ATV Products, Suzuki Marine Products, and Suzuki Motorcycle Products.

"*Tax*" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"*Tax Return*" means any return, declaration, report, claim for refund, transfer pricing report or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"*Technology*" means, collectively, all designs, formulae, algorithms, procedures, methods, techniques, know how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology.

"*Trademarks*" means all trademark registrations and applications for trademark registration owned by Seller, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof, and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"*Trademark Rights*" means all common law rights in the United States in any trade names, corporate names, logos, slogans, designs, trade dress, and unregistered trademarks and service marks owned by Seller, together with all translations, adaptations, derivations and combinations thereof, and the goodwill associated with any of the foregoing.

"*Transaction Expenses*" means all reasonable fees, charges, disbursements and expenses, paid out-of-pocket to third parties, and whether incurred before or after the Execution Date, including fees, expenses and costs of legal counsel, accountants, financial advisors, consultants, agents and other representatives, incurred in connection with this Agreement or with the Contemplated Transactions, including, but not limited to: (a) the negotiation of the Contemplated Transactions, (b) conducting the business, financial and legal due diligence investigation of the Seller, (c) negotiating the terms of the Contemplated Transactions, including this Agreement and related financial documentation, and the negotiation, execution and delivery of any documentation and any amendments thereto related to the possible Contemplated Transactions and the financing thereof, (d) activities and other matters related to the Contemplated Transactions and the Chapter 11 Case, (e) actions to enforce Purchaser's rights under this Agreement, and (f) the consummation of the Contemplated Transactions.

"***Transfer Taxes***" shall have the meaning provided for under <u>Section 3.4</u>.

"***Transferred Employee***" means any employee of Seller, upon accepting an offer of employment from Purchaser.

"***Transferred Employee Compensation and Benefits***" means all wage and benefit accruals as of the Closing Date for the Transferred Employees, including any severance, retention, employment, change-of-control, pension, retirement, equity or other plan, program, policy or agreement of such Transferred Employees with Seller.

"***U.S. Territory***" means the United States of America, excluding the State of Hawaii, the Commonwealth of Puerto Rico, and the territories of Guam, the Northern Mariana Islands, America Samoa, and the U.S. Virgin Islands.

"***Utilities***" shall have the meaning provided for under <u>Section 2.8</u>.

"***WARN Act***" means the United States Worker Adjustment and Retraining Notification Act, and the rules and regulations promulgated thereunder, and any amendments thereof.

### *[SIGNATURE PAGES FOLLOW; REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement as of the day and year first above written.

**PURCHASER:**

NounCo, Inc.,
a California corporation

By: _____
Name: _____
Its: _____

**SELLER:**

American Suzuki Motor Corporation,
a California corporation

By: _____
Name: _____
Its: _____

*[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]*

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement as of the day and year first above written.

**PURCHASER:**

NounCo, Inc.,
a California corporation

By: _____
Name: _____
Its: _____

**SELLER:**

American Suzuki Motor Corporation,
a California corporation

By: _____
Name:   Takashi Itwatsuki
Its:   Chairman of the Board

*[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]*

## EXHIBITS

| | |
|---|---|
| A | Assignment and Assumption of Real Property Lease |
| B | Assignment and Assumption of Contracts |
| C | Assignment of Intangible Property Assets |
| D | Bill of Sale and Assignment |
| E | [Reserved] |
| F | Assumption Agreement |
| G | Sale Motion and Order |
| H | Procedures Order |

Exhibit "A"

## ASSIGNMENT AND ASSUMPTION OF
## REAL PROPERTY LEASE

This ASSIGNMENT AND ASSUMPTION OF REAL PROPERTY LEASE (this "*Agreement*")
is made and entered into as of [            ], 2013 by and between American Suzuki Motor Corporation, a
California corporation (the "*Assignor*"), and _____, a California corporation (the "*Assignee*"
and collectively with the Assignor, the "*Parties*").

## RECITALS

WHEREAS, pursuant to the terms and conditions of that certain Asset Purchase Agreement dated
as of November __, 2012 (the "*Purchase Agreement*") by and between Assignor and Assignee, Assignor
has agreed to sell, and Assignee has agreed to buy, the Purchased Assets.  Except for terms specifically
defined herein, capitalized terms used in this Agreement shall have the same meanings as capitalized
terms used in the Purchase Agreement.

WHEREAS, pursuant to the Purchase Agreement, Assignor has agreed to assign to Assignee all
of its rights under that certain real property lease as set forth on Exhibit A hereto (the "*Real Property
Lease*"), and Assignee has agreed to assume all of Assignor's obligations under the Real Property Lease.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth
herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged by all parties, the parties have agreed as follows:

1.        Assignor does hereby assign, transfer and convey to Assignee and its successors and
assigns, all right, title, estate, options and other interests (including, without limitation, any security or
other deposits, prepaid rent, landlord estoppels executed in favor of Assignor or its lenders, etc.) in, to and
under the Real Property Lease, free and clear of all Encumbrances, other than Permitted Encumbrances.

2.        Assignee hereby (a) accepts this Agreement and the assignment and assumption of the
Real Property Lease and (b) agrees to assume, perform and observe all of the obligations, covenants and
conditions of the Real Property Lease on the part of the tenant to be performed and observed to the extent
attributable to the period after the Closing Date.

3.        Assignee and Assignor hereby agree to execute and deliver any and all additional
documents that Assignee or Assignor may reasonably request in order to more fully effect the agreements
set forth in this Agreement.

4.        This Agreement and the provisions hereof are subject to the terms and conditions set
forth in the Purchase Agreement and the Sale Order.  Assignee and Assignor hereby acknowledge and
agree that the provisions of this Assignment shall not limit the full force and effect or survival of the
terms and provisions of the Purchase Agreement or the Sale Order.  In the event of a conflict between the
terms and provisions of this Assignment and the terms and provisions of the Purchase Agreement and/or
the Sale Order, the terms and provisions of the Purchase Agreement and/or the Sale Order shall prevail,
govern and control in all respects without limitation.

