1  Richard M. Pachulski (CA Bar No. 90073)
   James I. Stang (CA Bar No. 94435)
2  Dean A. Ziehl (CA Bar No. 84529)
   Linda F. Cantor (CA Bar No. 153762)
3  Debra I. Grassgreen (CA Bar No. 169978)
   PACHULSKI STANG ZIEHL & JONES LLP
4  10100 Santa Monica Blvd., Suite 1300
   Los Angeles, CA  90067-4114
5  Telephone: 310/277-6910
   Facsimile: 310/201-0760
6  E-mail:  rpachulski@pszjlaw.com
            jstang@pszjlaw.com
7            dziehl@pszjlaw.com
            lcantor@pszjlaw.com
8            dgrassgreen@pszjlaw.com

9  Attorneys for Debtor and Debtor in Possession

FILED & ENTERED

MAR 06 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY nbolte    DEPUTY CLERK

10                **UNITED STATES BANKRUPTCY COURT**
11                **CENTRAL DISTRICT OF CALIFORNIA**
                  **SANTA ANA DIVISION**

12  In re:                                    Case No.: 8:12-bk-22808-SC

13  American Suzuki Motor Corporation,[1]     Chapter 11

14                              Debtor.        **ORDER CONFIRMING DEBTOR'S**
15                                             **FOURTH AMENDED PLAN OF**
                                               **LIQUIDATION UNDER CHAPTER 11 OF**
16                                             **THE BANKRUPTCY CODE**

                                               Confirmation Hearing:

17                                             Date:     February 28, 2013
18                                             Time:     9:00 a.m.
                                               Place:    Courtroom 5C
19                                                       United States Bankruptcy Court
                                                         411 West Fourth Street
20                                                       Santa Ana, California 92701
                                               Judge:    Honorable Scott C. Clarkson

21

22         American Suzuki Motor Corporation, the above-captioned debtor and debtor-in-possession

23  (the "Debtor"), having filed and proposed the *Fourth Amended Plan of Liquidation Under Chapter*

24  *11 of the Bankruptcy Code* [Docket No.1157] (the " Plan");[2] a hearing to consider Confirmation of

25  the Plan and matters related thereto having been held before this Court on February 28, 2013 (the

26  _____
    [1] The last four digits of the Debtor's federal tax identification number are (8739).  The Debtor's address is:  3251 East
    Imperial Highway, Brea, California 92821.
27  [2] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Plan and, as applicable,
    the APA.

28

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS  ANGELES , CALIFORNIA

"Confirmation Hearing"); the appearances having been as noted on the record; and based upon the

record of the Confirmation Hearing, all proceedings held before the Court in the Chapter 11 Case

and the record therein, the Court having reviewed and considered all of the documents referenced

in the *Findings of Fact and Conclusions of Law in Support of Order Confirming the Fourth*

*Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Findings") and

having entered the Findings, which are hereby incorporated into this Order, and good cause

appearing,

    **IT IS HEREBY ORDERED** that:

    **A.    Plan Confirmed and Modifications Approved**

    1.    The Plan, attached hereto as Exhibit A, is hereby confirmed.  Any objections to

Confirmation of the Plan, including the Objections (as defined in the Findings), whether formal or

informal, written or oral, unless previously withdrawn, are overruled.  All withdrawn objections

are hereby treated as withdrawn with prejudice.

    2.    The Plan Modifications (as defined in the Findings) are hereby approved pursuant

to Section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy

Procedure, without the need of any further disclosure to, or resolicitation of votes of, Creditors and

parties in interest.

    3.    The provisions of the Plan and this Order will bind the Debtor, the PE Creditor

Trust, and all creditors of the Debtor, whether or not the Claims of these entities are impaired

under the Plan, whether or not these entities have voted to accept or reject the Plan, and whether or

not these entities have filed proofs of Claim or are deemed to have filed proofs of Claim in the

Chapter 11 Case.

    **B.    Sale Transaction**

        **1.    The Sale Transaction is Approved**

    4.    Pursuant to Bankruptcy Code sections 105, 363 and 365, (i) the Sale Transaction,

the APA, the TSA, and all of the terms and conditions of the foregoing are authorized and

approved, and (ii) the Debtor and the PE Creditor Trust are authorized to (a) execute, deliver, and

perform under, consummate, and implement the APA and the TSA, together with all additional

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the APA and the TSA, and (b) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA and the TSA, including any and all actions reasonably requested by the Purchaser that are consistent with the APA and the TSA.  On the Effective Date, any and all acts and transactions required to be consummated in connection with the Sale Transaction and any and all documents entered into in connection therewith shall be deemed authorized, approved and consummated.

5.    Notwithstanding anything to the contrary in the Plan or this Order, the PE Creditor Trust and the Purchaser are bound by and shall perform the Debtor's obligations under the *Amended Order: (I) Authorizing the Debtor to Assume Certain Finance Related Agreements with Ally Financial Inc. and Certain of its Affiliates and (II) Granting Related Relief, Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and 503(b)* [Docket No. 156] to the extent the foregoing are Designated Contracts and/or Purchased Assets.

6.    This Order is binding on all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease ("Recordation Officers").  Each and every Recordation Officer is authorized and directed, from and after the Closing, to strike all Liens, Claims, encumbrances and interests in or against the Purchased Assets (other than Permitted Encumbrances) from their records, official and otherwise, without further order of the Court or act of any party.  Each and every Recordation Officer is authorized and directed: (i)  to file, record and/or register any and all documents and instruments presented to consummate or memorialize

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

the APA and the Sale Transaction, and (ii) to accept and rely on this Order as the sole and

sufficient evidence of the transfer of title of the Purchased Assets.

7.     No law of any state or other jurisdiction relating to bulk sales or similar laws shall

apply in any way to the APA or the Sale Transaction.

8.     The failure to specifically reference any particular provision of the APA in this

Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court

that the APA and each and every provision, term, and condition thereof be authorized and

approved in its entirety.

9.     The APA and any related agreements, documents, or other instruments may be

amended by the Debtor or the PE Creditor Trust and the Purchaser in a writing signed by such

parties without further order of the Court, provided that:  (i) any such amendment does not have a

material adverse effect on the Debtor, the PE Creditor Trust or the Estate and (ii) notice of any

such amendment shall be provided to the Committee, if prior to the Effective Date.

10.     The terms and provisions of the APA and this Order shall be binding in all respects

upon, and shall inure to the benefit of, the Debtor, the PE Creditor Trust, the Purchaser, and their

respective affiliates, successors and assigns (including any chapter 11 or chapter 7 trustee), and

any affected third parties, including all holders of Liens, Claims encumbrances and interests

released hereunder, notwithstanding conversion of the Chapter 11 Case to a case under chapter 7,

appointment of a trustee under any chapter of the Bankruptcy Code or dismissal of the case.

## 2.    Good Faith

11.     The Purchaser is a good faith purchaser within the meaning of, and shall have all of

the protections of, Bankruptcy Code section 363(m).  The reversal or modification on appeal of

this Order shall not affect the validity and enforceability of the transactions authorized by and

entered into by the Purchaser in reliance on this Order (including the assumption, assignment and

sale of Purchased Agreements), unless such authorization and the implementation of such

transactions are duly stayed pending appeal.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

**3.    Free and Clear Sale / No Successor Liability / No Alter Ego**

12.    Pursuant to Bankruptcy Code sections 105(a) and 363(f), upon the Closing: (i) the transfer of Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid and effective transfer of good and marketable title to the Purchased Assets and shall vest the Purchaser with all right, title, and interest in and to the Purchased Assets, free and clear of all Liens, Claims, encumbrances and interests, including those based on Successor Liability (as defined in the Findings), with any such Liens, Claims, encumbrances and interests to attach to the proceeds of the sale, in the order of their priority, and with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Order, subject to any rights, claims, and defenses the Debtor, the PE Creditor Trust and all interested parties may possess with respect thereto; provided, however, that the transfer of the Purchased Assets is not free and clear of the Permitted Encumbrances and provided further that the Purchaser shall assume the Assumed Liabilities.

13.    This Order is and shall be effective as a determination that all Liens, Claims, encumbrances and interests shall be and are, without further action by any person or entity, released with respect to the Purchased Assets as of the Effective Date, except as otherwise specifically set forth in this Order and the APA.

14.    The Purchaser and its respective successors and assigns, its respective officers, directors, agents, attorneys and other representatives, and its respective property, including the Purchased Assets (the "Purchaser Parties") are not, and shall not be liable for, any Liens, Claims, encumbrances or interests released hereunder, including those based on Successor Liability.

15.    The APA and the sale may not be avoided under Bankruptcy Code section 363(n) and no amount or other property may be recovered from the Purchaser or any other party under Bankruptcy Code section 363(n).

16.    Pursuant to Sections 363(f) and 1141(c) of the Bankruptcy Code, effective upon the closing of the Sale Transaction, all Persons are forever prohibited and enjoined from taking any action against the Purchaser based on Successor Liability, including commencing or continuing any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or

other proceeding against the Purchaser with respect to any Liens, Claims, encumbrances and interests against the Debtor or the Debtor's property.

17.    The Purchaser shall not be deemed or considered for any purpose a successor to the Debtor, a mere continuation or substantial continuation of the Debtor or its enterprise, to have merged with Debtor on a *de facto* basis, or an alter ego of the Debtor.  The Purchaser has not assumed and is not responsible for any liability or obligation of the Debtor or the Estate, except as otherwise expressly provided in the APA and/or this Order.

18.    The Sale Transaction shall qualify as a reorganization within the meaning of Section 368(a) of the Internal Revenue Code.

19.    In accordance with the Plan, on the Effective Date SMC shall contribute to the capital of the Debtor (i) the SMC Settlement Payment and (ii) the SMC General Unsecured Claims, the SMC Secured Revolver Claim, and the SMC Secured Inventory Loan Claim (in amounts to be determined and allocated among such Claims in SMC's discretion, provided that such contribution shall first be applied against all of the SMC General Unsecured Claims).

**4.    Assumption, Assignment and Sale of Designated Contracts**

20.    In accordance with Article 7 of the Plan and the APA, the assumption, assignment and sale of the Designated Contracts to the Purchaser is approved and shall be deemed effective as of the Effective Date.  The Designated Contracts shall remain in full force and effect for the benefit of the Purchaser, in accordance with their respective terms, notwithstanding any provision in any such Designated Contract (including those of the type described in Bankruptcy Code section 365(b)(2)) that prohibits, restricts, or conditions such assignment or transfer.

21.    Upon payment of the Cure Claims, if any, by the Purchaser in accordance with Section 2.3.2 of the Plan, all defaults or other obligations under each Designated Contract arising or accruing prior to the Effective Date are deemed cured.

22.    Upon payment of the Cure Claims, (i) the Purchaser shall have no liability or obligation arising or accruing under the Designated Contracts on or prior to the Effective Date, except as otherwise expressly provided in the APA, and (ii) pursuant to Bankruptcy Code section 365(k), the Debtor and the PE Creditor Trust shall be relieved from any further liability with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

respect to the Designated Contracts after their assignment and sale to the Purchaser. Subject to payment of the Cure Claims, if any, with respect to each Designated Contract, each of the non-Debtor parties thereto is barred, estopped and permanently enjoined from asserting against the Purchaser any defaults, breaches or claims of pecuniary loss based upon facts existing as of the Effective Date, by reason of the occurrence of the Effective Date, or by reason of the Debtor's financial condition.

23.     To the extent that the non-Debtor party to any Designated Contract has filed a proof of Claim against the Debtor or the Debtor has scheduled a Claim in favor of the non-Debtor party, payment of that party's Cure Claim pursuant to Section 2.3.2 of the Plan shall be deemed to satisfy, in full all amounts asserted in such proof of Claim or set forth in the Debtor's Schedules, irrespective of whether the Cure Claim is less than the amount set forth in any such proof of Claim or in the Debtor's Schedules.

24.     Each of the GE Agreements (as defined in the GE Assumption Order (as defined in the Findings) [Docket No. 65]) are Designated Contracts under the Plan, and Purchased Assets under the APA, and shall be assigned to the Purchaser on the Effective Date. All outstanding amounts owed to the Finance Companies (as defined in the GE Assumption Order) pursuant to the GE Agreements and the GE Assumption Order shall be paid in cash, in full, by the PE Creditor Trust and/or the Purchaser promptly after the Effective Date.

**C.     The Debtor-SMC Settlement is Approved**

25.     The Debtor-SMC Settlement set forth in the Plan is hereby approved in its entirety. The Debtor and the PE Creditor Trust are authorized to take any and all actions necessary and reasonable to implement the Debtor-SMC Settlement.

**D.     Approval of the PE Creditor Trust Provisions**

**1.     Establishment and Implementation of the PE Creditor Trust**

26.     On the Effective Date, the PE Creditor Trust Agreement shall become effective, and, if not previously signed, the Debtor and the PE Creditor Trustee shall execute the PE Creditor Trust Agreement. The PE Creditor Trust Agreement is hereby approved in its entirety. The PE Creditor Trust will be organized and established as a trust for the benefit of the Trust Beneficiaries, as

defined in the Plan, and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).  The PE Creditor Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of the Debtor or its Estate for any purpose other than as specifically set forth herein, in the Plan or in the PE Creditor Trust Agreement.   Notwithstanding the foregoing, the PE Creditor Trust shall be deemed to have assumed all of the Debtor's post-Effective Date obligations under the APA.

27.    From and after the Effective Date, the PE Creditor Trustee shall be authorized to, and shall take all such actions as required to implement the PE Creditor Trust and the provisions of the Plan as are contemplated to be implemented by the PE Creditor Trustee, including, without limitation, directing distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims, distributions to the Trust Beneficiaries, objecting to Claims, administering the Retained Claims and/or Defenses, and liquidating the PE Creditor Trust Assets.

### 2.    Appointment of the PE Creditor Trustee and PE Creditor Trust Committee

28.    M. Freddie Reiss is appointed as the PE Creditor Trustee and is authorized to carry out his duties and powers as set forth in the PE Creditor Trust Agreement, without further order of the Bankruptcy Court.  As a representative of the Estate pursuant to Sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code, the PE Creditor Trustee shall succeed to all of the rights and powers of the Debtor and the Estate with respect to all Retained Claims and/or Defenses, and the PE Creditor Trustee shall be substituted and shall replace the Debtor, the Estate and the Committee, as applicable, as the party in interest in any such litigation pending as of the Effective Date.

29.    R. Todd Neilson and Michael Ozawa are appointed as the PE Creditor Trust Committee and are authorized to carry out their duties and powers as set forth in the Plan and in the PE Creditor Trust Agreement without further order of the Bankruptcy Court.

30.    The PE Creditor Trustee and the PE Creditor Trust Committee shall be entitled to compensation and reimbursement of expenses from the PE Creditor Trust Assets on account of the

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

performance of such services, without the need for further Bankruptcy Court approval, as set forth

in the PE Creditor Trust Agreement.

31.    To the maximum extent permitted by law, the PE Creditor Trustee, the PE

Creditor Trust Committee and their respective Agents shall not have or incur liability to any

Person for an act taken or omission made in good faith in connection with or related to the

administration of the PE Creditor Trust Assets, the implementation of the Plan and the

distributions made thereunder or distributions made by the PE Creditor Trust, subject to the

provisions of the PE Creditor Trust Agreement.  The PE Creditor Trustee, the PE Creditor

Trust Committee and their respective Agents shall in all respects be entitled to reasonably

rely on the advice of counsel with respect to their duties and responsibilities under the Plan

and the PE Creditor Trust.  This Order constitutes a judicial determination that the

exculpation provision contained in this Section is necessary to, *inter alia*, facilitate

Confirmation and feasibility and to minimize potential claims arising after the Effective Date

for indemnity, reimbursement or contribution from the Estate, or the PE Creditor Trust, or

their respective property.

### 3.    Transfer of the PE Creditor Trust Assets

32.    On the Effective Date, pursuant to the Plan and Sections 1123, 1141 and 1146(a) of

the Bankruptcy Code, the Debtor and its Estate are authorized and directed to transfer, grant,

assign, convey, set over, and deliver to the PE Creditor Trustee, for the benefit of the PE Creditor

Trust, all of the Debtor's and the Estate's right, title and interest in and to the PE Creditor Trust

Assets, free and clear of all Liens, Claims, encumbrances or interests of any kind in such property,

except as otherwise expressly provided for in the Plan.  To the extent required to implement the

transfer of the PE Creditor Trust Assets from the Debtor and its Estate to the PE Creditor Trust and

the PE Creditor Trustee as provided for herein, all Persons shall cooperate with the Debtor and the

Estate to assist the Debtor and the Estate to implement said transfers.   SMC shall retain its Liens

on the assets transferred to the PE Creditor Trust, pursuant to the Pre-Petition Loan and Security

Agreement, until SMC's Secured Claims have been satisfied in full or such assets have been

disposed of by the PE Creditor Trust; provided that to the extent such assets are disposed of by the

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

2

PE Creditor Trust prior to SMC's Secured Claims having been satisfied in full, SMC's Liens shall attach to the proceeds of such assets with the same validity, extent and priority as existed prior to the disposition of such assets.

### 4. Trust Beneficiaries

33. In accordance with Treasury Regulation Section 301.7701-4(d), the beneficiaries ("Trust Beneficiaries") of the PE Creditor Trust are the members of Classes 2A-1, 2A-2, 2B, 3, 4 and 6 under the Plan to the extent such Creditors are entitled to distributions from the Debtor pursuant to Article 4 of the Plan. The Trust Beneficiaries shall receive, on account of their respective Allowed Claims, an allocation of PE Creditor Trust Interests as provided for in the PE Creditor Trust Agreement, in order to implement the distributions of Cash to which such Trust Beneficiaries are entitled as provided for in Article 4 of the Plan, and shall receive on account of their respective PE Creditor Trust Interests, in full and complete satisfaction, discharge, exchange and release thereof, from the PE Creditor Trust, distributions in compliance with Article 4 of the Plan.

### E. Dissolution of the Debtor

34. As of the Effective Date, the Debtor shall be deemed dissolved for all purposes, without the necessity for any other or further actions to be taken by or on behalf of the Debtor, by the PE Creditor Trustee, or any other Person, or payments to be made in connection therewith. Notwithstanding the foregoing, the PE Creditor Trustee in his discretion may execute and file documents and take all other actions as he deems appropriate relating to the dissolution of the Debtor under the laws of California and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates. Any actions by the PE Creditor Trustee pursuant to the preceding sentence shall not modify, alter or otherwise affect the deemed dissolution of the Debtor as of the Effective Date pursuant to this Order.

35. On and after the Effective Date, if and to the extent that any other actions may need to be taken by the Debtor, the PE Creditor Trustee may, in the name of the Debtor, take such

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1   actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the

2   Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the

3   Plan or this Order.

4         36.    To the extent necessary, the Debtor's by-laws are hereby modified such that the

5   provisions of the Plan can be effectuated.  Each existing director and officer of the Debtor shall be

6   deemed to have resigned on the Effective Date without any further corporate action.

7        **F.**     **Funding of Plan Expenses**

8         37.    All Plan Expenses incurred from and after the Effective Date shall be expenses of

9   the PE Creditor Trust, and the PE Creditor Trustee shall disburse funds from the PE Creditor Trust

10   Assets for purposes of funding such expenses.

11        **G.**     **Rejection of Contracts**

12         38.    On the Effective Date, all of the Debtor's executory contracts and unexpired leases

13   that are not Designated Contracts, or that are not otherwise specifically assumed by the Debtor,

14   shall be rejected pursuant to Bankruptcy Code sections 365 and 1123(b)(2).  Any Person asserting

15   any Claim for damages arising from the rejection of an executory contract or unexpired lease of

16   the Debtor under the Plan, excluding any Settling Auto Dealers and Other Settling Creditors, shall

17   File such Claim on or before the Rejection Claim Bar Date, or be forever barred from: (a) asserting

18   such Claim against the Debtor, the PE Creditor Trust, the PE Creditor Trust Assets, or the

19   Purchaser, and (b) sharing in any distribution under the Plan.

20        **H.**     **Effects of Confirmation, Releases, Exculpation and Related Matters**

21         39.    <u>Class 4 Release</u>:  The Class 4 Releases provided by holders of Electing Class 4

22   Claims pursuant to the Plan constitute reasonable, consensual releases executed by the applicable

23   Creditors and are hereby approved.

24         40.    <u>Release by Debtor of SMC and Related Parties</u>:  Pursuant to Section 9.4 of the Plan

25   and Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the

26   Effective Date, the Debtor, the PE Creditor Trust and the Estate, for themselves and their

27   respective successors and assigns (including a chapter 11 or chapter 7 trustee), shall conclusively,

28   absolutely, unconditionally, irrevocably and forever release and discharge SMC and its successors,

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

assigns, subsidiaries and affiliates, and each of the foregoing party's respective current and former

Agents, from any and all claims, obligations, rights, suits, damages, causes of action, and

liabilities, whether known or unknown, foreseen or unforeseen, existing or hereafter arising,

arising prior to the Effective Date including, without limitation, any claims under any contract,

agreement or memorandum of understanding between the Debtor and SMC including the April

1990 MOU (which is rescinded as between SMC and the Debtors as of the Effective Date of the

Plan).  The Debtor, the PE Creditor Trust and the Estate, for themselves and their respective

successors and assigns (including a chapter 11 or chapter 7 trustee) have acknowledged that they

are familiar with California Civil Code section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Debtor, the PE Creditor Trust and the Estate, for themselves and their respective successors and

assigns (including a chapter 11 or chapter 7 trustee), waive and relinquish all rights and benefits that

each party has or may have under California Civil Code section 1542 or any similar law; each such

party expressly assumes the risk that the facts or law may be different than it now believes them to

be, and each party agrees that this release shall be effective notwithstanding any such differences.

Notwithstanding anything herein to the contrary, claims, obligations, rights, suits, damages, causes

of action and liabilities against SMC's subsidiaries and affiliates and their current and former Agents

shall not be released to the extent (and solely to the extent) that such claims, obligations, rights,

suits, damages, causes of action and liabilities constitute Purchased Assets.

41.  **Exculpation:  Pursuant to Section 9.5 of the Plan, the Exculpated Parties shall not have nor shall they incur any liability to any Person for any act taken or omission made in connection with or in any way related to negotiating, formulating, implementing, confirming, consummating or administering the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with or related to the Plan or the Chapter 11 Case, including, without limitation, relating to the powers and duties conferred upon the Exculpated Parties by the Plan, or any order of the**

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

Bankruptcy Court entered pursuant to or in furtherance of the Plan, or any other act taken or omission made in connection with the Chapter 11 Case; provided that the foregoing provisions shall have no effect on the liability of any Exculpated Parties that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.  Notwithstanding anything in the Plan to the contrary, no Person serving as PE Creditor Trustee shall have or incur any personal liability as the shareholder, director or officer of the Debtor or PE Creditor Trust for any act taken or omission made in connection with the wind-up or dissolution of the Debtor, the PE Creditor Trust or any nondebtor subsidiary or affiliate, except for any personal liability of such Person that would not have resulted but for an act or omission of such Person that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.

      42.    <u>Order in Aid of Plan Provisions</u>:  On and after the Effective Date, no Person who has held, holds or may hold Claims against the Debtor or Interests in the Debtor may, with respect to any such Claims or Interests, pursue rights and/or take actions against the PE Creditor Trust or its property on account of such Claims or Interests other than as expressly provided in the Plan unless otherwise ordered by the Bankruptcy Court for cause shown. Specifically, Persons holding Claims against and Interests in the Debtor are prohibited from the Effective Date until the date that the PE Creditor Trust is terminated or it otherwise ceases to exist: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the PE Creditor Trust, the Estate, or the PE Creditor Trustee or any of their property on account of such Person's Claim or Interest;  (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Persons, including, without limitation, the PE Creditor Trust and the PE Creditor Trustee, with respect to such Person's Claim or

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

Interest; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Persons, including, without limitation, the PE Creditor Trust and PE Creditor Trustee, on account of such Person's Claim or Interest; (d) asserting any right of setoff, of any kind, directly or indirectly, against any obligation due the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, including, without limitation, the PE Creditor Trust and PE Creditor Trustee on account of such Person's Claim or Interest; and (e) taking any action in any place and in any manner whatsoever to enforce a Claim against or pursue an Interest in the Debtor, that does not conform to or comply with the provisions of the Plan. Notwithstanding the foregoing, nothing in this Section shall prohibit any Person from enforcing the terms of the Plan or this Order in the Bankruptcy Court or from seeking relief from this provision from the Bankruptcy Court for cause shown.

43.    **Sale Free and Clear Provisions – Effects of No Successor Liability as to Purchaser**:  Notwithstanding Section 9.6 of the Plan, pursuant to Sections 363(f) and 1141(c) of the Bankruptcy Code, effective upon the closing of the Sale Transaction, all Persons are forever prohibited and enjoined from taking any action against the Purchaser based on successor liability, including commencing or continuing any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser with respect to any liens, claims, encumbrances and interests against the Debtor or the Debtor's property.  Subject to payment of the Cure Claims, if any, with respect to each Designated Contract, each of the non-Debtor parties thereto is barred, estopped and permanently enjoined from asserting against the Purchaser any defaults, breaches or claims of pecuniary loss based upon facts existing as of the closing of the Sale Transaction, by reason of the closing, or by reason of the Debtor's financial condition.

44.    Third-Party Non-Estate Claims Against SMC:  Other than as set forth in Section 9.5 of the Plan, releases provided to SMC pursuant to the Auto Dealer Letter Agreements, releases

1  provided to SMC pursuant to the SMC Participation Agreements, the Class 4 Release and any

2  other consensual release provided to SMC by a third party, nothing in the Plan is intended to

3  release claims held solely by third parties against SMC (*e.g.*, not Estate Causes of Action and

4  Defenses).

5       45.    <u>Environmental Liabilities</u>:  Nothing in this Order or the Plan discharges, releases,

6  precludes, or enjoins: (i) as against the Debtor or the PE Creditor Trust, any environmental liability

7  to any governmental unit that is not a Claim as defined in 11 U.S.C. § 101(5); (ii) any

8  environmental Claim of any governmental unit first arising on or springing anew after the

9  Effective Date; (iii) any environmental liability to any governmental unit on the part of any entity

10  as the owner or operator of property after the Effective Date; or (iv) any environmental liability to

11  the United States on the part of any person or entity other than the Debtor or the PE Creditor Trust,

12  provided, however, that nothing in this clause (iv) shall be construed to deprive the Purchaser of

13  the benefits of paragraphs 12-14 hereof, provided, further, however, that the provisions of

14  paragraphs 12-14 shall not be construed to override clauses (ii) and (iii) above.  Nothing in this

15  Order or the Plan divests any tribunal of any jurisdiction it may have under environmental law to

16  interpret the Plan, this Order, or any matter relating thereto, provided that the Bankruptcy Court

17  retains jurisdiction as set forth in and pursuant to the terms of the Plan.

18       46.    <u>Recall Obligations</u>.  From and after the Effective Date, the Purchaser shall comply

19  with the reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, as

20  amended and recodified, including by the Transportation Recall Enhancement, Accountability and

21  Documentation Act, to the extent applicable in respect of motor vehicles and motor vehicle

22  equipment manufactured, imported, or distributed by the Seller prior to the Closing.

23       47.    <u>Retained Claims and/or Defenses</u>:  Unless any Retained Claim and/or Defense is

24  expressly waived, relinquished, released, compromised, or settled in the Plan, this Order or any

25  other Final Order, the Debtor and the PE Creditor Trust expressly reserve such Retained Claim

26  and/or Defense for later adjudication by the PE Creditor Trust.  This reservation includes, without

27  limitation, a reservation by the Debtor and PE Creditor Trust of any Retained Claims and/or

28  Defenses not specifically identified in the Plan or Disclosure Statement, or of which the Debtor

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

2

may presently be unaware, or which may arise or exist by reason of additional facts or

circumstances unknown to the Debtor at this time or facts or circumstances that may change or be

different from those the Debtor now believes to exist and, therefore, no preclusion doctrine,

including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion,

claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to such

Retained Claims and/or Defenses upon or after the Confirmation of the Plan based on the

Disclosure Statement, the Plan or this Order, except where such Retained Claims and/or Defenses

have been expressly waived, relinquished, released, compromised, or settled in the Plan, this Order

or other Final Order.  Following the Effective Date, the PE Creditor Trust may assert, compromise

or dispose of the Retained Claims and/or Defenses without further notice to Creditors or

authorization of the Bankruptcy Court.

## I.    Retention of Jurisdiction

48.    Notwithstanding the entry of this Order and the occurrence of the Effective Date,

the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date to

the extent legally permissible, including, without limitation, as to the matters enumerated in Article

10 of the Plan.

## J.    Administrative Claim Bar Date

49.    Requests for payment of an Administrative Claim to the extent such Claim (i) arose

or was incurred between the Petition Date and the Effective Date and (ii) has not been paid,

released, or otherwise settled, excluding all requests for payment of Professional Fee claims,

Claims arising under Bankruptcy Code § 503(b)(9) or as otherwise provided under Bankruptcy

Code § 503(b)(1)(D), must be filed and served on counsel to the Debtor and the PE Creditor

Trustee by no later than thirty (30) days after the Effective Date.  Holders of Administrative

Claims that are so required to file a request for payment of such Claims and do not file such

requests by the Administrative Claim Bar Date shall be forever barred from asserting such claims

against the Debtor, the PE Creditor Trust and/or the Estate.  Notwithstanding the foregoing,

Ordinary Course Administrative Claims shall not be subject to this paragraph 49 and shall be

treated as set forth in the Plan.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

**K.    Rejection Claim Bar Date**

50.    Any Person asserting a Claim for damages arising from the rejection of an executory contract or unexpired lease of the Debtor under the Plan must file with the Bankruptcy Court and serve on counsel to the Debtor and the PE Creditor Trustee a proof of Claim under Section 502(g) of the Bankruptcy Code by no later than thirty (30) days after the Effective Date, or be forever barred from asserting such Claim against the Debtor, the PE Creditor Trustee and the Estate and sharing in any distribution under the Plan, unless another order of the Bankruptcy Court provides for an earlier date as to any particular executory contract or unexpired lease.

**L.    Exemption from Transfer Taxes**

51.    In accordance with Section 1146(c) of the Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under the Plan shall not be subject to any stamp tax or similar tax and the appropriate state or local government officials or agents shall be directed to forego the collection of any such tax and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax.

**M.    Dissolution of the Committee**

52.    On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Chapter 11 Case, except that the Committee shall continue in existence and have standing and capacity to prepare and prosecute applications for the payment of fees and reimbursement of expenses incurred by the Committee or its Professionals.

**N.    Quarterly Fees to the U.S. Trustee**

53.    All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the Debtor in the amounts and at the times such fees may become due up to and including the Effective Date. Thereafter, the PE Creditor Trust shall pay all fees payable under 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, dismissed or converted.  Upon the Effective Date, the PE Creditor Trust shall be relieved from the duty to make the reports and summaries required under Bankruptcy Rule 2015(a).  Notwithstanding the foregoing, the PE Creditor Trust shall File and serve the status

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

reports required by Local Bankruptcy Rule 3020-1(b) at such times and for such period as may be set forth in this Order.

**O.  Ballot Tabulation**

54.    Notwithstanding anything to the contrary contained in the Disclosure Statement Order, the Ballots reflected in the Ballot Summary Certification that were received electronically or after the Voting Deadline shall be counted toward acceptance or rejection of the Plan, and are otherwise valid and effective.

**P.  Order Immediately Effective**

55.    This Order shall be effective upon entry, and shall not be subject to any stay pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062, to the extent applicable.

**Q.    Post-Effective Date Notices**

56.    Following the Effective Date, notices shall only be served on the PE Creditor Trust, the U.S. Trustee and those Persons who File with the Court and serve upon the PE Creditor Trust a request, which includes such Person's name, contact person, address, telephone number and facsimile number, that such Person receive notice of post-Effective Date matters.  Persons who had previously Filed with the Court requests for special notice of the proceedings and other filings in the Chapter 11 Case shall not receive notice of post-Effective Date matters unless such Persons File a new request in accordance with this Section.

**R.    Notice of Confirmation Order / Effective Date**

57.    As soon as practicable after the Effective Date, the Debtor shall mail notice of the entry of this Order and of the occurrence of the Effective Date to all Confirmation Notice Parties, which notice shall set forth the Administrative Claims Bar Date, the deadlines for filing Professional Fee Claims and claims for rejection damages, identify the date that is the Effective Date, and provide such other information as may be appropriate to implement the Plan, and such notice shall constitute adequate and sufficient notice of the applicable deadlines and matters.

**S.    Construction of Order**

58.    The failure to reference a particular provision of the Plan, the APA, the TSA, and/or the PE Creditor Trust Agreement in this Order shall not affect the validity or enforceability of such

provision.  Each provision of the Plan, the APA, the TSA, and the PE Creditor Trust Agreement

shall be deemed authorized and approved by this Order and shall have the same binding effect of

every other provision of the Plan, the APA, the TSA, and the PE Creditor Trust Agreement,

whether or not mentioned in this Order.  Any inconsistencies between the Plan, the APA, the TSA,

and the PE Creditor Trust Agreement shall be resolved in accordance with the terms of such

documents, provided, however, that in the event of any inconsistencies between any of the Plan,

the APA, the TSA, or the PE Creditor Trust Agreement and this Order, this Order shall prevail.

# # #

Date: March 6, 2013

Scott C. Clarkson
United States Bankruptcy Judge

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

2

# **EXHIBIT A**

143466.1

Richard M. Pachulski (CA Bar No. 90073)
James I. Stang (CA Bar No. 94435)
Dean A. Ziehl (CA Bar No. 84529)
Linda F. Cantor (CA Bar No. 153762)
Debra I. Grassgreen (CA Bar No. 169978)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., Suite 1300
Los Angeles, CA  90067-4114
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   rpachulski@pszjlaw.com
            jstang@pszjlaw.com
            dziehl@pszjlaw.com
            lcantor@pszjlaw.com
            dgrassgreen@pszjlaw.com

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:12-bk-22808-SC |
| American Suzuki Motor Corporation,[3] | Chapter 11 |
| Debtor. | **DEBTOR'S FOURTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE** |

Plan Confirmation Hearing:
Date:       February 28, 2013
Time:       9:00 a.m.
Place:      Courtroom 5C
            United States Bankruptcy Court
            411 West Fourth Street
            Santa Ana, California 92701
Judge:      Honorable Scott C. Clarkson

---

[3] The last four digits of the Debtor's federal tax identification number are (8739).  The Debtor's address is:  3251 East Imperial Highway, Brea, CA 92821.