5.        No failure to exercise and no delay in exercising any right or power under this Agreement
shall operate as a waiver thereof.  No modification or amendment of this Agreement shall be valid and
binding, unless it is in writing and signed by the parties hereto.

6.      This Agreement may be executed in any number of counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original, and all of which counterparts taken together shall constitute but one and the same instrument. Facsimile and electronic mail copies of signatures will be deemed originals for all purposes hereof and a Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.  This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by all the Parties.

7.      The undertakings, covenants and agreements set forth herein shall be binding upon and inure to the benefit of Assignee and Assignor and their respective successors and assigns.

8.      This Agreement shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules and principles) applicable to contracts made and performed in such State.

9.      The Parties agree that the Bankruptcy Court shall be the exclusive forum for enforcement of this Agreement and (only for the limited purpose of such enforcement) submit to the jurisdiction thereof; provided, that if the Bankruptcy Court determines that it does not have subject matter jurisdiction over any action or proceeding arising out of or relating to this Agreement, then each Party (a) agrees that all such actions or proceedings shall be exclusively heard and determined in a federal court of the United States sitting in the City of Santa Ana, California, (b) irrevocably submits to the jurisdiction of such courts in any such action or proceeding, (c) consents that any such action or proceeding may be brought in such courts and waives any objection that such Party may now or hereafter have to the venue or jurisdiction or that such action or proceeding was brought in an inconvenient court, and (d) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such party at its address as provided in Section 15.2 of the Purchase Agreement (provided that nothing herein shall affect the right to effect service of process in any other manner permitted by the laws of the State of California).

10.     In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

[The remainder of this page has intentionally been left blank]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption of Real Property Lease as of the date first written above.

**ASSIGNOR:**

AMERICAN SUZUKI MOTOR CORPORATION,
a California corporation,
Debtor and Debtor in Possession

By: _____
Name: _____
Title: _____


**ASSIGNEE:**

_____,
a California corporation

By: _____
Name: _____
Title: _____

*[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION OF REAL PROPERTY LEASE]*

Exhibit "B"


## ASSIGNMENT AND ASSUMPTION OF CONTRACTS


This Assignment and Assumption of Contracts (this "*Assignment*") is entered into as of [          ], 2013, by and between American Suzuki Motor Corporation, a California corporation ("*Assignor*"), and _____, a California corporation ("*Assignee*" and collectively with Assignor, the "*Parties*").

Assignor and Assignee acknowledge that:

A.    Assignor is a debtor and debtor in possession in a chapter 11 proceeding before the United States Bankruptcy Court for the Central District of California.

B.    Assignor, as Seller, and Assignee, as Purchaser, have heretofore entered into that certain Asset Purchase Agreement dated as of November __, 2012 (the "*Purchase Agreement*").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

C.    Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the Contemplated Transactions.  Assignor and Assignee are executing and delivering this Assignment pursuant to the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1.    Assignment.  Effective as of the Closing Date, Assignor hereby assigns to Assignee all of its right, title and interest in and to the Purchased Contracts.

2.    Assumption.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Purchased Contracts and to perform all of Assignor's obligations thereunder to be performed from and after the Closing Date as though Assignee had been the original contracting party thereunder.

3.    Amendments.  This Assignment may only be amended by a writing signed by both Assignor and Assignee.

4.    Execution in Counterparts.  This Assignment may be executed in any number of counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original, and all of which counterparts taken together shall constitute but one and the same instrument.  Facsimile and electronic mail copies of signatures will be deemed originals for all purposes hereof and a Party may produce such copies, without the need to produce original signatures, to prove the existence of this Assignment in any proceeding brought hereunder.  This Assignment shall become binding when one or more counterparts taken together shall have been executed and delivered by all the Parties.

5.    Delivery Pursuant to Purchase Agreement and Sale Order.  This Assignment and the provisions hereof are subject to the terms and conditions set forth in the Purchase Agreement and the Sale Order.  Assignee and Assignor hereby acknowledge and agree that the provisions of this Assignment shall not limit the full force and effect or survival of the terms and provisions of the Purchase Agreement or the

Sale Order.  In the event of a conflict between the terms and provisions of this Assignment and the terms and provisions of the Purchase Agreement and/or the Sale Order, the terms and provisions of the Purchase Agreement and/or Sale Order shall prevail, govern and control in all respects without limitation.

6.      <u>Further Assurances</u>.  Assignor covenants and agrees to execute and deliver further instruments of transfer and assignment and take such other action as Assignee may reasonably request to more effectively transfer and assign to and vest in Assignee the Purchased Contracts.

7.      <u>Governing Law</u>.  This Assignment shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules and principles) applicable to contracts made and performed in such State.

8.      <u>Consent to Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall be the exclusive forum for enforcement of this Assignment or the contemplated transactions and (only for the limited purpose of such enforcement) submit to the jurisdiction thereof; provided, that if the Bankruptcy Court determines that it does not have subject matter jurisdiction over any action or proceeding arising out of or relating to this Assignment, then each Party (a) agrees that all such actions or proceedings shall be exclusively heard and determined in a federal court of the United States sitting in the City of Santa Ana, California, (b) irrevocably submits to the jurisdiction of such courts in any such action or proceeding, (c) consents that any such action or proceeding may be brought in such courts and waives any objection that such party may now or hereafter have to the venue or jurisdiction or that such action or proceeding was brought in an inconvenient court, and (d) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such party at its address as provided in <u>Section 15.2</u> of the Purchase Agreement (provided that nothing herein shall affect the right to effect service of process in any other manner permitted by the laws of the State of California).