*Sidebar (vertical):* PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS AND RULES OF INTERPRETATION ........................................................1

   1.1    Administrative Claim. ................................................................................................1

   1.2    Administrative Claim Bar Date. ................................................................................2

   1.3    Agent. ........................................................................................................................2

   1.4    Allowed. .....................................................................................................................2

   1.5    APA. ...........................................................................................................................3

   1.6    April 1990 MOU. .......................................................................................................3

   1.7    Auto Dealer(s). .........................................................................................................3

   1.8    Auto Dealer Agreements Motion ..............................................................................3

   1.9    Auto Dealer Agreements Order(s). ..........................................................................3

   1.10  Auto Dealer Letter Agreements. ..............................................................................4

   1.11  Auto Parts/Service Business. ...................................................................................4

   1.12  Auto Sales Business. ................................................................................................4

   1.13  Available Cash. .........................................................................................................4

   1.14  Avoidance Actions. ...................................................................................................4

   1.15  Ballot(s). ....................................................................................................................5

   1.16  Bankruptcy Code. .....................................................................................................5

   1.17  Bankruptcy Court. .....................................................................................................5

   1.18  Bankruptcy Rules. ....................................................................................................5

   1.19  Bar Date. ...................................................................................................................5

   1.20  Business Day. ...........................................................................................................5

   1.21  Cash. .........................................................................................................................5

   1.22  Causes of Action and Defenses. ..............................................................................5

   1.23  Chapter 11 Case. ......................................................................................................6

   1.24  Claim. ........................................................................................................................6

   1.25  Claim Objection Deadline. ........................................................................................6

   1.26  Claims/Solicitation Agent. ........................................................................................6

   1.27  Class. ........................................................................................................................7

   1.28  Class 4 Release. .......................................................................................................7

   1.29  Committee. ................................................................................................................7

   1.30  Confirmation. .............................................................................................................7

   1.31  Confirmation Date. ....................................................................................................7

   1.32  Confirmation Hearing. ...............................................................................................7

   1.33  Confirmation Order. ..................................................................................................7

   1.34  Creditor. ....................................................................................................................7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1.35   Cure Claims. ...........................................................................7
1.36   D&O Indemnification Motion. ...............................................7
1.37   D&O Indemnification Obligations. .........................................7
1.38   D&O Indemnification Order. ...................................................7
1.39   Dealer Claim Participation Rights. ..........................................7
1.40   Dealer Incentive Program Claims. ...........................................8
1.41   Debtor. ......................................................................................8
1.42   Debtor-SMC Settlement. ..........................................................8
1.43   Debtor-SMC Settlement Consideration. ..................................8
1.44   Designated Contracts. ...............................................................9
1.45   DIP Amendment Motion. ..........................................................9
1.46   DIP Financing Agreement. ........................................................9
1.47   DIP Financing/Cash Collateral Order. ......................................9
1.48   DIP Financing Claims. .............................................................10
1.49   DIP Lender. ..............................................................................10
1.50   Disallowed. ..............................................................................10
1.51   Disclosure Statement. ..............................................................10
1.52   Disputed. ..................................................................................10
1.53   Distribution Record Date. ........................................................10
1.54   Effective Date. .........................................................................10
1.55   Electing Class 4 Claims. ..........................................................10
1.56   Estate. .......................................................................................10
1.57   Estate Assets. ...........................................................................10
1.58   Estimated. .................................................................................10
1.59   Excluded Assets. ......................................................................11
1.60   Excluded Contract. ...................................................................11
1.61   Exculpated Parties. ...................................................................11
1.62   File(d). ......................................................................................12
1.63   Final Order. ..............................................................................12
1.64   General Unsecured Claim. .......................................................12
1.65   GUC Fund. ...............................................................................12
1.66   GUC Fund Claims. ...................................................................12
1.67   GUC Fund Distribution(s). ......................................................13
1.68   Insider. .....................................................................................13
1.69   Interests. ...................................................................................13
1.70   Lemon Laws. ...........................................................................13

1.71    Licenses. ................................................................................................13

1.72    Lien. ......................................................................................................13

1.73    Non-Auto Business Lines. .....................................................................13

1.74    Non-Settling Unsecured Creditors. .......................................................13

1.75    Notice of Potential Designated Contracts. ............................................13

1.76    Other Claim Participation Rights. ..........................................................14

1.77    Other General Unsecured Creditors. ....................................................14

1.78    Other Secured Claims. ..........................................................................14

1.79    Other Settling Creditor(s). .....................................................................14

1.80    Other Settling Creditor Claim(s). ..........................................................14

1.81    Participation Agreement Distributions. ..................................................14

1.82    Participation Party. ................................................................................15

1.83    Parts Repurchase Motion. .....................................................................15

1.84    Parts Repurchase Order. .......................................................................15

1.85    PE Creditor Trust. ..................................................................................15

1.86    PE Creditor Trust Agreement. ...............................................................15

1.87    PE Creditor Trust Assets. ......................................................................15

1.88    PE Creditor Trust Committee. ...............................................................15

1.89    PE Creditor Trust Interest(s). ................................................................16

1.90    PE Creditor Trustee. ..............................................................................16

1.91    Person. ..................................................................................................16

1.92    Petition Date. .........................................................................................16

1.93    Plan. ......................................................................................................16

1.94    Plan Consideration. ...............................................................................16

1.95    Plan Expenses. ......................................................................................16

1.96    Plan Supplement. ..................................................................................17

1.97    Post-Closing Adjustment. ......................................................................17

1.98    Post-Effective-Date Warranty Program. ................................................17

1.99    Pre-Petition Auto Dealer Agreement(s). ...............................................17

1.100    Pre-Petition Loan and Security Agreement. ........................................17

1.101    Priority Non-Tax Claim. ........................................................................17

1.102    Priority Tax Claim. ...............................................................................17

1.103    Proceeds. .............................................................................................17

1.104    Professional. ........................................................................................18

1.105    Professional Fees. ...............................................................................18

1.106    Professional Fees Bar Date. ................................................................18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

| 1.107 | Purchased Assets. | 18 |
| 1.108 | Purchased Businesses. | 18 |
| 1.109 | Purchaser. | 19 |
| 1.110 | Purchaser Assumed Liabilities. | 19 |
| 1.111 | Rejection Claim Bar Date. | 19 |
| 1.112 | Retained Claim(s) and/or Defense(s). | 19 |
| 1.113 | Sale Order. | 19 |
| 1.114 | Sale Transaction. | 19 |
| 1.115 | Schedules. | 19 |
| 1.116 | Secured Claim. | 19 |
| 1.117 | Service and Parts Agreement. | 20 |
| 1.118 | Settlement Election. | 20 |
| 1.119 | Settling Auto Dealer. | 20 |
| 1.120 | Settling Auto Dealer Liquidated Claim(s). | 20 |
| 1.121 | Settling Creditors. | 21 |
| 1.122 | SMAI. | 21 |
| 1.123 | SMAI Payment. | 21 |
| 1.124 | SMC. | 21 |
| 1.125 | SMC Capital Contribution. | 21 |
| 1.126 | SMC Claims. | 21 |
| 1.127 | SMC General Unsecured Claim(s). | 21 |
| 1.128 | SMC Participation Agreements. | 21 |
| 1.129 | SMC Secured Claims. | 22 |
| 1.130 | SMC Secured Inventory Loan Claim. | 22 |
| 1.131 | SMC Secured Revolver Claim. | 22 |
| 1.132 | SMC Setoff Claims. | 22 |
| 1.133 | SMC Settlement Payment. | 22 |
| 1.134 | SMC Subrogation Rights. | 23 |
| 1.135 | South Motors. | 23 |
| 1.136 | South Motors Claim. | 23 |
| 1.137 | Stipulating Creditor. | 23 |
| 1.138 | Stipulating Creditor Claim. | 23 |
| 1.139 | Suzuki Cars. | 23 |
| 1.140 | Suzuki Products. | 23 |
| 1.141 | Suzuki Product Liability. | 23 |
| 1.142 | Trust Beneficiaries. | 23 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1.143      U.S. Trustee. ...........................................................................................................23
1.144      Unsecured Deficiency Claim. ...............................................................................24
1.145      Voting Deadline. ...................................................................................................24
1.146      Warranty Claim. ...................................................................................................24
1.147      Warranty Program. ...............................................................................................24
Article 2 Treatment of Unclassified Claims ......................................................................24
2.1  Unclassified Claims. ...............................................................................................24
2.2  DIP Financing Claims. ...........................................................................................24
2.3  Administrative Claims. ...........................................................................................25
      2.3.1      Administrative Claim Bar Date. ...................................................................25
      2.3.2      Generally. ...................................................................................................25
      2.3.3      Ordinary Course. ........................................................................................26
      2.3.4      ...................................................................................................................26
2.4  Allowed Priority Tax Claims. ................................................................................26
      2.4.1      Federal and State Income Tax Claims ..........................................................27
2.5  Claims for Professional Fees. ................................................................................28
Article 3 Classification of Claims and Interests ................................................................28
3.1  Summary of Classification. ....................................................................................28
3.2  Classes. ....................................................................................................................28
Article 4 Treatment of Claims and Interests .....................................................................29
4.1  Class 1 – Priority Non-Tax Claims ........................................................................29
      4.1.1      Impairment and Voting. ..............................................................................29
      4.1.2      Treatment. ..................................................................................................29
4.2  Class 2A-1 – SMC Secured Revolver Claim. .........................................................30
      4.2.1      Impairment and Voting. ..............................................................................30
      4.2.2      Treatment. ..................................................................................................30
4.3  Class 2A-2 – SMC Secured Inventory Loan Claim. ...............................................31
      4.3.1      Impairment and Voting. ..............................................................................31
      4.3.2      Treatment. ..................................................................................................31
4.4  Class 2B – Other Secured Claims. .........................................................................32
      4.4.1      Impairment and Voting. ..............................................................................32
      4.4.2      Alternative Treatment. ................................................................................32
      4.4.3      Unsecured Deficiency Claim. ......................................................................33
4.5  Class 3 – Settling Auto Dealer Liquidated Claims. ................................................33
      4.5.1      Impairment and Voting. ..............................................................................33
      4.5.2      Treatment. ..................................................................................................33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

4.6 Class 4 – Other General Unsecured Creditor Claims. ...................................................34

    4.6.1      Impairment and Voting. ..............................................................................34

    4.6.2      Treatment of Other General Unsecured Creditor Claims. ........................34

    4.6.3      Settlement Election for Treatment as an Other Settling
    Creditor. ....................................................................................................34

    4.6.4      Treatment of Other Settling Creditor Claims ..........................................36

    4.6.5      Treatment of Claims of Non-Settling Unsecured Creditors ....................37

4.7 Class 5 – Warranty Claims. ..........................................................................................38

    4.7.1      Impairment and Voting. ..............................................................................38

    4.7.2      Treatment. ..................................................................................................38

4.8 Class 6 – South Motors Claim. .....................................................................................38

    4.8.1      Impairment and Voting. ..............................................................................38

    4.8.2      Treatment. ..................................................................................................38

4.9 Class 7 – Interests. ........................................................................................................38

    4.9.1      Impairment and Voting. ..............................................................................38

    4.9.2      Treatment. ..................................................................................................38

    4.10     Nonconsensual Confirmation. .....................................................................38

Article 5 IMPLEMENTATION OF THE PLAN .................................................................39

5.1 Plan Related Transactions. ............................................................................................39

    5.1.1      SMC Capital Contribution ........................................................................39

    5.1.2      Sale Transaction; Transfer of Purchased Assets .....................................39

5.2 SMC Voluntary Subordination. .....................................................................................40

5.3 Corporate Action; Winding Up of Affairs. ...................................................................40

    5.3.1      Dissolution of Debtor ...............................................................................40

    5.3.2      PE Creditor Trust .....................................................................................41

5.4 Source of Funds. ............................................................................................................46

5.5 Deferment of Participation Agreement Distributions. ...................................................46

5.6 Subordination Agreements. ...........................................................................................47

5.7 Agreements with Auto Dealers. ....................................................................................47

5.8 Revesting of Excluded Assets. ......................................................................................47

5.9 Retained Claims and/or Defenses. .................................................................................48

    5.10     Administration of Warranty Claims. ...........................................................48

    5.11     Miscellaneous. .............................................................................................48

    5.11.1    Creditors' Committee. ...............................................................................48

    5.11.2    Records. ......................................................................................................49

    5.11.3    Final Decree. ..............................................................................................49

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Article 6 Provisions governing distributions ................................................................................49

  6.1    Distributions by the Debtor. .................................................................................49

  6.2    Addresses for Delivery of Distributions. ...........................................................49

  6.3    Distributions on Account of Claims Allowed as of the Effective Date. .............50

  6.4    Estimation. ...........................................................................................................50

  6.5    Distributions on Account of Claims Allowed After the Effective Date. ............50

      6.5.1    Distributions on Account of Disputed Claims and Estimated
             Claims. ...................................................................................................50

      6.5.2    No Distributions Pending Allowance. ....................................................50

      6.5.3    Objection Deadline. ...............................................................................51

      6.5.4    Disputed and Estimated Claims Reserve. ..............................................51

      6.5.5    Settling Disputed Claims. ......................................................................51

  6.6    Distributions in Cash. .........................................................................................51

  6.7    Unclaimed Distributions. ....................................................................................51

  6.8    Setoff. ..................................................................................................................52

  6.9    Taxes. ...................................................................................................................52

  6.10    De Minimis Distributions. ...................................................................................52

  6.11    Fractional Distributions. ......................................................................................53

Article 7 EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................................53

  7.1    Assumption/Assignment. ....................................................................................53

  7.2    Rejection. .............................................................................................................53

  7.3    Cure Claims. ........................................................................................................53

  7.4    Effect of Confirmation Order. .............................................................................54

  7.5    Post-Petition Agreements. ...................................................................................54

Article 8 CONDITIONS PRECEDENT ...................................................................................55

  8.1    Conditions to Confirmation. ................................................................................55

  8.2    Conditions to Effectiveness. ................................................................................55

  8.3    Waiver of Conditions. .........................................................................................56

Article 9 EFFECTS OF CONFIRMATION, RELEASES, EXCULPATION
  AND  RELATED PROVISIONS ............................................................................................56

  9.1    Property Revests Free and Clear. ........................................................................56

  9.2    Releases Implemented by the Auto Dealer Related Settlements. ........................57

  9.3    Releases by Members of Class 4 making the Settlement Election. .....................57

  9.4    Release by Debtor of SMC and Related Parties. ................................................57

  9.5    Exculpation. .........................................................................................................58

  9.6    Order in Aid of Plan Provisions. .........................................................................59

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

9.7 Sale Free and Clear Provisions – Effects of No Successor Liability as to
Purchaser. ..........................................................................................................60

Article 10 RETENTION OF JURISDICTION ...........................................................60

Article 11 AMENDMENT AND WITHDRAWAL OF PLAN ....................................62

11.1    Amendment of the Plan. ..............................................................................62

11.2    Revocation or Withdrawal of the Plan. .......................................................63

Article 12 MISCELLANEOUS ...................................................................................63

12.1    Effectuating Documents; Further Transactions; Timing. ...........................63

12.2    Exemption From Transfer Taxes. ................................................................63

12.3    Non-Voting Equity Securities .....................................................................64

12.4    Governing Law. ...........................................................................................64

12.5    Modification of Payment Terms. .................................................................64

12.6    Provisions Enforceable. ..............................................................................64

12.7    Quarterly Fees to the U.S. Trustee. ............................................................64

12.8    Timing of Payment. .....................................................................................64

12.9    Reservation of Rights. .................................................................................65

12.10    Notice of Confirmation. ............................................................................65

12.11    Successors and Assigns. ...........................................................................65

12.12    Notices to Debtor and PE Creditor Trust. ................................................65

12.12.1    Notice to Claim and Interest Holders. .................................67

12.12.2    Post-Effective Date Notices. ...............................................67

12.13    Incorporation by Reference. ......................................................................67

12.14    Computation of Time. ...............................................................................67

12.15    Conflict of Terms. .....................................................................................67

12.16    Severability of Plan Provisions. ...............................................................68

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

American Suzuki Motor Corporation (the "<u>Debtor</u>") proposes the following plan of liquidation under Section 1121(a) of the Bankruptcy Code for the resolution of the Debtor's outstanding Claims and Interests.  All Creditors and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, and events leading up to the contemplated restructuring and for a summary and analysis of the Plan and certain related matters.  ***All holders of Claims against, and Interests in, the Debtor are encouraged to read the Plan, the Disclosure Statement and the related solicitation materials in their entirety before voting to accept or reject the Plan.***

Subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor expressly reserves the right to alter, amend or modify the Plan.

ARTICLE 1

DEFINITIONS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein have the meanings ascribed to them in Article 1 of the Plan.  Any term used in the Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Whenever the context requires, each of the terms defined herein includes the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**1.1    Administrative Claim.**  A Claim for any expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (b) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; (c) all Professional Fees; and (d) all fees payable under 28 U.S.C. § 1930.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

**1.2** **Administrative Claim Bar Date.** The thirtieth (30th) day after the Effective Date, which shall be the last day for all parties to File with the Court any requests for payment or any other means of preserving and obtaining payment of an Administrative Claim to the extent such Claim (i) arose or was incurred between the Petition Date and the Effective Date, and (ii) has not been paid, released, or otherwise settled, excluding all requests for payment of Professional Fee claims, Claims arising under Bankruptcy Code § 503(b)(9) or as otherwise provided under Bankruptcy Code Section 503(b)(1)(D).

**1.3** **Agent.** Any shareholder, director, officer, manager, principal, employee, partner, member, attorney, accountant, advisor, professional, representative or other agent of any person or entity (solely in their respective capacities as such, and not in any other capacity).

**1.4** **Allowed.** With respect to Claims: (a) any Claim, proof of which, request for payment of which, or application for allowance of which, was Filed on or before the Bar Date, Administrative Claim Bar Date, or Professional Fees Bar Date, as applicable, for Claims of such type against the Debtor; (b) any Claim, if no proof of Claim is Filed, which has been or is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent; (c) any Claim that is expressly allowed by the Plan or any order of the Bankruptcy Court approving an agreement entered into between the Debtor and the holder of the Claim; (d) any Claim that has been liquidated and allowed by the Bankruptcy Court in connection with any Auto Dealer Letter Agreement; or (e) an Other Settling Creditor Claim for which a proposed Claim amount is set forth in the Ballot provided to the Creditor and to be allowed pursuant to the Confirmation Order or set forth in a stipulation pursuant to section 4.6.3 of the Plan and to be allowed pursuant to a Bankruptcy Court Order; provided, however, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if (i) no objection to the allowance thereof has been interposed by the Claims Objection Deadline, (ii) an objection to the Claim has been interposed and a Final Order has been entered allowing the Claim, or (iii) the PE Creditor Trust has agreed to settle and allow the Claim, without the need for Bankruptcy Court approval, in accordance with this Plan. The term "Allowed", when used to modify a reference in the Plan to any Claim or Class of Claims means a Claim (or any Claim in any such Class) that is so allowed. The term "Allowed Claim",

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

shall not, for purposes of computing distributions under the Plan, include interest on such claim from and after the Petition Date, other than as expressly provided under the Plan.

**1.5    APA.**  That certain Second Amended and Restated Asset Purchase Agreement dated as of February __, 2013, by and between the Debtor and the Purchaser, together with all exhibits, schedules and attachments thereto, as the same may have been amended, substantially in the form attached hereto as **Exhibit A**.

**1.6    April 1990 MOU.**  That certain memorandum of understanding by and among SMC, the Debtor and Suzuki Canada, Inc., dated April 1, 1990, in connection with product liability lawsuits in the United States and Canada, which is rescinded as between the Debtor and SMC as of the Effective Date.

**1.7    Auto Dealer(s).**  The independent automobile dealerships of the Debtor in the continental United States, which were authorized to sell new Suzuki Cars pursuant to Pre-Petition Auto Dealer Agreements.

**1.8    Auto Dealer Agreements Motion(s)**.  Any and all motions Filed by the Debtor seeking Bankruptcy Court authority to enter into one or more Auto Dealer Letter Agreements including, without limitation, the *Motion for Order (I) Authorizing Debtor to Enter into Service and Parts Agreements and Letter Agreements with 213 Settling Automobile Dealers; (II) Approving Consensual Rejection of Prepetition Agreements and Resolution of Claims and (III) Granting Related Relief*, Filed by the Debtor on December 5, 2012, subject to the Auto Dealer Agreements Order dated December 21, 2012, and the *Motion For Order (I) Authorizing Debtor To Enter Into Service And Parts Agreements And Letter Agreements With Two Settling Automobile Dealers; (II)) Approving Consensual Rejection Of Prepetition Agreements And Resolution Of Claims; And (III) Granting Related Relief,* Filed by the Debtor on January 3, 2013, subject to any Auto Dealer Agreements Order thereon.

**1.9    Auto Dealer Agreements Order(s).**  Any and all orders of the Bankruptcy Court approving an Auto Dealer Agreements Motion including, without limitation, the Auto Dealer Agreements Order dated December 21, 2012, granting the Auto Dealer Agreements Motion Filed on December 5, 2012, and any subsequent orders of the Bankruptcy Court approving any other Auto

Dealer Agreements Motion including, without limitation, any such order approving the Auto Dealer Agreements Motion Filed on January 3, 2013.

**1.10    Auto Dealer Letter Agreements.**  Settlement agreements entered into and to be entered into by the Debtor and the applicable Auto Dealers pursuant to which, *inter alia*, the applicable Auto Dealer (i) agrees to the rejection by the Debtor of the Auto Dealer's Pre-Petition Auto Dealer Agreement with the Debtor; (ii) agrees to a liquidated amount of its rejection and certain other Claims against the Debtor; (iii) is permitted to remain an authorized dealer of new Suzuki Cars to sell off remaining inventory during a defined period for the wind down of sales of new Suzuki Cars, if applicable; and (iv) enters into a Service and Parts Agreement with the Debtor, if so required by the Debtor, which agreement shall be assigned to the Purchaser as of the Effective Date under the Plan.  The Auto Dealer Letter Agreements are subject to Bankruptcy Court approval which approval includes (i) the Auto Dealer Agreements Order dated December 21, 2012, and  (ii) any and all Auto Dealer Agreements Order to be entered on account of (a) the Auto Dealer Agreements Motion Filed on January 3, 2013, and (b) any other Auto Dealer Agreements Motions to be Filed by the Debtor with the Bankruptcy Court.  The Auto Dealer Letter Agreements are further described in Section III.B of the Disclosure Statement, and the general form of Auto Dealer Letter Agreements is attached as an exhibit to the Auto Dealers Agreements Motion Filed on December 5, 2012.  For the avoidance of doubt, nothing in the Plan is intended to, nor shall it, amend or modify the terms and conditions of any Auto Dealer Letter Agreements.

**1.11    Auto Parts/Service Business.**  The Debtor's automotive parts, service, and warranty businesses relating to Suzuki Cars sold in the United States.

**1.12    Auto Sales Business.**  The Debtor's automobile sale operations in relation to Suzuki Cars, excluding the Auto Parts/Service Business.

**1.13    Available Cash.**  All Cash of the Debtor or the PE Creditor Trust, as applicable, other than the Debtor-SMC Settlement Consideration and the GUC Fund.

**1.14    Avoidance Actions.**  All causes of action of the Estate under Sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, whether or not such

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

actions seek an affirmative recovery or are raised as a defense to, or offset against, the allowance of a Claim.

**1.15    Ballot(s).** The ballot(s) upon which holders of claims entitled to vote on the Plan shall cast their vote to accept or reject the Plan.

**1.16    Bankruptcy Code.** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.17    Bankruptcy Court.** The United States Bankruptcy Court for the Central District of California having jurisdiction over the Chapter 11 Case.

**1.18    Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**1.19    Bar Date.** The date or dates fixed by the Bankruptcy Court by which all Persons (except holders of Claims that appear in the Schedules and are **not** scheduled as disputed, contingent or unliquidated who do not dispute the amount or priority set forth in the Schedules) asserting a pre-petition Claim against the Debtor  must File a proof of claim or be forever barred from asserting a pre-petition Claim against the Debtor or its property, voting on the Plan, and sharing in distributions under the Plan.

**1.20    Business Day.** Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.21    Cash.** Legal tender of the United States of America and cash equivalents, including, but not limited to, bank deposits, checks or other similar items.

**1.22    Causes of Action and Defenses.** Any and all claims, causes of action, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guarantees, suits, obligations, liabilities, accounts, offsets, recoupments, rights of subordination or subrogation, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS    AT  LAW
LOS  ANGELES ,  CALIFORNIA

Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. "Causes of Action and Defenses" shall include, but not be limited to: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to Sections 362 of the Bankruptcy Code, (d) all Avoidance Actions; (e) any state law fraudulent transfer claims; and (f) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code.

**1.23    Chapter 11 Case.**  The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor-in-possession pending before the Bankruptcy Court.

**1.24    Claim.**  A claim as defined in Section 101(5) of the Bankruptcy Code, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, arising at any time before the Effective Date; or (b) any right to an equitable remedy arising at any time before the Effective Date for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.25    Claim Objection Deadline.**  The last day by which the PE Creditor Trust may File objections to Claims, which day shall be the later of (a) 270 days after the Effective Date, (b) 75 days after the filing of a proof of claim for, or request for payment of, such Claim, or (c) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline by any party shall automatically extend the Claims Objection Deadline.  In the event that such motion to extend the Claims Objection Deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, the Claims Objection Deadline shall be the later of the then current Claims Objection Deadline (as previously extended, if applicable) or 30 days after entry of a Final Order denying the motion to extend the Claims Objection Deadline.

**1.26    Claims/Solicitation Agent.**  Rust Consulting/Omni Bankruptcy.

**1.27   Class.**  A category of holders of Claims or Interests which are substantially similar in nature to the Claims or Interests of other holders placed in such category, as designated in Article 3 of this Plan.

**1.28   Class 4 Release.**  Has the meaning ascribed to this term in Section 4.6.3 of the Plan.

**1.29   Committee.**  The Official Committee of Unsecured Creditors, appointed by the U.S. Trustee in the Chapter 11 Case in accordance with Section 1102(a)(1) of the Bankruptcy Code, as it may be reconstituted from time to time.

**1.30   Confirmation.**  Entry of the Confirmation Order by the Bankruptcy Court.

**1.31   Confirmation Date.**  The date on which the Bankruptcy Court enters the Confirmation Order.

**1.32   Confirmation Hearing.**  The hearing or hearings to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to time.

**1.33   Confirmation Order.**  The order of the Bankruptcy Court confirming the Plan.

**1.34   Creditor.**  Has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**1.35   Cure Claims.**  Any monetary amounts payable to the non-debtor party to any executory contract or unexpired lease, including any Designated Contract, pursuant to Section 365(b)(1) of the Bankruptcy Code, as a condition to the assumption of such contract or lease.

**1.36   D&O Indemnification Motion.**  The *Emergency Motion of Debtor for Interim and Final Orders Authorizing the Debtor to Honor All Obligations Arising Under Indemnity Agreements with Its Directors and Proposed Restructuring Officer* Filed by the Debtor on November 5, 2012.

**1.37   D&O Indemnification Obligations.**  Any and all obligations of the Debtor to indemnify its directors and Chief Restructuring Officer pursuant to the "Indemnity Agreements", as defined in the D&O Indemnification Motion.

**1.38   D&O Indemnification Order.**  The order of the Bankruptcy Court entered on December 11, 2012 [Docket No. 284] granting on a final basis the D&O Indemnification Motion.

**1.39   Dealer Claim Participation Rights.**  Any and all rights of the Participation Party to participate, on a junior basis, in any distribution(s) to be made under the Plan to Settling Auto

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

Dealers on account of their Allowed Class 3 Claims pursuant to the applicable SMC Participation

Agreement. Settling Auto Dealer Liquidated Claims are subject to the Dealer Claim Participation

Rights.

**1.40    Dealer Incentive Program Claims.**  Any and all Claims of Auto Dealers relating to

unpaid incentive payments, holdback payments, warranty reimbursements or other similar payments

earned by Dealer in the ordinary course of business that are the subject of the *Emergency Motion for*

*an Order Authorizing the Debtor to Honor Certain Prepetition Obligations for the Benefit of Their*

*Dealers and Other Customers and to Otherwise Continue Customer Programs and Practices*

*Including Warranty Obligations in the Ordinary Course* filed by the Debtor in the Chapter 11 Case

and the Court's order granting said motion on November 7, 2012.

**1.41    Debtor.** American Suzuki Motor Corporation, the debtor and debtor-in-possession in

the Chapter 11 Case.

**1.42    Debtor-SMC Settlement.**  The settlement, release and discharge by the Debtor and

the Estate, of SMC and its successors, assigns, subsidiaries and affiliates, and each of the foregoing

party's respective current and former Agents, from any and all claims, obligations, rights, suits,

damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen,

existing or hereafter arising, arising prior to the Effective Date including, without limitation, any

claims under any contract, agreement or memorandum of understanding between the Debtor and

SMC including the April 1990 MOU, in consideration for (i) the payment by SMC of the Debtor-

SMC Settlement Consideration which shall be used to fund payments to Non-Settling Unsecured

Creditors, (ii) the unconditional guarantee by SMC of payment in full of the Allowed amounts of

Class 3 Claims and Electing Class 4 Claims pursuant to Sections 4.5.2 and 4.6.4 of the Plan, and

(iii) the assumption by the Purchaser under the APA of the following additional liabilities: (1) the

D&O Indemnification Obligations, but excluding the Estate's obligation to establish a D&O

indemnification reserve, and (2) pre-petition and post-petition federal and state income tax Claims

against the Estate.  The Debtor-SMC Settlement has been approved by the Committee.

**1.43    Debtor-SMC Settlement Consideration.**  $3,000,000 in Cash to be transferred by

SMC to the Debtor on the Effective Date for the sole purpose of funding the GUC Fund in

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

consideration of the Debtor-SMC Settlement.  Any and all of SMC's Liens against the Debtor-SMC Settlement Consideration shall be deemed released and relinquished by SMC as of the Effective Date, and the Debtor-SMC Settlement Consideration in its entirety shall be transferred on the Effective Date to the PE Creditor Trust.  Notwithstanding any other provision herein, any amount of the Debtor-SMC Settlement Consideration that has not been distributed by the PE Creditor Trustee in order to pay or reserve for claims and Plan Expenses pursuant to the Plan and PE Creditor Trust Agreement shall be remitted to SMC on account of the SMC Secured Claims.

**1.44    Designated Contracts.**  Those contracts and leases set forth on Exhibit B to the Plan Supplement, as such Exhibit B to the Plan Supplement may be amended from time to time prior to the Effective Date.

**1.45    DIP Amendment Motion.**  The *Emergency Motion for Interim and Final Orders Authorizing and Approving Amendment No. 1 to the Debtor's Existing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(c)(2), 364(c)(3) and 364(d)(1)*, Filed by the Debtor on December 17, 2012.

**1.46    DIP Financing Agreement.**  That certain DIP Credit Debtor-in-Possession Loan and Security Agreement dated as of November 5, 2012 by and between the Debtor and the DIP Lender, that certain Amendment No. 1 to Debtor-in-Possession Loan and Security Agreement, and any and all documents and instruments relating to the foregoing agreements, as the same may have been amended, pursuant to which the DIP Lender has agreed to provide debtor-in-possession financing and other financial accommodations to the Debtor in the Chapter 11 Case.

**1.47    DIP Financing/Cash Collateral Order.**  The interim order entered by the Bankruptcy Court on November 7, 2012 approving on an interim basis the Debtor's use of cash collateral and debtor-in-possession financing under the DIP Financing Agreement, pursuant to Sections 363 and 364 of the Bankruptcy Code; the final order of the Bankruptcy Court entered on December 10, 2012 approving such relief on a final basis; the Bankruptcy Court's interim order entered on December 21, 2012 granting the DIP Amendment Motion on an interim basis; and the final order of the Bankruptcy Court approving the DIP Amendment Motion on a final basis.

1.48    **DIP Financing Claims.**  Any Secured Claims and/or Administrative Claims of the

DIP Lender against the Debtor under or evidenced by the DIP Financing/Cash Collateral Order and

the DIP Financing Agreement (including the DIP Financing/Cash Collateral Order).

1.49    **DIP Lender.**  SMC, as lender under the DIP Financing Agreement.

1.50    **Disallowed.**  With respect to a Claim, a Final Order has been entered disallowing the

Claim.

1.51    **Disclosure Statement.**  The disclosure statement relating to the Plan including,

without limitation, all exhibits and schedules to such disclosure statement, in the form approved by

the Bankruptcy Court under Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

1.52    **Disputed.**  With respect to Claims, means any Claim that is not an Allowed Claim.

The term "Disputed," when used to modify a reference in the Plan to any Claim or Class of Claims,

means a Claim (or any Claim in any such Class) that is so disputed.

1.53    **Distribution Record Date.**  The date for determining which holders of Allowed

Claims are eligible to receive distributions pursuant to the Plan, which shall be the Confirmation

Date or such other date as designated in the Confirmation Order.

1.54    **Effective Date.**  The first Business Day immediately following the first day upon

which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in

accordance with the Plan.

1.55    **Electing Class 4 Claims.**  Class 4 Claims with respect to which the applicable holder

has made the Settlement Election.

1.56    **Estate.**  The estate of the Debtor created in its Chapter 11 Case in accordance with

Section 541 of the Bankruptcy Code or otherwise.

1.57    **Estate Assets.**  All of the property of the Estate under Section 541 of the Bankruptcy

Code.

1.58    **Estimated.**  With respect to Claims, means any Claim that has been estimated by the

Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, or by agreement of the Debtor

and the holder of such Claim as approved by the Bankruptcy Court.  The term "Estimated," when

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

1  used to modify a reference in the Plan to any Claim or Class of Claims, means a Claim (or any

2  Claim in any such Class) that is so estimated.

3      **1.59    Excluded Assets.**  The Estate Assets that are not Purchased Assets and that

4  consequently shall not be assigned or transferred to the Purchaser under the Plan, including (i) all

5  assets or properties, whether tangible or intangible, real or personal, exclusively arising out of,

6  relating to, or used in connection with the operation of the Debtor's Auto Sales Business (but not the

7  Auto Parts/Service Business), including, without limitation, the Debtor's automobile inventory, (ii)

8  the Cash held by the Debtor on the Effective Date (including the Plan Consideration and the Debtor-

9  SMC Settlement Consideration), (iii) any depository, checking or other accounts of the Debtor on

10 the Effective Date, (iv) Excluded Contracts and all contracts and leases that are not Designated

11 Contracts and any tangible personal property, related warranties, security, deposits and other credits

12 or payments due to the Debtor that are the subject of such contracts, (v) all Causes of Action and

13 Defenses exclusively arising out of, relating to, or reasonably necessary to enforce or enjoy the

14 benefits of contracts and leases that are either not Designated Contracts or are Excluded Contracts;

15 (vi) all other assets (including real property, inventory, facilities and equipment) that have been

16 determined by the Purchaser not to be necessary or beneficial to the continued operation of the

17 Purchased Businesses, (vii) the Estate's Avoidance Actions that are exclusively arising out of or

18 related to the Excluded Assets and all other claims and causes of action that have not been

19 designated for assignment to the Purchaser, (viii) any proceeds of any of the foregoing, (ix) books

20 and records, (x) business permits relating to the foregoing assets, and other assets and materials more

21 specifically described in the APA.

22      **1.60    Excluded Contract.**  Any contract or lease listed on the Notice of Potential

23 Designated Contracts that is not a Designated Contract.

24      **1.61    Exculpated Parties.**  The Debtor, the PE Creditor Trustee, the PE Creditor Trust

25 Committee, SMC, the Committee, the Purchaser, the Participation Party, and their respective

26 successors, assigns, subsidiaries and affiliates, and each of the foregoing entity's current and former

27 Agents.

28

**1.62    File(d).**  File or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

**1.63    Final Order.**  An order or judgment of the Bankruptcy Court that has been entered upon the docket in the Chapter 11 Case and: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided that, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be Filed with respect to such order or judgment shall not cause such order or judgment not to be a "Final Order".

**1.64    General Unsecured Claim.**  Any Claim against the Debtor that is *not* (a) a DIP Financing Claim, (b) an Administrative Claim, (c) a Priority Tax Claim, (d) a Priority Non-Tax Claim, or (e) a Secured Claim.  General Unsecured Claims are either Settling Auto Dealer Liquidated Claims, Other General Unsecured Creditor Claims, Warranty Claims or the South Motors Claim.

**1.65    GUC Fund.**  An account of the PE Creditor Trust containing the Debtor-SMC Settlement Consideration, out of which GUC Fund Distributions shall be made to holders of Allowed GUC Fund Claims pursuant to Section 4.6.5 of the Plan.  Notwithstanding any other provision herein, if and only if there are any excess funds in the GUC Fund after the payment of, or reserve for, twenty percent (20%) of the Allowed amount of all Allowed GUC Fund Claims and the reserve for twenty percent (20%) of all Disputed GUC Fund Claims, without any post-petition interest, pursuant to Section 4.6.5 of the Plan, then the PE Creditor Trust may use all such excess funds for any purpose(s) consistent with the Plan, including for the payment of Plan Expenses.

**1.66    GUC Fund Claims.**  The General Unsecured Claims of Non-Settling Unsecured Creditors.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

**1.67    GUC Fund Distribution(s).**  For a particular holder of an Allowed GUC Fund Claim, its fractional share of the GUC Fund, based on the fraction of (x) the amount of the holder's Allowed GUC Fund Claim as the numerator, and (y) the aggregate sum of all Allowed GUC Fund Claims as the denominator, after all GUC Fund Claims have been Allowed or Disallowed or Estimated (to the extent GUC Fund Claims have been Estimated for Plan distribution purposes); provided, however, in no event shall any such holder receive GUC Fund Distribution(s) totaling more than twenty percent (20%) of the Allowed amount of its Allowed GUC Fund Claim.

**1.68    Insider.**  Has the meaning set forth in Section 101(31) of the Bankruptcy Code.

**1.69    Interests.**  An equity security of the Debtor within the meaning of Section 101(16) of the Bankruptcy Code, including the common stock of the Debtor held by SMC.

**1.70    Lemon Laws.**  The Magnuson-Moss Warranty Act, any similar state laws, as amended, and any rules or regulations promulgated pursuant thereto, as amended.

**1.71    Licenses.**  Any and all business, operational and/or other licenses, permits, registrations, approvals, authorizations and/or operating rights issued or granted by any governmental unit having jurisdiction over the Purchased Assets and/or the Purchased Businesses.

**1.72    Lien.**  A lien as defined in Section 101(37) of the Bankruptcy Code, but not including a lien to the extent that it has been avoided in accordance with Sections 506(d), 510, 544, 545, 546, 547, 548, 553, or 549 of the Bankruptcy Code.

**1.73    Non-Auto Business Lines.**  The Debtor's motorcycle, all-terrain vehicle (ATV), marine and other non-automotive business lines.

**1.74    Non-Settling Unsecured Creditors.**  Other General Unsecured Creditors (excluding SMC) that do not make the Settlement Election.

**1.75    Notice of Potential Designated Contracts.**  A notice to be Filed by the Debtor containing the following information: (a) an accurate and complete list of each contract and lease to which the Debtor is a party or by which the Debtor is bound, excluding a contract or lease that is related exclusively to the Auto Sales Business; (b) the date of, and the parties to, each such contract and lease; (c) an accurate and complete list of all Cure Claims, if any, that the Debtor reasonably believes are arising under each such contract and lease; and (d) the deadline for counterparties to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

object to the proposed assumption, assignment and sale of such contracts and leases and to the proposed Cure Claims.  The Notice of Potential Designated Contracts shall be Filed and served on affected counterparties to the subject contracts and leases by such date(s) as ordered by the Bankruptcy Court and may be amended from time to time prior to the Effective Date.

**1.76    Other Claim Participation Rights.**  Any and all rights of the Participation Party to participate, on a junior basis, in any distribution(s) to be made under the Plan to a Stipulating Creditor on account of their Stipulating Creditor Claim pursuant to an applicable SMC Participation Agreement.

**1.77    Other General Unsecured Creditors.**  The holders of general, non-priority, unsecured claims against the Debtor other than Settling Auto Dealers, holders of Warranty Claims and South Motors.  For the avoidance of doubt, Other General Unsecured Creditors include SMC with respect to the SMC General Unsecured Claims.