9.      <u>Construction</u>.  In the interpretation and construction of this Assignment, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Assignment shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

**ASSIGNOR:**

American Suzuki Motor Corporation,
a California corporation,
Debtor and Debtor in Possession

By:    _____
Name:  _____
Its:   _____

**ASSIGNEE:**

_____,
a California corporation

By:    _____
Name:  _____
Its:   _____

*[SIGNATURE PAGE TO ASSIGNMENT AND ASSUMPTION OF CONTRACTS]*

**Exhibit "C"**

## ASSIGNMENT OF INTANGIBLE PROPERTY

This Assignment of Intangible Property Assets (this "***Assignment***") is made and entered into as of [      ], 2013 by and between American Suzuki Motor Corporation, a California corporation (the "***Assignor***") and _____, a California corporation (the "***Assignee***" and collectively, with Assignor, the "***Parties***"), with respect to the following facts and circumstances:

Assignor and Assignee acknowledge that:

A.      Assignor is a debtor and debtor in possession in a chapter 11 proceeding before the United States Bankruptcy Court for the Central District of California.

B.      Assignor, as Seller, and Assignee, as Purchaser, have heretofore entered into that certain Asset Purchase Agreement dated as of November __, 2012 (the "***Purchase Agreement***").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

C.      Concurrently with the mutual execution and delivery of this Assignment, Assignor and Assignee are consummating the Contemplated Transactions.  Assignor and Assignee are executing and delivering this Assignment pursuant to the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Assignors and Assignee hereby acknowledge, Assignor and Assignee hereby agree as follows:

1.      <u>Assignment</u>.  Effective as of the Closing Date, Assignor hereby assigns to Assignee all of its right, title and interest in and to the Assigned Intangible Property Assets.

2.      <u>Assumption</u>.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assigned Intangible Property Assets.

3.      <u>Amendments</u>.  This Assignment may only be amended by a writing signed by both Assignor and Assignee.

4.      <u>Execution in Counterparts</u>.  This Assignment may be executed in any number of counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original, and all of which counterparts taken together shall constitute but one and the same instrument.  Facsimile and electronic mail copies of signatures will be deemed originals for all purposes hereof and a Party may produce such copies, without the need to produce original signatures, to prove the existence of this Assignment in any proceeding brought hereunder.  This Assignment shall become binding when one or more counterparts taken together shall have been executed and delivered by all the Parties.

5.      <u>Delivery Pursuant to Purchase Agreement and Sale Order</u>.  This Assignment and the provisions hereof are subject to the terms and conditions set forth in the Purchase Agreement and the Sale Order.  Assignee and Assignor hereby acknowledge and agree that the provisions of this Assignment shall not limit the full force and effect or survival of the terms and provisions of the Purchase Agreement or the Sale Order.  In the event of a conflict between the terms and provisions of this Assignment and the terms and provisions of the Purchase Agreement and/or the Sale Order, the terms and provisions of the Purchase Agreement and/or Sale Order shall prevail, govern and control in all respects without limitation.

6.     <u>Further Assurances</u>.  Assignor covenants and agrees to execute and deliver further instruments of transfer and assignment and take such other action as Assignee may reasonably request to more effectively transfer and assign to and vest in Assignee the Assigned Intangible Property Assets.

7.     <u>Governing Law</u>.  This Assignment shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules and principles) applicable to contracts made and performed in such State.

8.     <u>Consent to Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall be the exclusive forum for enforcement of this Assignment or the contemplated transactions and (only for the limited purpose of such enforcement) submit to the jurisdiction thereof; provided, that if the Bankruptcy Court determines that it does not have subject matter jurisdiction over any action or proceeding arising out of or relating to this Assignment, then each Party (a) agrees that all such actions or proceedings shall be exclusively heard and determined in a federal court of the United States sitting in the City of Santa Ana, California, (b) irrevocably submits to the jurisdiction of such courts in any such action or proceeding, (c) consents that any such action or proceeding may be brought in such courts and waives any objection that such party may now or hereafter have to the venue or jurisdiction or that such action or proceeding was brought in an inconvenient court, and (d) agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such party at its address as provided in <u>Section 15.2</u> of the Purchase Agreement (provided that nothing herein shall affect the right to effect service of process in any other manner permitted by the laws of the State of California).

9.     <u>Construction</u>.  In the interpretation and construction of this Assignment, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Assignment shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment as of the day and year first set forth above.

**ASSIGNOR:**

American Suzuki Motor Corporation,
a California corporation,
Debtor and Debtor in Possession

By: _____
Name: _____
Its: _____

**ASSIGNEE:**

_____,
a California corporation

By: _____
Name: _____
Its: _____

*[SIGNATURE PAGE TO ASSIGNMENT OF INTANGIBLE PROPERTY]*

Exhibit "D"

**BILL OF SALE AND ASSIGNMENT**

Reference is hereby made to that certain Asset Purchase Agreement, dated as of November __, 2012 (the "*Purchase Agreement*"), by and between American Suzuki Motor Corporation, a California corporation ("*Assignor*") and _____, a California corporation ("*Assignee*").  Except for terms specifically defined in this Bill of Sale and Assignment, all capitalized terms used herein shall have the same meanings as such terms have when utilized in the Purchase Agreement.  Assignor is a debtor and debtor in possession in a chapter 11 proceeding before the United States Bankruptcy Court for the Central District of California.

For good and valuable consideration, the receipt and sufficiency of which Assignor hereby expressly acknowledges, Assignor hereby sells, transfers, assigns and delivers to Assignee all of its right, title and interest in and to the Purchased Assets.

Assignor covenants and agrees to execute and deliver further instruments of transfer and assignment and take such other action as Assignee may reasonably request to more effectively transfer and assign to and vest in Assignee each of the Purchased Assets.

This Bill of Sale and Assignment and the provisions hereof are subject to the terms and conditions set forth in the Purchase Agreement and the Sale Order.  Assignee and Assignor hereby acknowledge and agree that the provisions of this Bill of Sale and Assignment shall not limit the full force and effect or survival of the terms and provisions of the Purchase Agreement or the Sale Order.  In the event of a conflict between the terms and provisions of this Bill of Sale and Assignment and the terms and provisions of the Purchase Agreement and/or the Sale Order, the terms and provisions of the Purchase Agreement and/or Sale Order shall prevail, govern and control in all respects without limitation.