**1.78    Other Secured Claims.**  Secured Claims other than the SMC Secured Claims.

**1.79    Other Settling Creditor(s).**  A holder of an Other General Unsecured Creditor Claim - other than SMC with respect to the SMC General Unsecured Claim -  that (i) signs and submits its Ballot to the Debtor on or before the Voting Deadline, if applicable; (ii) reaches an agreement with the Debtor as to the amount of its Other Settling Creditor Claim, by either (a) signifying that it agrees to and accepts the amount of its Other Settling Creditor Claim against the Debtor as set forth on the applicable Ballot, or (b) stipulating to the amount of its Other Settling Creditor Claim, which Claim amount will be Allowed pursuant to a Bankruptcy Court Order; and (iii) grants the Class 4 Release pursuant to Section 4.6.3.  A Stipulating Creditor shall constitute an Other Settling Creditor.

**1.80    Other Settling Creditor Claim(s).**  As to a particular Other Settling Creditor, the aggregate amount of its General Unsecured Creditor Claim(s) against the Debtor, as set forth in either (i) the Ballot to be provided to the subject Creditor, or (ii) a stipulation with the Debtor, and as to be Allowed pursuant to a Bankruptcy Court Order.

**1.81    Participation Agreement Distributions.**  Distributions of Cash to be made to or for the benefit of the Participation Party under the Plan on account of the Participation Party's rights to

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

receive distributions with respect to applicable Allowed Class 3 Claims and Allowed Class 4 Claims pursuant to the SMC Participation Agreements.

**1.82    Participation Party.**  SMC or its designee entitled to receive certain distributions under the Plan pursuant to the SMC Participation Agreements.  To the extent the Plan refers to a "holder" of an Allowed Class 3 Claim or an Allowed Class 4 Claim, such reference shall be deemed to include the Participation Party to the extent the SMC Participation Agreements entitle the Participation Party to receive a distribution with respect to an Allowed Class 3 Claim or an Allowed Class 4 Claim.

**1.83    Parts Repurchase Motion.**  The *Motion for Order Pursuant to Sections 105, 363 and 1108 of the Bankruptcy Code Authorizing Debtor to Implement Parts Repurchase Program* Filed by the Debtor on January 7, 2013.

**1.84    Parts Repurchase Order.**  The order of the Bankruptcy Court granting the Parts Repurchase Motion entered on January 28, 2013.

**1.85    PE Creditor Trust.**  That certain liquidating trust that shall be formed pursuant to the Plan, the Confirmation Order, and the PE Creditor Trust Agreement, and created for Creditors entitled to receive distributions under the Plan.

**1.86    PE Creditor Trust Agreement.**  The liquidating trust agreement governing the PE Creditor Trust that shall be filed as part of the Plan Supplement prior to the Confirmation Hearing.

**1.87    PE Creditor Trust Assets.**  All Excluded Assets and any and all proceeds thereof on and after the Effective Date.  For the avoidance of doubt, SMC shall retain its Liens on the PE Creditor Trust Assets, pursuant to the Pre-Petition Loan and Security Agreement, until SMC's Secured Claims have been satisfied in full or such assets have been disposed of by the PE Creditor Trust; provided that to the extent such assets are disposed of by the PE Creditor Trust prior to SMC's Secured Claims having been satisfied in full, SMC's Liens shall attach to the proceeds of such assets with the same validity, extent and priority as existed prior to the disposition of such assets.

**1.88    PE Creditor Trust Committee.**  The advisory committee with Michael M. Ozawa and R. Todd Neilson, the independent members of the Debtor's Board of Directors, as its initial

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

1    members as of the Effective Date, which committee shall be established on the Effective Date and

2    shall have the functions described in Section 5.3.2 of the Plan.

3        **1.89    PE Creditor Trust Interest(s).**  A beneficial interest in the PE Creditor Trust

4    entitling the holder thereof to the applicable treatment provided for under the Plan.  All PE Creditor

5    Trust Interests shall be governed by the terms of this Plan and the PE Creditor Trust Agreement,

6    shall not be evidenced by any type of certificate or other instrument, and shall not be transferable,

7    except by will, intestate succession, or operation of law.

8        **1.90    PE Creditor Trustee.**  M. Freddie Reiss, who also serves as the Chief Restructuring

9    Officer of the Debtor, or any successor appointed to fill the role of the PE Creditor Trustee of the PE

10    Creditor Trust in accordance with the Plan and the PE Creditor Trust Agreement.  A notice setting

11    forth the proposed compensation of and other disclosures regarding the PE Creditor Trustee shall be

12    Filed with the Court as a Plan Supplement prior to the Confirmation Hearing.

13        **1.91    Person.**  Any individual, corporation, partnership, joint venture, association, joint-

14    stock company, trust, unincorporated association or organization, or other "person" as defined in

15    Bankruptcy Code Section 101, as well as any governmental agency, governmental unit or associated

16    political subdivision.

17        **1.92    Petition Date.**  November 5, 2012, the date when the Debtor commenced its Chapter

18    11 Case.

19        **1.93    Plan.**  This amended Chapter 11 plan of liquidation, either in its present form or as it

20    may be further amended, supplemented or modified from time to time, including all of its annexed

21    exhibits and schedules and the Plan Supplement.

22        **1.94    Plan Consideration.**  (i) The SMAI Payment, plus (ii) the SMC Settlement Payment.

23        **1.95    Plan Expenses.**  All actual, necessary and reasonable costs and expenses to be

24    incurred after the Effective Date in connection with the administration of the Plan at the direction of

25    the PE Creditor Trustee, including, without limitation, the reasonable fees and expenses of the PE

26    Creditor Trustee, the PE Creditor Trust Committee and any professionals and agents retained by the

27    PE Creditor Trustee and the PE Creditor Trust Committee, and any quarterly fees payable to the U.S.

28    Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

**1.96    Plan Supplement.**  A compilation of documents and forms of documents, schedules and exhibits to the Plan, including any exhibits to the Plan or modifications thereto that are not Filed contemporaneously with the Plan.  The Debtor shall File the Plan Supplement no later than ten days prior to the Voting Deadline, unless otherwise provided herein.

**1.97    Post-Closing Adjustment.**  An adjustment to the $65,000,000 SMAI Payment after the closing of the Sale Transaction pursuant to Section 2.3 of the APA, under which (a) the SMAI Payment shall be increased and an additional payment remitted to the PE Creditor Trust if Seller's Closing Date Net Asset Book Value (as defined in the APA) exceeds $68,250,000, and (b) an amount of the SMAI Payment received by the PE Creditor Trust shall be remitted to the Purchaser in the event that the Seller's Closing Date Net Asset Book Value shall be less than $61,750,000, each such payment or remittance being in the amount by which the Seller's Closing Date Net Asset Book Value exceeds or is less than the $65 million SMAI Payment.

**1.98    Post-Effective-Date Warranty Program.**  The Debtor's Warranty Program, to be effective and administered by the Purchaser as of the Effective Date.

**1.99    Pre-Petition Auto Dealer Agreement(s).**  Automotive dealership agreements between the Debtor and Auto Dealers that provide for the Auto Dealer to sell new Suzuki Cars, together with any and all ancillary contracts and documents, entered into prior to the Petition Date.

**1.100    Pre-Petition Loan and Security Agreement.**  That certain Loan and Security Agreement dated July 27, 2012 between the Debtor and SMC, pursuant to which SMC provided the Debtor with working capital financing and other financial accommodations, together with all related agreements, documents and instruments.

**1.101    Priority Non-Tax Claim.**  A Claim (or portion of such Claim) against the Debtor entitled to priority under Sections 507(a)(3), (a)(4), (a)(5) or (a)(7) of the Bankruptcy Code.

**1.102    Priority Tax Claim.**  A Claim (or portion of such Claim) of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**1.103    Proceeds.**  All Cash, interest, profits, dividends, proceeds, products, and rents earned, accrued, collected, derived, received or recovered on account of the liquidation, sale, transfer, enforcement or other disposition of property.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

**1.104   Professional.**  Each Person: (a) employed in accordance with an order of the Bankruptcy Court under Sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services under Sections 327, 328, 329, 330, 331, 363 and 504 of the Bankruptcy Code, or (b) for which compensation or reimbursement is requested under Section 503(b)(2)-(b)(6) of the Bankruptcy Code.

**1.105   Professional Fees.**  A Claim by a Professional for compensation for services rendered and reimbursement for expenses submitted in accordance with Sections 330, 331, or 503(b) of the Bankruptcy Code for fees and expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.106   Professional Fees Bar Date.**  The date fixed under the Confirmation Order, which is expected to be approximately forty-five (45) days following the Effective Date, by which any Professional seeking an award of Professional Fees must have Filed an application with the Bankruptcy Court under Section 330(a) of the Bankruptcy Code, or be forever barred from an award of Professional Fees against the Debtor and/or sharing in any distribution under the Plan.

**1.107   Purchased Assets.**  All of the Debtor's assets (whether tangible or intangible, real or personal property) other than the Excluded Assets that shall be assigned or transferred to the Purchaser under the Plan, including, without limitation, all property, rights and interests comprising and/or relating to the Purchased Businesses, which includes, in relation to the Purchased Businesses, all inventory, parts, equipment, accounts receivable, Designated Contracts, other contractual rights, deposits, Licenses and other permits, securities and ownership interests issued by Suzuki Manufacturing of America Corporation, prepaid expenses, books and records, insurance policies, claims and causes of action (including Avoidance Actions related to the Purchased Assets, which Avoidance Actions shall not be pursued by the Purchaser or otherwise), goodwill and other intangible property, all intellectual property rights, and all other property and assets pertaining to or used or useful in the conduct of the Purchased Businesses as more specifically described in the APA.

**1.108   Purchased Businesses.**  The Non-Auto Business Lines and the Auto Parts/Service Business.

**1.109   Purchaser.**  Suzuki Motor of America, Inc. f/k/a NounCo, Inc., a California corporation wholly owned by SMC, formed on or about October 31, 2012 for the purpose of entering into, and consummating the transactions contemplated by, the APA.  Suzuki Motor of America, Inc. has not engaged in any business unrelated to the APA.

**1.110   Purchaser Assumed Liabilities.**  The liabilities that Purchaser will assume pursuant to the APA.

**1.111   Rejection Claim Bar Date.**  The date fixed under the Confirmation Order, which is expected to be approximately thirty (30) days following the Effective Date, by which any Person asserting a Claim for damages arising from the rejection of an executory contract or unexpired lease must have Filed a proof of Claim with the Bankruptcy Court under Section 502(g) of the Bankruptcy Code, or be forever barred from asserting such Claim against the Debtor and sharing in any distribution under the Plan, unless another order of the Bankruptcy Court provides for an earlier date as to any particular executory contract or unexpired lease.

**1.112   Retained Claim(s) and/or Defense(s).**  All Causes of Action and Defenses held by the Debtor or the Estate of the Debtor against any Person, but excluding any Purchased Assets.

**1.113   Sale Order.**  Has the meaning ascribed to this term in the APA, as modified to reflect the Sale Transaction under the Plan.

**1.114   Sale Transaction.**  The sale and transfer of the Purchased Assets, and related assumption by the Debtor (if applicable) and assignment and sale of the Designated Contracts, to the Purchaser, to be implemented under the Plan, free and clear of all Claims, Liens, charges and other encumbrances against the Purchased Assets, pursuant to Sections 363, 365 and 1123(a)(5) of the Bankruptcy Code, unless otherwise expressly provided by the APA.

**1.115   Schedules.**  The schedules of assets and liabilities, the list of holders of Interests, and the statements of financial affairs Filed by the Debtor in the Chapter 11 Case, under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**1.116   Secured Claim.**  A Claim against the Debtor secured by a valid, perfected and enforceable Lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

1   the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the

2   Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy

3   Rule 3012, of: (i) the interest of the holder of such Claim in the property of the Debtor securing such

4   Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

5        **1.117  Service and Parts Agreement.**  An agreement between the Debtor and a Settling

6   Auto Dealer, in a form acceptable to the Debtor, pursuant to which the applicable Auto Dealer has

7   been authorized to continue providing authorized warranty and non-warranty service, as well as sell

8   genuine Suzuki brand parts for Suzuki Cars, for a defined period of years after the Effective Date, as

9   such agreement has been approved by the Bankruptcy Court pursuant to an Auto Dealer Agreements

10  Order.  A form of Service and Parts Agreement is attached as an exhibit to the Auto Dealer

11  Agreements Motion Filed by the Debtor on December 5, 2012.  For the avoidance of doubt, nothing

12  in the Plan is intended to, nor shall it, amend or modify the terms and conditions of any Service and

13  Parts Agreement.

14       **1.118  Settlement Election.**  The election by a holder of an Other General Unsecured

15  Creditor Claim - other than the SMC General Unsecured Claim - to provide the Class 4 Release and

16  agree to and accept the amount of its Claim as set forth on its Ballot or in a stipulation with the

17  Debtor pursuant to Section 4.6.3 of the Plan.

18       **1.119  Settling Auto Dealer.**  An Auto Dealer that (i) has entered or enters into an Auto

19  Dealer Letter Agreement, (ii) has entered or enters into a Service and Parts Agreement, if applicable,

20  and (iii) has entered into or enters into a SMC Participation Agreement, if applicable.  To qualify as

21  a Settling Auto Dealer, an Auto Dealer must comply with all of the foregoing requirements

22  applicable to such Auto Dealer.

23       **1.120  Settling Auto Dealer Liquidated Claim(s).**  As to a particular Settling Auto Dealer,

24  (i) its General Unsecured Claim against the Debtor arising from or relating to the Debtor's rejection

25  of the parties' Pre-Petition Auto Dealer Agreement pursuant to Section 365 of the Bankruptcy Code,

26  and (ii) any other unpaid General Unsecured Claims (excluding Dealer Incentive Program Claims)

27  as established in the amount set forth in the applicable Auto Dealer Letter Agreement, as all such

28  Claims have been Allowed pursuant to an Auto Dealer Agreements Order.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

**1.121    Settling Creditors.**  Settling Auto Dealers and/or Other Settling Creditors.

**1.122    SMAI.**  Suzuki Motor of America, Inc., the Purchaser of the Purchased Assets.

**1.123    SMAI Payment.**  Payment in Cash of $65,000,000 (subject to the Post-Closing Adjustment), plus an amount equal to the cost of inventory repurchased by the Debtor in an amount not to exceed $4 million pursuant to the Parts Repurchase Motion and Parts Repurchase Order, which shall be paid by the Purchaser to the Debtor on the Effective Date.

**1.124    SMC.**  Suzuki Motor Corporation, the holder of 100% Interests in the Debtor.

**1.125    SMC Capital Contribution.**  A contribution of certain SMC General Unsecured Claims, the SMC Secured Revolver Claim, and the SMC Secured Inventory Loan Claim (in amounts to be determined and allocated among such Claims in SMC's discretion, provided that such contribution shall first be applied against all of the SMC General Unsecured Claims) to the capital of the Debtor, which shall be made by SMC prior to or on the Effective Date.  Specifically, the SMC Capital Contribution shall occur or be deemed to occur prior to the closing of the Sale Transaction and the creation of the PE Creditor Trust. The SMC Capital Contribution shall not alter the terms of the subordination provisions set forth in Sections 4.2.2 and 4.3.2 of the Plan.

**1.126    SMC Claims.**  The SMC Secured Claims and the SMC General Unsecured Claims, but excluding Claims arising from the SMC Subrogation Rights and SMC's Dealer Claim Participation Rights.

**1.127    SMC General Unsecured Claim(s).**  Any and all General Unsecured Claims of SMC against the Debtor including any SMC Unsecured Deficiency Claims but excluding Claims arising from SMC Subrogation Rights, SMC's Dealer Claim Participation Rights and SMC's Other Claim Participation Rights.

**1.128    SMC Participation Agreements.**  Agreements entered into by (a) SMC and Auto Dealers, or (b) SMC and Stipulating Creditors, pursuant to which, *inter alia*, (i) the applicable Auto Dealer or Stipulating Creditor provided a general release covering any and all claims and causes of action, whether known or unknown, against (a) SMC and its subsidiaries and affiliates and (b) their respective former and current Agents, but excluding the Debtor and the assertion of any Settling Auto Dealer Liquidated Claims or Stipulating Creditor Claim against the Debtor, effective upon the

parties' entry into the SMC Participation Agreement; (ii) in consideration for the foregoing release, SMC or its designee advanced Cash to the applicable Auto Dealer or Stipulating Creditor based upon a certain percentage of its Settling Auto Dealer Liquidated Claim or Stipulating Creditor Claim against the Debtor and receive the Dealer Claim Participation Rights or Other Claim Participation Rights, as applicable; and (iii) under any plan for the Debtor confirmed in the Chapter 11 Case, SMC shall subordinate such amount(s) of its SMC Secured Claims to ensure the 100% payment (without interest) of Allowed Settling Auto Dealer Liquidated Claims or Stipulating Creditor Claims.  A form of SMC Participation Agreement is attached as an exhibit to the Auto Dealer Agreements Motion. For the avoidance of doubt, nothing in the Plan is intended to, nor shall it, amend or modify the terms and conditions of any SMC Participation Agreements, except as otherwise provided in Section 5.5 of the Plan with respect to Participation Agreement Distributions).

**1.129   SMC Secured Claims.**  The SMC Secured Revolver Claim, the SMC Secured Inventory Loan Claim and the SMC Setoff Claims.

**1.130   SMC Secured Inventory Loan Claim.**  Any and all of the Secured Claims of SMC against the Debtor arising from or relating to pre-petition extensions of credit made by SMC to the Debtor for the purchase of inventory under the Pre-Petition Loan and Security Agreement.

**1.131   SMC Secured Revolver Claim.**  Any and all of the Secured Claims of SMC against the Debtor arising from or relating to pre-petition revolver loan advances made by SMC to the Debtor under the Pre-Petition Loan and Security Agreement.

**1.132   SMC Setoff Claims.**  Any and all rights of SMC to setoff or recoup against any Causes of Action and Defenses that may be asserted by the Debtor against SMC of any nature whatsoever including, without limitation, claims under the April 1990 MOU, any Claim that SMC has or may have against the Debtor including, without limitation, any SMC Claim.

**1.133   SMC Settlement Payment.**  $30,000,000 in Cash to be transferred by SMC to the Debtor on the Effective Date for the purpose of funding the PE Creditor Trust for payment by it of Allowed Class 3 Claims and Allowed Electing Class 4 Claims.  The SMC Settlement Payment shall be transferred on the Effective Date to the PE Creditor Trust for the exclusive benefit of the Estate. Notwithstanding any other provision herein, any amount of the SMC Settlement Payment that has

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

not been distributed by the PE Creditor Trustee in order to pay or reserve for claims and Plan

Expenses pursuant to the Plan and PE Creditor Trust Agreement shall be remitted to SMC on

account of the SMC Secured Claims.

**1.134   SMC Subrogation Rights.**  Any and all rights of SMC to receive Plan distributions

on account of the subordination of the SMC Secured Claims to the payment of Allowed Class 3

Claims and Allowed Other Settling Creditor Claims, to the extent of such payment, pursuant to the

subrogation provisions set forth in Sections 4.2.2. and 4.3.2 of the Plan.

**1.135   South Motors.**  South Motors Suzuki, Inc.

**1.136   South Motors Claim.**  The General Unsecured Claim of South Motors.

**1.137   Stipulating Creditor.**  A Class 4 Creditor that has entered into (i) an agreement with

the Debtor settling the amount of its Claim, which agreement has been approved by the Bankruptcy

Court, and (ii) an SMC Participation Agreement.

**1.138   Stipulating Creditor Claim.**  The Claim held by a Stipulating Creditor.

**1.139   Suzuki Cars.**  The Suzuki-brand automobiles that have been sold by the Debtor

and/or Auto Dealers in the United States, and new and unused, unsold Suzuki-brand automobiles

currently owned by the Debtor and/or Auto Dealers.

**1.140   Suzuki Products.**  All Suzuki-brand products that have been and may be sold prior to

the Effective Date by the Debtor and/or its authorized dealers, including Suzuki Cars, in the United

States.

**1.141   Suzuki Product Liability.**  All liability of the Debtor, regardless of whether arising

before or after the Petition Date, (i) for Warranty Claims on any Suzuki Products, (ii) for recalls and

other obligations under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. 30101 et seq.,

as amended, with respect to Suzuki Products, or (iii) under any Lemon Laws with respect to Suzuki

Products.

**1.142   Trust Beneficiaries.**  Has the meaning ascribed to this term in Section 5.3.2 of the

Plan.

**1.143   U.S. Trustee.**  The United States Trustee for the Central District of California.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

**1.144   Unsecured Deficiency Claim.**  A Claim by a Person holding a Secured Claim to the extent the value of such Creditor's collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claim as of the Petition Date, after taking into account any election made pursuant to Section 1111(b) of the Bankruptcy Code.

**1.145   Voting Deadline.**  The date ordered by the Bankruptcy Court to serve as the voting deadline for submission of Ballots in respect of the Plan.

**1.146   Warranty Claim.**  A non-priority, general unsecured Claim arising under, or with respect to the Warranty Program but, for the avoidance of doubt, excluding claims for personal injury, third party property damage, or consequential damages of any kind.

**1.147   Warranty Program.**  All written warranty and service programs established by the Debtor for Suzuki Products, but, for the avoidance of doubt, excluding claims for personal injury, third party property damage, or consequential damages of any kind.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1     Unclassified Claims.**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, together with DIP Financing Claims, are instead treated separately in accordance with this Article 2 and in accordance with the requirements set forth in Section 1129(a)(9) of the Bankruptcy Code.

**2.2     DIP Financing Claims.**

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

**Except to the extent the DIP Lender agrees to less favorable treatment, and except to the extent constituting a Purchaser Assumed Liability, any and all DIP Financing Claims shall be paid in full or otherwise satisfied by the Debtor by the earlier of (i) the Effective Date and (ii) such other maturity date as set forth in the DIP Financing Agreement and the DIP Financing/Cash Collateral Order.  The DIP Financing Claims may be paid out of any Cash in which the DIP Lender holds a security interest pursuant to the DIP Financing Agreement (including the DIP Financing/Cash Collateral Order), including the proceeds of all collateral in which SMC held or holds a security interest pursuant to the DIP Financing Agreement (including the DIP Financing/Cash Collateral Order).**

**2.3     Administrative Claims.**

### 2.3.1   Administrative Claim Bar Date.

All requests for payment of Administrative Claims (except for (i) Professional Fees which shall be subject to the Professional Fees Bar Date, (ii) Claims arising under Bankruptcy Code § 503(b)(9) which shall be subject to the Bar Date, and (iii) Claims subject to Bankruptcy Code § 503(b)(1)(D)) must be Filed by the Administrative Claim Bar Date.  Any request for payment of such Administrative Claim (other than a Professional Fee claim) that is not timely Filed shall be forever barred, and holders of such Administrative Claims shall not be able to assert such Claims in any manner against the Debtor, the Estate, the PE Creditor Trust, or the Purchaser, or be able to share in any distribution under the Plan on account of such Administrative Claim.  Notwithstanding any of the foregoing, SMC shall not be required to File a request for payment of any Administrative Claims that it may hold.

### 2.3.2   Generally.

Each Allowed Administrative Claim (except for Professional Fees, which shall be treated as set forth in Section 2.5 of the Plan) shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, be paid in full in Cash by the PE Creditor Trust or Purchaser (solely to the extent the Allowed Administrative Claim is a Purchaser Assumed Liability) on the latest of: (a) the Effective Date, or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (c) the tenth (10th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; (d) such date as the holder of such Claim and the Debtor, the PE Creditor Trust, or Purchaser, as applicable, may agree; and (e) the date such Claim is otherwise due according to its terms.  SMC will voluntarily subordinate its SMC Secured

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1  Revolver Claim and its SMC Secured Inventory Loan Claim to permit the payment of such unpaid

2  Allowed Administrative Claims.

3  ### 2.3.3    Ordinary Course.

4  Notwithstanding anything in Section 2.3.1 to the contrary, holders of Administrative Claims

5  based on liabilities incurred in the ordinary course of the Debtor's business following the Petition

6  Date (including, if applicable, Claims subject to Bankruptcy Code § 503(b)(1)(D)) shall not be

7  required to comply with the Administrative Claims Bar Date, provided, however, that such holders

8  have otherwise submitted an invoice, billing statement or other evidence of indebtedness to the

9  Debtor in the ordinary course of business, and provided, further, that the Debtor, the Purchaser

10  and/or the PE Creditor Trust, to the extent of any disagreement with any such invoice, billing

11  statement or other evidence of indebtedness, may File with the Bankruptcy Court an objection to

12  such invoice, billing statement or other evidence of indebtedness as though the claimant thereunder

13  had Filed an Administrative Claim with the Bankruptcy Court.

14  ### 2.4    Allowed Priority Tax Claims.

15  Any Allowed Priority Tax Claim that is not a Purchaser Assumed Liability shall, at the

16  option of the Debtor or the PE Creditor Trust, unless the holder of such Claim shall have agreed to

17  different treatment of such Claim: (a) be paid in full in Cash, with interest (or without interest if paid

18  in full on the Effective Date), by the Debtor or the PE Creditor Trust on the latest of:  (i) the

19  Effective Date, or as soon thereafter as practicable; (ii) such later date as may be fixed by the

20  Bankruptcy Court, or as soon thereafter as practicable; (iii) the tenth $(10^{th})$ Business Day after such

21  Claim is Allowed, or as soon thereafter as practicable; and (iv) such other date as the holder of such

22  Claim and the Debtor or the PE Creditor Trust may agree (in the case of preceding clauses (ii)-(iv),

23  post-Effective Date interest will be paid if and to the extent required under Bankruptcy Code Section

24  1129(a)(9)(C)(i)), or (b) receive deferred Cash payments pursuant to Section 1129(a)(9) of the

25  Bankruptcy Code with interest on the unpaid portion of such Claim at the statutory rate under

26  applicable non-bankruptcy law in accordance with Bankruptcy Code Section 511, or at a rate to be

27  agreed upon by the Debtor or the PE Creditor Trust and the appropriate governmental unit or, if they

28  are unable to agree, to be determined by the Bankruptcy Court; provided, however, that the Debtor

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

or the PE Creditor Trust, as applicable, may prepay any or all such Claims at any time, without

premium or penalty.  For the purpose of option *(b)*, the payment of each Allowed Priority Tax Claim

shall be made in equal quarterly installments with the first installment due on the latest of: (i) the

first Business Day following the end of the first full calendar quarter following the Effective Date,

(ii) the first Business Day following the end of the first full calendar quarter following the date an

order allowing such Claim becomes a Final Order, and (iii) such other time or times as may be

agreed with the holder of such claim, and in all events, full payment of the Allowed Claim shall be

made by no later than November 5, 2017.  Each installment shall include interest pursuant to the

provisions of Bankruptcy Code Section 511, on the unpaid balance of the Allowed Priority Tax

Claim, without penalty of any kind, at the statutory non-default rate of interest prescribed, agreed to

or determined under option *(b)*.  All Allowed Priority Tax Claims shall be paid in full no later than

November 5, 2017.  For purposes of this Section, the terms "premium" or "penalty" are separate

from interest.  SMC will voluntarily subordinate its SMC Secured Revolver Claim and its SMC

Secured Inventory Loan Claim to permit the payment of such unpaid Allowed Priority Tax Claims.

   **2.4.1 Federal and State Income Tax Claims**.  The Purchaser is assuming

pre-petition and post-petition federal and state income tax claims against the Estate (including any

final income tax return of the Debtor).  The federal income tax claims are currently the subject of tax

treaty negotiations.  To the extent there is an amount owing to the United States of America or any

state after resolution of such negotiations or otherwise, and after the application of any available net

operating losses, the Purchaser will pay such balance on the tenth (10th) Business Day after such

balance is determined, or as soon thereafter as practicable, with post-Effective Date interest if and to

the extent required under Bankruptcy Code Section 1129(a)(9)(C)(i), but in any event it must be paid

in full no later than November 5, 2017 (unless such balance due is determined on or after October

20, 2017, in which case such balance due shall be paid within ten (10) Business Days of such

determination).  If the Purchaser fails to pay any balance owed in accordance with the terms of this

Section 2.4.1, then (I) with respect to any federal income tax balance due, the Internal Revenue

Service or the United States of America may collect the unpaid balance directly from the Purchaser

through its administrative collection procedures as set forth in the Internal Revenue Code; and (II)

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

with respect to any state income tax balance due, the applicable state tax collector may collect the unpaid balance directly from the Purchaser in accordance with applicable state law.  The Purchaser shall have the right to assert any defenses to asserted federal and state income tax claims that the Debtor would have been entitled to assert.

      **2.5**    **Claims for Professional Fees.**  Each Professional seeking an award by the Bankruptcy Court of Professional Fees: (a) must File its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date on or before the Professional Fees Bar Date; and (b) if the Bankruptcy Court grants such an award, each such Person shall be paid in full in Cash by the PE Creditor Trust, in such unpaid amounts as are allowed by the Bankruptcy Court as soon as practicable following the first day after such order has been entered by the Bankruptcy Court and is not stayed.  All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order.  SMC will voluntarily subordinate its SMC Secured Revolver Claim and its SMC Secured Inventory Loan Claim to permit the payment of such unpaid Allowed Professional Fee Claims.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

      **3.1**    **Summary of Classification.**  In accordance with Section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of Interests are placed in the Classes described in Section 3.2 below for all purposes, including voting on, confirmation of, and distribution under, the Plan.

      **3.2**    **Classes.**

| Class 1 | Priority Non-Tax Claims | Unimpaired, deemed to accept |
| Class 2A-1 | SMC Secured Revolver Claim | Impaired, entitled to vote |
| Class 2A-2 | SMC Secured Inventory Loan | Impaired, entitled to vote |

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

| | | |
|---|---|---|
| | Claim | |
| Class 2B | Other Secured Claims (each secured creditor in a separate class identified as Class 2B-1, Class 2B-2, *etc.*) | Unimpaired, deemed to accept |
| Class 3 | Settling Auto Dealer Liquidated Claims | Impaired, entitled to vote |
| Class 4 | Other Unsecured Creditor Claims | Impaired, entitled to vote |
| Class 5 | Warranty Claims | Unimpaired, deemed to accept |
| Class 6 | South Motors Claim | Unimpaired, deemed to accept |
| Class 7 | Interests | Impaired, deemed to reject |

**ARTICLE 4**

**TREATMENT OF CLAIMS AND INTERESTS**

**4.1    Class 1 – Priority Non-Tax Claims**

**4.1.1    Impairment and Voting.**  Class 1 is unimpaired under the Plan. Holders of Priority Non-Tax Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

**4.1.2                    Treatment.**  Each holder of an Allowed Priority Non-Tax Claim shall, unless the holder of such Claim shall have agreed to different treatment of such Claim, receive,

in full and final satisfaction, settlement and release of, and exchange for, such Allowed Priority Non-Tax Claim, a Cash payment in an amount equal to the Allowed Priority Non-Tax Claim on the latest of: (i) the Effective Date, or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the tenth (10th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the holder of such Claim and the Debtor may agree.  SMC will voluntarily subordinate its SMC Secured Revolver Claim and its SMC Secured Inventory Loan Claim to permit the payment of such unpaid Allowed Priority Non-Tax Claims.

**4.2**     **Class 2A-1 – SMC Secured Revolver Claim.**

**4.2.1     Impairment and Voting.**  Class 2A-1 is impaired under the Plan and entitled to vote on the Plan.

**4.2.2     Treatment.**

The SMC Secured Revolver Claim is Allowed under the Plan, and the holder of such Claim shall be allocated a PE Creditor Trust Interest.  SMC, as the holder of the SMC Secured Revolver Claim, is entitled to full payment of such Claim from Available Cash.  SMC has voluntarily consented to the subordination of such SMC Secured Revolver Claim to Allowed Class 3 Claims, Allowed Electing Class 4 Claims and the Allowed Class 6 Claim, such that Available Cash otherwise payable to SMC in relation to the SMC Secured Revolver Claim will be reallocated to Allowed Class 3 Claims, Allowed Electing Class 4 Claims and the Allowed Class 6 Claim, to permit the holders of such claims to receive first payments from Available Cash on account of their applicable PE Creditor Trust Interests.

Specifically, on or as soon as practicable after the Effective Date, the PE Creditor Trust shall pay in Cash the full amount of the Allowed SMC Secured Revolver Claim, to holders of Allowed Class 3 Claims (including the portion of Allowed Class 3 Claims subject to rights in favor of Participation Party pursuant to the SMC Participation Agreements), holders of Allowed Class 4 Claims that make the Settlement Election pursuant to Sections 4.6.3 below (including the portion of Allowed Class 4 Claims subject to rights in favor of Participation Party pursuant to the SMC

1    Participation Agreements) and the holder of the Allowed Class 6 Claim, on account of such holders'
2    applicable PE Creditor Interests described in Sections 4.5.2 and 4.6.4 below.

3    To the extent of the amount of the Allowed SMC Secured Revolver Claim paid from
4    Available Cash in accordance with this Section 4.2.2 to holders of Allowed Class 3 Claims, holders
5    of Allowed Electing Class 4 Claims and the holder of the Allowed Class 6 Claim, SMC shall be
6    subrogated to the Allowed Class 3 Claims, the Allowed Electing Class 4 Claims and the Allowed
7    Class 6 Claim, including rights to any distributions (if any) from the PE Creditor Trust under the
8    Plan in relation to such Allowed Claims.

9    **4.3    Class 2A-2 – SMC Secured Inventory Loan Claim.**

10    **4.3.1    Impairment and Voting.**  Class 2A-2 is impaired under the Plan and
11    entitled to vote on the Plan.

12    **4.3.2    Treatment.**

13    The SMC Secured Inventory Loan Claim is Allowed by the Plan, and the holder of such
14    Claim shall be allocated a PE Creditor Trust Interest.  SMC, as the holder of the SMC Secured
15    Inventory Loan Claim, is entitled to full payment of such Claim from Available Cash.  SMC has
16    voluntarily consented to the subordination of the SMC Secured Inventory Loan Claim to Allowed
17    Class 3 Claims, Allowed Electing Class 4 Claims, and the Allowed Class 6 Claim such that
18    Available Cash payable to SMC on account of the SMC Secured Inventory Loan Claim will be
19    reallocated to Allowed Class 3 Claims, Allowed Electing Class 4 Claims, and the Allowed Class 6
20    Claim to permit such claims to receive first payments from Available Cash on account of their
21    applicable PE Creditor Trust Interests.

22    Specifically, on or as soon as practicable after the Effective Date, the PE Creditor Trust shall
23    pay in Cash up to the full amount of the Allowed SMC Secured Inventory Loan Claim, to holders of
24    Allowed Class 3 Claims (including the portion of Allowed Class 3 Claims subject to rights in favor
25    of Participation Party pursuant to the SMC Participation Agreements), holders of Allowed Class 4
26    Claims making the Settlement Election pursuant to Section 4.6.3 below (including the portion of
27    Allowed Class 4 Claims subject to rights in favor of Participation Party pursuant to the SMC
28    Participation Agreements) and the holder of the Allowed Class 6 Claim, in an amount equal to the

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS    AT  LAW
LOS  ANGELES ,  CALIFORNIA

1  unpaid Allowed amounts of such Claims, on account of such holders' applicable PE Creditor

2  Interests described in Sections 4.5.2 and 4.6.4 below.

3  After the payment or reserve for an amount equal to payment of all Allowed Class 3 Claims,

4  Allowed Electing Class 4 Claims, and the Allowed Class 6 Claim through the voluntary

5  subordination described above, all remaining Available Cash, if any, shall be paid by the PE Creditor

6  Trust to SMC on account of the Allowed SMC Secured Inventory Loan Claim (less any amounts that

7  have previously been paid to SMC on account of the SMC Secured Inventory Loan Claim and

8  amounts paid to holders of Allowed Class 3 Claims, Allowed Electing Class 4 Claims, and the

9  Allowed Class 6 Claim pursuant to the voluntary subordination described above).

10  To the extent of the amount of the Allowed SMC Secured Inventory Loan Claim paid from

11  Available Cash in accordance with this Section 4.3.2 to holders of Allowed Class 3 Claims, holders

12  of Allowed Electing Class 4 Claims and the holder of the Allowed Class 6 Claim, SMC shall be

13  subrogated to the Allowed Class 3 Claims, the Allowed Electing Class 4 Claims and the Allowed

14  Class 6 Claim, including rights to any distributions (if any) from the PE Creditor Trust under the

15  Plan in relation to such Allowed Claims.

16  **4.4    Class 2B – Other Secured Claims.**

17  **4.4.1    Impairment and Voting.**  Class 2B is unimpaired under the Plan and

18  the holder of such Claim shall be allocated a PE Creditor Trust Interest to the extent the PE Creditor

19  Trust elects the treatment of such Claim set forth in Section 4.4.2.2.  Holders of Other Secured

20  Claims are deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code and are

21  not entitled to vote on the Plan.  For purposes of distributions under the Plan, each holder of an

22  Other Secured Claim in Class 2B is considered to be in its own separate subclass within Class 2B

23  (*i.e.*, Class 2B-1, Class 2B-2, *etc.*), and each such subclass is deemed to be a separate Class for

24  purposes of the Plan.