**IN WITNESS WHEREOF**, Assignor has caused this Bill of Sale and Assignment to be executed as of the _____ day of _____, 2013.

**ASSIGNOR:**

American Suzuki Motor Corporation,
a California corporation,
Debtor and Debtor in Possession

By:      _____
Name:  _____
Its:      _____

*[SIGNATURE PAGE TO BILL OF SALE AND ASSIGNMENT]*

**Exhibit "E"**

**[RESERVED]**

**Exhibit "F"**

**ASSUMPTION AGREEMENT**

This Assumption Agreement (this "*Assumption*") is entered into as of [        ], 2013, by _____, a California corporation (the "*Assignee*"), in favor of American Suzuki Motor Corporation, a California corporation ("*Assignor*").  This Assumption is entered into with respect to the following facts and circumstances:

A.      Assignor is a debtor and debtor in possession in a chapter 11 proceeding before the United States Bankruptcy Court for the Central District of California.

B.      Assignor and Assignee have heretofore entered into that certain Asset Purchase Agreement dated November __, 2012 (the "*Purchase Agreement*").  Except for terms specifically defined herein, the capitalized terms used in this Assumption shall have the same meanings as capitalized terms used in the Purchase Agreement.

C.      Concurrently with the execution and delivery of this Assumption, Assignee and Assignor are consummating the Contemplated Transactions.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Assignee hereby acknowledges, Assignee hereby agrees as follows:

1.      Assumption.  Effective as of the Closing Date, Assignee hereby assumes and agrees to perform all of the Assumed Liabilities in accordance with their terms in accordance with the terms and conditions set forth in the Purchase Agreement and the Sale Order.

2.      Delivery Pursuant to Purchase Agreement and Sale Order.  This Assumption and the provisions hereof are subject to the terms and conditions set forth in the Purchase Agreement and the Sale Order and the provisions of this Assumption shall not limit the full force and effect or survival of the terms and provisions of the Purchase Agreement or the Sale Order.  In the event of a conflict between the terms and provisions of this Assumption and the terms and provisions of the Purchase Agreement and/or the Sale Order, the terms and provisions of the Purchase Agreement and/or the Sale Order shall prevail, govern and control in all respects without limitation.

3.      Governing Law.  This Assumption shall be governed by and construed in accordance with the laws of the State of California (excluding conflicts of law rules and principles) applicable to contracts made and performed in such State.

4.      Venue.  The Bankruptcy Court shall be the exclusive forum for enforcement of this Assumption; provided, that if the Bankruptcy Court determines that it does not have subject matter jurisdiction over any action or proceeding arising out of or relating to this Assumption, then all such actions or proceedings shall be exclusively heard and determined in a federal court of the United States sitting in the City of Santa Ana, California.

       IN WITNESS WHEREOF, Assignee has executed this Assumption as of the day and year first set forth above.

**ASSIGNEE:**

_____,
a California corporation


By:    _____
Name:  _____
Its:    _____

*[SIGNATURE PAGE TO ASSUMPTION AGREEMENT]*

**Exhibit "G"**

**<u>SALE MOTION AND ORDER</u>**

[TO BE ATTACHED]

**Exhibit "H"**

**<u>PROCEDURES ORDER</u>**

[TO BE ATTACHED]

**EXHIBIT C**

**(Sale Order)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Richard M. Pachulski (CA Bar No. 90073)
James I. Stang (CA Bar No. 94435)
Dean A. Ziehl (CA Bar No. 84529)
Debra I. Grassgreen (CA Bar No. 169978)
Linda F. Cantor (CA Bar No. 153762)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067-4114
Telephone:     310/277-6910
Facsimile:     310/201-0760
E-mail:     rpachulski@pszjlaw.com
           jstang@pszjlaw.com
           dziehl@pszjlaw.com
           dgrassgreen@pszjlaw.com
           lcantor@pszjlaw.com

Proposed Attorneys for Debtor and
Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No.  8:12- |
| American Suzuki Motor Corporation,[1] | Chapter 11 |
| Debtor. | **ORDER (1) AUTHORIZING SALE OF SUBSTANTIALLY ALL ASSETS RELATING TO THE ACQUIRED BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS (2) AUTHORIZING THE ASSUMPTION,  ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (3) GRANTING RELATED RELIEF** |
| | Date:     TBD<br>Time:     TBD<br>Place:    Ronald Reagan Federal Building & U.S. Courthouse<br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

[1]  The last four digits of the Debtor's federal tax identification number are 8739.  The Debtor's address is:  3251 East Imperial Highway, Brea, California 92821.

142051.1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On November 5, 2012, American Suzuki Motor Corporation (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), filed its motion (the "Motion") [Docket No. ____] pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting an order, among other things, authorizing and approving (A) that certain "Asset Purchase Agreement" attached hereto as Exhibit A, dated as of November 6, 2012, by and between American Suzuki Motor Corporation, a California corporation (the "Debtor"), debtor and debtor in possession in the above captioned chapter 11 case, and NounCo, Inc., a California corporation ("Purchaser"), a wholly-owned subsidiary of Suzuki Motor Corporation, a Japanese corporation ("SMC"), along with the exhibits, schedules and addenda thereto and all other ancillary documents (collectively, the "Purchase Agreement"), (B) the sale of the Purchased Assets[2] to the Purchaser, pursuant to the Purchase Agreement, free and clear of liens, claims, Encumbrances and interests, including those based on any Successor Liability (defined below), with the exception of Permitted Encumbrances, (C) the assumption, assignment and sale of the Purchased Contracts and the limited use by Purchaser of certain other Contracts of the Debtor pending disposition of those Contracts by the Debtor, and (D) granting related relief in aid of implementation of the foregoing.