25  **4.4.2    Alternative Treatment.**  On or as soon as practicable following the

26  Effective Date, the PE Creditor Trust shall select, in its discretion, one of the following alternative

27  treatments for each Allowed Other Secured Claim in Class 2B, which treatment shall be in full and

28  final satisfaction, settlement and release of, and in exchange for, such Allowed Other Secured Claim:

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

**4.4.2.1 Abandonment or Surrender.**  The PE Creditor Trust shall abandon or surrender to the holder of such Claim the property securing such Claim, in full satisfaction and release of such Claim.

**4.4.2.2 Cash Payment.**  The PE Creditor Trust shall pay to the holder of such Claim Cash equal to the Allowed amount of such Claim, or such lesser amount to which the holder of such Claim and the Debtor or the PE Creditor Trust shall agree, in full satisfaction and release of such Claim.

**4.4.2.3 Unimpairment.**  The PE Creditor Trust shall leave the rights of the holder of such Claim unimpaired or provide for such other treatment as necessary to otherwise satisfy the requirements of the Bankruptcy Code.

**4.4.3    Unsecured Deficiency Claim.**  Any Unsecured Deficiency Claim asserted by a holder of an Allowed Other Secured Claim in Class 2B shall be Filed with the Bankruptcy Court within thirty (30) days following the date of the abandonment or surrender of such Creditor's collateral or such Creditor's receipt of its distribution under the Plan.  Any Allowed Unsecured Deficiency Claim shall be treated in accordance with Section 4.6 of the Plan.

**4.5    Class 3 – Settling Auto Dealer Liquidated Claims.**

**4.5.1    Impairment and Voting.**  Class 3 consists of Settling Auto Dealer Liquidated Claims.  Class 3 is impaired under the Plan and holders of Class 3 Claims are entitled to vote on the Plan.

**4.5.2    Treatment.**  Each holder of an Allowed Settling Auto Dealer Liquidated Claim shall be treated in the following manner, in full and final satisfaction, settlement and release, of, and in exchange for, such holder's Allowed Class 3 Claim:

(i)    if applicable, the Debtor shall assign the Service and Parts Agreement between the Debtor and the Settling Auto Dealer to the Purchaser, with such assignment to be effective as of the Effective Date; and

(ii)    on or as soon as practicable following the Effective Date, the holder shall be allocated a PE Creditor Trust Interest, on account of which, on or as soon as practicable following the Effective Date, said holder shall receive from the PE Creditor Trust Cash payment in full of the Allowed amount of its Class 3 Claim without post-petition interest (as a result of the voluntary subordination by SMC described in Sections 4.2.2 and 4.3.2 of the Plan).

With respect to the preceding item (ii), SMC shall fully and unconditionally guarantee Cash payment in full of the Allowed amounts of all Allowed Class 3 Claims.  In the event that the PE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

Creditor Trustee determines that there are insufficient PE Creditor Trust Assets to pay in full all Allowed Class 3 Claims, the PE Creditor Trustee shall provide written notice thereof to SMC, and SMC shall deliver to the PE Creditor Trust Cash in the amount of any shortfall within [ten (10)] Business Days, which monies shall be distributed by the PE Creditor Trustee as soon as practicable in accordance with the PE Creditor Trust Agreement.

The PE Creditor Trustee shall make distributions to the holders of the PE Creditor Trust Interests from the PE Creditor Trust Assets in accordance with the provisions of the PE Creditor Trust Agreement, and as provided for in this Plan and the Confirmation Order.

Nothing herein shall modify the Dealer Claim Participation Rights of the Participation Party in respect to any distributions on account of Allowed Class 3 Claims, provided that the payment of Participation Agreement Distributions up to a total of $22,000,000 may be deferred as set forth in Section 5.5 hereof.  For the avoidance of doubt, the Participation Party shall be entitled to receive and retain the full distribution to it with respect to an Allowed Class 3 Claim.

**4.6    Class 4 – Other General Unsecured Creditor Claims.**

**4.6.1    Impairment and Voting.**  Class 4 consists of Other General Unsecured Creditor Claims including the SMC General Unsecured Claims.  The SMC General Unsecured Claims are Allowed by the Plan.  Class 4 is impaired under the Plan and the holders of Class 4 Claims are entitled to vote on the Plan.

**4.6.2    Treatment of Other General Unsecured Creditor Claims.**

Each holder of a Class 4 Claim may choose between two alternatives as provided below. Specifically, such holder may make the Settlement Election and be entitled to the treatment provided in Section 4.6.4, or not make the Settlement Election and be entitled to the treatment provided in Section 4.6.5. In all events, no holder of an Other General Unsecured Creditor Claim shall receive, on account of such Claim or applicable PE Creditor Interest, any post-petition interest, or any distribution under the Plan in excess of its Allowed Other General Unsecured Creditor Claim amount.

The Debtor, with the consent of SMC, reserves the right to increase the consideration to holders of Other General Unsecured Creditor Claims in Class 4 that do not make the Settlement Election, for any reason, including as a result of a determination by the Bankruptcy Court that the current consideration does not satisfy the requirements of the Bankruptcy Code.  If the Debtor, for any reason, increases the consideration to holders of Other General Unsecured Claims in Class 4 that do not make the Settlement Election for any reason, the Debtor does not intend to amend the Disclosure Statement or to re-solicit votes on the Plan.

**4.6.3    Settlement Election for Treatment as an Other Settling Creditor.**

Each holder of an Other General Unsecured Creditor Claim (other than SMC with respect to

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

the SMC General Unsecured Claim) may make the Settlement Election, in which case it will be treated as an Other Settling Creditor under the Plan and receive the benefit of the voluntary subordination of the SMC Secured Claims.

To make the Settlement Election, a holder of an Other General Unsecured Creditor Claim must do each of the following:

(i) Execute and Timely Submit Ballot.  If it received a Ballot from the Debtor, the holder must sign and submit its Ballot to the Debtor on or before the Voting Deadline;

(ii) Accept and Agree to the Other Settling Creditor Claim Amount.  The holder must signify that it agrees to and accepts the amount of its Other Settling Creditor Claim against the Debtor as set forth on either (a) the Ballot to be mailed to such Creditor, or (b) with respect to a holder of a Class 4 Claim that did not receive a Ballot, a stipulation with the Debtor or the PE Creditor Trust, which Claim amount will be Allowed pursuant to Bankruptcy Court Order; and

(iii) Provide the Class 4 Other Settling Creditor Release.  The holder of the Class 4 Claim, to be treated as an Other Settling Creditor, must elect on its Ballot to grant a release, or if the holder did not receive a Ballot, sign a release agreement which provides as follows:

Each Other Settling Creditor, for itself and its respective predecessors,  successors, assigns, subsidiaries, affiliates, and current and former Agents, must elect on its Ballot or, if applicable as provided above, in a release agreement to release (the "Class 4 Release") the Debtor, SMC, the Purchaser, the Participation Party, and their respective successors, assigns, subsidiaries and affiliates, and each of the foregoing party's respective current and former Agents, from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, arising prior to the Effective Date (but excluding assertion of Other Settling Creditor Claims against the Debtor).  As part of the Class 4 Release, each Other Settling Creditor, for itself and its respective successors, assigns, subsidiaries, affiliates, and current and former Agents, shall acknowledge that it is familiar with California Civil Code section 1542, which provides that:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of**

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1     **executing the release, which if known by him or her must have**
2     **materially affected his or her settlement with the debtor.**

3 Each Other Settling Creditor, for itself and its respective predecessors, successors, assigns,

4 subsidiaries, affiliates, and current and former Agents, waives and relinquishes all rights and benefits

5 that each party has or may have under California Civil Code section 1542 or any similar law; each

6 such party expressly assumes the risk that the facts or law may be different than it now believes them

7 to be, and each party agrees that this release shall be effective notwithstanding any such differences.

8               **4.6.4**     **Treatment of Other Settling Creditor Claims**

9       On or as soon as practicable following the Effective Date, the holder of an Other Settling

10 Creditor Claim shall be allocated a PE Creditor Trust Interest, on account of which, on or as soon as

11 practicable following the Effective Date, said holder shall receive from the PE Creditor Trust Cash

12 payment in full of the Allowed amount of its Class 4 Claim without post-petition interest (as a result

13 of the voluntary subordination by SMC described in Sections 4.2.2 and 4.3.2 of the Plan).

14       SMC shall fully and unconditionally guarantee Cash payment in full of the Allowed amounts

15 of all Allowed Other Settling Creditor Claims pursuant to the preceding paragraph.  In the event that

16 the PE Creditor Trustee determines that there are insufficient PE Creditor Trust Assets to pay in full

17 all Allowed Other Settling Creditor Claims, the PE Creditor Trustee shall provide written notice

18 thereof to SMC, and SMC shall deliver to the PE Creditor Trust Cash in the amount of any shortfall

19 within ten (10) Business Days, which monies shall be distributed by the PE Creditor Trustee as soon

20 as practicable in accordance with the PE Creditor Trust Agreement.

21       The PE Creditor Trustee shall make distributions to the holders of the PE Creditor Trust

22 Interests from the PE Creditor Trust Assets in accordance with the provisions of the PE Creditor

23 Trust Agreement, and as provided for in this Plan and the Confirmation Order.

24       Each holder of an Other Settling Creditor Claim shall receive the foregoing distribution, in

25 full and final satisfaction, settlement and release of, and in exchange for, such holder's Other

26 Settling Creditor Claim and any other Claims against the Debtor, SMC, the Purchaser, the

27 Participation Party, and their respective subsidiaries and affiliates, and each of the foregoing party's

28 respective current and former Agents.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

1   Nothing herein shall modify the Other Claim Participation Rights of the Participation Party

2   in respect to any distributions on account of Allowed Class 4 Claims with respect to which it holds

3   an Other Claim Participation Right, provided that the payment of Participation Agreement

4   Distributions up to a total of $22,000,000 may be deferred as set forth in Section 5.5 hereof. For the

5   avoidance of doubt, the Participation Party shall be entitled to receive and retain the full distribution

6   to it with respect to any Allowed Class 4 Claim with respect to which it holds an Other Claim

7   Participation Right.

8   ### 4.6.5   Treatment of Claims of Non-Settling Unsecured Creditors

9   Each holder of an Other General Unsecured Creditor Claim (other than SMC with respect to

10   the SMC General Unsecured Claim) that does not make the Settlement Election shall be treated as a

11   Non-Settling Unsecured Creditor under the Plan and receive the following consideration: On or as

12   soon as practicable following the Effective Date, each such holder shall be allocated, on account of

13   said Allowed Claim, a PE Creditor Trust Interest, on account of which, on or as soon as practicable

14   following the Effective Date, said holder shall receive from the PE Creditor Trust the holder's

15   applicable GUC Fund Distribution in an amount equal to the lesser of (a) twenty percent (20%) of

16   the Allowed amount of its Other General Unsecured Creditor Claim, without any postpetition

17   interest, and (b) its pro rata share of the GUC Fund Distribution.  If and only if there are any excess

18   funds in the GUC Fund after the payment of, or reserve for, twenty percent (20%) of the Allowed

19   amount of all Allowed GUC Fund Claims and the reserve for twenty percent (20%) of all Disputed

20   GUC Fund Claims, without any post-petition interest, then the PE Creditor Trust may use all such

21   excess funds for any purpose(s) consistent with the Plan, including for the payment of Plan

22   Expenses.

23   The PE Creditor Trust may elect to make interim Cash distributions prior to the resolution of

24   all asserted GUC Fund Distribution Claims, provided that appropriate reserves have been created.

25   The PE Creditor Trustee shall make distributions to the holders of the PE Creditor Trust Interests

26   from the PE Creditor Trust Assets in accordance with the provisions of the PE Creditor Trust

27   Agreement, and as provided for in this Plan and the Confirmation Order.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

**4.7**    **Class 5  – Warranty Claims.**

**4.7.1**    **Impairment and Voting.**  Class 5  is unimpaired under the Plan.

Holders of Class 5 Claims are not entitled to vote on the Plan, and are presumed to have accepted the

Plan.

**4.7.2**    **Treatment.**  From and after the Effective Date, all Warranty Claims shall

be administered and honored by the Purchaser under the Post-Effective-Date Warranty Program.  Holders of

Allowed Warranty Claims shall receive no other distribution or consideration pursuant to the Plan.

**4.8**    **Class 6  – South Motors Claim.**

**4.8.1**    **Impairment and Voting.**  Class 6 is unimpaired under the Plan.

South Motors is deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code

and is not entitled to vote on the Plan.

**4.8.2**    **Treatment.**

On or as soon as practicable following the Effective Date, the holder shall be allocated a PE Creditor

Trust Interest, on account of which, on or as soon as practicable following the later of the Effective Date and

the date such Claim becomes an Allowed Claim, said holder shall receive from the PE Creditor Trust Cash

payment in full of the Allowed amount of its Class 6 Claim (as a result of the voluntary subordination by

SMC described in Sections 4.2.2 and 4.3.2 of the Plan) or such other payment as is necessary to render such

Allowed Claim unimpaired.  Any dispute regarding the payment to which South Motors is entitled in order

for its Allowed Claim to be unimpaired shall be determined by the Bankruptcy Court.  For the avoidance of

doubt, the South Motors Claim is a Disputed Claim.

To the extent of the amount of the Allowed SMC Secured Claims paid from PE Creditor Trust Assets

in accordance with Sections 4.2.2 and 4.3.2 to the holder of the Allowed Class 6 Claim, SMC shall be

subrogated to the Allowed Class 6 Claim, including rights to any distributions (if any) from the PE Creditor

Trust under the Plan in relation to such Allowed Claim.

**4.9**    **Class 7 – Interests.**

**4.9.1**    **Impairment and Voting.**  Class 7 is impaired under the Plan, and

holders of Interests shall be deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code

and shall not be entitled to vote on the Plan.

**4.9.2**    **Treatment.**  On the Effective Date, all Interests shall be deemed

canceled, null and void, and of no force and effect, and holders of Interests shall not receive any

distribution under the Plan on account of the Interests.

**4.10**    **Nonconsensual Confirmation.**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation

by acceptance of this Plan by an impaired Class.  The Debtor requests Confirmation of the Plan

under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class of Claims that does not accept this Plan pursuant to Section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires any such modification.

## ARTICLE 5

## IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date.  In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for the implementation of the Plan.

**5.1     Plan Related Transactions.**

### 5.1.1   SMC Capital Contribution

On or prior to the Effective Date, SMC shall make the SMC Capital Contribution.

### 5.1.2   Sale Transaction; Transfer of Purchased Assets

On the Effective Date, subject to the terms and conditions set forth in the Plan and the APA (attached hereto as **Exhibit A**), in exchange for the SMAI Payment and the Purchaser's assumption of the Purchaser Assumed Liabilities, the Debtor shall sell and transfer the Purchased Assets, and assume, assign and sell the Designated Contracts, to the Purchaser, free and clear of all Claims, Liens and any other encumbrances against the Purchased Assets, pursuant to Sections 363, 365 and 1123(a)(5) and (b)(4) of the Bankruptcy Code, with such Claims, Liens and encumbrances to attach to the net proceeds of the Sale Transaction with the same validity, enforceability and priority as had existed against the Purchased Assets.  On the Effective Date, any and all acts and transactions required to be consummated in connection with the Sale Transaction and any and all documents entered into in connection therewith shall be deemed authorized, approved and consummated.  Any and all Claims asserted against the Purchased Assets shall be deemed asserted against the PE Creditor Trust and shall be classified in accordance with Article 4 hereof for distribution purposes. The Confirmation Order shall contain a finding by the Bankruptcy Court that the Purchaser has acted in good faith and is entitled to the full protections provided under Section 363(m) of the Bankruptcy Code.  The Sale Transaction, together with the liquidation of the Debtor and the transfer of assets to

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

the PE Creditor Trust, is intended to qualify as a reorganization within the meaning of Section 368 of the Internal Revenue Code.

The Purchaser shall have no responsibility for any liabilities or obligations of the Debtor, other than the Purchaser Assumed Liabilities.  Unless otherwise agreed to by the applicable parties, the Purchaser shall pay all Cure Claims, if any, related to the Designated Contracts in order for the Debtor to assume and assign such contracts to the Purchaser under Section 365 of the Bankruptcy Code.

**5.2      SMC Voluntary Subordination.**

In order to ensure full payment of Allowed Class 3 Claims pursuant to Section 4.5.2, Allowed Class 4 Claims making the Settlement Election pursuant to Section 4.6.3, and the Allowed South Motors Claim pursuant to Section 4.8.2, SMC has consented to the subordination of certain of its Claims pursuant to Sections 4.2.2 and 4.3.2.

**5.3      Corporate Action; Winding Up of Affairs.**

**5.3.1    Dissolution of Debtor**

As of the Effective Date, the Debtor shall be deemed dissolved for all purposes, without the necessity for any other or further actions to be taken by or on behalf of the Debtor by the PE Creditor Trustee or any other Person, or payments to be made in connection therewith, and the Confirmation Order shall contain a provision to such effect.  Notwithstanding the foregoing, without the need of any further approval, the PE Creditor Trustee in his or her discretion may execute and file documents and take all other actions as he or she deems appropriate relating to the dissolution of the Debtor under the laws of California and/or any other applicable states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.  Any actions by the PE Creditor Trustee pursuant to the preceding sentence shall not modify, alter or otherwise affect the deemed dissolution of the Debtor as of the Effective Date pursuant to this Section.

Further, on and after the Effective Date, if and to the extent that any other actions may need to be taken by the Debtor, the PE Creditor Trustee may, in the name of the Debtor, take such actions

without supervision or approval by the Bankruptcy Court and free of any restrictions of the

Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan

or the Confirmation Order.  The PE Creditor Trustee shall be entitled to compensation and

reimbursement of expenses from the PE Creditor Trust Assets on account of the performance of such

services, without the need for further Bankruptcy Court approval.

The Confirmation Order shall act as an order modifying, to the extent necessary, the Debtor's

by-laws such that the provisions of this Plan can be effectuated.  Each existing director and officer of

the Debtor shall be deemed to have resigned on the Effective Date without any further corporate

action.

### 5.3.2    PE Creditor Trust

### 5.3.2.1 In General

Generally, on and after the Effective Date, the PE Creditor Trust, through the PE Creditor

Trustee, shall (i) to the extent reasonable or necessary to transition the Purchased Businesses and

Purchased Assets from the Debtor to the Purchaser pursuant to the Sale Transaction, assist with,

implement and otherwise cooperate in connection with such transition, subject to the terms set forth

in the APA; and (ii) administer, monetize, transfer, abandon and/or otherwise dispose of the PE

Creditor Trust Assets (including prosecuting any Retained Claims and/or Defenses), wind down the

Auto Sales Business and dispose of all related assets, administer and operate the PE Creditor Trust's

affairs pursuant to the Plan, and distribute all Available Cash, the Debtor-SMC Settlement

Consideration and the GUC Fund, to holders of Allowed Claims in accordance with the Plan, unless

a Creditor agrees to different treatment.  Notwithstanding the foregoing, the Purchaser shall honor all

Warranty Claims, whether arising prior to or after the Effective Date, pursuant to the Post-Effective-

Date Warranty Program.

Further, on the Effective Date and automatically and without further action, (i) the PE

Creditor Trustee shall have full power and authority as the trustee of the PE Creditor Trust in

accordance with this Plan and the PE Creditor Trust Agreement, (ii) all matters provided under this

Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy

Court, and (iii) the PE Creditor Trust shall be deemed to expressly assume all of ASMC's post-

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

Effective Date obligations under the APA.  Generally, the Plan shall be administered by the PE

Creditor Trustee, and all actions taken thereunder in the name of the PE Creditor Trust shall be taken

through the PE Creditor Trustee.

### 5.3.2.2 Effectiveness of the PE Creditor Trust

On the Effective Date, the PE Creditor Trust Agreement shall become effective, and, if not

previously signed, the Debtor and the PE Creditor Trustee shall execute the PE Creditor Trust

Agreement.  The PE Creditor Trust will be organized and established as a trust for the benefit of the

Trust Beneficiaries, as defined below, and is intended to qualify as a liquidating trust within the

meaning of Treasury Regulation Section 301.7701-4(d).  The PE Creditor Trust shall have no

objective to continue or engage in the conduct of a trade or business and shall not be deemed a

successor-in-interest of the Debtor or its Estate for any purpose other than as specifically set forth

herein.

### 5.3.2.3 Trust Beneficiaries

In accordance with Treasury Regulation Section 301.7701-4(d), the beneficiaries ("Trust

Beneficiaries") of the PE Creditor Trust are the members of Classes 2, 3, 4 and 6 to the extent such

Creditors are entitled to distributions from the Debtor pursuant to Article 4 of the Plan.  The Trust

Beneficiaries shall receive, on account of their respective Allowed Claims, an allocation of PE

Creditor Trust Interests as provided for in the PE Creditor Trust Agreement, in order to implement

the distributions of Cash provided for in Article 4, and shall receive on account of their respective

PE Creditor Trust Interests, in full and complete satisfaction, discharge, exchange and release

thereof, from the PE Creditor Trust, distributions in compliance with Article 4 of the Plan.

### 5.3.2.4 Implementation of the PE Creditor Trust

On the Effective Date, the Debtor, on behalf of the Estate, and the PE Creditor Trustee shall

be authorized to, and shall, take all such actions as required to transfer from the Debtor and the

Estate the PE Creditor Trust Assets, to the PE Creditor Trust.  From and after the Effective Date,

the PE Creditor Trustee shall be authorized to, and shall take all such actions as required to

implement the PE Creditor Trust and the provisions of this Plan as are contemplated to be

implemented by the PE Creditor Trustee, including, without limitation, directing distributions to the

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

1  holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority

2  Non-Tax Claims, distributions to the Trust Beneficiaries, objecting to Claims, administering the

3  Retained Claims and/or Defenses, and liquidating the PE Creditor Trust Assets.

### 5.3.2.5 Transfer of the PE Creditor Trust Assets

5  On the Effective Date, pursuant to the Plan and Sections 1123, 1141 and 1146(a) of the

6  Bankruptcy Code, the Debtor and its Estate are authorized and directed to transfer, grant, assign,

7  convey, set over, and deliver to the PE Creditor Trustee, for the benefit of the PE Creditor Trust, all

8  of the Debtor's and the Estate's right, title and interest in and to the PE Creditor Trust Assets, free

9  and clear of all Liens, Claims, encumbrances or interests of any kind in such property, except as

10  otherwise expressly provided for in the Plan.  To the extent required to implement the transfer of

11  the PE Creditor Trust Assets from the Debtor and its Estate to the PE Creditor Trust and the PE

12  Creditor Trustee as provided for herein, all Persons shall cooperate with the Debtor and the Estate

13  to assist the Debtor and the Estate to implement said transfers.  For the avoidance of doubt, SMC

14  shall retain its Liens on the assets transferred to the PE Creditor Trust, pursuant to the Pre-Petition

15  Loan and Security Agreement, until SMC's Secured Claims have been satisfied in full or such

16  assets have been disposed of by the PE Creditor Trust; provided that to the extent such assets are

17  disposed of by the PE Creditor Trust prior to SMC's Secured Claims having been satisfied in full,

18  SMC's Liens shall attach to the proceeds of such assets with the same validity, extent and priority

19  as existed prior to the disposition of such assets.

### 5.3.2.6 PE Creditor Trustee

21  The PE Creditor Trustee shall be appointed as a representative of the Estate pursuant to

22  Sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with

23  the authority and power (subject to the PE Creditor Trust Agreement) to: (i) administer, hold and

24  liquidate the PE Creditor Trust Assets; (ii) administer, investigate, prosecute, settle and abandon all

25  Retained Claims and/or Defenses in the name of, and for the benefit of, the Estate (provided that

26  any settlement of a Retained Claim and/or Defense resulting in a Claim against the Estate of more

27  than $100,000 requires the approval of the PE Creditor Trust Committee); (iii) make distributions

28  provided for in the Plan, including, but not limited to, on account of Allowed Claims (including

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

Settling Auto Dealer Liquidated Claims under the SMC Participation Agreements) and make

distributions on account of PE Creditor Trust Interests; (iv) to the extent necessary or appropriate,

assist with the transition of the Purchased Businesses and Purchased Assets to the Purchaser and

implementation of the Sale Transaction, subject to the terms of the APA; (v) employ and

compensate with PE Creditor Trust Assets any and all such counsel, financial advisors and other

professionals and agents as the PE Creditor Trustee, in his or her sole discretion, deems necessary

to perform his or her duties under the Plan and the PE Creditor Trust Agreement, without further

order of the Bankruptcy Court; (vi) prepare or have prepared and file all required tax returns,

address and resolve any tax obligations, audits or other proceedings, and pay any taxes and

obligations on behalf of the PE Creditor Trust from funds held by the PE Creditor Trust; (vii) take

all steps necessary to terminate the corporate existence of the Debtor; and (viii) take such other

actions as required to manage the PE Creditor Trust, administer, wind-down, and close the Chapter

11 Case, and carry out the provisions of the Plan, the Confirmation Order and the PE Creditor Trust

Agreement.  As a representative of the Estate, the PE Creditor Trustee shall succeed to all of the

rights and powers of the Debtor and the Estate with respect to all Retained Claims and/or Defenses,

and the PE Creditor Trustee shall be substituted and shall replace the Debtor, the Estate and the

Committee, as applicable, as the party in interest in any such litigation pending as of the Effective

Date.

The PE Creditor Trustee  may be removed by the Bankruptcy Court upon application for

good cause shown.  In the event of the resignation, removal, death, or incapacity of the PE Creditor

Trustee, the PE Creditor Trustee's designated successor shall become the PE Creditor Trustee, with

notice thereof provided to the Post-Effective Date Service List, and subject to Bankruptcy Court

approval.  The successor PE Creditor Trustee without any further act shall become fully vested with

all of the rights, powers, duties, and obligations of his or her predecessor.

**To the maximum extent permitted by law, the PE Creditor Trustee, the PE Creditor**

**Trust Committee and their respective Agents shall not have or incur liability to any Person**

**for an act taken or omission made in good faith in connection with or related to the**

**administration of the PE Creditor Trust Assets, the implementation of the Plan and the**

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS  ANGELES ,  CALIFORNIA

1 distributions made thereunder or distributions made by the PE Creditor Trust, subject to the

2 provisions of the PE Creditor Trust Agreement.  The PE Creditor Trustee, the PE Creditor

3 Trustee and their respective Agents shall in all respects be entitled to reasonably rely on the

4 advice of counsel with respect to its duties and responsibilities under the Plan and the PE

5 Creditor Trust.  Entry of the Confirmation Order constitutes a judicial determination that

6 the exculpation provision contained in this Section is necessary to, *inter alia*, facilitate

7 Confirmation and feasibility and to minimize potential claims arising after the Effective Date

8 for indemnity, reimbursement or contribution from the Estate, or the PE Creditor Trust, or

9 their respective property.

### 5.3.2.7 PE Creditor Trust Committee

11 As of the Effective Date, there shall be formed the PE Creditor Trust Committee that will

12 have consultation, information and approval rights with respect to the PE Creditor Trust as set forth

13 in the PE Creditor Trust Agreement.  The PE Creditor Trust Committee shall consist of Michael M.

14 Ozawa and R. Todd Neilson, the independent members of the Debtor's Board of Directors, as its

15 initial members as of the Effective Date.  Any successors to Messrs. Ozawa and Neilson as

16 members of the PE Creditor Trust Committee shall be appointed in accordance with the PE Creditor

17 Trust Agreement.  Following all distributions being made to Creditors pursuant to the Plan, the PE

18 Creditor Trust Committee shall be dissolved and the members thereof shall be released and

19 discharged of and from all further authority, duties, responsibilities and obligations related to and

20 arising from their service as PE Creditor Trust Committee members.

21 The PE Creditor Trust Committee shall generally monitor the status and progress of the PE

22 Creditor Trust and undertake any other duties as specified in the Plan and the PE Creditor Trust

23 Agreement, and the PE Creditor Trustee shall keep the PE Creditor Trust Committee apprised of the

24 material affairs of the PE Creditor Trust.  In serving as a member of the PE Creditor Trust

25 Committee, such members shall not assume or be deemed to have assumed any liability to

26 Creditors, the Debtor, or any other parties in interest in the Chapter 11 Case and shall not be liable

27 for any acts or omissions while acting in that capacity, except for bad faith and acts or omissions

28 constituting malfeasance or gross negligence.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

Members of the PE Creditor Trust Committee shall be entitled to compensation and reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of said committee, all of which shall be paid from the PE Creditor Trust Assets, as provided in the PE Creditor Trust Agreement.

### 5.3.2.8 Funding of Plan Expenses

All Plan Expenses incurred from and after the Effective Date shall be expenses of the PE Creditor Trust, and the PE Creditor Trustee shall disburse funds from the PE Creditor Trust Assets for purposes of funding such expenses.

### 5.3.2.9 Provisions Relating to Federal Income Tax Compliance

A transfer to the PE Creditor Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to creditors to the extent creditors are beneficiaries of the PE Creditor Trust.  For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274.  Any such transfer shall be treated for federal income tax purposes as a deemed transfer to the beneficiary-creditors followed by a deemed transfer by the beneficiary-creditors to the PE Creditor Trust.  The beneficiaries of the PE Creditor Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the PE Creditor Trust.

### 5.4    Source of Funds.

Funding for the Debtor's obligations under the Plan shall be provided by (i) Cash on hand; (ii) the Plan Consideration (consisting of the SMAI Payment and the SMC Settlement Payment); (iii) the Debtor-SMC Settlement Consideration; and (iv) net proceeds from the sale, liquidation or other disposition of the Excluded Assets (including the litigation of causes of action and claims that are Excluded Assets); provided further that the Purchaser Assumed Liabilities will be administered and paid (to the extent applicable) by the Purchaser.

Notwithstanding any other provision herein, distributions made out of PE Creditor Trust Assets shall be in full compliance with Article 4 hereof, including, without limitation, the use of the GUC Fund (which shall be an PE Creditor Trust Asset as of the Effective Date) to make GUC Fund Distributions.

### 5.5    Deferment of Participation Agreement Distributions.

If and to the extent necessary, notwithstanding any other provisions to the contrary in the Plan or in the SMC Participation Agreements, the Participation Party and SMC have consented to

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

the deferment in payment of Participation Agreement Distributions up to a total of $22,000,000 that would otherwise have been payable to the Participation Party pursuant to Sections 4.5 and 4.6 of the Plan until the PE Creditor Trust's full payment of or reserve for all Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims that are not Purchaser Assumed Liabilities.

**5.6     Subordination Agreements.**

Pursuant to Section 510(a) of the Bankruptcy Code, to the extent there is any subordination agreement in place between creditors that is enforceable under nonbankruptcy law, the Debtor shall honor such subordination agreement and turn over any distributions required to be turned over pursuant to the terms of such agreements and the Bankruptcy Code.  Any claims subordinated under Section 510(b) or (c) of the Bankruptcy Code or any other applicable law shall not receive or retain any property under the Plan unless and until the subordination is effectuated.

**5.7     Agreements with Auto Dealers.**

Nothing herein is intended to or shall modify the Auto Dealer Letter Agreements, the Service and Parts Agreements, and the SMC Participation Agreements (except as otherwise provided in Section 5.5 of the Plan with respect to the Participation Agreement Distributions).

**5.8     Revesting of Excluded Assets.**

Upon the Effective Date, the PE Creditor Trust shall be vested with all right, title and interest in the PE Creditor Trust Assets (including the Retained Claims and/or Defenses), and such property shall become the property of the PE Creditor Trust, free and clear of all Claims, Liens, charges, other encumbrances and Interests, except as expressly set forth in this Plan.

All such Excluded Assets that have vested in the PE Creditor Trust shall be available only for Plan Expenses and to satisfy Allowed Claims.  Notwithstanding the foregoing, SMC shall retain its Liens on the assets transferred to the PE Creditor Trust, pursuant to the Pre-Petition Loan and Security Agreement until SMC's Secured Claims have been satisfied in full or such assets have been disposed of by the PE Creditor Trust; provided that to the extent such assets are disposed of by the PE Creditor Trust prior to SMC's Secured Claims having been satisfied in full, SMC's Liens shall

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

1  attach to the proceeds of such assets with the same validity, extent and priority as existed prior to the

2  disposition of such assets.

3  **5.9    Retained Claims and/or Defenses.**

4  Unless any Retained Claim and/or Defense is expressly waived, relinquished, released,

5  compromised, or settled in the Plan or any Final Order (including, without limitation, the

6  Confirmation Order), the Debtor and the PE Creditor Trust expressly reserve such Retained Claim

7  and/or Defense for later adjudication by the PE Creditor Trust.  The reservation set forth in this

8  Section shall include, without limitation, a reservation by the Debtor and PE Creditor Trust of any

9  Retained Claims and/or Defenses not specifically identified in the Plan or Disclosure Statement, or

10  of which the Debtor may presently be unaware, or which may arise or exist by reason of additional

11  facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change

12  or be different from those the Debtor now believes to exist and, therefore, no preclusion doctrine,

13  including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim

14  preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to such Retained

15  Claims and/or Defenses upon or after the Confirmation of the Plan based on the Disclosure

16  Statement, the Plan or the Confirmation Order, except where such Retained Claims and/or Defenses

17  have been expressly waived, relinquished, released, compromised, or settled in the Plan or a Final

18  Order.  Following the Effective Date, the PE Creditor Trust may assert, compromise or dispose of

19  the Retained Claims and/or Defenses without further notice to Creditors or authorization of the

20  Bankruptcy Court.

21  **5.10    Administration of Warranty Claims.**

22  From and after the Effective Date, Warranty Claims shall be administered and honored by

23  the Purchaser to the extent provided in the Post-Effective-Date Warranty Program.

24  **5.11    Miscellaneous.**

25  **5.11.1 Creditors' Committee.**

26  On the Effective Date, the Committee shall be dissolved and the members thereof shall be

27  released and discharged from any further authority, duties, responsibilities, liabilities and obligations

28  related to, or arising from, the Chapter 11 Case, except that the Committee shall continue in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

existence and have standing and capacity to prepare and prosecute applications for the payment of

fees and reimbursement of expenses incurred by the Committee or its Professionals.

### 5.11.2  Records.

The PE Creditor Trustee shall maintain good and sufficient books and records of accounting

relating to the assets of the PE Creditor Trust, all transactions undertaken by such parties, all

expenses incurred by or on behalf of the PE Creditor Trust, and all distributions contemplated or

effectuated under this Plan.  Upon the entry of a final decree closing the Chapter 11 Case, unless

otherwise ordered by the Court, the PE Creditor Trust may destroy or otherwise dispose of all

records maintained by it.

### 5.11.3  Final Decree.

At any time following the Effective Date, the PE Creditor Trustee shall be authorized to File

a motion for the entry of a final decree closing the Chapter 11 Case pursuant to Section 350 of the

Bankruptcy Code.

### ARTICLE 6

### PROVISIONS GOVERNING DISTRIBUTIONS

**6.1    Distributions by the Debtor.**  The PE Creditor Trust shall administer Claims and

make distributions to holders of Allowed Claims against the Debtor as of the Distribution Record

Date.  Distributions to be made by the PE Creditor Trust may be made by any Person designated or

retained by it to serve as disbursing agent without the need for any further order of the Bankruptcy

Court.

**6.2    Addresses for Delivery of Distributions.**  Except as otherwise agreed with the

holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be

distributed on account of an Allowed Claim shall be distributed by mail, upon compliance by the

holder with the provisions of this Plan, to (a) the latest mailing address Filed for the holder of an

Allowed Claim entitled to a distribution under the Plan, (b) the latest mailing address Filed for a

holder of a Filed power of attorney designated by the holder of such Claim to receive distributions,

(c) the latest mailing address Filed for the holder's transferee as identified in a Filed notice served on

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES  ,  CALIFORNIA

the Debtor pursuant to Bankruptcy Rule 3001(e), or (d) if no such mailing address has been Filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

**6.3     Distributions on Account of Claims Allowed as of the Effective Date.**  Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Allowed Claims that become Allowed prior to the Effective Date shall be made by the PE Creditor Trust on or as soon as reasonably practicable after the Effective Date.

**6.4     Estimation.**  In order to establish reserves under this Plan or to otherwise facilitate confirmation and implementation of the Plan, the Debtor and the PE Creditor Trust shall have the right to seek an order or orders of the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code, estimating the amount of any Claim or Claims against the Debtor.

**6.5     Distributions on Account of Claims Allowed After the Effective Date.**

**6.5.1     Distributions on Account of Disputed Claims and Estimated Claims.**

Except as otherwise provided herein, a Final Order, or as agreed by the relevant parties, distributions on account of Disputed Claims and Estimated Claims that become Allowed after the Effective Date shall be made by the PE Creditor Trust, at such periodic intervals as it determines to be reasonably prudent.

**6.5.2     No Distributions Pending Allowance.**

Notwithstanding anything herein to the contrary:  (a) no distribution shall be made with respect to any Disputed Claim or Estimated Claim until such Claim becomes an Allowed Claim, and (b) unless determined otherwise by the PE Creditor Trust in its sole and absolute discretion, no distribution shall be made to any Person that holds both an Allowed Claim and either a Disputed Claim or an Estimated Claim until such Person's Disputed Claims and Estimated Claims have been resolved by settlement or Final Order.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

### 6.5.3 Objection Deadline.

The PE Creditor Trust shall File all objections to Disputed Claims, and shall File all motions to estimate Claims under Section 502(c) of the Bankruptcy Code, on or before the Claims Objection Deadline.