On [_____], 2013, the Court held a hearing on the Motion (the "Sale Hearing"). Parties appeared at the Sale Hearing as reflected in the record of that hearing.  The Court has reviewed and considered the following:  the Motion and all other pleadings and documents filed in support of the Motion (including declarations and certificates of service); any and all pleadings and other documents filed in opposition to the Motion (including declarations and certificates of service); the arguments and representations of counsel presented at the Sale Hearing; any and all additional evidence offered or presented prior to or at the Sale Hearing; and the record in the Chapter 11 Case.

---

[2]  Unless otherwise indicated, all capitalized terms herein have the meaning ascribed to them in the Purchase Agreement. Use herein of the term "include," "includes" or "including" means include, includes or including, as the case may be, without limitation.

1  Based on that review and consideration, **THE COURT HEREBY MAKES THE FOLLOWING**

2  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

3       A.     The findings and conclusions set forth herein constitute the Court's findings of fact and

4  conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to

5  Bankruptcy Rule 9014.

6       B.     To the extent any of the following findings of fact constitute conclusions of law, they

7  are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact,

8  they are adopted as such.

9       C.     On November 5, 2012 (the "<u>Filing Date</u>"), the Debtor filed a voluntary petition in this

10 Court under chapter 11 of the Bankruptcy Code.  The Debtor has continued since the Filing Date to

11 operate its business and manage its assets and affairs as a debtor in possession pursuant to Bankruptcy

12 Code sections 1107(a) and 1108.

13      D.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

14 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), (O).  Venue is proper

15 before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

16      E.     On  [_____], 20[__], pursuant to a duly noticed motion, the Court entered

17 its *Order (A) Approving Bid Procedures For the Sale of Debtor's Assets Related To Acquired Business*

18 *and Auction of Assets; (B) Scheduling An Auction And Hearing To Consider The Sale And Approve*

19 *The Sale And Approve The Form And Manner Of Notice Related Thereto; (C) Establishing*

20 *Procedures Relating To The Assumption, Assignment and Sale of Certain Contracts and Leases; (D)*

21 *Approving Bid Protections; and (E) Granting Related Relief* [Docket No.     ] (the "<u>Sale Procedures</u>

22 <u>Order</u>").

23      F.     As specifically set forth therein, the Sale Procedures Order established certain dates,

24 deadlines and procedures with respect to the proposed sale of the Purchased Assets, the opportunity to

25 bid for the Purchased Assets, the Bid Deadline and the requirements for becoming a Qualified Bidder

26 (as such terms are defined in the Sale Procedures Order), and the date, time, place and rules for an

27 Auction (as defined in the Sale Procedures Order), if required (collectively, the "<u>Sale Procedures</u>").

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

G.      As reflected in the declarations of service filed in support of the Motion [Docket Nos.  ] (the "Declarations of Service"), the Debtor provided timely notice by mail of the Sales Procedures Order, the Creditor Notice and the Cure Notice (as such terms are defined in the Sale Procedures Order) to the parties specified in such Order.  [The Debtor also published a notice comparable to the Creditor Notice in [list publications] on [_____], 20[__] (the "Publication Notice").]  The notice given by the Debtor was reasonably calculated to reach and apprise all creditors, all parties to Contracts with the Debtor and those parties identified by the Debtor as having a potential interest in purchasing the Purchased Assets, among others of:  (i) the Motion and the relief requested therein, (ii) the proposed sale of the Purchased Assets free and clear of liens, claims,[3] Encumbrances and interests, including those based on Successor Liability; (iii) the assumption, assignment and sale of Purchased Contracts and the establishment of Cure Costs with respect thereto; (iv) all transactions contemplated by the Purchase Agreement (collectively, the "Sale Transaction"); and (v) the Sale Procedures, the date, time and place of the Sale Hearing, and the deadline and manner for objections to the Motion.

H.      The notice given by the Debtor was reasonable, proper, timely, adequate and sufficient under the circumstances presented, provided parties in interest a reasonable opportunity to object and be heard, and satisfies the requirements of the Bankruptcy Code (including Bankruptcy Code sections 102(1), 105, 363, and 365), the Bankruptcy Rules (including Bankruptcy Rules 2002, 6004, 6006, and 9014), and due process, with respect to the relief requested in the Motion and granted in this Order.  No other or further notice is necessary or required.  [With respect to parties that may have claims against the Debtor, but whose identities are not reasonably ascertainable by the Debtor, the Publication Notice was sufficient and reasonably calculated under the circumstances to reach and apprise such parties of the matters set forth in Paragraph G, above.]

I.      The Debtor has adequately marketed the Purchased Assets  and otherwise conducted the sale process in compliance with the Sale Procedures Order.  The Debtor has provided potentially interested parties a full, fair, and reasonable opportunity to make a higher and better bid to purchase the Purchased Assets and become a Qualified Bidder.

---

[3] For purposes of this Order, "claim" has the meaning ascribed to that term by Bankruptcy Code section 101(5).

C:4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

J.      [The Debtor conducted the Auction on _____, _____ in accordance with the Sale Procedures Order.  At the conclusion of the bidding, the Debtor closed the Auction and determined, within the meaning of the Sale Procedures Order, that the Purchase Agreement is the Successful Bid and the Purchaser is the Successful Bidder.  This determination constitutes a valid and sound exercise of the Debtor's business judgment.  The Auction, as conducted by the Debtor, was duly noticed, non-collusive, conducted in good faith, and afforded Qualified Bidders a full and fair opportunity to make a higher or otherwise better offer to purchase the Purchased Assets.]

K.      [The Debtor did not timely receive a bid for the Purchased Assets from a Qualified Bidder pursuant to the Sale Procedures Order and therefore, pursuant to the Sale Procedures Order, no Auction was held.  Within the meaning of the Sales Procedures Order, the Purchase Agreement is the Successful Bid  and the Purchaser is the Successful Bidder thereunder.]