### 6.5.4 Disputed and Estimated Claims Reserve.

On and after the Effective Date, the PE Creditor Trust may maintain in reserve such Cash as the PE Creditor Trust estimates to be reasonably necessary to satisfy the distributions required to be made under the Plan if each Disputed Claim and Estimated Claim against the Debtor becomes an Allowed Claim against the Debtor.

### 6.5.5 Settling Disputed Claims.

The PE Creditor Trust shall be authorized to settle, or withdraw any objections to, any Disputed Claims following the Effective Date pursuant to procedures as may be authorized by the Bankruptcy Court or as otherwise expressly provided in this Plan.

**6.6    Distributions in Cash.**  The PE Creditor Trust shall make any required Cash payments to the holders of Allowed Claims: (X) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the PE Creditor Trust in its sole discretion, or by wire transfer from a domestic bank, at its option, and (Y) by first-class mail (or by other equivalent or superior means as determined by the PE Creditor Trust).

**6.7    Unclaimed Distributions.**  Any entity which fails to claim any Cash within one hundred twenty (120) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the PE Creditor Trust will be authorized to cancel any distribution that is not timely claimed.  Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) will revert to the PE Creditor Trust, free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Notwithstanding any federal or state escheat laws to the contrary, upon forfeiture, the claim of any Creditor with respect to such funds will be forever barred, and neither such Creditors nor any other entity will have any claim whatsoever with respect to such forfeited distribution against the Debtor

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

and the PE Creditor Trust or any holder of an Allowed Claim to whom distributions are made by the PE Creditor Trust.

**6.8    Setoff.**  Nothing contained in this Plan shall constitute a waiver or release by the Debtor of any right of setoff or recoupment the Debtor may have against any Creditor.  To the extent permitted by applicable law, the PE Creditor Trust or its successor(s) under the Plan may, but is not required to, set off or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Debtor may have against the holder of such Claim or Interest.

**6.9    Taxes.**  Pursuant to Section 346(f) of the Bankruptcy Code, the PE Creditor Trust shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  The PE Creditor Trust shall be authorized to take all actions necessary to comply with applicable withholding and recording requirements. Notwithstanding any other provision of this Plan, each holder of an Allowed Claim that has received a distribution of Cash shall have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such distribution.  For tax purposes, distributions received in respect of Allowed Claims shall be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

**6.10    *De Minimis* Distributions.**  If any interim distribution under the Plan to the holder of an Allowed Claim would be less than $100.00, the PE Creditor Trust, as applicable, may withhold such distribution until a final distribution is made to such holder.  If any final distribution under the Plan to the holder of an Allowed Claim would be less than $25.00, the PE Creditor Trust may cancel such distribution.  Any unclaimed distributions pursuant to this Section shall be treated as unclaimed property under Section 6.7 of the Plan.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES ,  CALIFORNIA

**6.11    Fractional Distributions.**  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made.  Whenever any distribution of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding down of such fraction to the nearest whole cent.

## ARTICLE 7

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1    Assumption/Assignment.**  On the Effective Date, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Debtor shall (i) assume, assign and sell to the Purchaser the Designated Contracts and (ii) assume executory contracts and unexpired leases of the Debtor that have been expressly identified in the Plan Supplement (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Debtor prior to the Effective Date).

**7.2    Rejection.**  Except as set forth in Section 7.1, on the Effective Date, pursuant to Section 1123(b)(2) of the Bankruptcy Code, the Debtor shall reject any and all executory contracts and unexpired leases of the Debtor, including, without limitation, those executory contracts and unexpired leases expressly identified for rejection in the Plan Supplement (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Debtor prior to the Effective Date).  Any Person asserting any Claim for damages arising from the rejection of an executory contract or unexpired lease of the Debtor under this Plan, excluding any Settling Auto Dealers and Other Settling Creditor, shall File such Claim on or before the Rejection Claim Bar Date, or be forever barred from: (a) asserting such Claim against the Debtor, the PE Creditor Trust, the Estate Assets, or the Purchaser, and (b) sharing in any distribution under the Plan.

**7.3    Cure Claims.**  The Purchaser shall satisfy all Cure Claims with respect to the Designated Contracts in order for the Debtor to assume and assign such contracts to the Purchaser under Section 365 of the Bankruptcy Code, if any, by making a Cash payment in the manner provided in Section 2.3.2 of the Plan, equal to the amount specified in the Notice of Potential Designated Contracts, <u>unless</u> an objection to such proposed amount is Filed with the Bankruptcy Court and served on Debtor's counsel and Purchaser's counsel on or prior to the date set forth in the Notice of Potential Designated Contracts, and the Bankruptcy Court, after notice and hearing,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  determines that the Debtor or the Purchaser is obligated to pay a different amount under Section 365

2  of the Bankruptcy Code, <u>in which case</u>, the Purchaser shall have the right to remove the applicable

3  contract or lease from designation as a Designated Contract, and the Debtor shall have the right

4  within ten (10) days after the Purchaser determines that such contract or lease shall be an Excluded

5  Contract to seek an order of the Bankruptcy Court rejecting such executory contract or unexpired

6  lease.  Any Person that fails to timely object to the Cure Claims specified in the Notice of Potential

7  Designated Contracts shall be forever barred from: (a) asserting any other, additional or different

8  amount on account of such obligation against Purchaser, the PE Creditor Trust, the Debtor or the

9  Estate Assets, and (b) sharing in any other, additional or different distribution under the Plan on

10  account of such obligation.

11      **7.4      Effect of Confirmation Order.**  The Confirmation Order shall constitute an order of

12  the Bankruptcy Court approving, as of the Effective Date, the assumption, assignment, and sale, or

13  rejection (as applicable) by the Debtor, pursuant to Sections 363, 365 and 1123(b)(2) of the

14  Bankruptcy Code, of all executory contracts and unexpired leases identified under this Article 7 of

15  the Plan.  The contracts and leases identified pursuant to the Plan shall be assumed, assigned, and

16  sold, or rejected, respectively, only to the extent that such contracts or leases constitute pre-petition

17  executory contracts or unexpired leases of the Debtor, and the identification of such agreements in

18  the Notice of Potential Designated Contracts does not constitute an admission with respect to the

19  characterization of such agreements or the existence of any unperformed obligations, defaults, or

20  damages thereunder.  This Plan does not affect any executory contracts or unexpired leases that: (a)

21  have been assumed, rejected or terminated prior to the Confirmation Date, or (b) are the subject of a

22  pending motion to assume, reject or terminate as of the Confirmation Date.

23      **7.5      Post-Petition Agreements.**  Unless inconsistent with the provisions of the Plan, all

24  contracts, leases and other agreements entered into or restated by the Debtor on or after the Petition

25  Date, or previously assumed by the Debtor prior to the Confirmation Date (or the subject of a

26  pending motion to assume by the Debtor as of the Confirmation Date that is granted by the

27  Bankruptcy Court), which have not expired or been terminated in accordance with their terms, shall

28  be transferred to the PE Creditor Trust and be performed by the PE Creditor Trustee (or if

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

applicable, the Purchaser pursuant to the APA) in the ordinary course of business and shall survive and remain in full force and effect following the Effective Date.

## ARTICLE 8

## CONDITIONS PRECEDENT

**8.1    Conditions to Confirmation.**

The following are conditions precedent to confirmation of this Plan:

**(a)    The Bankruptcy Court shall have entered a Final Order approving a Disclosure Statement with respect to this Plan in form and substance satisfactory to the Debtor;**

**(b)    The Confirmation Order shall include the provisions contained in the Sale Order, as modified to reflect the Sale Transaction under the Plan, and otherwise be in a form and substance reasonably acceptable to the Debtor and SMC; and**

(c)    Approval of substantially all of the Auto Dealer Letter Agreements by the Bankruptcy Court to the satisfaction of the Debtor, SMC and the Purchaser.

**8.2    Conditions to Effectiveness.**

The following are conditions precedent to the occurrence of the Effective Date:

**(a)    The Confirmation Date shall have occurred;**

**(b)    The Confirmation Order shall be a Final Order;**

**(c)    Except to the extent that the DIP Lender may agree to less favorable treatment and, except to the extent constituting a Purchaser Assumed Liability, to the extent not previously paid by the Debtor, any and all claims of, and any other amounts that may be due and payable to, the DIP Lender arising under and pursuant to the DIP Financing/Cash Collateral Order and DIP Financing Agreement shall have been paid or otherwise satisfied by the Debtor;**

**(d)    The Debtor shall have received any authorization, consent, regulatory approval, ruling, letter, opinion or other documents that may be necessary to implement this Plan or that is required by any law, regulation or order;**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(e)    The conditions to the closing of the APA shall have been satisfied or waived in accordance with the terms of the APA; and

(f)    The Debtor-SMC Settlement Consideration, the SMC Settlement Payment and the SMAI Payment have been paid to the Debtor.

**8.3    Waiver of Conditions.**  Conditions to Confirmation and the Effective Date as set forth above may be waived, in whole or in part, by the Debtor, and solely in respect to the conditions set forth in Section 8.1(b), 8.1(c), 8.2(a) through (e), the Debtor, SMC and the Purchaser may waive said condition in their respective discretion, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

**ARTICLE 9**

**EFFECTS OF CONFIRMATION, RELEASES, EXCULPATION AND
RELATED PROVISIONS**

**9.1    Property Revests Free and Clear.**

Upon the Effective Date, title to all remaining Excluded Assets shall vest in the PE Creditor Trust as provided in the Plan for the purposes contemplated under the Plan and shall no longer constitute property of the Debtor's Estate.  Except as otherwise provided in the Plan, upon the Effective Date, all Estate Assets shall be free and clear of all Claims and Interests, including Liens, charges or other encumbrances of Creditors of the Debtor.  Notwithstanding the foregoing, SMC shall retain its Liens on the assets transferred to the PE Creditor Trust, pursuant to the Pre-Petition Loan and Security Agreement until SMC's Secured Claims have been satisfied in full or such assets have been disposed of by the PE Creditor Trust; provided that to the extent such assets are disposed of by the PE Creditor Trust prior to SMC's Secured Claims having been satisfied in full, SMC's Liens shall attach to the proceeds of such assets with the same validity, extent and priority as existed prior to the disposition of such assets.

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS ANGELES , CALIFORNIA

**9.2      Releases Implemented by the Auto Dealer Related Settlements.**  For the avoidance of doubt, nothing herein is intended to limit, affect or otherwise modify the releases set forth in and implemented by the Auto Dealer Letter Agreements and the SMC  Participation Agreements.

**9.3      Releases by Members of Class 4 making the Settlement Election.**  As provided in Section 4.6.3 hereof, holders of Class 4 Other General Unsecured Creditor Claims shall, in order to make the Settlement Election and receive treatment as an Other Settling Creditor, provide the Class 4 Release.

**9.4      Release by Debtor of SMC and Related Parties.**  Pursuant to Section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, the Debtor, the PE Creditor Trust and the Estate, for themselves and their respective successors and assigns (including a chapter 11 or chapter 7 trustee), shall conclusively, absolutely, unconditionally, irrevocably and forever release and discharge SMC and its successors, assigns, subsidiaries and affiliates, and each of the foregoing party's respective current and former Agents, from any and all claims, obligations, rights, suits, damages, causes of action, and liabilities, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, arising prior to the Effective Date including, without limitation, any claims under any contract, agreement or memorandum of understanding between the Debtor and SMC including the April 1990 MOU (which is rescinded as between SMC and the Debtors as of the Effective Date of the Plan).  The Debtor, the PE Creditor Trust and the Estate, for themselves and their respective successors and assigns (including a chapter 11 or chapter 7 trustee) acknowledge that they are familiar with California Civil Code section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

The Debtor, the PE Creditor Trust and the Estate, for themselves and their respective successors and assigns (including a chapter 11 or chapter 7 trustee), waive and relinquish all rights and benefits that each party has or may have under California Civil Code section 1542 or any similar law; each such party expressly assumes the risk that the facts or law may be different than it now believes them to be, and each party agrees that this release shall be effective notwithstanding any such differences.

The foregoing release provided in this Section 9.4 shall be in exchange for the payment by SMC of the Debtor-SMC Settlement Consideration to fund the GUC Fund, and the waiver by SMC of any right to share or any interest in the GUC Fund Distribution with respect to the SMC General Unsecured Claims. For the avoidance of doubt, SMC shall be entitled to receive and retain any distribution to it in its capacity as a Participation Party and on account of its SMC Subrogation Rights.  Notwithstanding anything in this section to the contrary, claims, obligations, rights, suits, damages, causes of action and liabilities against SMC's subsidiaries and affiliates and their current and former Agents shall not be released to the extent (and solely to the extent) that such claims, obligations, rights, suits, damages, causes of action and liabilities constitute Purchased Assets.

**9.5    Exculpation.**

**The Exculpated Parties shall not have nor shall they incur any liability to any Person for any act taken or omission made in connection with or in any way related to negotiating, formulating, implementing, confirming, consummating or administering the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with or related to the Plan or the Chapter 11 Case, including, without limitation, relating to the powers and duties conferred upon the Exculpated Parties by the Plan, or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or any other act taken or omission made in connection with the Chapter 11 Case; provided that the foregoing provisions of this Section shall have no effect on the liability of any Exculpated Parties that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.  Notwithstanding anything in the Plan to the contrary, no Person serving as the PE Creditor Trustee shall have or incur any personal liability as the shareholder, director or officer of the Debtor or PE Creditor Trust for any act taken or omission made in connection with the wind-up or dissolution of the Debtor, the PE Creditor Trust or any nondebtor subsidiary or affiliate, except for any personal liability of such Person that would not have resulted but for an act or omission of such Person that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

**9.6    Order in Aid of Plan Provisions.**

**On and after the Effective Date, no Person who has held, holds or may hold Claims against the Debtor or Interests in the Debtor may, with respect to any such Claims or Interests, pursue rights and/or take actions against the PE Creditor Trust or its property on account of such Claims or Interests other than as expressly provided in the Plan unless otherwise ordered by the Bankruptcy Court for cause shown. Specifically, Persons holding Claims against and Interests in the Debtor are prohibited from the Effective Date until the date that the PE Creditor Trust is terminated or it otherwise ceases to exist: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the PE Creditor Trust, the Estate, or the PE Creditor Trustee or any of their property on account of such Person's Claim or Interest;  (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Persons, including, without limitation, the PE Creditor Trust and the PE Creditor Trustee, with respect to such Person's Claim or Interest; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Persons, including, without limitation, the PE Creditor Trust and PE Creditor Trustee, on account of such Person's Claim or Interest; (d) asserting any right of setoff, of any kind, directly or indirectly, against any obligation due the Debtor or the Estate, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, including, without limitation, the PE Creditor Trust and PE Creditor Trustee on account of such Person's Claim or Interest; and (e) taking any action in any place and in any manner whatsoever to enforce a Claim against or pursue an Interest in the Debtor, that does not conform to or comply with the provisions of the Plan. Notwithstanding the foregoing, nothing**

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

**in this Section shall prohibit any Person from enforcing the terms of this Plan or the Confirmation Order in the Bankruptcy Court or from seeking relief from this provision from the Bankruptcy Court for cause shown.**

     **9.7**    **Sale Free and Clear Provisions – Effects of No Successor Liability as to Purchaser.**

     **Notwithstanding Section 9.6 hereof, pursuant to Sections 363(f) and 1141(c) of the Bankruptcy Code, effective upon the closing of the Sale Transaction, all Persons are forever prohibited and enjoined from taking any action against the Purchaser based on successor liability, including commencing or continuing any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser with respect to any liens, claims, encumbrances and interests against the Debtor or the Debtor's property.  Subject to payment of the Cure Claims, if any, with respect to each Designated Contract, each of the non-Debtor parties thereto is barred, estopped and permanently enjoined from asserting against the Purchaser any defaults, breaches or claims of pecuniary loss based upon facts existing as of the closing of the Sale Transaction, by reason of the closing, or by reason of the Debtor's financial condition.**

     **9.8**    **Third-Party Non-Estate Claims Against SMC**.

     Other than as set forth in Section 9.5 of the Plan, releases provided to SMC pursuant to the Auto Dealer Letter Agreements, releases provided to SMC pursuant to the SMC Participation Agreements, the Class 4 Release and any other consensual release provided to SMC by a third party, nothing in the Plan is intended to release claims held solely by third parties against SMC (e.g., not Estate Causes of Action and Defenses).

**ARTICLE 10**

**RETENTION OF JURISDICTION**

     Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date to the extent legally permissible, including, without limitation, jurisdiction to:

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS   AT  LAW
LOS  ANGELES , CALIFORNIA

(a) **Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims, and the resolution of any claim objections brought by the Debtor, the PE Creditor Trust, the Purchaser, or SMC;**

(b) **Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;**

(c) **Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;**

(d) **Ensure that distributions to holders of Allowed Claims are accomplished in accordance with the Plan;**

(e) **Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;**

(f) **Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;**

(g) **Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;**

(h) **Modify the Plan before or after the Effective Date under Section 1127 of the Bankruptcy Code or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract,**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

instrument, release, or other agreement or document created in connection with the Plan and the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(j)    Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(k)    Enforce the Confirmation Order, including, without limitation the injunctive and other provisions providing for the sale free and clear of the Purchased Assets;

(l)    Hear and determine Retained Claims and/or Defenses commenced by the Debtor or PE Creditor Trust to the extent the Bankruptcy Court otherwise has jurisdiction over such claims;

(m)    Hear and determine any and all retained Claims commenced by the Debtor or PE Creditor Trust to the extent the Bankruptcy Court otherwise has jurisdiction over such claims;

(n)    Enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan; and

(o)    Enter an order closing the Chapter 11 Case at the appropriate time.

## ARTICLE 11

## AMENDMENT AND WITHDRAWAL OF PLAN

**11.1    Amendment of the Plan.**  At any time before the Confirmation Date, the Debtor may, with the consent of SMC and the Purchaser, alter, amend, or modify the Plan, subject only to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

1    Rule 3019.  After the Confirmation Date, the Debtor or the PE Creditor Trust may, under Section

2    1127(b) of the Bankruptcy Code, and with the consent of SMC and the Purchaser, institute

3    proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any

4    inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, or as otherwise

5    may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do

6    not materially and adversely affect the treatment of holders of Claims under the Plan; provided,

7    however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy

8    Rules or applicable order of the Bankruptcy Court.

9        **11.2    Revocation or Withdrawal of the Plan.**  The Debtor reserves the right, in

10    consultation with SMC and the Purchaser, to revoke or withdraw this Plan.  If the Plan is withdrawn

11    or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be

12    deemed a waiver of any Claims by or against the Debtor or any other Person in any further

13    proceedings involving the Debtor or an admission of any sort, and this Plan and any transaction

14    contemplated by this Plan shall not be admitted into evidence in any proceeding.

15                                **ARTICLE 12**

16                                **MISCELLANEOUS**

17        **12.1    Effectuating Documents; Further Transactions; Timing.**  The Debtor, the PE

18    Creditor Trust, the PE Creditor Trustee, the Purchaser, SMC and their respective Agents shall be

19    authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and

20    other agreements or documents, and to take such actions as may be necessary or appropriate to

21    effectuate and further evidence the terms and conditions of the Plan.  All transactions required to

22    occur on the Effective Date under the terms of the Plan shall be deemed to have occurred

23    simultaneously.

24        **12.2    Exemption From Transfer Taxes.**  In accordance with Section 1146(c) of the

25    Bankruptcy Code, the making, delivery, or recording of a deed or other instrument of transfer under

26    this Plan shall not be subject to any stamp tax or similar tax and the appropriate state or local

27    government officials or agents shall be directed to forego the collection of any such tax and to accept

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1  for filing or recordation any of the foregoing instruments or other documents without the payment of

2  any such tax.

3  **12.3    Non-Voting Equity Securities**.  If and to the extent applicable, the Debtor shall

4  comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

5  **12.4    Governing Law.**  Except to the extent that the Bankruptcy Code or other federal law

6  is controlling, the rights, duties and obligations of the Debtor, the PE Creditor Trust, and any other

7  Person arising only under the Plan shall be governed by, and construed and enforced in accordance

8  with, the internal laws of the State of California, without giving effect to California's choice of law

9  provisions.

10  **12.5    Modification of Payment Terms.**  The PE Creditor Trust may modify the treatment

11  of any Allowed Claim or Interest in any manner adverse only to the holder of such Claim or Interest

12  at any time after the Effective Date upon the prior written consent of the Person whose Allowed

13  Claim or Interest treatment is being adversely affected.

14  **12.6    Provisions Enforceable.**  The Confirmation Order shall constitute a judicial

15  determination that each term and provision of this Plan is valid and enforceable in accordance with

16  its terms.

17  **12.7    Quarterly Fees to the U.S. Trustee.**  All fees payable under 28 U.S.C. § 1930(a)(6)

18  shall be paid by the Debtor in the amounts and at the times such fees may become due up to and

19  including the Effective Date.  Thereafter, the PE Creditor Trust shall pay all fees payable under 28

20  U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, dismissed or converted.  Upon the Effective

21  Date, the PE Creditor Trust shall be relieved from the duty to make the reports and summaries

22  required under Bankruptcy Rule 2015(a).  Notwithstanding the foregoing, the PE Creditor Trust

23  shall File and serve the status reports required by Local Bankruptcy Rule 3020-1(b) at such times

24  and for such period as may be set forth in the Confirmation Order.

25  **12.8    Timing of Payment.**  Whenever any payment or distribution to be made under the

26  Plan is due on a day other than a Business Day, such payment or distribution may instead be made,

27  without interest, on the immediately following Business Day.

28

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS    AT  LAW
LOS  ANGELES ,  CALIFORNIA

**12.9    Reservation of Rights.**  Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved.  In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without the Chapter 11 Case involving the Debtor, except with respect to Confirmation of the Plan.  The Debtor reserves the right to amend or modify the Plan including the right to merge any Class or Classes of Claims under the Plan.

**12.10   Notice of Confirmation.**  As soon as practicable following the Effective Date of the Plan, the PE Creditor Trust shall File and serve a notice of the entry of the Confirmation Order in the manner required under Bankruptcy Rule 2002(f).  The notice shall further identify the Effective Date and shall set forth the Administrative Claim Bar Date, the Professional Fees Bar Date, the Rejection Claims Bar Date and any other deadlines that may be established under the Plan or the Confirmation Order.

**12.11   Successors and Assigns.**  The Plan is binding upon and shall inure to the benefit of the Debtor, the PE Creditor Trust, and each of their respective Agents, successors, and assigns, including, without limitation, any bankruptcy trustees or estate representatives.

**12.12   Notices to Debtor and PE Creditor Trust.**  Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan shall be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (a) the first business day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service; or (b) the third calendar day after deposit in the United States mail, with proper first class postage prepaid, to be addressed as follows:

To the Debtor:

PACHULSKI  STANG  ZIEHL  &  JONES  LLP
ATTORNEYS  AT  LAW
LOS ANGELES , CALIFORNIA

American Suzuki Motor Corporation

321 E. Imperial Highway

Brea, CA  92821-67222

Attention: Takashi Iwatsuki

Facsimile: (714) 996-4545

with a copy to:

Richard Pachulski, Esq.

James I. Stang, Esq.

Linda F. Cantor, Esq.

Pachulski Stang Ziehl & Jones LLP

10100 Santa Monica Boulevard, 13th Floor

Los Angeles, California 90067

Facsimile:  310-201-0760

To the PE Creditor Trust / PE Creditor Trustee:

M. Freddie Reiss

FTI Consulting, Inc.

633 West 5th Street, Suite 1600

Los Angeles, CA  90071

Facsimile: (213) 452-6099

To the Committee:

Irell & Manella LLP
Jeffrey M. Reisner, Esq.
Kerri A. Lyman, Esq.
840 Newport Center Dr., Suite 400
Newport Beach, California  92660
Facsimile: 949-760-5200

Counsel to SMC and the Purchaser:


Klee, Tuchin, Bogdanoff & Stern LLP

1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:    (310) 407-9090
Attn:   Michael L. Tuchin, Esq.

**12.12.1**          **Notice to Claim and Interest Holders.**  Notices to Persons holding

a Claim or Interest shall be sent to the addresses set forth in such Person's proof of Claim or Interest

or, if none was Filed, at the address set forth in the Schedules.

**12.12.2**          **Post-Effective Date Notices.**  Following the Effective Date, notices

shall   only be served on the PE Creditor Trust, the U.S. Trustee and those Persons who File with the

Court and serve upon the PE Creditor Trust a request, which includes such Person's name, contact

person, address, telephone number and facsimile number, that such Person receive notice of post-

Effective Date matters.  Persons who had previously Filed with the Court requests for special notice

of the proceedings and other filings in the Chapter 11 Case shall not receive notice of post-Effective

Date matters unless such Persons File a new request in accordance with this Section.

**12.13   Incorporation by Reference.**  All exhibits, schedules and supplements to the Plan

are incorporated and are made a part of the Plan as if set forth in full in the Plan.

**12.14   Computation of Time.**  In computing any period of time prescribed or allowed by

the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Any reference to "day" or "days"

shall mean calendar days, unless otherwise specified herein.

**12.15   Conflict of Terms.**  In the event of a conflict between the terms of this Plan and the

Disclosure Statement, the terms of this Plan shall control.  In the event of a conflict between the

terms of this Plan and the APA in any respect relating to the Sale Transaction, the terms of the APA

shall control, provided that the Confirmation Order shall control over both the Plan and the APA.

PACHULSKI  STANG  ZIEHL  & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

**12.16  Severability of Plan Provisions.**  If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Dated:    March 1, 2013                    AMERI

By:    _____
          M. Freddie Reiss
          Chief Restructuring Officer

Respectfully submitted by,

PACHULSKI STANG ZIEHL
    & JONES LLP

By:    _/s/ Linda F. Cantor_____
          Richard M. Pachulski
          James I. Stang
          Debra Grassgreen
          Linda F. Cantor
          Attorneys for Debtor and Debtor in Possession

PACHULSKI  STANG  ZIEHL  & JONES  LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

# **EXHIBIT A**

**SECOND AMENDED AND RESTATED**

**ASSET PURCHASE AGREEMENT**

by and between

**SUZUKI MOTOR OF AMERICA, INC.
f/k/a NOUNCO, INC.,**

as Purchaser,

and

**AMERICAN SUZUKI MOTOR CORPORATION,**

as Seller

# TABLE OF CONTENTS

**Page(s)**

1. Transfer of Assets ......................................................................................................... 2

    1.1    Purchase and Sale of Assets ............................................................................ 2

    1.2    Excluded Assets ................................................................................................ 3

    1.3    Contracts ........................................................................................................... 5

2. Consideration ................................................................................................................. 6

    2.1    Purchase Price .................................................................................................. 6

    2.2    Deposit .............................................................................................................. 6

    2.3    Adjustment of Closing Cash Purchase Price ................................................. 7

    2.4    [Reserved] ......................................................................................................... 8

    2.5    Assumed Liabilities ......................................................................................... 8

    2.6    Excluded Liabilities ......................................................................................... 9

    2.7    Payment of Cure Amounts .............................................................................. 9

    2.8    Pro-Rations ....................................................................................................... 9

    2.9    Intentionally Omitted .................................................................................... 10

3. Closing Transactions ................................................................................................... 10

    3.1    Closing ............................................................................................................ 10

    3.2    Seller's Deliveries to Purchaser at Closing................................................. 10

    3.3    Purchaser's Deliveries to Seller at Closing ............................................... 11

    3.4    Sales, Use and Other Taxes .......................................................................... 12

    3.5    Possession and Risk of Loss ......................................................................... 12

    3.6    Closing Date ................................................................................................... 13

4. Conditions Precedent to Closing ............................................................................... 13

    4.1    Conditions to Seller's Obligations ............................................................... 13

    4.2    Conditions to Purchaser's Obligations ....................................................... 14

5. Seller's Representations and Warranties................................................................... 15

    5.1    Organization ................................................................................................... 15

    5.2    Foreign Qualification .................................................................................... 15

    5.3    Due Authorization and Enforceability.......................................................... 15

    5.4    Approvals and Consents ................................................................................ 15

    5.5    No Conflict ...................................................................................................... 15

    5.6    Financial Statements ..................................................................................... 16

    5.7    Litigation ........................................................................................................ 16

    5.8    Compliance with Laws ................................................................................. 16

    5.9    Environmental Matters .................................................................................. 16

| | 5.10 | Business Permits | 17 |
|---|---|---|---|
| | 5.11 | Title to and Use of Property | 17 |
| | 5.12 | Assets Necessary to Conduct Acquired Business | 17 |
| | 5.13 | Real Property | 17 |
| | 5.14 | Warranty Programs | 17 |
| | 5.15 | Intellectual Property | 18 |
| | 5.16 | Other Personal Property | 18 |
| | 5.17 | Employees and Labor Relations | 18 |
| | 5.18 | [Reserved] | 19 |
| | 5.19 | Broker's or Finder's Fees | 19 |
| 6. | | Purchaser's Warranties and Representations | 19 |
| | 6.1 | Organization | 19 |
| | 6.2 | Due Authorization and Enforceability | 19 |
| | 6.3 | No Conflict | 19 |
| | 6.4 | Financial Resources | 19 |
| | 6.5 | SMC Secured Claim | 19 |
| | 6.6 | Broker's or Finder's Fees | 20 |
| 7. | | "AS IS" Transaction | 20 |
| 8. | | Bankruptcy Court and Other Approvals | 20 |
| 9. | | Commercially Reasonable Efforts | 22 |
| 10. | | Certain Covenants | 22 |
| 11. | | Expense Reimbursement | 26 |
| 12. | | Employee Matters | 26 |
| 13. | | Termination | 27 |
| | 13.1 | Termination by Mutual Consent | 27 |
| | 13.2 | Termination by Either Purchaser or Seller | 28 |
| | 13.3 | Termination by Seller | 28 |
| | 13.4 | Termination by Purchaser | 28 |
| | 13.5 | Effect of Termination | 29 |
| | 13.6 | Notification of Certain Events | 29 |
| 14. | | Post-Closing Matters | 29 |
| | 14.1 | Use of Marks | 29 |
| | 14.2 | Further Conveyances and Assumptions | 29 |
| | 14.3 | Reasonable Access to Records | 30 |
| | 14.4 | Duties of Creditor Trust | 30 |
| 15. | | Miscellaneous | 30 |

15.1    Attorneys' Fees ...................................................................................................... 30

15.2    Notices ................................................................................................................... 30

15.3    Entire Agreement ................................................................................................... 31

15.4    Modification ........................................................................................................... 31

15.5    Severability ............................................................................................................ 32

15.6    Captions ................................................................................................................. 32

15.7    Waiver .................................................................................................................... 32

15.8    Payment of Fees, Costs and Expenses .................................................................... 32

15.9    Survival .................................................................................................................. 32

15.10   Assignments ........................................................................................................... 32

15.11   Binding Effect ........................................................................................................ 32

15.12   Applicable Law ...................................................................................................... 33

15.13   Construction ........................................................................................................... 33

15.14   CONSENT TO JURISDICTION ............................................................................ 33

15.15   Counterparts ........................................................................................................... 33

15.16   Non-Recourse ......................................................................................................... 33

15.17   Time is of the Essence ........................................................................................... 34

15.18   Interpretation and Rules of Construction ............................................................... 34

15.19   Third Party Beneficiaries ....................................................................................... 34

15.20   Liquidated Damages as Sole Remedy of Seller ...................................................... 34

15.21   Liquidated Damages as Sole Remedy of Purchaser ................................................ 35

15.22   Final Orders ........................................................................................................... 35

16.     Definitions ............................................................................................................. 35

**EXHIBITS**

A Assignment and Assumption of Real Property Lease
B Assignment and Assumption of Contracts
C Assignment of Intangible Property Assets
D Bill of Sale and Assignment
E [Reserved]
F Assumption Agreement
G Sale Motion and Order
H Procedures Order

**SCHEDULES[4]**

Schedule 1.1(a) Purchased Assets--Real Property
Schedule 1.2(a) Retained Auto Business Assets
Schedule 1.2(b) Retained Surplus Real Property

Schedule 2.5 Assumed Scheduled Liabilities
Schedule 5.4 Seller's Required Approvals
Schedule 5.7 Litigation
Schedule 5.10 Business Permits
Schedule 5.13(a) Owned Real Property
Schedule 5.13(b) Leased Real Property
Schedule 5.14 Warranty Programs
Schedule 5.15(a) Marks
Schedule 5.15(d) Domain Names
Schedule 5.16(a) Equipment
Schedule 5.17(d) COBRA Beneficiaries

---

1. [4] All Schedules to be delivered by Seller pursuant to Section 10.8 of this Agreement.

# SECOND AMENDED AND RESTATED
# ASSET PURCHASE AGREEMENT

This Second Amended and Restated Asset Purchase Agreement (this "***Agreement***") is made and entered into as of February __, 2013 by and between American Suzuki Motor Corporation, a California corporation ("***Seller***"), and Suzuki Motor of America, Inc., a California corporation f/k/a NounCo, Inc. ("***Purchaser***").   In this Agreement, Seller and Purchaser are collectively referred to as the "***Parties***."  Capitalized terms used in this Agreement are intended to have the meanings given to such terms in Section 16 hereof.

## RECITALS

The Parties hereby acknowledge that:

A.    Purchaser is a newly organized, wholly-owned subsidiary of Suzuki Motor Corporation, a Japanese corporation ("***SMC***").  SMC is engaged in the manufacture and sale of Suzuki Products worldwide.

B.    Seller, also a wholly-owned subsidiary of SMC, is engaged in three distinct business lines in the U.S. Territory:  (i) the distribution and sale of Suzuki Automotive Products (such business line, the "***Auto Sales Business***"), (ii) the servicing of Suzuki Automobiles, including any warranty work, and the sale of parts in connection with such servicing (such business line, the "***Auto Servicing Business***"), (iii) the distribution, sale and servicing of Suzuki Motorcycle Products and Suzuki ATV Products (such businesses, collectively, the "***Motorcycle/ATV Business***"), and (iv) the distribution, sale and servicing of Suzuki Marine Products (such business, the "***Marine Business***").   In this Agreement, (a) the Auto Sales Business and the Auto Servicing Business is referred to as the "***Auto Business***," (b) the Auto Business, the Motorcycle/ATV Business and the Marine Business collectively are referred to as the "***Business***," and (c) the Auto Servicing Business, the Motorcycle/ATV Business and the Marine Business collectively are referred to as the "***Acquired Business***."

C.    On November 6, 2012 (the "***Original Execution Date***"), the Parties entered into that certain Asset Purchase Agreement dated as of the Original Execution Date (the "***Original Agreement***") and Seller filed a voluntary petition (the "***Petition***") for relief under Chapter 11 of Title 11 of the United States Code, 11, U.S.C. Sections 101 *et seq*. (the "***Bankruptcy Code***") in the United States Bankruptcy Court Central District of California (the "***Bankruptcy Court***"), commencing a federal bankruptcy case in respect of Seller (such case, the "***Chapter 11 Case***").

D.    The Parties subsequently entered into that certain Amended and Restated Asset Purchase Agreement, dated as of November 19, 2012 (the "***Amended Agreement***"), which Amended Agreement amended and restated the Original Agreement in its entirety.

E.    Seller wishes to sell to Purchaser, and Purchaser wishes to purchase from Seller, certain of the assets and properties of Seller relating to the Acquired Business, and Seller wishes to assume, assign and sell to Purchaser, and Purchaser wishes to purchase from Seller, certain executory contracts and unexpired leases pursuant to the terms hereof, all in the manner and subject to the terms and conditions set forth herein (such transactions, the "***Contemplated Transactions***").  The Contemplated Transactions are intended to be treated as a reorganization with the meaning of Section 368(a) of the Internal Revenue Code.

F.    The Parties intend that this Agreement amend and restate in its entirety the Amended Agreement as set forth herein.

# AGREEMENT

In consideration of their respective covenants set forth herein, the Parties agree as follows:

<u>Transfer of Assets</u>.