L.      The Purchase Agreement provides, among other things, that:  (i) the Debtor will transfer the Purchased Assets to the Purchaser, (ii) the Purchaser will pay the Debtor [$_____] in cash, (iii) the Purchaser will assume the Assumed Liabilities, and (iv) the Purchaser will pay the Cure Costs in respect of the Purchased Contracts that are assumed, assigned and sold to the Purchaser, all as more particularly set forth in the Purchase Agreement.

M.      The consideration to be provided to the Debtor's estate (the "Estate") under the Purchase Agreement constitutes the highest or otherwise best offer available for the Purchased Assets and provides consideration for the Purchased Assets that is fair, reasonable and reasonably equivalent under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, the District of Columbia or any other jurisdiction.  No other entity has offered to purchase the Purchased Assets for greater economic value or on terms otherwise more favorable to the Estate, then those set forth in the Purchase Agreement.

N.      The Debtor has exercised sound and valid business judgment in determining to sell the Purchased Assets pursuant to the Purchase Agreement.  Prompt approval of the Sale Transaction will preserve and maximize the value of the Estate and is in the best interests of the Debtor, its Estate, its creditors, and other parties in interest.

1    O.    The consummation of the Sale Transaction pursuant to the Motion, outside of a chapter

2    11 plan, does not impermissibly restructure the rights of the Debtor's creditors, allocate or distribute

3    any of the sale proceeds, or dictate the terms of a chapter 11 plan.  The Sale Transaction does not

4    constitute a *sub rosa* plan of reorganization.

5    P.    The Purchaser is a newly-formed California corporation that was organized and is

6    wholly-owned by SMC, for the purpose of acquiring the Purchased Assets.  The Purchase Agreement

7    and the Sale Transaction were negotiated by and between the Debtor, on the one hand, and SMC and

8    the Purchaser, on the other hand, with the assistance of separate counsel representing each side of the

9    transaction.

10    Q.    The negotiation of the Purchase Agreement and the Sale Transaction were undertaken

11    without collusion, in good faith, and from arm's length bargaining positions.  Neither the Debtor, the

12    Purchaser, SMC, nor their respective representatives have engaged in any conduct that would cause or

13    permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

14    R.    The Purchaser is a good faith purchaser within the meaning of Bankruptcy Code

15    section 363(m) and, as such, is entitled to all of the protections afforded thereby.

16    S.    The Purchase Agreement and Sale Transaction have not been negotiated by the Debtor,

17    the Purchaser, or SMC fraudulently, or for the purposes of:  (i) hindering, delaying, or defrauding the

18    Debtor's present or future creditors or (ii) effectuating a statutory or common law fraudulent transfer

19    or conveyance, under the Bankruptcy Code or under the laws of the United States, any state, territory,

20    possession, or the District of Columbia or any other jurisdiction with laws substantially similar to any

21    of the foregoing.

22    T.    The Debtor has full corporate power and authority to enter into the Purchase

23    Agreement, subject to the terms of this Order.  The Purchase Agreement and Sale Transaction have

24    been duly and validly authorized by all necessary corporate action of the Debtor, and the Debtor has all

25    of the corporate power and authority necessary to consummate the Purchase Agreement and the Sale

26    Transaction, subject to the terms of this Order.

27    U.    The Purchased Assets constitute property of the Estate pursuant to Bankruptcy Code

28    section 541(a).  The transfer of the Purchased Assets pursuant to the Purchase Agreement and this

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Order is a legal, valid, and effective transfer of good and marketable title to the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of all liens, claims, Encumbrances and interests of any and every kind, at law or equity, including those arising under statutory or case law premised on the doctrines of successor, transferee, assignee, derivative, vicarious, de facto merger or continuity liability, or any other legal or equitable principle that would impose liability on the Purchaser, based on, in respect of, as result of, or arising from, in any way, an act, omission, or liability of the Debtor, the Debtor's operation of its business, the Debtor's ownership, control, or use of the Purchased Assets, the Sale Transaction, or the Purchaser's acquisition of the Purchased Assets, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated ("Successor Liability"); provided, however, that the transfer of the Purchased Assets will not be free and clear of Permitted Encumbrances and provided further that the Purchaser shall assume the Assumed Liabilities.

V.    The Debtor may sell the Purchased Assets, subject to this Order, free and clear of all liens, claims, Encumbrances and interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1) through (5) have been satisfied.

W.    The Purchaser would not have entered into the Purchase Agreement and would not be willing to consummate the Sale Transaction if the sale of the Purchased Assets was not free and clear of, or if the Purchaser would or could be liable for (other than Permitted Encumbrances and Assumed Liabilities), any and all liens, claims, Encumbrances and interests, including those based on any Successor Liability.

X.    The Debtor filed and served the Cure Notice identifying the dollar amount, if any, necessary to be paid in order to cure the defaults, if any, under the Contracts of the Debtor listed thereon, which Contracts included the Purchased Contracts. Other than payment of the amounts listed in the Cure Notice, if any, there are no defaults under such Purchased Contracts, and no other amounts that must to be paid as a prerequisite to the assumption and assignment of such Purchased Contracts pursuant to Bankruptcy Code section 365(b)(1).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Y.      Pursuant to Bankruptcy Code section 365(b)(1), the Debtor has cured and/or provided adequate assurance of cure (through the Purchaser) of any and every default existing under the Purchased Contracts, and compensated or provided adequate assurance of compensation for actual pecuniary loss resulting from such defaults.  Subject only to payment of the applicable Cure Cost, if any, each Purchased Contract is in full force and effect and enforceable by the Purchaser pursuant to its terms against any non-Debtor party thereto.

Z.      The Purchaser has demonstrated adequate assurance of future performance under the Purchased Contracts, within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

AA.     The Purchased Contracts are Purchased Assets and are integral to the Sale Transaction. The Debtor has demonstrated sound business judgment in determining to assume and assign the Purchased Contracts to the Purchaser.  The assumption, assignment and sale of the Purchased Contracts is in the best interests of the Debtor, the Estate, creditors, and other parties in interest, and is being implemented in good faith.