<u>Purchase and Sale of Assets</u>.   On the Closing Date and on the terms and conditions hereinafter set forth, Seller shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase, acquire, accept and receive from Seller, free and clear of all Encumbrances (other than Permitted Encumbrances), all of Seller's right, title and interest as of the Closing Date in and to all of its assets and properties arising out of, relating to or used in connection with the Acquired Business, other than any Excluded Assets (such assets and properties other than Excluded Assets, the "***Purchased Assets***"), including:

all real property owned by Seller, whether or not used in connection with the Acquired Business, including the parcels identified on <u>Schedule 1.1(a),</u> but, for avoidance of doubt, excluding Retained Real Property;

all real property leased by Seller and related Leasehold Improvements, whether or not used in connection with the Acquired Business, provided that any Real Property Lease not listed on Exhibit B to the Plan Supplement as of the Contract Designation Deadline shall be an Excluded Contract (in which case such Real Property Lease and all real property and Leasehold Improvements related thereto shall be deemed an Excluded Asset);

all Equipment;

all Inventory of Seller (for avoidance of doubt, other than Suzuki Automobiles) held for sale in, or for use in connection with any sale in, the Acquired Business, and all rights of Seller to take delivery of any such Inventory ordered by Seller before the Closing Date, which Inventory has not been delivered as of the Closing Date;

all Receivables, provided that any Receivable that arises out of a Seller's Contract not listed on Exhibit B to the Plan Supplement as of the Contract Designation Deadline shall be an Excluded Contract (in which case any such Receivable shall be deemed an Excluded Asset);

the collective bargaining agreement for the Represented Employees and all Service and Parts Agreements, including any prepaid expenses and any security or other deposit thereunder held by any third party thereto;

all Seller's Contracts (other than the Seller's Contracts identified in <u>Section 1.1(f)</u> hereof), including any prepaid expenses thereunder and any security or other deposit held by any third party pursuant thereto, provided such Seller's Contract is a Purchased Contract;

all prepaid expenses, refunds, rebates, credits or payments due, and all utilities or other deposits with third parties, arising out of or related to the Acquired Business, including refunds with respect to Taxes paid by or on behalf of Seller and refunds of Transfer Taxes included within the Assumed Liabilities;

to the extent transferable and assignable, all Intangible Property Assets;

to the extent transferable and assignable, all of Seller's interest in all Business Permits relating to the Facilities, including those described on <u>Schedule 5.10</u>;

all securities and other ownership interests issued by SMAC;

all Avoidance Actions arising out of or related to the Purchased Assets or the Acquired Business, including, without limitation, any such Avoidance Actions with respect to vendors, employees, landlords, suppliers, customers and other counterparties (and their respective agents, representatives, advisors and counsel) of Seller arising out of or related to the Purchased Assets, the Assumed Liabilities or the Acquired Business;

all Claims relating to any of the Purchased Assets, the Assumed Liabilities or the Acquired Business,

[reserved];

to the extent transferable and assignable, all of Seller's insurance policies and the proceeds thereof relating to the Purchased Assets or the Acquired Business (other than any directors' and officers' liability insurance policies and the proceeds thereof);

to the extent transferable and assignable, all rights of Seller under non-disclosure or confidentiality, non-compete, non-solicitation or similar agreements with any employee or agent of Seller or with any third party, other than any such rights of Seller to the extent pertaining solely to an Excluded Asset;

to the extent transferable and assignable, all rights of Seller under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors to the extent relating to any Equipment or Inventory (or components thereof) sold, or services provided, to Seller or to the extent affecting any Purchased Asset or the Acquired Business, other than any warranties, representations and guarantees to the extent pertaining solely to any Excluded Asset;

all rights to the telephone and facsimile numbers and e-mail addresses used by Seller, as well as rights to receive mail and other communications addressed to Seller (including mail and communications from customers, suppliers, distributors and agents); and

all other property and assets pertaining to or used or useful in the conduct of the Acquired Business or the ownership of the Purchased Assets.

<u>Excluded Assets</u>.  The Purchased Assets shall exclude all right, title or interest of Seller as of the Closing Date in or to any of the following (collectively, the "***Excluded Assets***"):

for the avoidance of doubt, other than as specifically set forth in <u>Section 1.2</u>, any assets or properties, whether tangible or intangible, real or personal, and including real property, Leasehold Improvements, Inventory, Equipment, Intangible Property, or otherwise, exclusively arising out of, relating to, or used in connection with the operation of the Auto Business, including Suzuki Automobiles and any other items identified in <u>Schedule 1.2(a)</u> (all such assets and properties, the "***Retained Auto Business Assets***");

the real property identified in <u>Schedule 1.2(b)</u> (all such properties, the "***Retained Real Property***");

any cash, cash equivalents (including certificates of deposit and other time deposits) and marketable securities, wherever located, other than any rebate, credit, or payment

due, or security, utilities or other deposits with third parties, relating to any of the Facilities or Purchased Contracts;

any depositary, checking or other accounts of Seller at any bank or financial institution;

all of Seller's tangible personal property, wherever located, together with all manufacturers' warranties pertaining to the same, that is subject to personal property leases that are not Assumed Contracts;

the Purchase Price and Seller's rights under this Agreement;

any Excluded Contracts, including any security or other deposit, refund, rebate, credit or payment due to Seller thereunder;

any Inventory of Seller that is not included within Section 1.1(d);

any Avoidance Actions exclusively arising out of or related to Excluded Assets;

[reserved];

any directors' and officers' liability insurance policies of Seller and the proceeds thereof;

any Claims exclusively arising out of, relating to, or reasonably necessary to enforce or enjoy the benefits of any Excluded Contract or Excluded Asset;

any Business Permits either (i) relating to the licensing or other statutory obligations of Seller relating to the Auto Dealers (provided, that any such Business Permits that relate to Auto Dealers subject to a Service and Parts Agreement assigned to, or entered into with, Purchaser shall, to the extent transferable and assignable, be Purchased Assets) or (ii) under applicable law not transferable or assignable to Purchaser at the Closing;

any Books and Records relating to any pre-Closing Period that Seller is under Legal Requirement to retain, including (i) Tax Returns, financial statements, and corporate or other Entity filings (*provided, however*, that Purchaser shall have the right to make copies of any portions of such retained Books and Records that relate to the Business or any of the Purchased Assets), (ii) minute books, stock ledgers, and stock certificates of Seller, and (iii) documents relating to proposals to acquire the Business by Persons other than Purchaser;

(i) any materials containing information about employees  disclosure of which is prohibited under applicable law, (ii) any materials containing information subject to any attorney-client, attorney work product or other applicable privilege in favor of Seller, (iii) any materials containing information disclosure of which by Seller to Purchaser would breach any contractual obligation of confidentiality to which Seller is subject, and (iv) any Intellectual Property Asset or Other Intangible Property, including but not limited to software, held by Seller pursuant to a license or other Seller's Contract where Purchaser does not assume the underlying Seller's Contract relating to such Intellectual Property Asset or Other Intangible Property at the Closing;

all assets of any Section 401(k) plan for Seller's employees; and

any item expressly excluded pursuant to the provisions of <u>Section 1.1</u> above.

<u>Contracts</u>.

On January 24, 2013, Seller delivered to Purchaser, and caused to be filed with the Bankruptcy Court, a Notice of Potential Designated Contracts that complies with <u>Section 10.8</u>, <u>Section 10.9</u> and <u>Section 10.10</u>. Seller served the Notice of Potential Designated Contracts on all counterparties to all Seller's Contracts set forth therein along with a notice specifically stating that Seller is or may be seeking the assumption, transfer, assignment and sale of such Seller's Contracts and shall notify such parties of the deadline for objecting to any Cure Costs listed in such Schedules and to the assignment of such Seller's Contracts to Purchaser, which objection deadline was February 14, 2013. In cases in which Seller is unable to establish that a default exists, the relevant Cure Cost shall be set at $0.00.

All of Seller's Contracts expressly identified in Exhibit B to the Plan Supplement (as defined in the Proposed Plan) shall be deemed to be Purchased Contracts as of the Contract Designation Deadline; <u>provided</u>, that for the avoidance of doubt, the Purchaser shall have the right to make additions, deletions, modifications or other revisions to the list of Purchased Contracts until the Contract Designation Deadline (in which case Seller shall file a further revised Exhibit B to the Plan Supplement). Any Seller's Contract not set forth on Exhibit B to the Plan Supplement as of the Contract Designation Deadline shall be deemed an Excluded Contract and an Excluded Asset and may be assumed, rejected or terminated by Seller in Seller's sole discretion.

Notwithstanding the foregoing,

(i)     so long as an Excluded Contract has not been rejected by Seller pursuant to Section 365 of the Bankruptcy Code, Seller shall, at any time, upon written request by Purchaser, assume, assign and sell such Excluded Contract to Purchaser or its designee for no additional consideration (other than any obligation of Purchaser under this Agreement to pay for Cure Costs relating thereto) and such Seller's Contract shall be deemed a Purchased Contract;

(ii)     if at any time Seller becomes aware, whether prior to or following the Closing Date, of any Seller's Contract that has not been included on the Notice of Potential Designated Contracts, Seller shall promptly thereafter advise Purchaser of the existence, and provide Purchaser with a copy, of such Seller's Contract and Purchaser thereupon shall have the right to request, by written notice to Seller within ten (10) Business Days, that Seller assume such Seller's Contract if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and assign and sell such Seller's Contract to Purchaser, in which case Seller shall use commercially reasonable efforts to assume such Seller's Contract if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and to assign and sell such Seller's Contract to Purchaser, as promptly as reasonably practicable, on the same terms and conditions as would be applicable under this Agreement to the Purchased Contracts, and without any increase in the Purchase Price, subject to any obligation of Purchaser under this Agreement to pay for Cure Costs relating thereto;

(iii)     to the extent that the Bankruptcy Court determines that the Cure Cost associated with a Seller's Contract set forth on the Notice of Potential Designated Contracts is in excess of the Cure Cost for such Seller's Contract as set forth on the Notice of Potential Designated Contracts, Purchaser shall be entitled to treat such Seller's Contract as an Excluded Contract and Seller shall not assume such Seller's Contract without Purchaser's consent;

(iv)    any Seller's Contract exclusively arising out of or relating to any Dealer of Suzuki Motorcycle Products, Suzuki Marine Products or Suzuki ATV Products whose dealership agreement has been terminated by Seller shall be deemed an Excluded Contract; and

(v)    any Seller's Contract that under the terms of this Agreement is deemed to be an Excluded Contract shall be considered as having been designated by Purchaser as an Excluded Contract in accordance with this Agreement.

As part of any (i) Sale Motion seeking Bankruptcy Court approval of the Sale Order Transaction or (ii) memorandum in support of Bankruptcy Court confirmation of the Plan Sale Transaction (the "*Plan Sale Transaction Pleadings*"), as applicable, Seller shall seek approval by the Bankruptcy Court of (i) the assumption on or before the Closing of all Seller's Contracts identified on Exhibit B to the Plan Supplement if assumption thereof is required under the Bankruptcy Code as a condition to assignment thereof and (ii) the transfer, assignment and sale by Seller to Purchaser of all such Seller's Contracts.

Consideration.

Purchase Price.    The purchase price for the Purchased Assets (the "*Purchase Price*") consists of (i) the assumption by Purchaser of the Assumed Liabilities and (ii) the payment by Purchaser of cash as specified in this Section 2.1.    The cash portion of the Purchase Price payable at the Closing shall be an amount equal to the sum of (A) Sixty-Five Million U.S. Dollars ($65,000,000.00) (the "*Base Purchase Price*") and (B) the Cost of Repurchased Dealer Inventory (such Cost of Repurchased Dealer Inventory, together with the Base Purchase Price, the "*Closing Cash Purchase Price*").    The Closing Cash Purchase Price shall be subject to adjustment as provided herein (as so adjusted, the "*Adjusted Cash Purchase Price*").

Deposit.    Purchaser hereby pledges, for the benefit of Seller and in accordance with the Procedures Order, a portion of Purchaser's secured Claim evidenced by the SMC Loan Agreement in an amount equal to Two Million Five Hundred Thousand U.S. Dollars ($2,500,000.00) (as deposited pursuant to this provision, the "*Deposit*").

At Closing, the Deposit shall be deemed cancelled and the full Closing Cash Purchase Price shall be paid.

Except as set forth in Section 2.2(a)(iii), if this Agreement terminates without a Closing the Deposit shall be deemed cancelled.

If this Agreement is terminated without a Closing by Seller pursuant to Section 13.3(a) or by Purchaser other than in accordance with this Agreement, the Deposit shall constitute a setoff against Purchaser's secured Claim evidenced by the SMC Loan Agreement.

Adjustment of Closing Cash Purchase Price.

(a)    The Adjusted Cash Purchase Price shall be determined based on the adjustments set forth in this Section 2.3.

(b)    After the Closing, Seller's Closing Date Net Asset Book Value shall be determined in the manner described in Section 2.3(c) and Section 2.3(d) below.    If, based on such procedures, (i) Seller's Closing Date Net Asset Book Value shall be more than $68,250,000, then the Closing Cash Purchase Price shall be increased by an amount equal to the full amount by which Seller's Closing Date Net Asset Book Value exceeds the Base Purchase Price and (ii) Seller's Closing Date Net Asset

Value shall be less than $61,750,000, then the Closing Cash Purchase Price shall be decreased by an amount equal to the full amount by which Seller's Closing Date Net Asset Book Value is less than the Base Purchase Price.

(i)    Within forty-five (45) calendar days after the Closing Date, Seller shall prepare and deliver to Purchaser a preliminary schedule setting forth Seller's calculation of Seller's Closing Date Net Asset Book Value (the "***Preliminary NABV Schedule***").    Such calculation shall be calculated as of the Closing Date and prepared in accordance with GAAP and, to the extent consistent therewith, on a basis consistent with the manner in which the Seller's financial Books and Records have been maintained.

(ii)    Purchaser shall have twenty-one (21) calendar days following receipt of the Preliminary NABV Schedule during which to notify Seller of any dispute of any item contained respectively therein, which notice shall set forth in reasonable detail the basis for such dispute.    Seller and Purchaser shall cooperate in good faith to resolve any such dispute as promptly as possible, and upon such resolution, the Final NABV Schedule shall be prepared in accordance with the agreement of Seller and Purchaser.    In the event Purchaser does not notify Seller of any such dispute within such twenty-one (21)-calendar day period or notifies Seller within such period that Purchaser does not dispute anything contained therein, the Preliminary NABV Schedule shall be deemed the Final NABV Schedule, and Seller's determination of the Seller's Closing Date Net Asset Book Value shall be final and binding upon the Parties.

(c)    In the event of a dispute between Purchaser and Seller regarding a Preliminary NABV Schedule (such schedule, a "***Disputed Schedule***"), the dispute shall be resolved in the following manner:

(i)    In the event Purchaser and Seller are unable to resolve any dispute regarding a Disputed Schedule within ten (10) calendar days following Purchaser's receipt of notice of such dispute, such dispute shall be submitted to, and all issues having a bearing on such dispute shall be resolved by PricewaterhouseCoopers LLP (the "***Arbitrator***").    In the event Purchaser and Seller are unable to resolve any dispute regarding the Disputed Schedule within two (2) calendar days following Purchaser's receipt of notice of such dispute, such dispute shall be submitted to, and all issues having a bearing on such dispute shall be resolved by the Arbitrator.

(ii)    In resolving any dispute, the Arbitrator shall consider only those items or amounts in the Disputed Schedule as to which Seller has disagreed.    The Arbitrator's determination of all matters shall be final and binding on the Parties, absent fraud or manifest error.    Nothing in this Section 2.3(c)(ii) shall be construed to authorize or permit the Arbitrator to: (i) determine any questions or matters whatsoever under or in connection with this Agreement except for the resolution of differences between Seller and Purchaser regarding the determination of any Final NABV Schedule; (ii) determine any issue regarding any Final NABV Schedule except for items specifically identified in the dispute notice from Seller which have not theretofore been resolved by mutual agreement of Seller and Purchaser; or (iii) resolve any such differences by making an adjustment to any Disputed Schedule that is outside of the range defined by amounts as finally proposed by Seller and Purchaser.

(iii)    The Arbitrator shall use commercially reasonable efforts to complete its work within ten (10) calendar days following its engagement.    The expenses of the Arbitrator shall be shared equally by Seller on one hand and Purchaser on the other hand.

143466.1                              7

(d)     Within two (2) Business Days following the determination of the Final NABV Schedule, (i) if Seller's Closing Date Net Asset Book Value shall be more than $68,250,000, Purchaser shall pay to Seller an amount equal to the Purchase Price Underpayment, (ii) if Seller's Closing Date Net Asset Book Value shall be less than $61,750,000, Seller shall pay to Purchaser an amount equal to the Purchase Price Overpayment, and (iii) if Seller's Closing Date Net Asset Book Value shall be greater than $61,750,000 and less than $68,250,000, there shall be no adjustment to the Closing Cash Purchase Price and the Closing Cash Purchase Price shall be deemed the final Adjusted Closing Cash Purchase Price.  If a dispute exists between Seller and Purchaser regarding the amount of any Seller's Closing Date Net Asset Book Value reflected in the Final NABV Schedule delivered pursuant to <u>Section 2.3(d)</u>, any uncontested amount shall be paid prior to the determination of the disputed amount in accordance with <u>Section 2.3(e)</u>.

(e)     All payments required under this <u>Section 2.3</u> or any other provision hereof shall be made in cash by wire transfer of immediately available funds to such bank account as shall be designated in writing by the Person to which the applicable payment is due at least three (3) Business Days prior to the applicable payment date.

[Reserved].

<u>Assumed Liabilities</u>.  Effective as of the Closing Date, Purchaser shall assume only the following Liabilities of Seller:  (i) all Liabilities relating to the ownership or operation of the Purchased Assets or the Acquired Business to the extent such Liabilities arise solely after the Closing Date, including any such Liabilities for real property or ad valorem Taxes applicable to the Purchased Assets, to the extent that such Liabilities arise solely after the Closing Date; (ii) all Suzuki Product Liability; (iii) all existing obligations of Seller to indemnify Dealers with respect to claims regarding Suzuki Products solely to the extent there is a current obligation of Seller to so indemnify such Dealers; (iv) all Purchased Inventory Loan Obligations of Seller outstanding as of the Closing Date; (v) all Liabilities under any of the Purchased Contracts, to the extent such Liabilities arise solely after the Closing Date; (vi) all Liabilities for Cure Costs; (vii) in accordance with the provisions of <u>Section 3.4</u>, all Liabilities for Transfer Taxes arising out of the Contemplated Transactions; (viii) all Liabilities under the collective bargaining agreement for the Represented Employees, to the extent that such Liabilities arise solely after the Closing Date; (ix) all Liabilities under Service and Parts Agreements assigned to, or entered into with, Purchaser to the extent that such Liabilities arise solely after the Closing Date; (x) all Assumed D&O Indemnification Liabilities; (xi) all Assumed Scheduled Liabilities; and (xii) all Assumed Tax Liabilities (collectively, the "***Assumed Liabilities***").

<u>Excluded Liabilities</u>.  Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall not be obligated to assume or to perform or discharge any Liability of Seller other than the Assumed Liabilities (such Liabilities not assumed by Purchaser, the "***Excluded Liabilities***").  Without limiting the foregoing, Purchaser shall not be obligated to assume or to perform or discharge, and Purchaser does not assume or perform or discharge, any of the following Liabilities:  (i) any Liability of Seller that arises on or before the Closing Date and is not expressly assumed by Purchaser in writing; (ii) any Liability of Seller in respect of pre-Petition Claims against Seller, other than the Assumed Liabilities; (iii) any Liability of Seller relating to any Excluded Contracts or other Seller's Contracts not specifically assumed by Purchaser; (iv) any Liability of Seller relating to any of the Excluded Assets; (v) any Liability of Seller to SMC for any Indebtedness under the SMC Loan Agreement; (vi) any Liability of Seller for Indebtedness or obligations under the DIP Credit Facility other than Purchased Inventory Loan Obligations; (vii) any Liability of Seller relating to Seller's execution, delivery or performance of this Agreement or any document contemplated by this Agreement; (viii) any and all Liabilities of Seller of any sort whatsoever (whether now existing or hereafter arising) under

Environmental Laws relating to or arising out of or in connection with the Business (including administrative or civil fines or penalties for violations of Environmental Laws, or remediation or response costs for contamination); (ix) any Liability of Seller with respect to the WARN Act, or any similar federal, state or other law, rule or regulation; (x) any Liability of Seller to employees; (xi) any Liabilities relating to the licensing and other statutory obligations of Seller relating to the Auto Dealers; (xii) any fees, commissions, bonuses, costs, or expenses payable by Seller to any of its investment bankers, brokers, legal counsel, financial advisors or other professionals, directors or employees (other than the Assumed D&O Indemnification Liabilities), or (xiii) any costs or expenses of Seller arising out of the administration of the Chapter 11 Case.

Payment of Cure Amounts.   All Cure Costs shall be the responsibility of Purchaser.  Cure Costs shall be paid promptly to the parties to whom and pursuant to the terms by which the Bankruptcy Court directs such payments to be made.

Pro-Rations.   All expenses related to the Acquired Business and Purchased Assets, including, without limitation, to the extent not otherwise specifically provided for in this Agreement, expenses incurred by Seller in the ordinary course of business with respect to the Acquired Business and the Purchased Assets, such as prepaid insurance, prepaid advertising, maintenance, common area or like payments, rents, and Utilities (as defined below) under the Purchased Contracts, but not including Assumed Liabilities, will be pro-rated as of the Closing Date, such that Purchaser is responsible for amounts incurred with respect to periods on or after the Closing Date and Seller is responsible for amounts incurred with respect to periods prior to the Closing Date.  All Liabilities (other than Assumed  Liabilities)due in respect of periods prior to or as of the Closing Date shall be paid in full or otherwise satisfied by Seller (provided that nothing herein shall require Seller to make payments on account of prepetition claims) and all Liabilities  and obligations due in respect of periods after the Closing Date shall be paid in full or otherwise satisfied by Purchaser.  Rent shall be prorated on the basis of actual days elapsed.  In furtherance hereof, before the Closing Date, Purchaser and Seller shall make mutually satisfactory arrangements with respect to, or take readings or other measurements of, gas, water, electricity and other utilities at the Facilities (the "***Utilities***").  On or about the Closing, Seller and Purchaser shall mutually determine all Utilities, rent, common area maintenance expense, and real estate Taxes arising out of or relating to the Facilities which (i) accrued but were not paid by Seller during or in respect of any period prior to Closing or (ii) were paid by Seller in respect of any period following the Closing (the "***Apportionable Operating Expenses***").  Responsibility for the Apportionable Operating Expenses is to be apportioned equitably as of the Closing Date.

Intentionally Omitted.

Closing Transactions.

Closing.   The Closing of the Contemplated Transactions (the "***Closing***") shall take place at 10:00 a.m. (Pacific time) on or before the third Business Day following the satisfaction or waiver by the appropriate Party of all the conditions contained in Section 4, or on such other date (no later than the Outside Date) as may be agreed to by the Parties hereto; *subject, however*, to the provisions of Section 13 (the date on which the Closing occurs, hereinafter the "***Closing Date***").

Seller's Deliveries to Purchaser at Closing.   On the Closing Date, Seller shall make the following deliveries to or for the benefit of Purchaser:

deliver the certificate contemplated by Section 4.2(a), duly executed by Seller;

deliver a deed containing the appropriate Legal Description, duly executed and acknowledged by Seller, with respect to each parcel of real property owned by Seller other than the Retained Real Property, together with any necessary transfer declarations or other filings as will permit such instrument to be recorded in the county in which such parcel is located (in recordable form if requested by Purchaser);

deliver an Assignment and Assumption of Real Property Lease substantially in the form attached as Exhibit "A" hereto, duly executed by Seller, for each Real Property Lease, pursuant to which Seller's interest in such Real Property Leases shall be assigned and sold to Purchaser (each, an "*Assignment of Real Property Lease*");

deliver an Assignment and Assumption of Contracts substantially in the form attached as Exhibit "B" hereto, duly executed by Seller, pursuant to which Seller's interest in all Purchased Contracts, including any Service and Parts Agreements, shall be assigned and sold to Purchaser (the "*Assignment of Contracts*");

deliver an Assignment of Intangible Property Assets, duly executed by Seller, substantially in the form attached as Exhibit "C" hereto, pursuant to which Seller's interest all the Intangible Property Assets shall be assigned and sold to Purchaser (the "*Assignment of Intangible Property Assets*");

deliver certificates of title or other appropriate instrument of transfer, duly executed by Seller, required to convey ownership of any motor vehicles included within the Purchased Assets;

deliver a Bill of Sale and Assignment, substantially in the form attached as Exhibit "D" hereto, duly executed by Seller, pursuant to which Seller's interest in any Purchased Assets not otherwise assigned at the Closing shall be assigned and sold to Purchaser (the "*Bill of Sale*");

deliver appropriate evidence of all necessary corporate action by Seller in connection with the Contemplated Transactions, including:  (i) certified copies of resolutions duly adopted by Seller's board of directors approving the Contemplated Transactions and authorizing the execution, delivery, and performance by Seller of this Agreement; and (ii) a certificate as to the incumbency of officers of Seller executing this Agreement and any instrument or other document delivered in connection with the Contemplated Transactions;

deliver certified copies of all Orders of the Bankruptcy Court pertaining to the Contemplated Transactions, including any Sale Order, Procedures Order or Confirmation Order and evidence of the entry of all such Orders on the docket of the Chapter 11 Case;

deliver an affidavit of an officer of Seller, setting forth the name, address and federal tax identification number of Seller and stating that Seller is not a "foreign person" within the meaning of Section 1445 of the Code (if, on or before the Closing Date, Purchaser shall not have received such affidavit, Purchaser may withhold from the cash payments to Seller at Closing such sums as are required to be withheld therefrom under Section 1445 of the Code);

deliver a Transition Services Agreement in mutually agreeable form, duly executed by Seller or any creditor trust formed pursuant to the Proposed Plan, providing for Seller's or such trust's post-Closing access to Books and Records and use of Purchaser's employees and office space to complete and close the Chapter 11 Case, all at Seller's or such trust's expense (the "*TSA*"); and

deliver certificates and waivers by M. Freddie Reiss and Seller's directors, in form(s) reasonably satisfactory to Purchaser, by which each such individual (i) accepts the Purchaser's assumption of the Assumed D&O Indemnification Liabilities and (ii) releases Seller and Purchaser from any and all obligations under the Assumed D&O Indemnification Liabilities to borrow or to reserve, set aside, or deposit (in an escrow or otherwise) any funds for the purpose of securing the payment or performance of the Assumed D&O Indemnification Liabilities, duly executed by such individuals; and

deliver any such other documents, funds or other things reasonably requested by Purchaser or contemplated by this Agreement to be delivered by Seller to Purchaser at the Closing.

Purchaser's Deliveries to Seller at Closing.  On the Closing Date, Purchaser shall make the following deliveries to or for the benefit of Seller:

pay, by wire transfer of immediately available funds, all Cure Costs for which Seller is responsible hereunder to the parties to whom and pursuant to the terms by which the Bankruptcy Court directs such payments to be made under the Sale Order or the Confirmation Order, as applicable;

pay, by wire transfer of immediately available funds into an account or accounts designated by Seller, an amount equal to the full Cash Purchase Price;

[reserved];

[reserved];

deliver the certificate contemplated by Section 4.1(a), duly executed by Purchaser;

deliver a counterpart Assignment of Real Property Lease for each Real Property Lease included in the Purchased Assets, duly executed by Purchaser;

deliver a counterpart of the Assignment of Contracts, duly executed by Purchaser;

deliver an Assumption of Liabilities with respect to the Assumed Liabilities, substantially in the form attached as Exhibit "F" hereto, duly executed by Purchaser (the "*Assumption of Liabilities*");

deliver any certificates of title or other appropriate instruments of transfer required to convey ownership of any motor vehicles included within the Purchased Assets, if acknowledgement or endorsement thereof is required by Purchaser;

deliver appropriate evidence of all necessary corporate action by Purchaser in connection with the Contemplated Transactions, including: (i) certified copies of resolutions duly adopted by Purchaser's board of directors approving the Contemplated Transactions and authorizing the execution, delivery, and performance by Purchaser of this Agreement; and (ii) a certificate as to the incumbency of those officers of Purchaser executing this Agreement and any instrument or other document delivered in connection with the Contemplated Transactions;

deliver a counterpart of the TSA, duly executed by Purchaser; and

deliver any such other documents, funds or other things reasonably requested by Seller or contemplated by this Agreement to be delivered by Purchaser to Seller at the Closing.

Sales, Use and Other Taxes.  To the extent not exempt under the Bankruptcy Code, any sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, or under any federal law or the laws or regulations of any federal agency or authority, which may be payable by reason of the sale or transfer of the Purchased Assets under this Agreement or the Contemplated Transactions (the "**Transfer Taxes**"), if any, shall be borne and paid by Purchaser.  Purchaser shall be solely responsible for the preparation and filing of all relevant Tax Returns required to be filed in respect of such Transfer Taxes and shall pay all such Transfer Taxes.

Possession and Risk of Loss.  Right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date.  Seller shall transfer and deliver to Purchaser on the Closing Date such keys, locks, safe combinations, computer passwords and other similar items as Purchaser may reasonably require to obtain occupation and control of the Purchased Assets, and shall also make available to Purchaser at their then-existing locations the originals of all documents in Seller's actual possession that are required to be transferred to Purchaser by this Agreement.

Closing Date.  All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously.  Unless provided otherwise herein or agreed otherwise in writing by the Parties, documents delivered at the Closing shall be dated as of the Closing Date.

Conditions Precedent to Closing.

Conditions to Seller's Obligations.  Seller's obligation to make the deliveries required of Seller at the Closing Date and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Seller):

All of the representations and warranties of Purchaser contained herein shall continue to be true and correct at the Closing in all material respects, and Purchaser shall have substantially performed or tendered performance of each material covenant on Purchaser's part to be performed which, by its terms, is required to be performed at or before the Closing, and Seller shall have received a certificate by an officer of Purchaser, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in Section 4.2 either has been satisfied or has been waived by Purchaser.

Purchaser shall have tendered delivery of all items required to be delivered by Purchaser under Section 3.3.

No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a Claim, such that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

Either (i) the Bankruptcy Court, in connection with a Sale Order Transaction, shall have entered the Sale Order in accordance with Section 8.1 and the Procedures

Order in accordance with <u>Section 8.2</u>, and each of the Sale Order and Procedures Order shall have become a Final Order, or (ii) if pursuant to <u>Section 8.4</u> Seller, in consultation with Purchaser, elects to withdraw its request for approval of the Sale Order Transaction and seeks approval instead of a Plan Sale Transaction, the Bankruptcy Court shall have entered the Confirmation Order and such Confirmation Order shall have become a Final Order.

The waiting period under the Hart-Scott-Rodino Law, as modified by Section 363(b)(2) of the Bankruptcy Code, including any extensions thereof, shall have expired.

All Consents by, reports, notices or statements to, or filings or submissions with Governmental Bodies (other than any such action described in Section 4.1(d) or Section 4.1(e)) required under applicable law to be made by Purchaser in connection with the Contemplated Transactions shall have been given, made, filed or submitted, as required.

<u>Conditions to Purchaser's Obligations</u>.   Purchaser's obligation to make the deliveries required of Purchaser at the Closing and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Purchaser):

All of the representations and warranties of Seller contained herein shall continue to be true and correct at the Closing in all material respects, and Seller shall have substantially performed or tendered performance of each and every covenant on Seller's part to be performed which, by its terms, is required to be performed at or before the Closing (<u>provided, however</u>, that Seller shall have performed in all respects its covenants hereunder to sell, assign, transfer, convey and deliver to Purchaser all of Seller's right, title and interest in and to all Purchased Assets free and clear of all Encumbrances (other than Permitted Encumbrances)), and Purchaser shall have received a certificate by an officer of Seller, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in <u>Section 4.1</u> either has been satisfied or has been waived by Seller.

Seller shall have tendered delivery of all items required to be delivered by Seller under <u>Section 3.2</u>.

No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a Claim such that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

Either (i) the Bankruptcy Court shall have entered the Sale Order in accordance with <u>Section 8.1</u> and the Procedures Order in accordance with <u>Section 8.2</u>, and each of the Sale Order and Procedures Order shall have become a Final Order, or (ii) if pursuant to <u>Section 8.4</u> Seller elects to withdraw its request for approval of the Contemplated Transactions under section 363 and section 365 of the Bankruptcy Code, the Bankruptcy Court shall have entered a Confirmation Order and such Confirmation Order shall have become a Final Order.

[Reserved].

Seller shall have requested Bankruptcy Court approval of each executed Dealer Settlement Agreement and the Orders of the Bankruptcy Court approving substantially all of such Dealer Settlement Agreements shall have been entered, and such Orders shall be Final Orders.

Seller's Required Approvals shall have been obtained by Seller.

All agreements relating to lines of credit extended to various authorized Dealers for the wholesale purchase of new Suzuki Motorcycle Products, Suzuki ATV Products and Suzuki Marine Products, including, without limitation, all related repurchase agreements, in effect as of thirty (30) days prior to the Closing Date shall be either (i) in full force and effect as of the Closing Date or (ii) amended or otherwise modified on terms and conditions satisfactory to Purchaser in its sole and absolute discretion, and all of such agreements, to the extent applicable, shall be assigned to Purchaser as of the Closing.

A sufficient number of Service and Parts Agreements shall have been assigned to Purchaser, or shall have been entered into directly between Auto Dealers and Purchaser, to permit Purchaser to fully operate the Auto Servicing Business and satisfy its assumed obligations with respect to warranties as required by this Agreement, as reasonably determined by Purchaser.

To the extent applicable, any waiting period under the Hart-Scott-Rodino Law, as modified by Section 363(b)(2) of the Bankruptcy Code, including any extensions thereof, shall have expired.

All Consents by, reports, notices or statements to, or filings or submissions with Governmental Bodies (other than any such action described in Section 4.1(d) or Section 4.1(e)) required under applicable law to be made by Seller in connection with the Contemplated Transactions shall have been given, made, filed or submitted, as required.

Seller's Representations and Warranties.    Seller hereby makes the following representations and warranties to Purchaser:

Organization.  Seller is a corporation duly formed, validly existing and in good standing under the laws of the State of California.  Seller has all requisite corporate power and authority to own, lease and, subject to the provisions of the Bankruptcy Code applicable to debtors in possession, to operate its properties, carry on the Acquired Business as now being conducted, and to enter into this Agreement and to consummate the Contemplated Transactions.  Seller does not have any Subsidiaries other than SMAC.

Foreign Qualification.  Seller is duly qualified as a foreign corporation, and is in good standing, in each state and other jurisdiction in which the failure to be so qualified would have a material adverse effect on Seller, the Purchased Assets or the Acquired Business.

Due Authorization and Enforceability.  The execution, delivery and performance of this Agreement by Seller and the consummation by Seller of the Contemplated Transactions have been duly authorized by all requisite corporate action.  Subject to the entry and effectiveness of the Procedures Order and Sale Order, or any Confirmation Order, this Agreement will be duly and validly executed and delivered by Seller and (assuming this Agreement constitutes a valid and binding agreement of Purchaser) will constitute a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms except to the extent such enforceability may be limited by the effect of equitable principles (regardless of whether considered in a proceeding at law or in equity).

Approvals and Consents.  No Consent by, or declaration, filing or registration with, any Governmental Body or any other Person is required to be made or obtained by Seller in connection with the execution, delivery and performance of this Agreement by Seller and the consummation of the Contemplated Transactions, except for (a) Consents by, or declarations or filings with, the Bankruptcy Court and (b) Consents, declarations, filings, registrations or rulings

identified in Schedule 5.4.  The items referred to in clauses (a) and (b) of this Section 5.4 are hereinafter referred to as the "***Seller's Required Approvals***."

No Conflict.  Subject to the entry of the Sale Order or any Confirmation Order, neither the execution, delivery or performance of this Agreement by Seller, nor the consummation by Seller of the Contemplated Transactions, nor compliance by Seller with any of the provisions hereof, (a) conflict with or result in any breach of the articles of incorporation or bylaws of Seller, (b) result in a violation or breach of, or constitute (with or without notice or lapse of time) a default (or give rise to any right of termination, cancellation, vesting, payment, exercise, acceleration, suspension or revocation) under, any of the terms, suspension, conditions or provisions of, any note, bond, mortgage, deed of trust, security interest, or Seller's Contract, (c) violate any Legal Requirement applicable to Seller ,the Acquired Business or the Purchased Assets, (d) result in the creation or imposition of any Encumbrance (other than a Permitted Encumbrance) on any asset of Seller, or (e) cause the suspension or revocation of any Business Permits.

Financial Statements.  Seller has delivered or made available to Purchaser a true, correct and complete copy of an audited consolidated balance sheet of Seller as at March 31, 2012 and the related audited consolidated statements of income, changes in shareholders' equity and cash flows for the fiscal year then ended, together with the report thereon of PriceWaterhouseCoopers LLP, certified public accountants (the "***Seller's Financial Statements***").  The Seller's Financial Statements have been prepared in a consistent manner and fairly and accurately present the financial condition and the results of operations, changes in stockholders' equity, and cash flow as at the respective dates of and for periods referred to in the Seller's Financial Statements, all in accordance with GAAP, subject, in the case of interim financial statements, to normal recurring year-end adjustments and the absence of notes.

Litigation.  Except for the Chapter 11 Case and except as set forth in Schedule 5.7, there is no material Legal Proceeding pending or, to Seller's Knowledge, threatened in writing against or affecting Seller, nor is there any material judgment or Order of any Governmental Body (other than the Bankruptcy Court) outstanding against Seller.

Compliance with Laws.  Except as set forth in Schedule 5.8, Seller has not been given notice or been charged with any material violation of any Law of any Governmental Body. Except as set forth in Schedule 5.8, Seller is not in violation of any Legal Requirement.  Except as set forth in Schedule 5.8, no material investigation or review by any Governmental Body is pending or, to the Knowledge of Seller, threatened, against Seller or any of its assets and properties, nor has any Governmental Body indicated to Seller an intention to conduct the same. Except as set forth in Schedule 5.8, Seller has complied in all material respects with all applicable Laws in the operation of the Acquired Business and ownership and use of the Purchased Assets.  Except as set forth in Schedule 5.8, all of the Business Permits necessary for, or otherwise material to, the operation of the Acquired Business have been duly obtained and are in full force and effect and, to the extent permitted by law and subject to the provisions of the Bankruptcy Code applicable to debtors in possession, Seller has the power to assign such Business Permits.