BB.     Pursuant to Bankruptcy Code section 365(k), as of the Closing, the assignment of the Purchased Contracts to the Purchaser will relieve the Debtor and its Estate from any liability for any breach of any such Purchased Contracts occurring after such assignment; provided that notwithstanding the foregoing, the Debtor shall remain liable for Pro-Rations in accordance with Section 2.8 of the Purchase Agreement.

CC.     The provisions of Section 1.3(d) of the Purchase Agreement, pursuant to which the Purchaser is granted use of certain Contracts of the Debtor, at Purchaser's expense, pending the disposition of such contracts by the Debtor, is fair, reasonable, appropriate, and in the best interests of the Debtor, the Estate, creditors and other parties in interest.

DD.     For purposes of Bankruptcy Code section 363(b)(1), the Debtor has, in connection with offering a product or service, previously disclosed to one or more individuals policies prohibiting or restricting the transfer of disclosure of "personally identifiable information," as defined in Bankruptcy Code section 101(41A) (the "<u>PII Policies</u>").  The sale of Purchased Assets comprising or including personally identifiable information is consistent with the PII Policies in effect as of the Filing Date; the Purchaser has agreed to be bound by such PII Policies on and after the Closing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EE.    On [_____], 2012 and [_____], 2012, the Court entered interim

and final orders, respectively, approving a debtor in possession credit facility governed by the

"Debtor-In-Possession Loan and Security Agreement" dated November 5, 2012, by and among the

Debtor, as borrower, and SMC, as lender (the "DIP Credit Agreement").

FF.    It is in the best interests of the Debtor and the Estate that the Purchase Agreement and

Sale Transaction close as soon as possible, and no reason exists for any delay in the implementation of

this Order.  This Court finds just cause to waive any stay of this Order pursuant to Bankruptcy Rules

6004(h), 6006(d) and 7062.  This Order constitutes a final, appealable order within the meaning of 28

U.S.C. § 158(a).

GG.    Other good and sufficient cause exists to grant the relief herein.

Based on the foregoing, and after due consideration and good cause appearing therefor, **IT IS

HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.    The Motion is granted. Any and all objections to the entry of this Order that have not

been withdrawn, waived, settled or otherwise resolved, and all reservations of rights included therein,

are overruled on the merits and with prejudice.

2.    Pursuant to Bankruptcy Code sections 105, 363 and 365, (i) the Purchase Agreement,

the Sale Transaction, and all of the terms and conditions of the foregoing, are authorized and approved,

and (ii)(a) the Debtor is authorized to execute, deliver, and perform under, consummate, and

implement the Purchase Agreement together with all additional instruments and documents that are

requested by the Purchaser and may be reasonably necessary or desirable to implement the Purchase

Agreement, and (b) take any and all actions as they deem necessary, appropriate, or advisable for the

purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to

possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the

obligations as contemplated by the Purchase Agreement, including any and all actions reasonably

requested by the Purchaser that are consistent with the Purchase Agreement.

3.    Pursuant to Bankruptcy Code sections 105(a) and 363(f), upon the Closing: (i) the

transfer of Purchased Assets to the Purchaser pursuant to the Purchase Agreement shall constitute a

legal, valid and effective transfer of good and marketable title to the Purchased Assets and shall vest

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the Purchaser with all right, title, and interest in and to the Purchased Assets, free and clear of all liens,

2    claims, Encumbrances and interests, including those based on Successor Liability, with any such liens

3    to attach to the proceeds of the Sale Transaction, in the order of their priority, and with the same

4    validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale

5    Order, subject to any rights, claims, and defenses the Debtor and all interested parties may possess

6    with respect thereto; provided, however, that the transfer of the Purchased Assets is not free and clear

7    of the Permitted Encumbrances and provided further that the Purchaser shall assume the Assumed

8    Liabilities.

9         4.      This Order is and shall be effective as a determination that all liens, claims,

10    Encumbrances and interests shall be and are, without further action by any person or entity, released

11    with respect to the Purchased Assets as of the Closing Date, except as otherwise specifically set forth

12    in this Order and the Purchase Agreement.

13        5.      The Purchaser, SMC, their respective successors and assigns, their respective officers,

14    directors, agents, attorneys and other representatives, and their respective property, including the

15    Purchased Assets (the "Purchaser Parties") are not, and shall not be liable for, any liens, claims,

16    Encumbrances or interests released hereunder, including those based on Successor Liability.

17    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from

18    commencing or continuing in any manner any action or other proceeding, whether in law or equity, in

19    any judicial, administrative, arbitral, or other proceeding against the Purchaser Parties with respect to

20    any such liens, claims, Encumbrances and interests, including those based on Successor Liability,

21    including (a) commencing or continuing any action or other proceeding pending or threatened against

22    the Debtor as against the Purchaser; (b) enforcing, attaching, collecting, or recovering in any manner

23    any judgment, award, decree, or order against the Debtor as against the Purchaser; (c) creating,

24    perfecting, or enforcing any lien, claim, interest, or Encumbrance against the Debtor as against the

25    Purchaser; (d) asserting any setoff, right of subrogation, or recoupment of any kind; (e) commencing

26    or continuing any action, in any manner or place, that does not comply, or is inconsistent with, the

27    provisions of this Order or other orders of this Court, or the agreements or actions contemplated or

28    taken in respect thereof; or (f) revoking, terminating, or failing or refusing to renew any license,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such asset.

6.      The Purchaser shall not be deemed or considered for any purpose a successor to the Debtor, a mere continuation or substantial continuation of the Debtor or its enterprise, or to have merged with Debtor on a de facto basis.  The Purchaser has not assumed and is not responsible for any liability or obligation of the Debtor or the Estate, except as otherwise expressly provided in the Purchase Agreement and this Order.