Environmental Matters.  Seller has provided Purchaser with copies of all material documents and reports in its possession or control describing or otherwise relating to past or present events, conditions, circumstances, activities, practices, incidents, agreements, actions or plans which have given rise to or would be reasonably likely to give rise to any material Liability of Seller under Environmental Laws and any material environmental Liability that would adversely affect the value of the Purchased Assets.  Seller is in material compliance with all Environmental Laws, which compliance includes, without limitation, the possession by Seller of all Business Permits and other governmental authorizations required under applicable

Environmental Laws for the operation of the Acquired Business, and compliance with the terms and conditions thereof.  Seller has not received any written notice not subsequently resolved with respect to the Acquired Business of, or any property owned or leased by, Seller from any Governmental Body or third party alleging that Seller is not in compliance with or subject to any Liability under any Environmental Laws.    Except for releases not prohibited under Environmental Laws, or Business Permits issued thereunder, there has been no release of any Hazardous Substance in excess of a quantity for which a report is required under Environmental Laws, on any real property of Seller.  Seller is not liable for any costs, obligations, penalties, fines or forfeitures for failure to comply with any Environmental Laws or necessary to achieve or maintain compliance with Environmental Laws, or with respect to any environmental conditions or any release or presence of any Hazardous Substance, nor is Seller required to remedy any such existing condition or remove any Hazardous Substance from any real property.

Business Permits.  Seller has all Business Permits that are material to the conduct of the Acquired Business.  Schedule 5.10 is an accurate and complete list of all Business Permits and all such Business Permits are in full force and effect.  No material violations are or have been committed in respect of any Business Permit and no proceeding is pending or, to the Knowledge of Seller, threatened to revoke or limit any Business Permit.  To the extent permitted by law and subject to the provisions of the Bankruptcy Code applicable to debtors in possession, Seller has the power to assign such Business Permits.

Title to and Use of Property.  Seller has, and subject to the Sale Order or Confirmation Order shall convey to Purchaser at the Closing, good and marketable title to all of the Purchased Assets, in each case free and clear of all Encumbrances (other than Permitted Encumbrances).

Assets Necessary to Conduct Acquired Business.  The Purchased Assets constitute all of the assets, properties and rights (i) used in the Acquired Business as currently conducted (other than the Excluded Assets) and (ii) necessary to conduct the Acquired Business as it is currently conducted.

Real Property.

Schedule 5.13(a) is an accurate and complete list of all Facilities and other real property owned by Seller.

Schedule 5.13(b) is an accurate and complete (i) list of all Facilities and other real property leased by Seller and (ii) list of all Real Property Leases, which accurately sets forth the parties to each such Real Property Lease and the address of the location and the lessor.

Warranty Programs.  Schedule 5.14 is an accurate and complete description of all existing warranty programs under which Seller has any Liability.

Intellectual Property.

Marks.   Schedule 5.15(a) sets forth an accurate and complete list of all (i) Trademarks and Trademark Rights owned by Seller, (ii) Trademarks and Trademark Rights used by Seller in the Acquired Business, or (iii) registered or pending applications for registration of any Trademarks described in (i) or (ii) in any jurisdiction (collectively, the "*Seller's Marks*"), specifying as to each item, as applicable, the owner of the Seller's Mark, the jurisdiction(s) in which the Seller's Mark has been issued or registered or in which an application for registration has been filed, and the issuance, registration or application numbers and dates.

Patents.   Seller does not own or use any Patents in connection with the Acquired Business.

Copyrights.   Seller does not own or use any registered Copyrights in connection with the Acquired Business.

Domain Names.   Schedule 5.15(d) sets forth an accurate and complete list of all Domain Names of Seller.

Other Personal Property.

Schedule 5.16(a) sets forth an accurate and complete list of all Equipment.

All items included in Inventory consist of finished goods saleable in the ordinary course of business of Seller except for obsolete or defective items and items of below-standard quality, all of which have been written off or written down to net realizable value on the accounting records of Seller as of the Closing Date.   All Inventory has been valued at the lower of cost or market value on a first in, first out basis.

Employees and Labor Relations.

[Reserved].

[Reserved].

To the Knowledge of Seller, Seller has not incurred any liability or obligation for wages and benefits or under the WARN Act or any similar federal, state or other law, rule or regulation, with respect to any director or employee of Seller that remains unpaid or unsatisfied.   There are no labor disputes, material grievances, arbitration proceedings, or any material union organization activities, strikes or work stoppages pending, or to Seller's Knowledge, threatened between Seller and any of its employees.   Except for the Represented Employees, no employee of Seller is represented by a labor union and Seller is not a party to any collective bargaining agreement.   There are no representation proceedings pending and no labor organization or group of employees has made a demand for recognition which is currently pending.

Schedule 5.17(d) contains a true and correct list of all former employees of Seller who, in connection with the Contemplated Transactions, may become "M & A qualified beneficiaries" for whose COBRA benefits Purchaser may become responsible as a "successor employer" under Treasury Regulation 54.4980B-9.

[Reserved].

<u>Broker's or Finder's Fees</u>.  No investment banker, agent, broker, person or firm acting on behalf of Seller is, or will be, entitled to any commission or broker's or finder's fees from Purchaser in connection with the Contemplated Transactions.

<u>Purchaser's Warranties and Representations</u>.  In addition to the representations and warranties contained elsewhere in this Agreement, Purchaser hereby makes the following representations and warranties to Seller:

<u>Organization</u>.  Purchaser is a corporation duly formed, validly existing and in good standing under the laws of the State of California.  Purchaser has all requisite corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder and consummate the Contemplated Transactions.

<u>Due Authorization and Enforceability</u>.  The execution, delivery and performance of this Agreement by Purchaser and the consummation by Purchaser of the Contemplated Transactions have been duly authorized by all necessary corporate action.  This Agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with its terms, except as may be limited by the Standard Exceptions to Enforceability.

<u>No Conflict</u>.  The execution and delivery of this Agreement, the consummation of the Contemplated Transactions, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Purchaser do not and will not: (i) conflict with or result in a breach of the articles of incorporation or bylaws of Purchaser; (ii) violate any Legal Requirement applicable to Purchaser; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Purchaser is a party or by which Purchaser or its assets or properties may be bound.

<u>Financial Resources</u>.  Purchaser has the financial resources necessary to consummate the Contemplated Transactions upon the terms and conditions set forth in this Agreement, and such financial resources are not subject to any constraints, conditions or contingencies that could in any way materially affect Purchaser's ability to consummate the Contemplated Transactions or perform hereunder.

<u>SMC Secured Claim</u>.  Purchaser has obtained all Consents required of SMC for Purchaser to pledge, as the Deposit, Two Million Five Hundred Thousand U.S. Dollars ($2,500,000) of SMC's secured Claim evidenced by the SMC Loan Agreement.

<u>Broker's or Finder's Fees</u>.  No investment banker, agent, broker, person or firm acting on behalf of Purchaser is, or will be, entitled to any commission or broker's or finder's fees from Seller in connection with the Contemplated Transactions.

<u>"AS IS" Transaction</u>.  Purchaser hereby acknowledges and agrees that, except only as provided in <u>Section 5</u> above, Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets (including income to be derived or expenses to be incurred in connection with the Purchased Assets, the physical condition of any tangible Purchased Assets, the environmental condition or other matter relating to the physical condition of any real property or improvements, the zoning of any real property or improvements, the value of the Purchased Assets (or any portion thereof), the transferability of the Purchased Assets or any portion thereof, the terms, amount, validity, collectability or enforceability of the Receivables or any Assumed Liabilities or Seller's Contracts, the merchantability or fitness of the Equipment, the Inventory or any other portion of the Purchased Assets for any particular purpose, or any other matter or thing relating to the Purchased Assets or any portion thereof).  Without in any way limiting the foregoing, Seller hereby disclaims any

warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Purchased Assets. Except only for the representations set forth in Section 5 above, Purchaser will accept the Purchased Assets at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."

Bankruptcy Court and Other Approvals.

Seller shall use reasonable efforts to obtain, pursuant to a motion (the "**Sale Motion**"), an Order by the Bankruptcy Court, substantially in the form attached hereto as Exhibit "G," approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement free and clear of all Encumbrances (other than Permitted Encumbrances), including rights or Claims based on any successor Liability Claim, and enjoining all Persons holding liens, Claims, Encumbrances, and other interests, including rights or Claims based on any successor or transferee Liability, from asserting them against Purchaser, the Purchased Assets or the Acquired Business (the "**Sale Order**"). Any changes to the form of the Sale Order must be approved by Purchaser and Seller in their reasonable discretion. If requested by Seller or the Bankruptcy Court, Purchaser shall provide adequate assurance of future performance (satisfactory to the Bankruptcy Court) to the counterparties to the Seller's Contracts.

Seller shall use reasonable efforts to obtain, pursuant to the Sale Motion, (i) the entry of an Order by the Bankruptcy Court (the "**Procedures Order**") approving bidding procedures (the "**Bidding Procedures**") in the form attached hereto as Exhibit "H", subject to any changes thereto as approved by Purchaser and Seller in their reasonable discretion, to occur on or prior to December 21, 2012 (or such other date as may be agreed to by the Parties) and (ii) the entry of the Sale Order to occur on or prior to March 8, 2013 (or such other date as may be agreed to by the Parties).

Subject to entry of the Procedures Order, Seller shall pay to Purchaser the Expense Reimbursement to the extent and as and when required by the terms and conditions set forth in Section 11 hereof.

To the extent that Seller, in consultation with Purchaser, elects to proceed with confirmation of the Plan Sale Transaction, the Plan Sale Transaction Pleadings, the Confirmation Order (which shall be entered in lieu of the Sale Order), the Proposed Plan, and all related motions and Orders in the Chapter 11 Case shall be reasonably satisfactory to Purchaser.

Seller shall use its commercially reasonable best efforts to negotiate settlements with existing Auto Dealers (each, a "**Dealer Settlement Agreement**") on the terms and conditions set forth in the Proposed Plan. Seller shall file a motion with the Bankruptcy Court requesting Bankruptcy Court approval of each such Dealer Settlement Agreement, including the allowance of the claim of the Settling Dealer.

If any Orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or re-argument shall be filed with respect to any such Order), Seller shall diligently defend against such appeal, petition or motion and shall use its reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion; provided, that Seller shall consult with Purchaser at Purchaser's reasonable request regarding the status of any such actions; provided further, however, that Seller shall have no obligation under this Section to take any action in connection with which it would be required or might reasonably be expected to incur any material Liability, cost or expense unless Purchaser agrees to pay such Liability, cost or expense. To the extent that an "Order" becoming a "Final Order" is a requirement pursuant to any provision of this Agreement, and that such requirement is waived by Purchaser pursuant to Section 15.22, and that any such Order is appealed (or a

petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or re-argument shall be filed with respect to any such Order), the provisions of this <u>Section 8.6</u> shall nevertheless apply.

Seller shall consult with Purchaser and its representatives upon Purchaser's reasonable request concerning any Order of the Bankruptcy Court relating to this Agreement and the bankruptcy proceedings in connection therewith and provide Purchaser with copies of requested applications, pleadings, notices, proposed Orders and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.  Seller further covenants and agrees that, after the Closing, the terms of any reorganization plan it submits to the Bankruptcy Court or any other court for confirmation shall not conflict with, supersede, abrogate, nullify or restrict the terms of this Agreement, or in any way prevent or interfere with the consummation or performance of the Contemplated Transactions, including any transaction contemplated by or approved pursuant to the Procedures Order, Sale Order or Confirmation Order.

To the extent applicable, as promptly as practicable after the execution of this Agreement, Seller and Purchaser shall file or cause to be filed with the Federal Trade Commission and the United States Department of Justice any notifications required to be filed under the Hart-Scott-Rodino Law and the rules and regulations promulgated thereunder with respect to the Contemplated Transactions, and Purchaser shall pay any filing fee associated therewith.  The Parties shall consult as to the appropriate time of filing of such notifications and shall use their respective reasonable best efforts to make such filings at the agreed upon time, to respond promptly to any requests for additional information made by such agencies, and to cause the waiting periods under the Hart-Scott-Rodino Law to terminate or expire at the earliest possible date after the date of filing.

<u>Commercially Reasonable Efforts</u>.    Subject to the terms and conditions of this Agreement, during the period prior to Closing, Seller and Purchaser shall (a) use their commercially reasonable efforts (i) to cause the conditions in <u>Section 4</u> to be satisfied, (ii) to deliver or cause to be delivered at the Closing the items to be delivered by Seller and Purchaser pursuant to <u>Section 3.2</u> and  <u>Section 3.3</u>, and (iii) to take all other actions to consummate the Contemplated Transactions, and (b) not take any action that will have the effect of unreasonably delaying, impairing or impeding the receipt of any authorizations, Consents, or Orders to be sought pursuant to this Agreement.

<u>Certain Covenants</u>.

Seller shall be entitled, on and after the Original Execution Date, to take such steps as it deems reasonably necessary in its sole discretion to wind down and liquidate the Auto Sales Business and to dispose of any Excluded Assets, including (a) cessation of new orders of Suzuki Automobiles, (b) sale or distribution, through Dealers or otherwise, of Suzuki Automotive Products on hand or in transit to Seller, (c) sale or other disposition of Facilities included within the Retained Auto Business Assets and other Excluded Assets, and (d) termination or re-assignment of employees whose duties relate primarily to the Auto Business.

Except with the prior written consent of Purchaser, as otherwise contemplated or permitted by this Agreement (including <u>Article 8</u> and <u>Section 10.1</u> hereof) or as required by the Bankruptcy Code, from the Original Execution Date until the Closing Date, Seller shall operate the Acquired Business in the ordinary course of business (taking into account Seller's status as debtor-in-possession), comply with all Legal Requirements applicable to the operation of its business and preserve its present business organization intact.  Without limitation, from the

Original Execution Date until the Closing Date, Seller shall use commercially reasonable efforts to:

(vi)    (A) preserve the present business operations, organization and goodwill of the Purchased Assets and the Acquired Business, and (B) preserve the present relationships with customers and suppliers of the Acquired Business;

(vii)    purchase and maintain adequate levels of Inventory for the Acquired Business consistent with past practice;

(viii)    timely pay all rent and related obligations with respect to the Facilities arising after the Petition Date;

(ix)    make capital expenditures arising out of or related to the Purchased Assets as contemplated by the DIP Credit Facility and related Orders;

(x)    maintain in full force and effect all Business Permits and insurance in all material respects;

(xi)    maintain all of the Purchased Assets in a manner consistent with past practices, reasonable wear and tear excepted, and maintain the types and levels of insurance currently in effect in respect of the Purchased Assets;

(xii)    upon any damage, destruction or loss to any Purchased Assets, apply any insurance proceeds received with respect thereto to the prompt repair, replacement and restoration thereof to the condition of such Purchased Assets before such event or, if required, to such other (better) condition as may be required by applicable Legal Requirements;

(xiii)    take all such actions necessary to meet the Plan/Sale Milestones (as defined in the DIP Credit Agreement); and

(xiv)    consult with Purchaser on all material aspects of the Acquired Business as may be reasonably requested from time to time by Purchaser, including, but not limited to, personnel, accounting and financial functions.

Except as otherwise contemplated or permitted by this Agreement (including Section 10.1 hereof), from the Original Execution Date until the Closing Date, Seller shall not, without the prior written consent of Purchaser:

(xv)    defer the payment of its accounts payable and other amounts due to third parties to the extent the same are to be assumed by Purchaser except as contemplated by the DIP Credit Facility and related Orders;

(xvi)    accelerate the collection of Receivables or other amounts due to Seller except as contemplated by the DIP Credit Facility and related Orders;

(xvii)    increase the annual level of compensation of any director, officer or employee of Seller, accelerate the payment of any such compensation or grant any bonus or severance pay to any director, officer or employee of Seller;

(xviii) make or rescind any material election relating to Taxes, settle or compromise any material claim, action, suit, litigation, proceeding, arbitration, investigation, audit or controversy relating to Taxes, or except as may be required by applicable

law or GAAP, make any material change to any of its methods of accounting or methods of reporting income or deductions for Tax or accounting practice or policy from those employed in the preparation of its most recent Tax Returns;

(xix)    acquire any material properties or assets that would be Purchased Assets;

(xx)    fail to immediately notify Purchaser of any notice of the commencement or threatened commencement of eminent domain or similar proceedings affecting any of the Purchased Assets;

(xxi)    assume, reject, terminate or amend any of Seller's Contracts, other than the termination, amendment, modification or approval of the transfer in the ordinary course of business of any dealership agreements with Dealers in Suzuki Motorcycle Products, Suzuki ATV Products, and Suzuki Marine Products;

(xxii)    cancel, modify or waive any Claims held in respect of the Purchased Assets or waive any material rights of value, other than in connection with the modification or amendment in the ordinary course of business of any dealership agreements with Dealers in Suzuki Motorcycle Products, Suzuki ATV Products, and Suzuki Marine Products;

(xxiii)    sell, transfer or otherwise dispose of any of the Purchased Assets except in the ordinary course of business, consistent with past practices;

(xxiv)    cease operations at any Facility other than any Facility included within the Excluded Assets;

(xxv)    modify, rescind or terminate a material Business Permit or License, insurance policy, allowance, or credit (or application therefor) relating to the Acquired Business or the Purchased Assets;

(xxvi)    subject its assets to any material Encumbrances (other than any Permitted Encumbrances), any Encumbrance securing Indebtedness owed to the DIP Lender, and any Encumbrances securing indemnity obligations of Seller owed to its directors or officers;

(xxvii)    fail to comply with the terms and conditions of (A) the DIP Credit Facility, (B) the Orders relating to the DIP Credit Facility and (C) Seller's use of cash collateral; or

(xxviii)    authorize any of the foregoing, or commit or agree to take actions, whether in writing or otherwise, to do any of the foregoing.

Seller shall promptly inform Purchaser in writing of the occurrence or non-occurrence of any event actually known by Seller which would cause any condition set forth in Section 4.2 not to be satisfied or the breach of any covenant hereunder by Seller.

Purchaser and Purchaser's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives shall be authorized and entitled, in Purchaser's discretion and without the involvement or presence of Seller or its agents, to contact and to enter into discussions and negotiate with Seller's lenders, bankers, vendors, suppliers, Dealers, strategic business partners and other third parties, including Governmental Bodies, regarding the Contemplated Transactions and Purchaser's potential business relationships with such persons following the Closing, and Seller shall provide contact information and other reasonable cooperation to Purchaser in connection with such activities.

From the Original Execution Date through the Closing Date, Seller shall afford Purchaser and such persons reasonable access during ordinary business hours to Seller employees, consultants and independent contractors and to all the Books and Records and shall furnish to Purchaser and such persons, as promptly as practicable, all other information as Purchaser or any of such persons may reasonably request in furtherance of the Contemplated Transactions.

Each Party agrees that it will not make any public announcement or issue any press release or respond to any press inquiry with respect to this Agreement or the Contemplated Transactions without the prior approval of the other Party (which approval will not be unreasonably withheld), except as may be required (i) by any applicable Legal Requirement, or (ii) to administer the Chapter 11 Case.

Seller shall honor and observe any and all policies of Seller in effect on the Petition Date prohibiting the transfer of personally identifiable information about individuals and otherwise comply with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code. Purchaser agrees to be bound by such policies on and after the Closing Date.

On or before the Schedule Delivery Deadline, Seller shall deliver to Purchaser all Schedules to this Agreement not theretofore delivered, other than the Notice of Potential Designated Contracts (which shall be delivered by Seller in accordance with Section 1.3(a)), such Schedules and Notice to be in form and substance reasonably satisfactory to Purchaser.

The Notice of Potential Designated Contracts shall include an accurate and complete list of all of Seller's Contracts including, without limitation, an accurate and complete list of all of Seller's Contracts with Dealers, and shall accurately set forth the date of, and the parties to, each such Seller's Contract. Upon delivery to Purchaser in accordance with the terms and conditions hereof, such Notice of Potential Designated Contracts shall be deemed a Schedule hereunder for all purposes hereof.

The Notice of Potential Designated Contracts shall include an accurate and complete list of all amounts, if any, that Seller reasonably believes are owing as Cure Costs under any Seller's Contract.

Seller agrees that it will not enter into an agreement to effectuate an Alternative Transaction with an Overbidder unless each of the following conditions is satisfied:

(xxix) such Alternative Transaction agreement requires, within one (1) Business Day after the execution and delivery of such Alternative Transaction agreement, the deposit of no less than Two Million Five Hundred Thousand U.S. Dollars ($2,500,000) into an escrow account;

(xxx) the aggregate consideration to be paid by such Overbidder must equal or exceed the sum of the Purchase Price proposed to be paid by Purchaser hereunder, plus a transaction fee payable to Seller's proposed investment banker in the amount of Two Million U.S. Dollars ($2,000,000), plus the Expense Reimbursement in the amount of Five Hundred Thousand U.S. Dollars ($500,000), plus an initial overbid of at least Five Hundred Thousand U.S. Dollars ($500,000); and

(xxxi) at any auction for the purchase of the Purchased Assets, such Overbidder shall continue to bid, if at all, in minimum increments of Five Hundred Thousand U.S. Dollars ($500,000).

Expense Reimbursement.

Seller agrees and acknowledges that Purchaser's negotiation and execution of this Agreement has required a substantial investment of management time and a significant commitment of financial and other resources by Purchaser, and that the negotiation and execution of this Agreement have provided value to Seller.  Therefore, on the terms and conditions of this <u>Section 11</u>, Seller shall reimburse Purchaser for all Transaction Expenses in an amount not to exceed Five Hundred Thousand U.S. Dollars ($500,000) (the "***Expense Reimbursement***").

Seller's payment obligation under <u>Section 11.1</u> with respect to the Expense Reimbursement shall be subject to the entry of the Procedures Order and to the occurrence of an Expense Reimbursement Fee Event.  The Expense Reimbursement shall be paid to Purchaser following closing with the Successful Bidder of a transaction to effectuate an Alternative Transaction and after Purchaser has provided the Committee (as defined in the Procedures Order) and the Office of the United States Trustee with the documentation supporting Purchaser's Transaction Expenses (redacted as necessary to preserve attorney-client privilege and attorney work product).  The Committee (as defined in the Procedures Order) and the Office of the United States Trustee shall have fourteen (14) days to object and request a hearing only as to those Transaction Expenses which are objectionable, if any.  Promptly following such fourteen (14) day period, the Expense Reimbursement shall be paid to Purchaser in immediately available cash funds and without need for Order of the Bankruptcy Court (other than the Procedures Order).

Seller's obligation to pay the Expense Reimbursement shall survive the termination of this Agreement.  Such obligation of Seller shall have administrative super-priority status against Seller and its estate under Section 364(c)(1) of the Bankruptcy Code with priority over all expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code other than the Superpriority Claim (as defined in the Interim DIP Order) and the Adequate Protection Claim (as defined in the Interim DIP Order).

Employee Matters.

Purchaser may make offers of employment to such employees of Seller employed as of the Closing Date as Purchaser in its sole discretion shall select.  Such offers may provide for base salary or hourly wage rate, as applicable, and other compensation as Purchaser shall determine at its sole discretion.  Seller shall (i) cooperate with and use its commercially reasonable efforts to make reasonably accessible to Purchaser those employees of Seller to whom Purchaser anticipates making offers of employment and (ii) assist Purchaser in its efforts to secure satisfactory employment arrangements with those employees of Seller.  No later than five (5) days before the Closing Date, Purchaser shall notify Seller in writing of all employees to whom such offers shall be made.  Effective prior to the Closing, Seller shall terminate the employment of all employees of Seller and shall pay all payroll and vacation time accrued as of March 31, 2013.  Purchaser, in its sole discretion, and without any obligation whatsoever, may elect to make retention payments and/or provide other consideration directly to certain employees of Seller that Purchaser determines, in its judgment, to be necessary and critical to consummation of the Contemplated Transactions (including to the transition of the Purchased Assets to Purchaser).

Seller shall be solely liable for complying with the WARN Act and any similar federal, state or other law, rule or regulation (and for any failures to so comply) applicable to employees of Seller.  Purchaser shall be solely liable for complying with the WARN Act and any similar federal, state or other law, rule or regulation (and for any failures to so comply), that

become applicable to any Transferred Employee with respect to events occurring after the Closing Date.

Any employment opportunity offered by Purchaser may be "at will" and may be terminated by Purchaser or any of its affiliates at any time for any reason. Nothing in this Agreement shall: (i) be deemed to prevent or restrict in any way the right of Purchaser to terminate, reassign, promote or demote any of the Transferred Employees after the Closing or to change the title, powers, duties, responsibilities, functions, locations, salaries, other compensation or terms or conditions of employment of such Transferred Employees; (ii) create any third-party rights in any Transferred Employees or any current or former employees or other service providers of Seller (or any beneficiaries or dependents of the foregoing) whether hereunder or otherwise; or (iii) obligate Purchaser or its affiliates to adopt or maintain any employee benefit plan or other compensatory arrangement at any time.

Except for the Assumed Liabilities, Seller shall be solely liable for all wages, remuneration, expense reimbursements, Taxes and other obligations and Liabilities, whether actual or contingent: (i) associated with any employee or other service provider of Seller (or any dependent thereof), including in connection with any termination of any such service relationship or (ii) that arises at any time with respect to any Seller Benefit Plan not assumed by Purchaser or included within the Purchased Assets. Purchaser shall be solely liable for any Liabilities associated with Seller's employees to the extent such Liabilities are included within the Assumed Liabilities.

Termination.

Termination by Mutual Consent. This Agreement may be terminated at any time prior to the Closing Date by mutual written agreement of the Parties.

Termination by Either Purchaser or Seller. This Agreement may be terminated at any time prior to the Closing Date by either Purchaser or Seller if any Governmental Body shall have issued an Order permanently restraining, enjoining or otherwise prohibiting the consummation of the Contemplated Transactions and either (i) thirty (30) days shall have elapsed from the issuance of such Order and such Order has not been removed or vacated, or (ii) such Order shall have become final and non-appealable.

Termination by Seller. This Agreement may be terminated by Seller as follows:

at any time prior to the Closing Date, if there has been a material breach by Purchaser, which breach Purchaser has failed to cure within five (5) Business Days following its receipt of written notice thereof from Seller;

at any time prior to the Closing Date, if any condition precedent of Seller specified in Section 4.1 shall not have been satisfied or waived and shall have become impossible to satisfy, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Seller; or

if the Closing shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date, but only to the extent the Closing has not occurred as of the Outside Date for reasons other than Seller's failure to meet its obligations hereunder.

Termination by Purchaser. This Agreement may be terminated by Purchaser, at any time prior to the Closing Date, as follows:

if there has been a material breach of this Agreement by Seller, which breach Seller has failed to cure within five (5) Business Days following its receipt of written notice thereof from Purchaser;

if any condition precedent of Purchaser specified in <u>Section 4.2</u> shall not have been satisfied or waived or, in the reasonable judgment of Purchaser, shall have become reasonably unlikely to be satisfied, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Purchaser;

if the Procedures Order shall not have been entered by 5:00 p.m. Pacific time on December 21, 2012 (or such other date as may be agreed to by the Parties);

if the Bankruptcy Court enters any Order approving any Alternative Transaction or confirming any Plan involving any Alternative Transaction, unless Purchaser is a "Backup Bidder" within the meaning of the Procedures Order and the Bidding Procedures attached thereto, in which case this Agreement may not be terminated by reason of such Order having been entered until the earlier of (A) the closing of the Alternative Transaction or (B) the occurrence of the Outside Date at which time this Agreement shall automatically terminate;

if neither the Sale Order nor a Confirmation Order shall have been entered by 5:00 p.m. Pacific time on March 8, 2013;

if the Closing shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date;

if the Chapter 11 Case shall be dismissed or converted into a case under chapter 7 of the Bankruptcy Code, or if any trustee is appointed in the Chapter 11 Case;

if Seller does not deliver all Schedules to this Agreement, other than the Notice of Potential Designated Contracts (which shall be delivered by Seller in accordance with <u>Section 1.3(a)</u>), on or before the Schedule Delivery Deadline, such Schedules to be in form and substance reasonably satisfactory to Purchaser; or

if Seller does not, on or prior to January 24, 2013, or such other date as may be agreed to by the Parties, deliver the Notice of Potential Designated Contracts, in form and substance reasonably satisfactory to Purchaser, to Purchaser and cause such Notice of Potential Designated Contracts to be filed with the Bankruptcy Court and served on all counterparties to all such Seller's Contracts in accordance with the terms and conditions hereof.

<u>Effect of Termination</u>.  In the event of termination by either Party of this Agreement pursuant to this <u>Section 13</u>, written notice thereof shall as promptly as practicable be given to the other Party and thereupon this Agreement shall terminate and the Contemplated Transactions shall be abandoned without further action by the Parties hereto.  Upon termination pursuant to this <u>Section 13</u>, this Agreement shall cease to have any force or effect and the Parties shall cease to have any further Liabilities under this Agreement, except that (a) the provisions of this Agreement and the Liabilities of the Parties set forth in <u>Sections 2.2</u>, <u>11</u>, <u>13.5</u>, and <u>15</u> (other than <u>Section 15.2</u>), as such provisions and Liabilities are affected by any defined terms contained herein relating thereto, shall continue in full force and effect and (b) notwithstanding any termination of this Agreement, the Parties shall remain liable for any material breach of this Agreement to the extent provided herein and under applicable law.  Upon termination of this Agreement, all filings, applications and other submissions made pursuant to the Contemplated Transactions shall, to the extent practicable, be withdrawn from the Government Body to which made.

Notification of Certain Events.  Seller shall give notice to Purchaser promptly upon becoming aware of any occurrence, or failure to occur, of any event, which occurrence or failure to occur has caused or could reasonably be expected to cause any condition to the obligations of Purchaser to effect the Contemplated Transactions not to be satisfied.

Post-Closing Matters.

Use of Marks.  Promptly after the Closing Date, Seller shall wind-up and dissolve its corporate existence.  Following the Closing Date, Seller shall not use any Mark containing "Suzuki" or any variation thereof or any mark confusingly similar thereto in connection with any business activity.

Further Conveyances and Assumptions.

Intentionally Omitted.

From time to time following the Closing, Seller and Purchaser shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and to assure fully to Seller and its successors and assigns, the assumption of the Liabilities and obligations intended to be assumed by Purchaser under this Agreement, and to otherwise make effective the Contemplated Transactions.

Reasonable Access to Records.  In order to facilitate Seller's efforts to administer and close the Chapter 11 Case, Purchaser shall, at Seller's expense, for a period of two (2) years following the Closing, maintain and permit Seller or its creditors' trust and agents and other professionals of either employed in the Chapter 11 Case to have a reasonable number of copies of the Books and Records existing as of the Closing Date for the purposes of the continuing administration of the Chapter 11 Case (including the preparation of filings in the Chapter 11 Case, the allowance or disallowance of any claims, the pursuit of any Avoidance Actions that are Excluded Assets, and the preparation of final Tax Returns), which copies Purchaser shall deliver to such Person upon reasonable advance notice.

Duties of Creditor Trust.  To the extent a creditor trust is formed pursuant to the Proposed Plan, the Seller shall cause the creditor trust agreement to provide for the performance of all the Seller's post-Closing obligations under this Agreement.

Miscellaneous.

Attorneys' Fees.  In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and conditions of this Agreement, each Party in that action or proceeding shall bear its own attorneys' fees, costs and expenses (including all court costs and reasonable attorneys' fees).

Notices.  All notices and other communications given or made in connection with this Agreement shall be in writing and shall be deemed to have been given or made when given or made if such notice or communication is in writing and delivered personally or transmitted by facsimile or electronic mail and one day following deposit if sent by commercial carrier or registered or certified mail (postage prepaid) to the Parties at the following addresses and numbers (or at such other addresses as shall be furnished by the Parties by like notice):

To Seller:

    American Suzuki Motor Corporation
    3251 East Imperial Highway
    Brea, California  92821
    Attn:  Takashi Iwatsuki
    Facsimile:  (714) 579-1574
    E-mail:  takashiiwatsuki@gmail.com

With a copy to (which shall not constitute notice):

    Pachulski Stang Ziehl & Jones LLP
    10100 Santa Monica Boulevard
    Thirteenth Floor
    Los Angeles, CA  90067
    Attn:  Richard M. Pachulski, Esq.
    Facsimile:  (310) 201-0760
    E-mail:  rpachulski@pszjlaw.com

To Purchaser:

    Suzuki Motor of America, Inc. f/k/a NounCo, Inc.
    c/o Klee, Tuchin, Bogdanoff & Stern LLP
    1999 Avenue of the Stars
    Thirty-Ninth Floor
    Los Angeles, CA  90067-6049
    Attn:  Michael Tuchin, Esq.
    Facsimile:  (310) 407-9090
    E-mail:  MTuchin@ktbslaw.com

With a copy to (which shall not constitute notice):

    Klee, Tuchin, Bogdanoff & Stern LLP
    1999 Avenue of the Stars
    Thirty-Ninth Floor
    Los Angeles, CA  90067-6049
    Attn:  Michael Tuchin, Esq.
    Facsimile:  (310) 407-9090
    E-mail:  MTuchin@ktbslaw.com

    <u>Entire Agreement</u>.  This Agreement and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the Contemplated Transactions and replace the Sale Term Sheet in its entirety.  Additionally, this Agreement amends, restates and supersedes in its entirety the Amended Agreement.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

    <u>Modification</u>.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto which expressly indicates the intention to modify, amend or supplement this Agreement.

    <u>Severability</u>.  Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such a manner so as to be effective and valid under

applicable law, but if any provision or portion of any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or portion of any provision in such jurisdiction, and this Agreement shall be reformed, construed and enforced in such jurisdiction to the extent necessary to render such invalid, illegal or unenforceable provision, or portion of any provision, enforceable, valid and legal.

Captions.  All captions, Section titles and headings contained in this Agreement are for convenience of reference only and shall be without substantive meaning or context of any kind whatsoever and shall not be construed to limit or extend the terms or conditions of this Agreement.

Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver; provided, however, that the Consent of a Party to the Closing shall constitute a waiver by such Party of any condition precedent to Closing not satisfied as of the Closing Date.

Payment of Fees, Costs and Expenses.  Except as provided in Sections 11 and 15.1 above, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees, costs and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the Contemplated Transactions.

Survival.  The respective representations and warranties of Purchaser and Seller under this Agreement shall lapse and cease to be of any further force or effect effective upon the Closing.  Except as provided in the immediately preceding sentence, the covenants and agreements of Seller and Purchaser herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

Assignments.  This Agreement shall not be assigned by Seller without the prior written consent of Purchaser, which consent Purchaser may grant or withhold in its sole and absolute discretion.  For avoidance of doubt, Purchaser shall be entitled, without the consent or approval of Seller, to assign this Agreement, and any or all of its rights or obligations hereunder, to any of its Affiliates or business or financial partners and may collaterally assign this Agreement, and any or all of its rights or obligations hereunder, to any of its lenders, and, upon any such assignment, Purchaser shall have no Liability or continuing obligations of any kind whatsoever hereunder or with respect hereto.

Binding Effect.  This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

Applicable Law.  This Agreement shall be governed by and construed in accordance with the law of the State of California (excluding conflict of laws rules and principles) applicable to contracts made and performed in such State.

Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

CONSENT TO JURISDICTION.  THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE

LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED, THAT IF THE BANKRUPTCY COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE EXCLUSIVELY HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF SANTA ANA, CALIFORNIA, (B) IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED IN SECTION 15.2 (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY CALIFORNIA LAW).

Counterparts.  This Agreement may be executed in any number of counterparts, and any Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original, and all of which counterparts taken together shall constitute but one and the same instrument.  Facsimile and electronic mail copies of signatures will be deemed originals for all purposes hereof and a Party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder.  This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by all the Parties.

Non-Recourse.  No past, present or future stockholder, director, officer, employee, or incorporator of Seller or Purchaser shall have any Liability for any obligation or Liability of Seller or Purchaser, as the case may be, under this Agreement or for any Claim, counter-Claim, cause of action or demand based on, in respect of, or by reason of, the Contemplated Transactions except for any Claim against any individual based on the fraud or gross negligence of such individual in connection with any representations of Seller or Purchaser hereunder, as the case may be.

Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

Interpretation and Rules of Construction.  In this Agreement, except to the extent that the context otherwise requires:

when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

references to a person are also to its permitted successors and assigns; and

the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

<u>Third Party Beneficiaries</u>.  This Agreement is intended to be solely for the benefit of the Parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any person or entity other than the Parties hereto, and their respective permitted assigns.

<u>Liquidated Damages as Sole Remedy of Seller</u>.  **THE PARTIES ACKNOWLEDGE THAT SELLER'S ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE.  THEREFORE, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE DEPOSIT THAT IS THE SUBJECT OF <u>SECTION 2.2</u> OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF SELLER'S DAMAGES, AND AS SELLER'S SOLE AND EXCLUSIVE REMEDY AGAINST PURCHASER (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD), WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE FAILURE OF PURCHASER TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO, WHICH DEPOSIT SHALL CONSTITUTE A SETOFF AGAINST PURCHASER'S SECURED CLAIM EVIDENCED BY THE SMC LOAN AGREEMENT.**

<u>Liquidated Damages as Sole Remedy of Purchaser</u>.  **THE PARTIES ACKNOWLEDGE THAT PURCHASER'S ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE EXPENSE REIMBURSEMENT THAT IS THE SUBJECT OF <u>SECTION 11</u> OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF PURCHASER'S DAMAGES, AND AS PURCHASER'S SOLE AND EXCLUSIVE REMEDY (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD) AGAINST SELLER, WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE**

**FAILURE OF SELLER TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO.**

<u>Final Orders</u>.  To the extent that an "Order" becoming a "Final Order" is a requirement pursuant to any provision of this Agreement, such requirement may be waived by the Party benefited by such provision in its sole and absolute discretion.

<u>Definitions</u>.  In addition to the other terms defined elsewhere in this Agreement, for the purposes of same, the following words and terms shall have the meaning set forth below (such meanings being equally applicable to both the singular and plural form of the terms defined). The exhibits and schedules referenced in this <u>Section 16</u> and throughout the Agreement are deemed to be part of the Agreement and are incorporated herein by reference.

"***Acquired Business***" shall have the meaning provided for under <u>Recital B</u>.

"***Adjusted Cash Purchase Price***" shall have the meaning provided for under <u>Section 2.1</u>.

"***Affiliate***" of a Person means a Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the first-mentioned Person.  For purposes of this definition, "control," when used with respect to any specified Person, means the power to direct or cause the direction of the management and policies of such Person, directly or indirectly, whether through ownership of voting securities or by contract or otherwise, and the terms "controlling" and "controlled by" have meanings correlative to the foregoing.

"***Agreement***" shall have the meaning provided for in the preamble.

"***Allocation Schedule***" shall have the meaning provided for under <u>Section 2.9</u>.

"***Alternative Transaction***" means any agreement or transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Purchased Assets, or the issuance or sale (in a single transaction or a series of transactions) of all or substantially all of the equity interests of Seller or any of its successors, to any Person other than Purchaser or a designee of Purchaser.

"***Apportionable Operating Expenses***" shall have the meaning provided for under <u>Section 2.8.</u>

"***Arbitrator***" shall have the meaning provided for under <u>Section 2.3(c)(i)</u>.

"***Assignment of Contracts***" shall have the meaning provided for under <u>Section 3.2(d)</u>.

"***Assignment of Intangible Property Assets***" shall have the meaning provided for under <u>Section 3.2(e)</u>.

"***Assignment of Real Property Leases***" shall have the meaning provided for in <u>Section 3.2(c)</u>.

"***Assumed D&O Indemnification Liabilities***" means any Liabilities of Seller, in an amount not to exceed $10,000,000 in the aggregate, arising under (A) the Director Indemnity Agreement dated November 2, 2012 between Seller and the directors of Seller named therein and (B) the Officer Indemnity Agreement (M. Freddie Reiss) dated November 5, 2012 between Seller and M. Freddie Reiss.

"***Assumed Liabilities***" shall have the meaning provided for under <u>Section 2.5</u>.

"***Assumed Scheduled Liabilities***" means all Liabilities incurred by Seller on or after the Petition Date in the categories described on <u>Schedule 2.5</u> hereto.

"***Assumed Tax Liabilities***" means all federal and state income Tax claims against the Seller.  Assumed Tax Liabilities shall be treated as if they are Purchaser's own tax liabilities.  The federal income Tax Claims against the Seller are currently the subject of tax treaty negotiations.  To the extent there is an income tax liability owing to the United States or any state after resolution of such negotiations or otherwise, and after the application of any available net operating losses, Purchaser shall pay such balance when due in accordance with the confirmed Plan.  If Purchaser fails to pay any balance when due, following determination and application of net operating losses, then (i) with respect to federal income Tax Claims, the Internal Revenue Service or the United States of America may collect the unpaid balance directly from Purchaser through its administrative collection procedures as set forth in the Internal Revenue Code, the regulations promulgated thereunder, revenue ruling, and revenue procedures; and (ii) with respect to state income Tax Claims, the applicable state tax collector may collect the unpaid balance directly from Purchaser in accordance with applicable state law.  Interest shall accrue and be calculated on the Assumed Tax Liabilities as provided by the Internal Revenue Code with respect to federal income Tax Claims and applicable state law with respect to state income Tax Claims.  Purchaser shall have the right to assert any defenses to asserted federal and state income Tax Claims that Seller would have been entitled to assert.

 "***Assumption of Liabilities***" shall have the meaning provided for under <u>Section 3.3(h)</u>.

"***Auto Business***" shall have the meaning provided for under <u>Recital B</u>.

"***Auto Dealer***" means any Dealer in any Suzuki Automotive Products.

"***Auto Dealership Agreement***" means any automobile dealership agreement between Seller and an Auto Dealer providing, inter alia, for the sale by the Auto Dealer of new Suzuki Automobiles.

"***Auto Sales Business***" shall have the meaning provided for under <u>Recital B</u>.

"***Auto Servicing Business***" shall have the meaning provided for under <u>Recital B</u>.

"***Avoidance Action***" means all rights, objections, preference or avoidance claims and actions of Seller, including any such claims and actions arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code (whether or not asserted as of the Closing Date).

"***Bankruptcy Code***" shall have the meaning provided for under <u>Recital C</u>.

"***Bankruptcy Court***" shall have the meaning provided for under <u>Recital C</u>.

"***Base Purchase Price***" shall have the meaning provided for under <u>Section 2.1</u>.

"***Bidding Procedures***" shall have the meaning provided for under <u>Section 8.2</u>.

"***Bill of Sale***" shall have the meaning provided for under <u>Section 3.2(g)</u>.

"***Books and Records***" means all financial, accounting, Tax and other books and records of Seller, whether written, on disk, film, tape or other media, and including all computerized

data, in each case relating to the Purchased Assets, the Assumed Liabilities or the Acquired Business.

"***Business***" shall have the meaning provided for under <u>Recital B</u>.

"***Business Day***" means any day other than a Saturday or Sunday or a legal holiday on which banks in Los Angeles, California or Tokyo, Japan are closed.

"***Business Line***" means the Suzuki Auto Business, the Suzuki ATV Business, the Suzuki Motorcycle Business, or the Suzuki Marine Business.

"***Business Permit***" means any business permit, license, certificate of occupancy, registration, certificate of public convenience and necessity, approval, easement, authorization or operating right issued or granted by any Governmental Body having jurisdiction over the Purchased Assets or the Acquired Business.

"***Chapter 11 Case***" shall have the meaning provided for under <u>Recital C</u>.

"***Claim***" means any claim, cause of action, right of recovery, right of set-off, and right of recoupment of every kind and nature including prepayments, warranties, guarantees, refunds, reimbursements.

"***Closing***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Closing Cash Purchase Price***" shall have the meaning provided for under <u>Section 2.1</u>.

"***Closing Date***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Code***" means the Internal Revenue Code of 1986, as amended.

"***Confirmation Order***" means an Order of the Bankruptcy Court confirming a Plan in the Chapter 11 Case, which Plan is on the terms and conditions, in all material respects, of the Proposed Plan.

"***Consent***" means any consent, approval, authorization, affirmative vote, waiver, agreement or license by, or report or notice to, any Person.

"***Contemplated Transactions***" shall have the meaning provided for under <u>Recital D</u>.

"***Contract***" means any contract or lease.

"***Contract Designation Deadline***" means the Closing Date.

"***Copyright***" means all copyrightable works, and all United States and foreign registered copyrights and applications, registrations and renewals therefor, and any past, present or future claims or causes of actions arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Cost of Repurchased Dealer Inventory***" means the aggregate cost to Seller of any Repurchased Dealer Inventory, as such cost is reflected on the Books and Records of Seller, in an amount not to exceed Four Million Dollars ($4,000,000).

"***Cure Cost***" means the amount required to be paid as a cure amount under Section 365 of the Bankruptcy Code so that Seller may assume, sell and assign any Seller's Contract to Purchaser.

"***Dealer***" means any existing authorized U.S. dealer in any Suzuki Automotive Products, Suzuki Motorcycle Products, Suzuki ATV Products, or Suzuki Marine Products.

"***Dealer Settlement Agreement***" shall have the meaning provided for under <u>Section 8.5</u>.

"***Deposit***" shall have the meaning provided for under <u>Section 2.2</u>.

"***DIP Credit Facility***" means that certain Debtor-in-Possession Loan and Security Agreement, dated as of November 5, 2012, by and between Seller, as debtor and debtor-in-possession under the Bankruptcy Code, and SMC, as lender, as amended from time to time.

"***DIP Lender***" means SMC.

"***Disputed Schedule***" shall have the meaning provided for under <u>Section 2.3(c)</u>.

"***Domain Name***" means the internet domain names owned by Seller, and all registrations, applications and renewals related to the foregoing.

"***Encumbrance***" means any claim, lien, pledge, option, charge, easement, Tax assessment, security interest, deed of trust, mortgage, right-of-way, encroachment, building or use restriction, conditional sales agreement, encumbrance or other right of third parties of any sort whatsoever, whether voluntarily incurred or arising by operation of law, and includes any agreement to give any of the foregoing in the future, and any contingent sale or other title retention agreement or lease in the nature thereof.

"***Entity***" means any corporation (including any nonprofit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, cooperative, foundation, society, political party, union, company (including any limited liability company or joint stock company), firm or other enterprise, association, organization or entity.

"***Environmental Laws***" means all federal, state and local laws governing health and safety, pollution or the protection of the environment.

"***Equipment***" means all fixtures and other Leasehold Improvements, POS system, disposal systems, artwork, racks, stands, displays, counters, desks, chairs, tables, dispensers, and other furniture and furnishings, Hardware, vehicles, tools, smallware, and other equipment (copiers, fax machines, telephone lines and numbers, and other telecommunication equipment), and miscellaneous office and store supplies and other items of tangible personal property owned or used by Seller in the conduct of the Acquired Business, other than any such items of tangible personal property that are the subject of personal property leases that are not Purchased Contracts.

"***ERISA***" means the Employee Retirement Income Security Act of 1974.

"***Excluded Asset***" shall have the meaning provided for under <u>Section 1.2</u>.

"***Excluded Contract***" means any Seller's Contract that is not listed on Exhibit B to the Plan Supplement as of the Contract Designation Deadline.

"***Excluded Liability***" shall have the meaning provided for under <u>Section 2.6</u>.

"*Expense Reimbursement*" shall have the meaning provided for under <u>Section 11.1</u>.

"*Expense Reimbursement Fee Event*" means (a) Purchaser is not approved by the Bankruptcy Court as the purchaser of the Purchased Assets, (b) Purchaser is not in default of its obligations under this Agreement, and (c) the Purchased Assets are thereafter sold to a Successful Bidder at the Auction (as defined in the Procedures Order) for consideration in excess of the Purchase Price, notwithstanding Purchaser's willingness and ability to consummate the Contemplated Transactions in accordance with the terms and conditions set forth in this Agreement.

"*Express Warranty Claim*" means a claim under a written warranty issued by Seller but, for the avoidance of doubt, excluding claims for personal injury, third party property damage, or consequential damages of any kind.

"*Facility*" means any office building, warehouse, or other facility from which the Business or any financial, administrative, management, or executive functions of Seller are conducted.

"*Final Order*" means an Order of the Bankruptcy Court the operation or effect of which has not been stayed, reversed or amended, and as to which Order the time to appeal or to seek review or rehearing has expired and as to which (i) no appeal or request for review or rehearing was filed, or (ii) if an appeal or request for review or rehearing was filed, such appeal or request for review or rehearing is no longer pending.

"*Final NABV Schedule*" shall have the meaning provided for under <u>Section 2.3</u>.

"*GAAP*" means United States generally accepted accounting principles, applied on a consistent basis during the periods involved.

"*Governmental Body*" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body or Entity and any court or other tribunal); (d) multinational organization or body; or (e) individual, Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military or taxing authority or power of any nature.

"*Hardware*" means any and all computer and computer-related hardware, including, but not limited to, computers, modems, hard drives, cables, file servers, facsimile servers, scanners, color printers, laser printers and networks.

"*Hart-Scott-Rodino Law*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (codified in Section 18(a) of Title 15, U.S. Code) and any related Federal Trade Commission regulations.

"*Hazardous Substance*" means any hazardous waste, toxic substance, pollutant or contaminant as those terms are defined in Environmental Laws.

"*Indebtedness*" means (a) any obligation for borrowed money, including any obligation for accrued and unpaid interest thereon and any prepayment or other penalties or premiums, (b) any capitalized lease obligations, (c) any obligation evidenced by a note, deed, mortgage or secured by any property of Seller, (d) any reimbursement obligations in respect of letters of

credit, and (e) all guarantees issued in respect of obligations of any other Person of the type described in clauses (a) through (d).

"*Intangible Property Assets*" means any Intellectual Property Assets or Other Intangible Property owned or held by Seller.  As used in this Agreement, Intangible Property Assets shall in all events exclude:  (i) any materials containing information about employees (other than Transferred Employees), disclosure of which is prohibited under applicable law, (ii) any materials containing information subject to any attorney-client, attorney work product or other applicable privilege in favor of Seller, (ii) any materials containing information the delivery of which by Seller to Purchaser would breach any contractual obligation of confidentiality to which Seller is subject, and (iv) any Intellectual Property Asset or Other Intangible Property, including but not limited to software, held by Seller pursuant to a license or other Seller's Contract where Purchaser does not assume the underlying Contract relating to such Intellectual Property Asset or Other Intangible Property at the Closing.

"*Intellectual Property Assets*" means intellectual property or other proprietary rights of Seller of every kind throughout the world, both domestic and foreign, which, in each case, are related to the Business, including all inventions and improvements thereon, Patents, Trademarks, Trademark Rights, Copyrights, Domain Names, Technology and trade secrets.

"*Interim DIP Order*" means that certain Interim Order of the Bankruptcy Court (1) Authorizing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1); (2) Authorizing The Use Of Cash Collateral; (3) Granting Security Interests and Superpriority Claims; (4) Providing Adequate Protection; (5) Modifying the Automatic Stay; and (6) Granting Related Relief entered by the Bankruptcy Court on November 7, 2012 [Docket No. 66].

"*Inventory*" means all goods, products, parts, and supplies sold or used in the sale of any goods or products and all other inventory owned and held by Seller or used in connection with the Business, wherever located, and whether on hand, on order, in transit, or held by others on a consignment basis.

"*Knowledge*" of a Person means to such Person's actual knowledge, after due inquiry, and, with respect to a Person that is a corporation, the knowledge of such Person's executive officers, after due inquiry.

"*Leasehold Improvements*" means any leasehold improvements or appurtenances to such improvements (including buildings, structures, storage areas, driveways, walkways, planters, landscaping and parking areas).

"*Legal Description*" means, with respect to the description of a parcel of real property as set forth in a deed of transfer conveying such parcel or other Closing document, either (i) the metes and bounds description set forth for such parcel (if any) appearing on <u>Schedule 5.13(a)</u> hereto, or (ii) the metes and bounds description of such parcel set forth in the deed vesting title to such parcel in Seller, as said metes and bounds descriptions in item (i) or (ii) may be modified by mutual agreement of the Parties acting in good faith with respect thereto.

"*Legal Requirement*" means any applicable federal, state, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, requirement, notice requirement, guideline, Order, specification, determination, decision, opinion or interpretation issued, enacted, adopted, passed, approved, promulgated, made, implemented or otherwise put into effect by or under the authority of any Governmental Body.

"***Lemon Laws***" means the Magnuson-Moss Warranty Act, any similar state laws, as amended, and any rules or regulations promulgated pursuant thereto, as amended.

"***Liability***" means any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty or endorsement of any type whatsoever, whether accrued or unaccrued, absolute or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, asserted or unasserted, due or to become due.

"***Magnuson-Moss Warranty Act***" means 15 U.S.C. Section 2301 *et seq*., as amended.

"***Marine Business***" shall have the meaning provided for under Recital B.

"***Motorcycle/ATV Business***" shall have the meaning provided for under Recital B.

"***Notice of Potential Designated Contracts***" means that certain Notice Re: Potential Designated Contracts, in form and substance reasonably satisfactory to Purchaser, to be filed by Seller with the Bankruptcy Court.

"***NTMVSA***" means the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. 30101 et seq., as amended.

"***Order***" means any judgment, decision, consent decree, injunction, ruling or order of any Governmental Body that is binding on any Person or its property under applicable law.

"***Original Agreement***" shall have the meaning provided for under Recital C.

"***Original Execution Date***" shall have the meaning provided for under Recital C.

"***Other Intangible Property Assets***" means all intangible personal property (other than the Intellectual Property Assets) owned or held by Seller, including (i) the Books and Records; (ii) proprietary information relating to the Purchased Assets or the Acquired Business, including sales, marketing, advertising, packaging and promotional materials, files, data, software (whether written, on disk, film, tape or other media, and including all computerized data), and other technical information and data, catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, and telephone numbers identified with the Purchased Assets or the Acquired Business; and (iii) all goodwill of the Purchased Assets and the Acquired Business.

"***Outside Date***" means March 31, 2013.

"***Overbidder***" means a Person that has submitted an offer to purchase all or substantially all of the Purchased Assets, or all or substantially all of the equity interests, of Seller or any of its successors pursuant to an Alternative Transaction.

"***Parties***" shall have the meaning provided for in the preamble.

"***Patent***" means the United States patents and patent applications owned by Seller, including, any continuations, divisionals, continuations in part, or reissues of patent applications and patents issuing thereon and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Permitted Encumbrances***" means (i) any interests of third party lessors or landlords under any leases of real or personal property under which Seller is a tenant or lessee and which are included within the Purchased Contracts, (ii) any Encumbrances on real property for Taxes

and similar assessments not yet payable, (iii) any rights of way, utilities easements, or other exceptions to title to real property that do not materially affect the use and enjoyment thereof, (iv) any Assumed Liabilities, (v) any Encumbrances expressly approved in writing by Purchaser, and (v) any Encumbrances not removed from the Purchased Assets by operation of the Sale Order.

"**_Person_**" means an individual, Entity or Governmental Body.

"**_Personal Property Lease_**" means any Seller's Contract for the lease or license of Equipment or other personal property, tangible or intangible.

"**_Petition_**" shall have the meaning provided for under <u>Recital C</u>.

"**_Petition Date_**" means the date of the filing of the Petition with the Bankruptcy Court.

"**_Plan_**" means a chapter 11 plan of reorganization the Chapter 11 Case.

"**_Plan Sale Transaction_**" means a transaction whereby the Contemplated Transactions are effectuated in the Chapter 11 Case pursuant to the Proposed Plan under Section 363, Section 365 and other applicable provisions of the Bankruptcy Code.

"**_Plan Sale Transaction Pleadings_**" shall have the meaning provided for under <u>Section 1.3(d)</u>.

"**_Plan Supplement_**" shall have the meaning ascribed to it in the Proposed Plan.

"**_Preliminary NABV Schedule_**" shall have the meaning provided for under <u>Section 2.3(b)(i)</u>.

"**_Procedures Order_**" shall have the meaning provided for under <u>Section 8.2</u>.

"**_Proposed Plan_**" means the Plan filed by Seller on the Petition Date, as amended from time to time with the consent of Purchaser.

"**_Purchased Assets_**" shall have the meaning provided for under <u>Section 1.1</u>.

"**_Purchased Contract_**" means any Seller's Contract that is identified in Exhibit B to the Plan Supplement as of the Contract Designation Deadline in accordance with <u>Section 1.3</u>.

"**_Purchased Inventory Loan Obligations_**" means all Indebtedness and other obligations of Seller under the DIP Credit Facility incurred for the purpose of financing, on fifteen (15) day credit terms, the purchase of any Inventory included within the Purchased Assets; provided, however, that Purchased Inventory Loan Obligations shall not include any Indebtedness of Seller that is outside of the required fifteen (15) day credit terms.

"**_Purchase Price_**" shall have the meaning provided for under <u>Section 2.1</u>.

"**_Purchase Price Overpayment_**" means the full amount by which the Closing Cash Purchase Price is greater than the Adjusted Purchase Price.

"**_Purchase Price Underpayment_**" means the full amount by which the Closing Cash Purchase Price is less than the Adjusted Purchase Price.

"**_Purchaser_**" shall have the meaning provided for in the preamble.

"***Real Property Lease***" means any Seller's Contract for the lease of real property.

"***Receivables***" means all accounts receivable and notes receivable, and all causes of action specifically pertaining to the collection of the foregoing.

"***Represented Employees***" means the approximately twenty (20) Seller employees who belong to Local Union No. 2295 of The International Brotherhood of Electrical Workers AFL-CIO.

"***Repurchased Dealer Inventory***" means all Inventory included within the Purchased Assets that has been repurchased by Seller from Auto Dealers as authorized by Order of the Bankruptcy Court.

"***Retained Auto Business Assets***" shall have the meaning provided for under Section 1.2(a).

"***Retained Real Property***" shall have the meaning provided for under Section 1.2(b).

"***Sale Hearing***" means the hearing conducted by the Bankruptcy Court to approve the Contemplated Transactions.

"***Sale Motion***" shall have the meaning provided for under Section 8.1.

"***Sale Order***" shall have the meaning provided for under Section 8.1.

"***Sale Order Transaction***" means a transaction whereby the Contemplated Transactions are effectuated in the Chapter 11 Case pursuant to a sale under Section 363, Section 365 and other provisions of the Bankruptcy Code.

"***Sale Term Sheet***" means the term sheet relating to the Contemplated Transactions between Purchaser and Seller.

"***Schedule Delivery Deadline***" means 5:00 p.m. Pacific time on January 21, 2013.

"***Seller***" shall have the meaning provided for in the preamble.

"***Seller Benefit Plan***" means each "employee benefit plan" as defined in Section 3(3) of ERISA and each other plan, policy, program, agreement, understanding and arrangement (whether written or oral) providing compensation or other benefits to any current or former director, officer, employee or consultant (or to any dependent or beneficiary thereof) of Seller which is now or has been maintained, sponsored or contributed to by Seller or under the terms of which Seller has or is reasonably likely to have any obligation or liability, whether actual or contingent, including all employment, consulting, severance, termination, incentive, bonus, deferred compensation, retirement, pension, savings, profit sharing, retention, change in control, vacation, holiday, cafeteria, medical, disability, life, accident, fringe benefit, welfare and stock-based compensation plans, policies, programs, agreements, understandings or arrangements.

"***Seller's Closing Date Net Asset Book Value***" means the book value as of the Closing Date of all of the Purchased Assets, less all of the Assumed Liabilities outstanding as of the Closing Date.

"***Seller's Contract***" means any Contract (a) to which Seller is a party or by which Seller is bound and (b) that is not related exclusively to the Auto Sales Business.

"*Seller's Financial Statements*" shall have the meaning provided for under <u>Section 5.6</u>.

"*Seller's Marks*" shall have the meaning provided for under <u>Section 5.15(a)</u>.

"*Seller's Required Approvals*" shall have the meaning provided for under <u>Section 5.4</u>.

"*Service and Parts Agreement*" means a written service and parts agreement between Seller and a Settling Dealer, on the terms and conditions set forth in the Proposed Plan, under which the Settling Dealer (a) agrees to remain an Auto Dealer for the purpose of selling its remaining inventory and (b) for a definite period of time continues providing authorized warranty and non-warranty service and selling genuine Suzuki Automotive Products (other than Suzuki Automobiles).

"*Settling Dealers*" means any Auto Dealer with whom Seller enters into a pre-confirmation settlement agreement in accordance with the Proposed Plan.

"*SMAC*" means Suzuki Manufacturing of America Corporation.

"*SMC*" shall have the meaning provided for under <u>Recital A</u>.

"*SMC Loan Agreement*" means that certain Loan and Security Agreement dated as of July 27, 2012 by and between Seller and SMC, as amended.

"*Standard Exceptions to Enforceability*" means any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

"*Subsidiary*" means, with respect to any Person, (a) any corporation of which at least 50% of the securities or interests having, by their terms, ordinary voting power to elect members of the board of directors, or other persons performing similar functions with respect to such corporation, is held, directly or indirectly by such Person and (b) any partnership or limited liability company of which (i) such Person is a general partner or managing member or (ii) such Person possesses a 50% or greater interest in the total capitalization or total income of such partnership or limited liability company.

"*Successful Bidder*" shall have the meaning provided for in the Procedures Order.

"*Suzuki ATV Products*" means all-terrain vehicles manufactured by SMC and its Affiliates and any parts or other products related thereto.

"*Suzuki Automobiles*" means automobiles manufactured by SMC or its Affiliates.

"*Suzuki Automotive Products*" means Suzuki Automobiles and automotive parts and other related products manufactured by or for SMC and its Affiliates for use in connection with Suzuki Automobiles.

"*Suzuki Marine Products*" means outboard motors manufactured by SMC and its Affiliates and any parts or other products related thereto.

"*Suzuki Motorcycle Products*" means motorcycles manufactured by SMC and its Affiliates and any parts or other products related thereto.

"***Suzuki Products***" means any Suzuki Automotive Products, Suzuki ATV Products, Suzuki Marine Products, and Suzuki Motorcycle Products.

"***Suzuki Product Liability***" means any Liability of Seller, regardless of whether arising before or after the Petition Date, (i) under Express Warranty Claims on any Suzuki Products; (ii) for recalls and other obligations under the NTMVSA with respect to Suzuki Products; or (iii) under any Lemon Laws with respect to Suzuki Products.

"***Tax***" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"***Tax Return***" means any return, declaration, report, claim for refund, transfer pricing report or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"***Technology***" means, collectively, all designs, formulae, algorithms, procedures, methods, techniques, know how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology.

"***Trademarks***" means all trademark registrations and applications for trademark registration owned by Seller, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof, and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Trademark Rights***" means all common law rights in the United States in any trade names, corporate names, logos, slogans, designs, trade dress, and unregistered trademarks and service marks owned by Seller, together with all translations, adaptations, derivations and combinations thereof, and the goodwill associated with any of the foregoing.

"***Transaction Expenses***" means all reasonable fees, charges, disbursements and expenses, paid out-of-pocket to third parties, and whether incurred before or after the Original Execution Date, including fees, expenses and costs of legal counsel, accountants, financial advisors, consultants, agents and other representatives, incurred in connection with this Agreement or with the Contemplated Transactions, including, but not limited to: (a) the negotiation of the Contemplated Transactions, (b) conducting the business, financial and legal due diligence investigation of Seller, (c) negotiating the terms of the Contemplated Transactions, including this Agreement and related financial documentation, and the negotiation, execution and delivery of any documentation and any amendments thereto related to the possible Contemplated Transactions and the financing thereof, (d) activities and other matters related to the Contemplated Transactions and the Chapter 11 Case, (e) actions to enforce Purchaser's rights under this Agreement, and (f) the consummation of the Contemplated Transactions.

"***Transfer Taxes***" shall have the meaning provided for under <u>Section 3.4</u>.

"***Transferred Employee***" means any employee of Seller, upon accepting an offer of employment from Purchaser.

"***TSA***" shall have the meaning providing in <u>Section 3.2(k)</u>.

"***U.S. Territory***" means the United States of America, excluding the State of Hawaii, the Commonwealth of Puerto Rico, and the territories of Guam, the Northern Mariana Islands, America Samoa, and the U.S. Virgin Islands.

"***Utilities***" shall have the meaning provided for under <u>Section 2.8</u>.

"***WARN Act***" means the United States Worker Adjustment and Retraining Notification Act, and the rules and regulations promulgated thereunder, and any amendments thereof.

[*Signature page follows; remainder of page intentionally left blank*]

IN WITNESS WHEREOF, Purchaser and Seller have executed this Agreement as of the day and year first above written.

**PURCHASER:**

Suzuki Motor of America, Inc.,
a California corporation f/k/a NounCo, Inc.

By: _____
     Name: _____
     Title: _____

**SELLER:**

American Suzuki Motor Corporation,
a California corporation

By: _____
     Name: _____
     Title: _____

143466.1

**Schedule 2.5**

**Assumed Scheduled Liabilities**

<u>Affiliate A/P</u>:  Liabilities owed by Seller to Seller's Affiliates arising after the Petition Date, but specifically excluding any Indebtedness or other obligations of Seller under the DIP Credit Facility.

<u>HOLD BACK</u>:  Liabilities of Seller, under Purchased Contracts only, pertaining to obligations for Seller's hold back programs for motorcycle and all-terrain vehicle Dealers that are owed but unpaid or are contingent upon when the vehicle is ultimately retailed.

<u>SALES PROMOTION</u>:  Liabilities of Seller, under Purchased Contracts only, for obligations related to sales promotion programs (cash incentives, salesperson incentives, financing program incentives) for motorcycles, all-terrain vehicles, and marine outboard motors that are owed but unpaid or are contingent upon when the vehicle is ultimately retailed.

<u>COOP ADVERTISING</u>:  Liabilities of Seller, under Purchased Contracts only, relating to the owed but unpaid amounts related to advertising programs for motorcycles, all-terrain vehicles, and marine outboard motors, or obligations that are contingent upon future advertising expenditures by the applicable motorcycle, all-terrain vehicles and marine outboard motors Dealers.

For the avoidance of doubt, no liability to any Dealer whose Contract is not a Purchased Contract is being assumed

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*):

**ORDER CONFIRMING DEBTOR'S FOURTH AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.   SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order.  As of (*date*) **March 6, 2013**, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

☒ Service information continued on attached page

**2.   SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

☐ Service information continued on attached page

**3.   TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☒ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9021-1.1.NOTICE.ENTERED.ORDER**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Allison R Axenrod    allison@claimsrecoveryllc.com
- Jason W Bank    jbank@kerr-russell.com,
  vmckinnie@kerr-russell.com
- Martin R Barash    mbarash@ktbslaw.com
- Yelena Bederman    ybederman@omnimgt.com
- Andrew S Bisom    abisom@bisomlaw.com
- Michael J Bujold    Michael.J.Bujold@usdoj.gov
- Frank Cadigan    frank.cadigan@usdoj.gov
- Charles Canter    charles.canter@usdoj.gov
- Linda F Cantor    lcantor@pszjlaw.com,
  lcantor@pszjlaw.com
- George B Cauthen
  george.cauthen@nelsonmullins.com,
  steve.morrison@nelsonmullins.com;jody.bedenbaugh@n
  elsonmullins.com;steve.mckelvey@nelsonmullins.com;jo
  an.kishline@nelsonmullins.com
- Wendy Chang    wchang@hinshawlaw.com
- Shirley Cho    scho@pszjlaw.com
- Shawn M Christianson    cmcintire@buchalter.com
- Kristen Corbett    kcorbett@omnimgt.com
- Donald H Cram    dhc@severson.com
- Joseph A Eisenberg    jae@jmbm.com, vr@jmbm.com
- Andrew S Elliott    ase@severson.com
- Scott Ewing    contact@omnimgt.com,
  sewing@omnimgt.com;katie@omnimgt.com
- William A Frazell    bk-bfrazell@oag.state.tx.us
- Barry V Freeman    bfreeman@jmbm.com,
  bfreeman@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Amir Gamliel    agamliel@perkinscoie.com,
  cmallahi@perkinscoie.com
- Duane M Geck    dmg@severson.com
- Michael I Goldberg    info@sonarcredit.com
- Richard H Golubow    rgolubow@winthropcouchot.com,
  pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Leon B Gordon    othercourts@mvbalaw.com
- Debra I Grassgreen    dgrassgreen@pszyjw.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Eric M Heller    eric.m.heller@irscounsel.treas.gov
- Matthew Heyn    mheyn@ktbslaw.com
- Desmond J Hinds    dhinds@hinshawlaw.com,
  mpotter@hinshawlaw.com
- Jeffrey A Hokanson    jhokanson@fbtlaw.com,
  tschneider@fbtlaw.com
- John J Immordino    john.immordino@wilsonelser.com,
  raquel.burgess@wilsonelser.com
- Steven J Kahn    skahn@pszyjw.com
- Teddy M Kapur    tkapur@pszjlaw.com
- Jonathan J Kim    jkim@pszjlaw.com, jkim@pszjlaw.com
- Andy Kong    Kong.Andy@ArentFox.com
- David S Kupetz    dkupetz@sulmeyerlaw.com,
  jbartlett@sulmeyerlaw.com
- Kristin R Lamar    nclgign@hotmail.com
- Kenneth T Law    ken@bbslaw.com

- John W Lucas    jlucas@pszjlaw.com,
  ocarpio@pszjlaw.com
- Kerri A Lyman    klyman@irell.com
- Gabriel R Macconaill    gmacconaill@sidley.com
- Michael P McMahon    mmcmahon@irell.com,
  mick.p.mcmahon@gmail.com
- Laura A Meyerson    laura.meyerson@sce.com
- Christopher Minier    becky@ringstadlaw.com
- Mike D Neue    mneue@thelobelfirm.com,
  jmattiace@thelobelfirm.com;nlockwood@thelobelfirm.co
  m
- Valerie B Peo    vpeo@schnader.com,
  mpadilla@schnader.com
- David M Poitras    dpoitras@jmbm.com
- Robert S Prince    rprince@kmclaw.com,
  squilter@kmclaw.com
- Jeffrey M. Reisner    jreisner@irell.com
- Stuart M Richter    stuart.richter@kattenlaw.com,
  victoria.boyd@kattenlaw.com,ecf.lax.docket@kattenlaw.c
  om
- James S Riley    tgarza@sierrafunds.com
- Jason H Rosell    jrosell@pszjlaw.com,
  oginsburg@pszjlaw.com
- Susan K Seflin    sseflin@wrslawyers.com
- Esperanza Segarra    esegarra@hinshawlaw.com,
  swechsler@hinshawlaw.com
- Laurie A Shade    laurie.shade@coco.ocgov.com,
  cocotemp2@coco.ocgov.com
- Alan D Smith    adsmith@perkinscoie.com
- James Stang    jstang@pszjlaw.com
- Howard Steinberg    steinbergh@gtlaw.com,
  arosc@gtlaw.com
- Barry Sullivan    bsullivan@sacfirm.com
- Charles M Tatelbaum    ctatelbaum@hinshawlaw.com,
  csmith@hinshawlaw.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov
- Andy C Warshaw    awarshaw@lawcenter.com,
  mstevens@lawcenter.com
- Jonathan M Weiss    jweiss@ktbslaw.com
- Joseph M Welch    jwelch@buchalter.com,
  svanderburgh@buchalter.com;docket@buchalter.com;bk
  group@buchalter.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com
- Judith A Whitehouse    jwhitehouse@schwabe.com,
  dmillan@schwabe.com;centraldocket@schwabe.com
- Kimberly S Winick    kwinick@clarktrev.com
- Dean A Ziehl    dziehl@pszjlaw.com,
  dziehl@pszjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9021-1.1.NOTICE.ENTERED.ORD**

## 2. SERVED BY UNITED STATES MAIL

| | | |
|---|---|---|
| Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>PO Box 826880<br>Sacramento, CA 94280-0001 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19101 | Securities & Exchange Commission<br>5670 Wilshire Blvd., 1th Floor<br>Los Angeles, CA 90036 |
| State Board of Equalization<br>Attn: Special Procedures Section<br>PO Box 942879, 450 N. St.<br>Sacramento, CA 95814 | US Attorney General<br>US Dept. of Justice<br>Ben Franklin Station<br>PO Box 683<br>Washington, DC 20044 | Franchise Tax Board CA<br>Bankruptcy Section, MS: A-340<br>PO Box 2952<br>Sacramento, CA 95812-2952 |
| Michael G. Wilson<br>One Energy Plaza<br>Jackson, MI 49201 | Missouri Dept. of Revenue<br>Bankruptcy Unit<br>Attn: Steven A. Ginther<br>P.O. Box 475<br>Jefferson City, MO 65105-0475 | Tennessee Department of Revenue<br>c/o Tennessee Attorney General's Office,<br>Bankruptcy Division<br>PO Box 20207<br>Nashville, TN 37202-0207 |
| Lee Gordon<br>McCreary, Veselka, Bragg & Allen, P.C.<br>PO Box 1269<br>Round Rock, TX  78680 | Joseph G. Gibbons, Esquire<br>White and Williams LLP<br>1800 One Liberty Place<br>Philadelphia, PA 19103 | |

## 3. SERVED BY EMAIL

Michael L. Tuchin -- mtuchin@ktbslaw.com
Lee R. Bogdanoff -- lbogdanoff@ktbslaw.com
Martin R. Barasch -- mbarash@ktbslaw.com
David A. Fidler -- dfidler@ktbslaw.com
Michael J. Bujold -- Michael.j.bujold@usdoj.gov
Jeffrey M. Reisner -- jreisner@irell.com
Kerri A. Lyman -- klyman@irell.com
Alan J. Friedman – afriedman@irell.com
Michael P. McMahon mmcmahon@irell.com
William A. Frazell --
bill.frazell@texasattorneygeneral.gov
Duane M. Geck -- dmg@severson.com
Andrew S. Elliot -- ase@severson.com
Donald H. Cram -- dhc@severson.com
Larry J. Nyhan -- lnyhan@sidley.com
Gabriel MacConaill -- gmacconaill@sidley.com
Shawn M. Christianson – schristianson@buchalter.com
Stephen P. Leara -- sleara@wallacejordan.com
gwlee@wallacejordan.com

George B. Cauthen --
George.cauthen@nelsonmullins.com
Jody Bedenbaugh --
jody.bedenbaugh@nelsonmullins.com
Steve Morrison -- steve.morrison@nelsonmullins.com
Steve McKelvey -- steve.mckelvey@nelsonmullins.com
Charles M. Tatelbaum -- ctatelbaum@hinshawlaw.com
New Chapter Law Group --
attorney@newchapterlaw.com
Kenneth T. Law -- klaw@bbslaw.com
Andy S. Kong -- Kong.andy@arentfox.com
esegarra@hinshawlaw.com
Desmond J. Hinds -- dhinds@hinshawlaw.com
Filomena E. Meyer -- fmeyer@hinshawlaw.com
Robert K. Imperial -- rimperial@williamsmullen.com
Robert S. Prince -- rprince@kmclaw.com
Christopher S. Hill -- chill@kmclaw.com
Lee Gordon -- lgordon@mvbalaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9021-1.1.NOTICE.ENTERED.ORDER