7.      Pursuant to Bankruptcy Code section 365, the assumption and assignment of the Purchased Contracts to the Purchaser is approved and shall be deemed effective as of the Closing.  The Purchased Contracts remain in full force and effect for the benefit of the Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in Bankruptcy Code section 365(b)(2)) that prohibits, restricts, or conditions such assignment or transfer.

8.      The Cure Cost with respect to each Purchased Contract, if any, shall be remitted by Purchaser to the non-Debtor party to such Purchased Contracts, no later than five (5) business days after the Closing.  Upon payment of the Cure Cost, if any, all defaults or other obligations under each Purchased Contract arising or accruing prior to the Closing are deemed cured.

9.      Upon payment of the Cure Costs, (i) the Purchaser shall have no liability or obligation arising or accruing under the Purchased Contracts on or prior to the Closing, except as otherwise expressly provided in the Purchase Agreement, and (ii) pursuant to Bankruptcy Code section 365(k), the Debtor shall be relieved from any further liability with respect to the Purchased Contracts after their assignment and sale to the Purchaser.   Subject to payment of the Cure Cost, if any, with respect to each Purchased Contract, each of the non-Debtor parties thereto is barred, estopped and permanently enjoined from asserting against the Purchaser any defaults, breaches or claims of pecuniary loss based upon facts existing as of the Closing, by reason of the Closing, or by reason of the Debtor's financial condition.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10.     The provisions of Section 1.3(d) of the Purchaser Agreement, pursuant to which the Purchaser is granted use of certain Contracts of the Debtor, at Purchaser's expense, pending the disposition of such contracts by the Debtor, are approved.

11.     The Debtor shall immediately remit to SMC the proceeds of the Sale Transaction that are necessary to fully satisfy all obligations outstanding under the DIP Credit Agreement except to the extent such obligations constitute an Assumed Liability under the Purchaser Agreement.

12.     This Order is binding on all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease ("Recordation Officers").

13.     Each and every Recordation Officer is authorized and directed, from and after the Closing, to strike all liens, claims, Encumbrances and interests in or against the Purchased Assets (other than Permitted Encumbrances) from their records, official and otherwise, without further order of the Court or act of any party.  Each and every Recordation Officer is authorized and directed:  (i)  to file, record and/or register any and all documents and instruments presented to consummate or memorialize the Purchase Agreement and the Sale Transaction, and (ii) to accept and rely on this Order as the sole and sufficient evidence of the transfer of title of the Purchased Assets.

14.     No law of any state or other jurisdiction relating to bulk sales or similar laws shall apply in any way to the Purchase Agreement or the Sale Transaction.

15.     The Purchaser is a good faith purchaser within the meaning of, and shall have all of the protections of, Bankruptcy Code section 363(m).  The reversal or modification on appeal of this Order shall not affect the validity and enforceability of the transactions authorized by and entered into by the Purchaser in reliance on this Order (including the assumption, assignment and sale of Purchased Agreements), unless such authorization and the implementation of such transactions are duly stayed pending appeal.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16.     The Purchase Agreement and the Sale Transaction may not be avoided under

Bankruptcy Code section 363(n) and no amount may be recovered from the Purchaser or any other

party under Bankruptcy Code section 363(n).

17.     As specifically set forth in Section 14.1 of the Purchase Agreement, the Debtor is

authorized and directed, promptly after the Closing Date, to amend its Articles of Incorporation to

change its corporate name to a name that does not include "Suzuki" or "ASMC" and take such other

actions as are necessary to effectuate such name change.  Within two (2) business days of the Closing,

the Debtor shall file with the Court a notice of name change, together with a revised caption reflecting

the Debtor's new name.  Such revised caption shall be deemed approved and effective  upon the filing

of such notice.

18.     The failure to specifically reference any particular provision of the Purchase

Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent

of this Court that the Purchase Agreement and each and every provision, term, and condition thereof

be authorized and approved in its entirety.

19.     The Purchase Agreement and any related agreements, documents, or other instruments

may be amended by the Debtor and the Purchaser in a writing signed by such parties without further

order of the Court, provided that:  (i) any such amendment does not have a material adverse effect on

the Debtor or the Estate and (ii) notice of any such amendment shall be provided to the Committee.

20.     The terms and provisions of the Purchase Agreement and this Order shall be binding in

all respects upon, and shall inure to the benefit of, the Debtor, the Purchaser, and their respective

affiliates, successors and assigns (including any chapter 11 or chapter 7 trustee), and any affected third

parties, including all holders of liens, claims Encumbrances and interests released hereunder,

notwithstanding conversion of the Chapter 11 Case to a case under chapter 7, appointment of a trustee

under any chapter of the Bankruptcy Code or dismissal of the case.

21.     This Order shall be effective upon entry, and shall not be subject to any stay pursuant to

Bankruptcy Rules 6004(h), 6006(d), and 7062.

22.     The provisions of this Order are non-severable and mutually dependent on each other.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   23.  If there is any conflict between the Purchase Agreement or the Sale Procedures Order

2 and this Order, this Order shall govern.

3   24.  This Court shall retain exclusive jurisdiction to enforce and implement the terms and

4 provisions of this Order, the Purchase Agreement, all amendments thereto, any waivers and consents

5 thereunder, and each of the agreements executed in connection therewith, to the greatest extent

6 permitted by law, including jurisdiction to (a) compel delivery of the Purchased Assets to the

7 Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed by or to

8 the Debtor, (c) resolve any disputes arising under or related to the Purchase Agreement, (d) interpret,

9 implement, and enforce the provisions of this Order, including those addressing the transfer of assets

10 free and clear of liens, claims, Encumbrances and interests, and (e) protect the Purchaser and other

11 entities from any of the actions enjoined hereunder.

12

13 DATED: _____ ___, 2012

14

15

        _____

        HONORABLE UNITED STATES BANKRUPTCY JUDGE

16

17

18

19

20            # # #

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA